UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re                                                      Chapter 11

     243rd Street Bronx R&R LLC                          Case no.  11-13321

               Debtor.

-----------------------------------------------------------x

## <u>DISCLOSURE STATEMENT</u>

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## **INTRODUCTION**

1.      The Debtor submits this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit "A".  All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement.  All capitalized terms used but not defined herein shall have the meaning set forth in the Plan.

2.      This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan.  Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors.  To the extent a Creditor has any questions, the Debtor urges you to contact its counsel and every effort will be made to assist you.  THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN. THE DEBTOR'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN.  IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO SEEK CRAMDOWN OF THE PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE PLAN.

3.      On _____, 2011, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor

and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.

4.      Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure Statement.  EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

5.      THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR.  THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

3

6.      After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor so as to be received on or before _____, 2011.

7.      The Bankruptcy Court has entered an Order fixing _____, 2011, at .m., at the United States Bankruptcy Court, One Bowling Green, New York, New York, as the date, time and place for the hearing on confirmation of the Plan, and fixing _____, 2011, as the last date for the filing of any objections to confirmation of the Plan.

## BACKGROUND

8.      On January 26, 2011, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code").

9.      The Debtor owns a parcel of real property located at 798-710 and 740 East 243rd Street, Bronx, New York (the "Property"). The 708-710 Property is a 5 story apartment building, with 50 residential units, and 5 commercial units. The 740 Property is a 6 story apartment building with 72 residential units.

10.     The Property has a $9,800,000. Such value is based upon the Mortgagee's appraisals.

11.     The Property is encumbered by real estate tax, water and sewer liens in the amount of approximately $374,491.

4

12.    243rd Street Lender LLC (the "Lender" or the "Mortgagee") asserts a first mortgage claim in the amount of $10,838,000, $816,400 is unsecured based upon the Property value.

13.    In addition, the Property is encumbered by other subordinate liens in the aggregate amount of approximately $99,692.

14.    The Debtor's general unsecured claims, including subordinate liens and general unsecured claims total approximately $840,598, $820,000 of which is insider debt..

15.    The Debtor's financial problems arise from the economic downturn which inhibited the Debtor's ability to keep up with the mortgage and upkeep of the Properties.  The Debtor's objective in this Chapter 11 case was to stabilize the Debtor's finances, so that ultimately the Properties could be refinanced or sold, or the mortgage reinstated or restructured for the benefit of all interested parties.

16.    55 of the apartments in the Debtor's Properties are leased in bulk to an organization named We Care Housing Services.  We Care works with various charitable organizations such as Volunteers of America to house tenants, many of whom are homeless.  The We Care lease is very valuable because We Care monitors the tenants its houses to ensure that they are good tenants, and because We Care is very reliable in the payment of its rent.  Indeed, in the Appraisals, the appraiser noted that "Given the positive leasehold interest associated with the rent stabilized and We Care Housing Services occupied units, a lower vacancy and credit loss of 2.0% has been applied."

5

17.    Fortunately, the Debtor has a very good relationship with We Care, and, even more fortunately, We Care has the flexibility to dramatically increase the rent it pays per apartment in order to preserve and enhance its relationship with the Debtor and its owners. Accordingly, the Debtor is negotiating the terms of a new lease with We Care, effective post-confirmation and contingent upon the Debtor maintaining control of the Properties, which, if successful, will result in We Care paying an additional $900.00 per month for each of its 55 apartments, thereby providing the means by which the Debtor can confirm a plan in this case.

18.    Based upon the Appraisals, the proposed additional income will increase the collective yearly net operating income of the Properties from $777,000 to $1,287,038. Based upon the 7.25% cap rate used by the appraiser in developing his valuation, the increased net operating income will result in an increase in value from $9.8 million to $18,910,344 based upon the income approach.

19.    Thus, the modified We Care lease will be the cornerstone of the Debtor's Plan.

20.    With respect to the Mortgagee, the Appraisals state that the market interest rate for financing the Properties is 4.6% based upon a 30 year amortization schedule, for an effective pay rate of 6.08%. The Plan will therefore provide for a restructuring of the Mortgagee's mortgage consistent therewith. The new principal amount will be the approximate $10,838,000 due. The principal amount will bear 4.6% interest based upon a 30 year

6

amortization schedule, for an effective pay rate of 6.08%, for a five year term, renewable at market rates for an additional five years.

