**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Jason S. Leibowitz, Esq.

*Attorneys for 243rd Street Lender LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
In re:                                              Chapter 11

243RD STREET BRONX R&R LLC,                         Case No. 11-13321(alg)

                              Debtor.
-----------------------------------------------------------------------x

**MOTION FOR AN ORDER, PURSUANT TO BANKRUPTCY RULES 7037, 9014, AND 9020 AND 11 U.S.C. SECTION 105(a): (i) ADJUDGING THE DEBTOR, ITS EQUITY HOLDERS AND THE SUBPOENAED PARTIES IN CIVIL CONTEMPT FOR FAILING TO COMPLY WITH THE BANKRUPTCY RULE 2004 ORDER DATED DECEMBER 29, 2011, SUBPOENAS, THE SCHEDULING ORDER DATED JULY 13, 2012, AND DOCUMENT REQUESTS; (ii) IMPOSING SANCTIONS AND PUNISHING THE DEBTOR AND ITS EQUITY HOLDERS; AND (iii) GRANTING RELATED RELIEF**

243RD STREET LENDER LLC (the "**Secured Creditor**"), a secured creditor of 243RD STREET BRONX R&R LLC (the "**Debtor**"), and an interested party to this Chapter 11 Case, by its counsel, Kriss & Feuerstein LLP, hereby moves this Court by Order to Show Cause for the entry of a further Order, pursuant to 11 U.S.C. § 105(a) and Rules 7037, 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (i) finding 243RD STREET BRONX R&R LLC (the "**Debtor**"), CHARLES WERTMAN ("**Wertman**"), TRISTATE REALTY HOLDINGS, LLC ("**Tristate**"), and Tristate's principals' Stuart Podolsky ("**SP**") and Jay Podolsky ("**JP**"; and together with Wertman and Tristate, collectively, the Debtor's "**Equity Holders**") to be in civil contempt for their collective failure to comply with the 2004 Order (as

411840-2-W

defined below) of this Court dated December 29, 2011, the Subpoenas (as defined below) dated January 10, 2012, the Joint Scheduling Order (as defined below) of this Court dated July 13, 2012, **and** the Secured Creditor's Supplemental Document Demands (as defined below) dated July 19, 2012, (ii) imposing sanctions and punishing the Debtor and the Equity Holders, and (iii) granting related relief.  In support thereof, the Secured Creditor respectfully sets forth and represents as follows:

### PRELIMINARY STATEMENT

1.    Throughout this case, the Debtor and its Equity Holders have repeatedly and willfully refused to provide the Secured Creditor material information about the Debtor, its financial affairs and its proposed plan of reorganization.  Not only are such blatant failures a violation of the Debtor's fiduciary obligations under the Bankruptcy Code to make full disclosure to its creditors but such wanton failures are knowing and intentional acts of contempt of this Court and flagrant abuse of the bankruptcy process given the existence of: (i) this Court's 2004 Order dated December 29, 2011, the Subpoenas dated January 10, 2012, the Joint Scheduling Order dated July 13, 2012 (which was negotiated and enforced on consent) and the Supplemental Document Demands dated July 19, 2012.  The Debtor has been the poster-child for abuse of the bankruptcy process.

2.    The failure by the Debtor and its Equity Holders to comply with any of the foregoing orders or discovery devices is a separate and independent ground for holding each of such parties in contempt.  The ongoing, knowing and purposeful failures of the Debtor and its Equity Holders to comply with **all** of the foregoing Court ordered discovery and the intentional evasion of their mandatory discovery obligations, makes a mockery of the bankruptcy process and significantly prejudices the Secured Creditor by, among other things, denying its right to