21.    The Debtor estimates that the yearly mortgage payment will be $658,950. As noted above, estimated net operating income will increase to $1,278,048. Accordingly, after deducting the mortgage payment, with the modified We Care lease in place, the Debtor will have approximately $619,950 of yearly cash flow with which to make needed repairs to the Properties and pay all outstanding lien claims, priority claims and general unsecured claims in a relatively short period of time.

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1

22.    **Classification** –  New York City real estate tax, water, sewer and other liens.   Claims total approximately $374,491

23.    **Treatment** – Payment of 12 quarterly installments in cash commencing 90 days after the Effective Date in an amount equal to one twelfth of the Allowed Amount of the Class 1 Claim, plus interest at the statutory rate through the date of payment.

24.    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 2

25.     **Classification** – 243rd Street Lender LLC  Claim totals approximately $10,838,000

26.     **Treatment** – Monthly interest payments on the Allowed Amount of the Claim at an annual interest rate of 5.5% for 60 months, plus monthly amortization payments based upon a 30 year amortization schedule.  Outstanding principal amount due at maturity, subject to a 60 sixty month renewal at then prevailing market rates.  Documentation shall be pursuant to standard recordable forms.

27.     **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

### Class 3

28.     **Classification** – Blue Diamond Fuel Oil Corp. lien Claim.  Asserted in the amount of approximately $77,000.

29.     **Treatment** -- 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.

30.     **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 4

8

31.    **Classification** – C.S. Brown Co., Inc.  Mechanics lien Claim in the amount of approximately $9,816.

32.    **Treatment** -- 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.

33.    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 5

34.    **Cassification** – County Oil Company Inc.  Judgment lien in the amount of approximately $12,876.

35.    **Treatment** -- 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.

36.    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 6

37.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.  Claims total approximately $$0.00

38.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

39.    **Voting** -- Unimpaired and deemed to have accepted the Plan.

### Class 7

40.    **Classification** –  General Unsecured Claims.  Claims total approximately $840,598, $820,000 of which is insider debt.

41.    **Treatment** – 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.   Holders of Insider Claims have agreed to defer distribution on such claims until Class 1 Claims are paid in full.

42.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## Class 8

43.    **Classification** – Equity Interests .

44.    **Treatment** – Equity holders shall be entitled to continue to own their Interests.

45.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## ADMINISTRATIVE EXPENSES

46.    Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Unpaid Chapter 11 professional fees will total approximately $$35,000 for Debtor's counsel.

47.    All outstanding United States Trustee fees shall be paid as they come due.

## MEANS FOR IMPLEMENTATION

48.    **Source of Funds** -- Effective Date payments under the Plan will be paid from excess cash on hand held by the receiver of the Properties.  To the extent such funds are insufficient, payment shall be advanced by the Debtor's Interest Holders.  The Debtor estimates that Effective Date payments will include Administration Claims in the amount of $35,000.

11

Thereafter, Plan payments will be made as set forth on the projections annexed hereto as Exhibit C. In addition to the Properties' operating expenses, which the Debtor projects to be in the amounts estimated by the Appraisals, the projections include the expenditure of funds necessary to make repairs to correct the conditions identified by the Appraisals.

49.    Except as otherwise provided for in the Plan, on the Effective Date, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Reorganized Debtor any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Reorganized Debtor, be deemed released, and (y) execute such documents and instruments as the Reorganized Debtor requests to evidence such Claim holder's release of such property or Lien.

50.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer

12

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment including without limitation New York City Real Property Transfer

Tax and New York State Documentary Tax.

51.     Except as otherwise provided in the Plan, on the Effective Date all assets

and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and

encumbrances and any and all liens, claims and encumbrances that have not been expressly

preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise

provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all

Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or

by a Final Order of the Bankruptcy Court.

52.     **Execution of Documents** -- The Debtor shall be authorized to execute, in

the name of any necessary party, any notice of satisfaction, release or discharge of any Lien,

Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all

federal, state and local governmental agencies or departments for filing and recordation.

53.     **Recording Documents** -- Each and every federal, state and local

governmental agency or department shall be authorized to accept and record any and all

documents and instruments necessary, useful or appropriate to effectuate, implement and

consummate the transaction contemplated by the Plan, including, but not limited to any and all

13

notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## LIQUIDATION ANALYSIS

54.    In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's assets would sold and the sale proceeds distributed to creditors in their order of priority.  The Debtor believes that the Plan provides a far better return for the Debtor's estate than could be achieved in a liquidation.  Indeed, as set forth on Exhibit B hereto, the Debtor projects that in a Chapter 7 liquidation, under-secured and unsecured creditors would receive no distribution.