2

information in a timely basis and delaying this case. Indeed, the Debtor's flagrant disregard for the Court ordered discovery is even more outrageous given that the July 13 Joint Scheduling Order entered on the consent of the Debtor and its principals was the result of multiple good faith attempts by the Secured Creditor to resolve discovery issues and such order adjourned the hearing on confirmation of the Debtor's plan of reorganization.[1] It is simply and patently unfair and inappropriate for the Debtor and its Equity Holders to obtain the benefits of Chapter 11 (i.e., the automatic stay) and avoid their legal responsibilities to provide full and timely document production and other information. The contemptuous conduct of the Debtor's and its Equity Holders should not be tolerated and the Court should punish them. It is respectfully submitted that a severe punishment is appropriate under the circumstances, given the totality of the Debtor's discovery failures to date, the numerous attempts by the Secured Creditor to obtain discovery and the multiple Court orders which previously directed timely document production. Moreover, the punishment in this case should also serve as an example to all debtors that they must timely produce information and comply with discovery or there will be consequences. Accordingly, Secured Creditor respectfully requests that the Court enter an order:

    (i)    adjudging the Debtor and the Equity Holders in civil contempt;

    (ii)    directing the Debtor and each of its Equity Holders, jointly and severally, to reimburse the Secured Creditor for all of its attorneys' fees and expenses in connection with this Motion and Secured Creditor's efforts to enforce discovery requests pursuant to the prior orders of this Court, the Subpoenas, and the Supplemental Document Demands;

---

[1] Not only have the Debtor and its Equity Holders failed to meaningfully respond to Secured Creditor's document demands by providing the requested documents, but they have also failed to (i) assert any privilege or other basis for withholding such documentation or any explanation for their failure to comply; (ii) make a definitive statement as to what documents do not exist; or (iii) produce a privilege log.

3

411840-2-W

    (iii)    striking the Debtor's Secured Amended Plan (as defined below) and granting the Secured Creditor's pending motion for relief from the stay, or alternatively, (a) precluding the Debtor and its Equity Holders from offering any testimony or introducing as evidence, at any evidentiary hearing in this case, any documents regarding feasibly of its Second Amended Plan and any other documents that have not been delivered to Secured Creditor as of the date of this Motion; (b) compelling the Debtor and its Equity Holders to immediately produce the documents demanded in connection with the 2004 Order, the Subpoenas, the Supplemental Document Demands and the Joint Scheduling Order; (c) fining the Debtors and its Equity holders an amount of $1,000 per day from July 13, 2012 until they fully comply with Secured Creditor's discovery demands; and (d) extending the time for the Secured Creditor to file objections to the Debtor's Second Amended Plan; and

    (iv)    granting such other and further sanctions and relief as the Court deems just and proper.

3.    This Motion is being brought on by an Order to Show Cause because of the exigent timing circumstances of the Court ordered discovery and the timing for filing objections to the Second Amended Plan. Pursuant to the July 13th Joint Scheduling Order, depositions are scheduled to start on August 15, 2012. As a result, a result of the Debtor's and its Equity Holders' stonewalling tactics, even if the Debtor and its Equity Holders were to now comply with each of the outstanding Orders of this Court and produce all outstanding discovery as of the date of this Motion, the Secured Creditor will be severely prejudiced and placed in an

unacceptable position, because it will have insufficient time in which to process and review such outstanding documents and records prior to the **imminent depositions scheduled to commence within the next seven (7) days** pursuant to the Joint Scheduling Order. Accordingly, the Secured Party requests a hearing on this Motion be scheduled within the next two (2) business days or as soon as the Court is available.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicate for the relief requested herein are Bankruptcy Rules 7037, 9014 and 9020 and Bankruptcy Code 11 U.S.C. § 105(a).

## BACKGROUND FACTS

5. **General Facts**. Movant is a secured creditor of the Debtor by virtue of a Consolidated Modified Mortgage, Assignment of Rents, Security Agreement and Fixture Filing (the "**Mortgage**") dated June 5, 2007, whereby the Debtor secured the amount due under the Consolidated and Modified Promissory Note (the "**Note**") in the principal sum of $9,760,000.00 with a first lien encumbering real properties commonly known as 708-710 East 243rd Street, Bronx, New York and 738-740 East 243rd Street, Bronx New York, each a multiple family dwelling (collectively the "**Premises**").