55.    In addition, a Chapter 7 Trustee represents an additional layer of administration legal expenses and commissions, which the Debtor estimates would total at least 15% of the sale proceeds.

## LITIGATION ANALYSIS

56.    Various landlord tenant actions are pending and they will continue post-confirmation.  The Mortgagee's foreclosure action will be dismissed.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

57.    The Debtor shall be disbursing agent under the Plan.  The Debtor has not completed its claims review and reserves its right to file objections to claims in the event grounds exist to object to particular claims.  The Debtor may file objections to Claims for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution

14

reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full. To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim. After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

58. On the Effective Date, the Debtor shall enter a new agreement with We Care, a copy of which is annexed the Plan. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan. In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim. Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## MANAGEMENT OF THE DEBTOR

59.     The Debtor is managed by Charles Wertman, as Managing Member. Post-confirmation management will remain unchanged, however, the Debtor may hire a new managing agent for the Properties.

## TAX CONSEQUENCES

60.     The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan. To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction. To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

61.     **THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN. CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.**

## VOTING PROCEDURES AND REQUIREMENTS

62.     A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement. Each creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes. The Bankruptcy Court has directed that, in

16

order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must

be received no later than _____, 2012, at the following address:  Backenroth Frankel &

Krinsky, LLP, 489 Fifth Avenue, New York, New York  10017, Attn:  Mark A. Frankel, Esq.

       63.     Each Creditor of the Debtor whose Claim is impaired under the Plan is

entitled to vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a Proof

of Claim on or before the last date set by the Bankruptcy Court for such filings.

       64.     Any Claim as to which an objection has been filed (and such objection is

still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in

an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion

by a Creditor whose Claim is subject to an objection.  Such motion must be heard and

determined by the Bankruptcy Court prior to the date established by the Court to confirm the

Plan.

       65.     A Creditor's vote may be disregarded if the Bankruptcy Court determines

that the Creditor's acceptance or rejection was not solicited or procured in good faith or in

accordance with the provisions of the Bankruptcy Code.

       66.     The Bankruptcy Code defines acceptance of a Plan by a class of Creditors

as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims

of that class which actually cast ballots for acceptance or rejection of the Plan.

17

67.     The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

68.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

69.     By order of the Bankruptcy Court dated _____, 2012, the Confirmation Hearing has been scheduled for _____, 2011, at ___ .m., in the Honorable Allan L. Gropper's Courtroom, United States Bankruptcy Court, One Bowling Green, New York, New York.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before , 2012:  Backenroth Frankel & Krinsky, LLP, 489 Fifth Avenue, New York, New York  10017, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

70.     At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are as follows:  (a)  The Plan complies

18

with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the

applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and

not by any means forbidden by law, (d) any payment made or promised or by a person issuing

securities or acquiring property under the Plan, for services or for costs and expenses in, or in

connection with, the Bankruptcy Case, or in connection with the Plan and incident to the

Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made

before the confirmation of the Plan is reasonable, or if such payment is to be fixed after

confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as

reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed

to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an

affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under

the Plan, and the appointment to, or continuance in, such office of such individual, is consistent

with the interests of Creditors and equity security holders and with public policy, and the Debtor

has disclosed the identity of any insider that will be employed or retained by the reorganized

Debtor, and the nature of any compensation for such insider, (f) with respect to each class of

impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or

will receive or retain under the Plan on account of such Claim or interest property of a value, as

of the Effective Date of the Plan, an amount that is not less than the amount that such holder

would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the

Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not

impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed

19

to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

71.     The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

72.     The Debtor contends that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

## CRAMDOWN

73.     In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

74.    The debtor intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

75.    A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

76.    With respect to a Secured Claim, "fair and equitable" means either: (a) the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

77.    With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

78.    In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

21

## CONCLUSION

79.     The Debtor urges the Debtor's Creditors to vote to accept the Plan and to

evidence such acceptance by returning their ballots so that they will be received no later than

_____.

Dated: New York, New York
        *Nov. 4*              , 2011

                                243rd Street Bronx R&R LLC
                                Debtor and Debtor in Possession

                    **By:    s/ Charles Wertman, as Managing Member**


                                **BACKENROTH FRANKEL & KRINSKY, LLP**
                                **Attorneys for Debtor**


                            By:    s/Mark Frankel
                                   489 Fifth Avenue
                                   New York, New York 10017
                                   (212) 593-110

22

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                    Chapter 11

      243rd Street Bronx R&R LLC                    Case no.  11-13321

                        Debtor.
-----------------------------------------------------------x

## **PLAN OF REORGANIZATION**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

243rd Street Bronx R&R LLC ("Debtor"), proposes this Plan of Reorganization for the Debtor.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

### Article 1

### DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1     "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2     "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

1.3     "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4     "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files

2

an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's

schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or

contingent.