6. Prior to the petition date, the Debtor defaulted under the Note and Mortgage and a foreclosure action was commenced in the Supreme Court of the State of New York, Bronx County (the "**Foreclosure Action**").

7.      On July 8, 2011 (the "**Filing Date**"), the Debtor filed a voluntary petition in accordance with chapter 11 of title 11 of the Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York, in order to effectuate a stay of the Foreclosure Action.

8.      On October 17, 2011 the Secured Creditor filed a motion seeking relief from the automatic stay pursuant to 11 U.S.C §§ 362(d)(1) and (2) [ECF No. 20] (the "**MFR Motion**"), and, in connection therewith, an initial hearing was held on November 8, 2011 (the "**MFR Hearing**").

9.      Four days before the MFR Hearing, the Debtor filed a Chapter 11 plan of reorganization ("the "**First Plan**") and a Disclosure Statement (**"First Disclosure Statement"**) [ECF Nos. 25 and 26], which proposed to modify the terms of the Note and Mortgage and a hearing in connection with the First Disclosure Statement was scheduled for December 20, 2011. The "cornerstone" of the Debtor's First Plan was its intent to enter into new (significantly above market rate) leases for residential units at the Premises with an entity called We Care and payments to Secured Creditor would be primarily funded by the significant rental increases We Care was purportedly agreeing to pay for units at the Premises.  The First Plan and Disclosure Statement provided extremely limited information about the Debtor or its Equity Holders or We Care. **Importantly, the Debtor's Equity Holders have significant relationships and dealings with We Care and such information has not been disclosed**.

10.     At the MFR Hearing, the Court determined that additional information was necessary to resolve certain factual issues and questions raised by the Secured Creditor pertaining to the feasibility of and the information contained within the Debtor's First Plan and First Disclosure Statement and the MFR Hearing was adjourned to December 19, 2011.  On

6

411840-2-W

December 9, 2011 the MFR Hearing and hearing on the First Disclosure Statement were both adjourned to February 15, 2012.

11. **The December 29, 2011 2004 Order**. In order to obtain answers to questions which arose from the First Plan and First Disclosure Statement, the Court granted the Secured Creditor's application for a Bankruptcy Rule 2004 exam, and entered an Order on December 29, 2011 [ECF No. 36] authorizing and directing the Debtor and its Equity Holders (and others) to produce documents and be examined under oath (the "**2004 Order**"). A copy of the 2004 Order with proof of service upon the Debtor, by counsel, on December 28, 2011 and the Equity Holders and We Care Housing Services LLC and We Care Housing LLC (as defined below) on January 3, 2012 is annexed hereto as **Exhibit "A"**.

12. The 2004 Order permitted the Secured Creditor to serve subpoenas and take the depositions of certain parties including, but not limited to, the Debtor, each of the Equity Holders and also Alan Lapes, Volunteers of America, We Care Housing Services, LLC and We Care Housing, LLC, AV 243 LLC, Newell Funding, LLC and Quality One Management LLC (the Debtor, the Equity Holders, and all of the forgoing entities and persons, collectively being the "**Subpoenaed Parties")**.

13. **The January 10, 2012 Subpoenas**. On January 10, 2012 the Secured Creditor served Subpoenas demanding both the document production and scheduling depositions of the Debtor, the Equity Holders and the other Subpoenaed Parties (collectively, the "**Subpoenas**"). Copies of the Subpoenas along with a certificate of service that the Subpoenas and the 2004 Order were served upon the Debtor, the Equity Holders and the other Subpoenaed Parties on January 10, 2012 are annexed hereto as **Exhibit "B"**.

14. **Failures to Produce Documents, Appear For Scheduled Depositions, and Otherwise Comply With the Subpoenas and the 2004 Order**. On or about March 12, 2012, Secured Creditor's counsel received a document entitled "Response to IRS Document Demand" captioned with the Debtor's case name and number, but with the notation "Chapter 7" and few unorganized, woefully incomplete and unresponsive documents (the "**March Documents**"). A copy of the "Document Response" is annexed hereto as **Exhibit "I"** and copies of the March Documents will be provided to the Court for inspection upon request.