1.5     "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an

Allowed Claim.

1.6     "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent

it is an Allowed Claim.

1.7     "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

1.8     "Bankruptcy Code" shall mean Title 11 of the United States Code (11.

U.S.C. § 101 et. seq.

1.9     "Bankruptcy Court" shall mean the Court as defined below.

1.10    "Bar Date" shall mean Click here to enter text. .

1.11    "Cash" shall mean all cash and cash equivalents which evidence

immediately available funds in United States dollars.

1.12    "Claim" shall mean a right to payment as set forth in § 101(5) of the

Bankruptcy Code.

1.13    "Claimant" shall mean the holder of a Claim.

1.14    "Confirmation Date" shall mean the date of the entry of the Confirmation

Order.

1.15    "Confirmation Hearing" shall mean the hearing pursuant to the

Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed

confirmation of the Plan.

1.16    "Confirmation Order" shall mean the order of the Court confirming the

Plan.

1.17    "Court" shall mean the United States Bankruptcy Court for the

SOUTHERN District of New York.

1.18    "Creditor" shall mean any entity that holds a Claim against a Debtor.

1.19    "Debtor" shall mean 243rd Street Bronx R&R LLC

1.20    "Disputed Claim" shall mean the whole or any portion of any claim

against a Debtor to which an objection is timely filed as to which a Final Order has not been

entered allowing or disallowing such Claim or any portion thereof.

1.21    "Effective Date" shall mean the Date upon which the Confirmation Order

is a Final Order, or such other date after the Confirmation Date as may be practicable, provided,

however, that the Effective Date shall be no later than sixty days after the Confirmation Date

unless approved by the Bankruptcy Court.

1.22    "Estate" shall mean the estate of a Debtor created upon the

commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

4

1.23    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.24    "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.25    "Interest" shall mean an existing ownership interest in a Debtor.

1.26    "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

1.27    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.28    "Mortgagee" shall mean 243rd Street Lender LLC.

1.29    "Petition Date" shall mean July 8, 2011, the date of the Debtor's filing under Chapter 11 of the Bankruptcy Code.

1.30    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.31    "Property" shall mean the Debtor's real property located at 798-710 and 740 East 243rd Street, Bronx, New York .

1.32    "Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

5

1.33    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

1.34    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of a Debtor or a Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.35    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## Article 2

## CLAIMS CLASSIFICATION AND TREATMENT

## Class 1

2.1    **Classification** –  New York City real estate tax, water, sewer and other liens.

2.2    **Treatment** – Payment of 12 quarterly installments in cash commencing 90 days after the Effective Date in an amount equal to one twelfth of the Allowed Amount of the Class 1 Claim, plus interest at the statutory rate through the date of payment.

2.3    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

## CLASS 2

6

2.4    **Classification** – 243rd Street Lender LLC

2.5    **Treatment** -- Monthly interest payments on the Allowed Amount of the Claim at an annual interest rate of 5.5% for 60 months, plus monthly amortization payments based upon a 30 year amortization schedule.  Outstanding principal amount due at maturity, subject to a 60 sixty month renewal at then prevailing market rates.  Documentation shall be pursuant to standard recordable forms.

2.6    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 3

2.7    **Classification** -- Blue Diamond Fuel Oil Corp. lien Claim.

2.8    **Treatment** -- 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.

2.9    **Voting** Impaired and entitled to vote to accept or reject the Plan.

### Class 4

2.10    **Classification** – C.S. Brown lien Claim.

2.11    **Treatment** -- 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the

7

Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and

25% shall be paid on the 24 month anniversary of the Effective Date.

    2.12    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 5

    2.13    **Classification** – County Oil Company Inc.

    2.14    **Treatment** -- 25% of the allowed amount of such Claims shall be paid on

the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the

Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and

25% shall be paid on the 24 month anniversary of the Effective Date.

    2.15    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 6

    2.16    **Classification** --  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7)

and (8) of the Bankruptcy Code.

    2.17    **Treatment** – Payment in full in Cash of Allowed Amount on the

Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date

through the date of payment.

    2.18    **Voting** -- Unimpaired and deemed to have accepted the Plan.