15. In the interim, the MFR Hearing and hearing on the First Disclosure Statement were adjourned to March 21, 2012.

16. On February 29, 2012, the Debtor filed its First Amended Plan (the "**Amended Plan**") and First Amended Disclosure Statement (the "**Amended Disclosure Statement**") [ECF Docket items 41 & 42 respectively]. The Debtor's Amended Plan and Amended Disclosure Statement indicated a divergence from what was contained in the Debtor's First Plan and Disclosure Statement because the Debtor now sought to cure and reinstate its loan. The Amended Disclosure Statement provided very little information regarding important matters, including, without limitation, the feasibility of the Debtor's plan, the source of plan funding, the identity of the Debtor's equity holders, the identity of these persons who would continue to manage and operate the Debtor post confirmation, the Debtor principals' incestuous relationships with and/or ownership in the We Care entities, and We Care's finances and ability to pay the significant rent due on its above-market rate leases.

17. On May 22, 2012, Secured Creditor filed an objection to the approval of the Debtor's Amended Disclosure Statement ECF No. 50].

18.     Thereafter, on June 4, 2012, the Debtor filed its Second Amended Plan [ECF No. 53] (the "**Second Amended Plan**") and Second Amended Disclosure Statement (the "**Second Amended Disclosure Statement**") [ECF No. 54], further indicating the Debtor's intent to reinstate its loan from the Secured Creditor.  The Second Amended Plan and Second Amended Disclosure Statement contain extremely limited information regarding the Debtor and its Equity Holders' ability to fund the Second Amended Plan or resume the Debtor's day-to-day management.

19.     On June 11, 2012, the Secured Creditor filed an Objection to the Debtor's Second Amended Disclosure Statement [ECF No. 57].

20.     Over Secured Creditor's Objection, on June 15, 2012, the Court entered an Order approving the Debtor's Second Amended Disclosure Statement (the "**DS Order**").  A copy of the DS Order is annexed hereto as **Exhibit "C"**.  However, the Court recognized Secured Creditor's need for additional information and provided language in the DS Order that "To the extent the objectors believe they require additional information, they may take appropriate discovery."  See DS Order at paragraph B annexed hereto as Exhibit "C".

21.     **Failures To Comply With Discovery Demands in Connection With Hearings on Confirmation and the MFR Motion**.  Thereafter, counsel for the Secured Creditor and the Debtor conferred again to set up a mutually agreeable set of dates and deadlines for discovery and a further discovery order upon which the Debtor, its Equity Holders and the Subpoenaed Parties would comply.  In response, via electronic mail on July 2, 2012, counsel for the Debtor advised counsel for the Secured Creditor that "*Tristate and We Care said they can produce* [the Documents Demanded] *by July 13. We can schedule depositions at our mutual convenience now as well.*"  A copy of that July 2, 2012 email correspondence (the "**July 2nd Email**") is annexed

411840-2-W

hereto as **Exhibit "D"**. Therefore, not only were the Debtor and its principals aware of its obligations pursuant to the 2004 Order, the Subpoenas, and the Scheduling Order, but the Debtor's controlling persons, Tristate and We Care were also under the Debtor's chain of control and communication in that Debtor's counsel expressly represented that the documents and depositions would be forthcoming and such entities and persons were aware of their obligations to the Secured Creditor and this Court.

22.    **Entry of the Joint Scheduling Order on Consent**. A jointly proposed briefing schedule and consent order was prepared and submitted to the Court, and the Court entered a Scheduling Order (the "**Joint Scheduling Order**") on July 13, 2012, to govern discovery and the future administration of this case. A copy the Scheduling Order is annexed hereto as **Exhibit "E"**. Pursuant to the Scheduling Order, among other things, the Debtor, its Equity Holders and the other Subpoenaed Parties were required to fully comply with the demands made in the Subpoenas by Friday, July 13, 2012, other discovery was expedited, and the confirmation hearing and plan objection deadlines were adjourned.