### Class 7

    2.19    **Classification** -- General Unsecured Claims

8

2.20     **Treatment** -- 25% of the allowed amount of such Claims shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.

2.21     **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 8

2.22     **Classification** -- Equity Interests

2.23     **Treatment** -- Equity holders shall be entitled to continue to own their Interests.

2.24     **Voting** -- Unimpaired and deemed to have accepted the Plan.

### Article 3

### ADMINISTRATION CLAIMS

3.1     Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be Paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective

9

Date.  United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

## Article 4

## MEANS FOR IMPLEMENTATION

4.1    **Source of Funds** -- Effective Date payments under the Plan will be paid from excess cash on hand held by the receiver of the Properties.  To the extent such funds are insufficient, payment shall be advanced by the Debtor's Interest Holders.  The Debtor estimates that Effective Date payments will include Administration Claims in the amount of $35,000. Thereafter, Plan payments will be made as set forth on the projections annexed hereto as Exhibit C.  In addition to the Properties' operating expenses, which the Debtor projects to be in the amounts estimated by the Appraisals, the projections include the expenditure of funds necessary to make repairs to correct the conditions identified by the Appraisals.

4.2    **Release of Liens** – Except as otherwise provided for in the Plan, on the Effective Date, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Reorganized Debtor any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Reorganized Debtor, be deemed released, and (y) execute such documents and instruments as the Reorganized Debtor requests to evidence such Claim holder's release of such property or Lien.

10

4.3     **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

4.4     **Vesting of Assets** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and

11

clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

4.5    **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

4.6    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## PRESERVATION OF CLAIMS

4.7    All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate.

## Article 5

## DISTRIBUTIONS TO CREDITORS

12

5.1     The Debtor shall be disbursing agent under the Plan.  The Debtor has not

completed its claims review and reserves its right to file objections to claims in the event grounds

exist to object to particular claims.  The Debtor may file objections to Claims for a period of 120

days after the Effective Date.  On the initial distribution date and on each distribution date

thereafter, the Debtor shall maintain an undetermined claims distribution reserve for the holders

of undetermined claims as of such date in a sum not less than the amount required to pay each

such undetermined claim if such claim was allowed in full.  To the extent that an undetermined

claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be

released from the undetermined claims distribution reserve and paid to the holder of such

Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of

the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.


### Article 6

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     On the Effective Date, the Debtor shall enter a new agreement with We

Care, a copy of which is annexed the Plan.  All unexpired leases and executory contracts not

rejected prior to the Effective Date shall be assumed under the Plan.  In the event of a rejection

of any Executory Contract which results in damage to the other party or parties to the Executory

Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court

within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of

13

any Executory Contract shall be treated as an Unsecured Claim.  Any Claim arising from the

rejection of any Executory Contract not filed with the Court within the time period provided in

the preceding paragraph above shall be deemed discharged and shall not be entitled to participate

in any distribution under the Plan.

## Article 7

## RETENTION OF JURISDICTION

7.1     Retention of Jurisdiction.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not

limited to, proceedings:

7.2     To consider any modification of the Plan under section 1127 of the

Bankruptcy Code;

7.3     To hear and determine all Claims, controversies, suits and disputes against

the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157.

7.4     To hear, determine and enforce all Claims  and causes of action which

may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right

of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the

Bankruptcy Code;7

7.5     To hear and determine all requests for compensation and/or

reimbursement of expenses which may be made;

14

7.6    To value assets of the Estate.

7.7    To enforce the Confirmation Order, the final decree, and all injunctions therein;

7.8    To enter an order concluding and terminating the Bankruptcy Case;

7.9    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

7.10    To determine all questions and disputes regarding title to the assets of the Debtor.

7.11    To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## Article 8

## GENERAL PROVISIONS

8.1    Headings.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

8.2    Disputed Claims.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

15

8.3     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

8.4     Other Actions.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan under the Plan.

8.5     Modification of Plan.  The Debtor may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## Article 9

## INJUNCTION AND PROPERTY OF THE ESTATE

9.1     Injunction.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

9.2     Vesting of Property.  Except as otherwise provided in the Plan, on the Effective Date title to all of the Debtor's assets shall pass to the post confirmation Debtor or its designee free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

16

## Article 10

## CLOSING THE CASE

10.1    Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
        *Nov. 4*           , 2011

                                243rd Street Bronx R&R LLC
                                Debtor and Debtor in Possession

                    By:     s/ Charles Wertman, as Managing Member


                            BACKENROTH FRANKEL & KRINSKY, LLP
                            Attorneys for Debtor