23.    In very much the same fashion as the March Documents were prepared and delivered by messenger to the offices of counsel to the Secured Creditor on or about July 13, 2012, a second set of unorganized, incomplete and unresponsive documents (the "**July Documents**"), were delivered to Secured Creditor's counsel. None of the other Subpoenaed Parties provided any documents to the Secured Creditor, despite the clear and ambiguous language in the Joint Scheduling Order directing such production to be completed by July 13th.

24.    **Failures to Provide Documents Pursuant to Supplemental Document Demands Dated July 19, 2012**. The Joint Scheduling Order further provided that the Secured Creditor could serve supplemental demands upon the Debtor, its Equity Holders, any other

10

411840-2-W

Subpoenaed Parties and that all such entities and persons must produce documents within seven (7) days of such demand.

25. In connection therewith, on July 19, 2012, by overnight courier, the Secured Creditor served upon each of the Subpoenaed Parties (i) a copy of the Scheduling Order, (ii) copies of the Subpoenas, (iii) supplemental document demands (the "**Supplemental Document Demands**" and together with the documents demanded pursuant to the Subpoenas, the "**Documents Demanded**"), and (iv) a letter notifying them of their failure to comply with the prior orders and Subpoenas and urging each of the Subpoenaed Parties to purge their contempt by complying with the Court's orders. Copies of the Supplemental Document Demands, the letters, and a certificate of service are annexed hereto as **Exhibit "F"**. Pursuant to the Joint Scheduling Order, responses from the Subpoenaed Parties were due within seven (7) days thereof, that date being July 26, 2012; however, all of the Subpoenaed Parties failed to produce a single document in response.

26. **Further Requests By Secured Creditors and Debtor's Continued Stonewalling**. On August 1, 2012, counsel for Secured Creditor emailed Debtor's counsel a detailed and extensive email advising of the numerous deficiencies in the document response provided to date by the Secured Creditor. In response, Debtor's counsel represented on August 2, 2012 that "We are working on a supplemental document response." Yet, no further document responses have been provided. A copy of this email chain is annexed hereto as **Exhibit "G"**.

27. As of the date of this Motion, besides the vague and unresponsive March Documents and July Documents provided by the Debtor, none of the Equity Holders or Subpoenaed Parties have responded to the 2004 Order, the Subpoenas, the Scheduling Order or

11

411840-2-W

the Supplemental Document Demands as directed by the Scheduling Order, and are therefore in contempt of this Court.

28.    To date, other than providing vague and non-material information, the Debtor has simply ignored its obligations to supply the vast majority of the Documents Demanded. In addition, the Equity Holders and other non-debtor Subpoenaed Parties have altogether failed to produce <u>any</u> of the Documents Demanded. The Debtor, its Equity Holders, and the remainder of the Subpoenaed Parties' immediate production of the Documents Demanded remains essential to the Secured Creditor's protection of its rights and its investigation into the Debtor's ability to reinstate the Note and Mortgage and thereafter make the payments required under the Second Amended Plan, and the effective administration of the Debtor's estate and financial affairs.

29.    Absent such essential and appropriate discovery, the Secured Creditor and its counsel have been, and will continue to be, severely harmed in their ability to protect the Secured Party's rights.

### THE DEBTOR, ITS EQUITY HOLDERS AND THE SUBPOENAED PARTIES ARE IN CIVIL CONTEMPT FOR THEIR FAILURE TO COMPLY WITH THE 2004 ORDER, THE SUBPOENAS, THE JOINT SCHEDULING ORDER, AND SUPPLEMENTAL DOCUMENT DEMANDS

30.    Aside from a few unorganized, incomplete and non-material documents, presumed to be delivered on behalf of the Debtor, <u>all</u> of the Subpoenaed Parties have willfully and successfully ignored and delayed the Secured Creditor's attempts to obtain the Demanded Documents pursuant to the 2004 Order, the Subpoenas and the Supplemental Document Demands as required in connection with the Scheduling Order.