                    By:     s/Mark A. Frankel
                            489 Fifth Avenue
                            New York, New York 10017
                            (212) 593-1100

17

## EXHIBIT B :

## ASSETS AND LIABILITIES

| Assets | |
|---|---|
| Real Property and misc. personal property | $9,800,000 |

| Liabilities | |
|---|---|
| New York City real estate tax, water, sewer and other liens. | $374,491 |
| 243rd Street Lender LLC | $10,838,000 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $0.00 |
| Blue Diamond Lien | $77,000 |
| C.S. Brown Co. Inc. Lien | $9816 |
| County Oil Lien | $12,876 |
| General Unsecured Claims | $840,598, $820,000 of which is insider debt. |
| Total | $12,845,781 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $9,800,000 |

| Liabilities | |
|---|---|
| Administration Claims | $1,300,000 |
| New York City real estate tax, water, sewer and other liens. | $374,491 |
| 243rd Street Lender LLC | $8,125,509 |
| Total | $9,800,000 |

Note: All claim amounts subject to objection.

23

**Av 243, LLC**
**Projection**
**November 4, 2011**

| Account Name | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | |
| 710 - 1-Bedroom (19) | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 18,092 | 217,104 |
| 710 - 2-Bedroom (3) | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 2,161 | 25,932 |
| 710 - We Care Housing Services (25) | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 49,000 | 588,000 |
| 740 - 1-Bedroom (38) | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 35,711 | 428,532 |
| 740 - 2-Bedroom (3) | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 3,089 | 37,068 |
| 740 - We Care Housing Services (30) | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 58,800 | 705,600 |
| **Total Income** | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 166,853 | 2,002,236 |
| | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | |
| Payroll | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 4,983 | 59,800 |
| Fuel | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 10,725 | 128,700 |
| Utilities | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 3,050 | 36,600 |
| Water and Sewer | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 9,246 | 110,950 |
| Repairs and Maintenance | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 5,683 | 68,200 |
| Management and Administrative | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 3,883 | 46,600 |
| Professional Fees | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 1,017 | 12,200 |
| Insurance | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 4,067 | 48,800 |
| Miscellaneous | 508 | 508 | 508 | 508 | 508 | 508 | 508 | 508 | 508 | 508 | 508 | 508 | 6,100 |
| Reserves | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 2,033 | 24,400 |
| Real Estate Tax | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 19,387 | 232,638 |
| | | | | | | | | | | | | | |
| **Total Operating Expenses** | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 59,599 | 715,188 |
| | | | | | | | | | | | | | |
| **Income Before Debt & Other Expense** | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 107,254 | 1,287,048 |
| | | | | | | | | | | | | | |
| Debt Service | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 54,913 | 658,950 |
| | | | | | | | | | | | | | |
| **Income Before Other Expense** | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 52,341 | 628,098 |
| | | | | | | | | | | | | | |
| **Other Expense** | | | | | | | | | | | | | |
| NYC Claims | 0 | 0 | 0 | 31,208 | 0 | 0 | 31,208 | 0 | 0 | 31,208 | 0 | 0 | 93,623 |
| Plus Payments | 0 | 0 | 0 | 0 | 0 | 0 | 32,573 | 0 | 0 | 0 | 0 | 0 | 32,573 |
| Capitalized Repairs | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 0 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 225,000 |
| | | | | | | | | | | | | | |
| **Sub-total** | 25,000 | 25,000 | 25,000 | 31,208 | 25,000 | 25,000 | 63,780 | 25,000 | 25,000 | 31,208 | 25,000 | 25,000 | 351,195 |
| | | | | | | | | | | | | | |
| **TOTAL REPORT** | 27,341 | 27,341 | 27,341 | 21,134 | 27,341 | 27,341 | (11,439) | 27,341 | 27,341 | 21,134 | 27,341 | 27,341 | 276,902 |

**Notes:**

Revenue Assumption: The tenant income is founded on the Appraisal Income hypothesis combined with a concession from We Care Housing Services. The Appraiser's schedule of "Potential Gross Income" for both properties were combined. The tentative rent extension from We Care Housing Services is an additional payment of nine hundred dollars ($900) per month per apartment.

Expense Assumption: All expenses were drawn from the Appraiser's schedule of "Stabilized Operating Projection (9/11 & #127 of both properties and then divided equally over twelve months. Please note that this report is NOT adjusted for seasonal trends. However, it is of the opinion that the overall result would not be effected.