31.    "Rule 45(e) of the Federal Rules of Civil Procedure provides that '[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.' In a civil contempt proceeding, a finding

12

of contempt will be upheld so long as the order violated 'is clear and unambiguous, the proof of non-compliance [with the order] is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply.'" *In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005).

32. "Additionally, a court may hold a party in civil contempt for failure to comply with an order where (1) the order is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not been reasonably diligent in attempting to accomplish what was ordered. See, e.g., *EEOC v. Local*, 580, 925 F.2d 588, 594 (2d Cir.1991)." *In re Stockbridge Funding Corp.*, 158 B.R. 914, 917 (S.D.N.Y. 1993). "Rule 37(b)(2) of the Federal Rules of Civil Procedure, as applicable to the Bankruptcy Court through Bankruptcy Rule 7037, provides, in relevant part, that: 'If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims…' Thus, if a party fails to comply with discovery orders, then a court has the authority to take the appropriate action against the disobedient party." *In re Seung Min Park*, 09-78622-DTE, 2011 WL 1344495 (Bankr. E.D.N.Y. Apr. 8, 2011).

33. This Court, pursuant to Bankruptcy Code § 105, is vested with the power to enforce its own orders by virtue of its contempt powers and there is nothing unconstitutional about this exercise. See *Gibbons v. Haddad* (In re Haddad), 68 B.R. 944 (Bankr.D.Mass. 1987); *In re Johns Manville Corp*. 26 B.R. 919 (Bankr. S.D.N.Y. 1983). The civil contempt power is necessary to protect "the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Railway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980).

34. Here, this Court entered two clear and unambiguous orders, namely the 2004 Order and the Joint Scheduling Order, both of which directed document production and the depositions of the Debtor and its Equity Holders and the other Subpoenaed Parties. Furthermore, the undisputed evidence, including without limitation, the certificates of service and the July 2 email from the Debtor's counsel, confirms that these parties had actual knowledge of the Orders and their obligation to provide these documents to Secured Creditor pursuant to the Court Orders. Yet, inexplicably, the Debtor's counsel's repeated representations that the Documents Demanded would be forthcoming have proven untrue.

35. Furthermore, by representing on August 2, 2012 that the Debtor's and its Equity Holders were preparing a supplemental response, the Debtor and its Equity Holders admit that they have failed to produce the Documents Demanded in connection with the Subpoenas, the 2004 Order and the Supplemental Document Demand.

36. Therefore, the Court should find that the Debtor, its Equity Holders and other Subpoenaed Parties knew of the requirements of the Court orders and discovery requests and that they each intentionally failed to comply therewith, rendering them in contempt of this Court's orders and the Subpoenas.

**THE DEBTOR AND ITS EQUITY HOLDERS SHOULD BE
SANCTIONED AND PUNISHED FOR THEIR WILLFUL
AND REPEATED FAILURE TO COMPLY WITH THIS COURT'S
DISCOVERY ORDERS AND SECURED PARTY'S DISCOVERY REQUESTS**

37. The Joint Scheduling Order was entered on an express agreement among the Secured Creditor, the Debtor and its Equity Holders after the Debtor and the Equity Holders repeated failure to comply with each of the previous Orders of this Court relating to discovery. Therefore, an additional order compelling production would be redundant and an award of sanctions and punishment of the Debtor and its Equity Holders pursuant to Bankruptcy Rule

7037[2] is justified. It is respectfully requested that this Court issue a significant sanctions given the Debtor's repeated and willful acts to evade discovery throughout this case.

38. Bankruptcy Rule 7037 provides in pertinent part:

(b) Failure to Comply with a Court Order…

    (2) *Sanctions in the District Where the Action Is Pending.*
    (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
        (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
        (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
        (iii) <u>striking pleadings in whole or in part</u>;
        (iv) staying further proceedings until the order is obeyed;
        (v) dismissing the action or proceeding in whole or in part;
        (vi) rendering a default judgment against the disobedient party; or
        (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(emphasis added).

39. "[I]n addition to the inherent authority to issue sanctions as explained in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), 11 U.S.C. § 105(a) grants to federal bankruptcy courts the authority to issue sanctions" and "bankruptcy courts have both an inherent

---

[2] Bankruptcy Rule 9014(c) expressly makes Bankruptcy Rule 7037 applicable since there are two contested matters before the Court, i.e., the motion for relief from the stay and the contested plan confirmation.

15

and a statutory power to issue sanctions ... [which] can be applied to all instances of 'conduct which abuses the judicial process". See *Chambers v. NASCO, Inc.*, 501 U.S. 32.

40.     Thus, this Court has broad authority to sanction the Debtor and its Equity Holders under both Bankruptcy Rule 7037 and the Court's inherent power to enforce its own orders. See 11 U.S.C. § 105(a); and Fed.R.Civ.P. 37, which applies in this case under Fed.R.Bankr.P. 9014(c) and 7037. See *In re Mehlhose*, 469 B.R. 694, 709–11 (Bankr.E.D.Mich.2012); *Holley v. Kresch Oliver, PLLC (In re Holley)*, 2012 WL 2777735 (Bankr.E.D. Mich., June 1, 2012); *Shapiro v. Plante & Moran, LLP (In re Connolly North America, LLC)*, 376 B.R. 161, 181–83 (Bankr.E.D.Mich.2007); *see also John Richards Homes Bldg. Co., L.L.C. v. Adell ( In re John Richards Homes Bldg. Co., L.L.C.)*, 404 B.R. 220, 227 (E.D.Mich.2009).

41.     The Secured Creditor has had the opportunity to review the various plans and disclosure statements submitted by the Debtor in this case, the latest of which being the Second Amended Plan and Second Amended Disclosure Statement, which indicate the Debtor's intent to reinstate the Note and Mortgage upon the effective date and thereafter resume making monthly mortgage payments. However, despite Secured Creditor's repeated demands, the Debtor and its Equity Holders have blatantly and intentionally refused to provide the information requested by the Secured Party, including, without limitation, disclosure as to We Care and the funding of the Plan. The complete and purposeful failure to provide disclosure should preclude the Debtor from offering any testimony or documentary evidence, at any evidentiary hearing in this case, regarding (i) the feasibility of the Plan, and (ii) any other documents not produced to Secured Party prior to the date hereof.

42.     Moreover, since the Petition Date, the Debtor has failed to make a single adequate protection payment to Secured Creditor.  <u>Furthermore, the Debtor has filed to pay any taxes,</u>

16

411840-2-W

<u>hundreds of thousands of dollars have come due post-petition and penalties and interest accrue daily, thereby eroding Secured Creditor's collateral.</u>

43.  In addition, since filing the MFR Motion in November 2011, which was partially based on the Debtor's inability to confirm a plan of reorganization, the Debtor has failed to produce any documents regarding the feasibility of its plan.  In light of the willful and repeated failures of the Debtor and the Equity Holders to comply with this Court's orders and the Secured Creditor's discovery documents, they should be punished.  The Court should not allow them to "game" the bankruptcy code by seeking the benefits of Chapter 11 and avoid the requirements of full and timely disclosure.  The Court should fashion an Order that will punish the Debtor and be an example for other debtors that debtors must timely provide discovery or face meaningful consequences as a result.

### **SECURED CREDITOR'S COMPLIANCE WITH LBR 7007-1**

44.  As set forth in the Affidavit OF Jerold C. Feuerstein, it is respectfully submitted that on several occasions before making this Motion, counsel for the Secured Creditor has conferred with counsel for the Debtor, in a bona fide effort to resolve by agreement the issues raised by the Motion without judicial intervention and have been unable to reach a resolution or agreement.  As stated herein above, on April 18, 2012, Secured Creditor, the Debtor and the Debtor's counsel met and conferred in person, subsequent to which, the Secured Creditor and the Debtor have failed to reach any resolution or agreement with respect to obtaining discovery or otherwise.

45.  Thereafter, after making several attempts to obtain Court intervention in obtaining necessary documentation and failing to obtain cooperation from the Debtor, the Court directed

411840-2-W

the Secured Creditor and Debtor confer to provide dates and deadlines for a jointly proposed scheduling order.

46. To that end, on or about July 10, 2012, counsel for the Secured Creditor conferred with counsel for the Debtor at which time it was mutually agreed that the first deadline for document production would be July 13, 2012, and the second deadline for document production, in connection with the Supplemental Document Demand would be July 26, 2012, as was ultimately included in the Scheduling Order. Notwithstanding, the Debtor failed to produce the Documents Demanded pursuant the Scheduling Order on July 13, 2012.

47. On July 19, 2012, the Secured Creditor served by overnight courier instructions to each of the Subpoenaed Parties, including the Debtor and the Debtor's Equity Holders, a letter indicating that the Secured Creditor was providing the particular Subpoenaed Party with an opportunity to purge its contempt by providing each of the Demanded Documents required in connection with the Subpoena, along with a copy of the Scheduling Order and the relevant and pertinent Subpoena and Supplemental Document Demand for that particular Subpoenaed Party.

48. On Wednesday, August 1, 2012 (the "**August 1 Email**"), counsel for the Secured Creditor sent a detailed letter to counsel for the Debtor via email to explain the specific documents that remained outstanding with respect to the Documents Demanded in connection with the Subpoenas, or the Supplemental Document Demands as required by the Scheduling Order. A copy of the August 1 Email is annexed hereto as **Exhibit "G"**. Although the Debtor's counsel acknowledged receipt of the August 1, 2012 email the next day, by indicating that the Debtor was "working on a supplemental document production" as of the date of this Motion, none has been forthcoming. Thus, counsel for the Secured Creditor can certify that it has conferred with counsel for the Debtor and has been unable to make any meaningful progress.

18

49. It is respectfully requested that the obligation to prepare and file an accompanying memorandum of law pursuant to Local Bankruptcy Rule 9013-1 be dispensed with and waived at this time due to the fact that the law regarding Rule 9020 has been generally briefed within the body of this Motion.

**WHEREFORE**, the Secured Creditor respectfully requests that this Court enter an Order:

(i)   adjudging the Debtor and the Equity Holders in contempt;

(ii)  directing the Debtor and each of its Equity Holders, jointly and severally, to reimburse the Secured Creditor for its attorneys fees and expenses in connection with this Motion and Secured Creditor's efforts to enforce compliance with discovery pursuant to the 2004 Order and the Joint Scheduling Order;

(iii) striking the Debtor's Second Amended Plan in its entirety and granting the Secured Creditor's pending motion for relief from the stay, or alternatively, (a) precluding the Debtor and its Equity Holders from offering any testimony or introducing as evidence, at any hearings in this case, any documents regarding the feasibility of its Second Amended Plan and any other documents that have not been delivered to Secured Creditor as of the date of this Motion; (b) compelling the Debtor and its Equity Holders to immediately produce the documents demanded in connection with the 2004 Order, the Subpoenas, the Supplemental Document Demands and the Joint Scheduling Order; (c) fining the Debtors and its Equity holders an amount of $1,000 per day from July 13, 2012 until they

411840-2-W

    fully comply with Secured Creditor's discovery demands; and (d) extending the time for Secured Creditor to file objections to the Debtor's Second Amended Plan; and

(iv)  granting such other and further sanctions and relief as the Court deems just and proper.

Dated: New York, New York
   August 9, 2012

                   *s/ Jason Leibowitz*
                   JASON LEIBOWITZ

411840-2-W