UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | . | Case No. 11-13321(ALG) |
| | . | |
| | . | |
| 243rd STREET BRONX R&R, | . | |
| LLC, | . | One Bowling Green |
| | . | New York, NY 10004 |
| Debtor. | . | |
| | . | August 27, 2012 |
| . . . . . . . . . . . . | . | 11:10 a.m. |

TRANSCRIPT OF MOTION TO COMPEL COMPLIANCE WITH DISCOVERY AND
SCHEDULING ORDER
BEFORE HONORABLE ALLAN L. GROPPER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Backenroth, Frankel & Krinsky, LLP
                           By:  SCOTT KRINSKY, ESQ.
                           489 Fifth Avenue, 28th Floor
                           New York, NY 10017

For 243rd Street           Kriss & Feuerstein, LLP
Lender, LLC:               By:  JEROLD C. FEUERSTEIN, ESQ.
                           360 Lexington Avenue
                           New York, NY 10017

For Non-Party Charles      Nesenoff & Miltenberg, LLP
Wertman and Tri-State      By:  ANDREW T. MILTENBERG, ESQ.
Realty:                    363 Seventh Avenue, Fifth Floor
                           New York, NY 10001-3904

For We Care Housing        Cozen O'Connor
Services and Jay and       By:  MENACHEM J. KASTNER, ESQ.
Stuart Podolsky:           45 Broadway, 16th Floor
                           New York, NY 10006

Audio Operator:            Tiffany

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311    Fax No. (609) 587-3599

1           THE COURT:  Come forward, 243rd Street Bronx R&R,

2    LLC.  May I have appearance, please?  Are we ready to start?

3           MR. FEUERSTEIN:  We're ready to start, Your Honor.

4    Jerold Feuerstein from Kriss & Feuerstein on behalf of the

5    secured creditor, 243rd Street Lender, LLC.

6           MR. KRINSKY:  Hello, Your Honor.  Scott Krinsky,

7    Backenroth, Frankel & Krinsky, I'm appearing on Mark Frankel's

8    behalf.

9           MR. KASTNER:  Menachem Kastner, Jay Podolsky and

10   Stuart Podolsky and We Care Services.

11          MR. MILTENBERG:  Andrew Miltenberg, Nesenoff

12   Miltenberg for non-party Wertman and Tri-State Realty.

13          THE COURT:  All right.  All right.  I have another,

14   how many, 20 odd pages.  No, only eight pages, Mr. Feuerstein.

15   Well --

16          MR. FEUERSTEIN:  From --

17          THE COURT:  -- do you have anything you have to say

18   to supplement those -- sit down, please --

19          UNIDENTIFIED ATTORNEY:  Thank you.

20          THE COURT:  -- to supplement those eight pages?

21          MR. FEUERSTEIN:  Well --

22          THE COURT:  This is your motion.

23          MR. FEUERSTEIN:  Yes, I realize.  Thank you, Your

24   Honor.  I mean, at this point in time, I mean, it's stated as

25   those eight pages and we're over a year into this case.  And

1  over a year into this case, we're not even sure as to the

2  ownership structure of the debtor and that's especially

3  important in this case to the extent that for we found out in

4  taking Mr. -- the first part of Mr. Wertman's deposition,

5  although we didn't complete it yet, is that there's an

6  interrelationship between this We Care tenant, and the debtor

7  and the principals of the debtor --

8         THE COURT:  And that certainly doesn't surprise you.

9         MR. FEUERSTEIN:  It doesn't --

10        THE COURT:  And it doesn't surprise me.

11        MR. FEUERSTEIN:  But we'd like to understand --

12        THE COURT:  All right.

13        MR. FEUERSTEIN:  -- what that relationship is, Your

14  Honor.  If fact --

15        THE COURT:  And last I looked, the debtor has the

16  burden of establishing each and every requirement to confirm a

17  plan and I realize that your client does not want to continue

18  to be a lender to this particular organization.  The lender has

19  certain rights, obviously, and the debtor has certain rights.

20  And the debtor's rights come along with an obligation to

21  provide information and to satisfy the requirements of Section

22  1129 of the bankruptcy code.

23        And I think we should go over the additional

24  documents and discovery that you want, but I take all of this

25  with a very firm belief that it's the debtor that's got to

1  establish confirmation.  And I have no doubt that you're going

2  to fight it, at least, your current -- your present intention

3  is to fight it every inch of the way and one of the things we

4  should do today is decide how many days we need for a

5  confirmation hearing and when because I gather you'd like to

6  put it off.

7          So what discovery do you have scheduled now?  I have

8  the scheduling order --

9          MR. FEUERSTEIN:  Let me just grab it.

10         THE COURT:  -- which is dated July 13th which is not

11 that long ago.  It designated Mr. Wertman's deposition to start

12 on August 15th, did that start?

13         MR. FEUERSTEIN:  We've started that actually on

14 August 16th, Your Honor.

15         THE COURT:  All right.  And Mr. Podolsky?

16         MR. FEUERSTEIN:  Mr. Podolsky has not sat yet for a

17 deposition.

18         THE COURT:  All right.  Is to be done.  A principal

19 at Tri-State?

20         MR. FEUERSTEIN:  Not happened yet, well --

21         THE COURT:  All right.

22         MR. FEUERSTEIN:  -- it wasn't supposed to happen

23 until this Friday, but --

24         THE COURT:  Correct.

25         MR. FEUERSTEIN:  -- has not happened yet.

1           THE COURT:  Well, week from Friday, Friday, September

2  7th.

3           MR. FEUERSTEIN:  I'm sorry, a week from Friday.

4           THE COURT:  And I assume that -- do I understand Mr.

5  Wertman's a principal of Tri-State or --

6           MR. FEUERSTEIN:   No, Mr. Wertman's not a principal

7  of --

8           THE COURT:  He is not.  All right.

9           MR. FEUERSTEIN:  -- at least, as far as his

10  deposition testimony reflected, he's not a principal at Tri-

11  State.

12           THE COURT:  All right.  Mr. Podolsky is scheduled for

13  September 6th on this schedule.  Principal of We Care on

14  September 10th, both in the morning and the afternoon.  All

15  right.  So you did start at least one deposition.

16           MR. FEUERSTEIN:  We did, Your Honor.

17           THE COURT:  All right.

18           MR. FEUERSTEIN:  We spent about a little more than

19  half a day with Mr. Wertman.

20           THE COURT:  All right.  Okay.  So what do you

21  suggest?  I have your list --

22           MR. FEUERSTEIN:  Well, I --

23           THE COURT:  -- of documents on Pages 6 -- 5 to 8, 5

24  to 7, excuse me, of your reply and perhaps that's one place to

25  start.

1          MR. FEUERSTEIN:  Right.  Well, I'd like, first of

2 all, I'd like the documents to be produced and to be produced

3 appropriately by all parties in a form in which they're

4 understandable and in a form which they're properly organized

5 in accordance with the rules.

6          THE COURT:  Well, if this were a multimillion dollar

7 case, I'd be more sympathetic.

8          MR. FEUERSTEIN:  All right.

9          THE COURT:  But it's not.

10          MR. FEUERSTEIN:  But --

11          THE COURT:  But it's not.

12          MR. FEUERSTEIN:  -- Your Honor, I have -- they walked

13 in with four banker's boxes of documents which are all over the

14 place.  We have one discovery response from Tri-State and from

15 Mr. Wertman, nothing really from the debtor other than the

16 debtor saying, in its opposition to our motion, that well,

17 everything should be in that box, as well.

18          I also spoke with Mr. Miltenberg at the -- prior to

19 the deposition and at the deposition and he indicated to me

20 that there are going to be additional responses --

21          THE COURT:  All right.

22          MR. FEUERSTEIN:  -- I'm assuming of Mr. Wertman and

23 Tri-State because that's who he represents.  We have a response

24 which was filed late last week by the Podolskys and by We Care

25 which says everything should be in the box, as well, and we

1  have the right to produce further documents.

2          So as much as this is not a multimillion dollar case,

3  I mean, there should be some cooperation and some organization

4  of documents as to who they're coming from.

5          THE COURT:  Well, you've gone through them yourself,

6  I gather, so --

7          MR. FEUERSTEIN:  I've gone through them myself.

8          THE COURT:  -- you've been able to figure out --

9          MR. FEUERSTEIN:  Well, I don't know who they're

10 coming from.  All I -- as of now, all I know from the responses

11 that they've come from Mr. Wertman and from Tri-State.

12         UNIDENTIFIED ATTORNEY:  Your Honor, if I may, we --

13 may I?

14         THE COURT:  Well, when he's finished.

15         UNIDENTIFIED ATTORNEY:  Oh, okay.

16         THE COURT:  I'll hear from each party before we do

17 anything more.  All right.  Anything else?

18         MR. FEUERSTEIN:  So we had -- we'd have some

19 understanding of that and yes, I've been through a lot of the

20 documents and, again, from the documents, I still can't tell

21 who owns the debtor --

22         THE COURT:  All right.

23         MR. FEUERSTEIN:  -- and who's responsible for the

24 debtor.

25         THE COURT:  Well, I assume you asked that of Mr.

1  Wertman.

2          MR. FEUERSTEIN:  I did and that -- those responses

3  were --

4          THE COURT:  And if they don't tell us who owns the

5  debtor, they're not going to get their plan confirmed.

6          MR. FEUERSTEIN:  I understand that, Your Honor.

7          THE COURT:  So maybe your goal should be to be able

8  to continue to say they don't tell me, they won't tell me and

9  they're not -- it's their burden to confirm the plan.

10          MR. FEUERSTEIN:  I understand, but I'd rather not

11  walk into a confirmation hearing with -- I realize that they

12  may be precluded, but Your Honor hasn't precluded them yet and

13  we've asked that it be precluded pursuant to our motion.

14          THE COURT:  I -- I'm not in the business of handling

15  this case involving a building in the Bronx in the same fashion

16  as I would handle a multibillion dollar case.  I believe it is

17  the obligation of this Court to handle cases expeditiously and

18  economically, so that's just the way it's going to be.

19          MR. FEUERSTEIN:  Understood, Your Honor.

20          THE COURT:  But let there be no doubt that there'll

21  be no confirmation order in this case unless you're -- unless

22  the information that, the relevant information that you're

23  seeking is produced and not at the last minute either.  We're

24  making a lot of progress though now that we have counsel for

25  some of the other parties.

1              All right.  Let me hear from the debtor --

2              MR. KRINSKY:  Hello, Your Honor.

3              THE COURT:  -- if you know anything about this case.

4              MR. KRINSKY:  Your Honor, first let me apologize for

5  Mr. Frankel not being here.

6              THE COURT:  That's all right.  This is --

7              MR. KRINSKY:  He's been handling the case.  He

8  schedule a vacation in advance --

9              THE COURT:  This is called -- this is a vacation

10  week.

11              MR. KRINSKY:  It is.

12              THE COURT:  Everybody with any sense --

13              MR. KRINSKY:  I'm not Mr. Frankel --

14              THE COURT:  -- is on vacation.

15              MR. KRINSKY:  -- and I don't have any sense, but I'll

16  try.  I'll try to do the best I can under the circumstances.

17              We filed the objection.  A few things which aren't

18  in the objection.  Obviously Your Honor, from what I can see

19  here today, wants to reach the big picture.  My understanding

20  of the big picture is that this debtor has given us the whole

21  IOLA account, a million two seven five oh, towards plan

22  confirmation.  Again, that's not in the papers, but that shows

23  the Court we're not playing games.  We're not here to get into

24  discovery disputes.

25              THE COURT:  You're not -- you may -- you're playing

1  games up to a point.  You have some money --

2          MR. KRINSKY:  Fair enough.  We put up some real

3  money.

4          THE COURT:  -- we're moving forward, but you have an

5  intransigent lender who simply doesn't want to stay in.

6          MR. KRINSKY:  Correct, Your Honor.

7          THE COURT:  But if the lender wants to be

8  intransigent, it is nevertheless subject to the bankruptcy

9  code --

10          MR. KRINSKY:  Correct, Your Honor.

11          THE COURT:  -- and it can be kept in and crammed down

12  under the code, but you're going to have to make, you know,

13  have to prove feasibility.  You're going to have to prove that

14  you can cram this lender down.

15          MR. KRINSKY:  Again, just wanted to point out that we

16  have escrowed substantial sums of money.  The receiver, my

17  understanding, is holding another 300,000.  And regarding to

18  the documents in their papers, they concede that we've made at

19  least three document productions.  They concede that Mr.

20  Wertman appeared for a deposition for a good part of the day.

21  They concede we did give a prior document response.

22          As far as the documents produced, not counting the

23  third production, which my understanding was something like

24  20,000 pages, they concede that we've produced multiple general

25  ledgers, many years -- bank statements from many years,

operating reports from many years, tax returns from multiple

years and the leases.

Now, because I'm new to this and because I've been in

these discovery fights, I panicked and I went back and I read

all their papers because I didn't know the case and I'm telling

Your Honor that.  And I saw an e-mail that they sent, Exhibit G

to their papers, in which they basically say no, no, no, you

haven't complied.  You still owe us 103 documents requests.  I

thought that was a joke, 103 documents requests.

Then I went back --

THE COURT:  It sounds perfectly normal for this case.

MR. KRINSKY:  Then I went back because I'm new to

this case and I started counting.  I counted the first tranche

of discovery.  They issued 12 document demands for a total of

407 document requests.

I then counted the second tranche, another 12

documents demands, 804 documents requests.  So we're talking

about 24 different documents demands for 1,211 document

requests in this case where we put up a million two, I'm not --

you know the case.

THE COURT:  I don't want to hear about --

MR. KRINSKY:  Okay.

THE COURT:  -- the million two.

MR. KRINSKY:  So because they want --

THE COURT:  But I -- I'm interested in the million

1 two only from the proposition that we shouldn't spend it all on

2 legal fees.

3       MR. KRINSKY:  Which is another issue, we don't want

4 to spend it all on legal fees.  We don't want to deplete the

5 assets of the estate.  We're trying our best to give them the

6 relevant documents to get to confirmation and --

7       THE COURT:  Well, it has been a while.

8       MR. KRINSKY:  And, again --

9       THE COURT:  It's taken a while and it's taken

10 multiple motions to get --

11       MR. KRINSKY:  And I will --

12       THE COURT:  -- at least some progress.

13       MR. KRINSKY:  I will point out another recent event

14 which we believe, for lack of a better term, is a game changing

15 event and this happened in the last few days.  We originally

16 bought the property from an entity and a member of that entity

17 was a man named Aaron Youngrice (phonetic).

18       Subsequent thereto, while Citibank had the loan, the

19 debtor retained Aaron Youngrice as an agent, fiduciary, a

20 broker, to negotiate with Citibank to purchase the Citibank

21 loan.  We gave him all our information.  Now, he already was a

22 member of the prior owner, so he knew the property, and then we

23 gave him all our information.  We have just learned -- now,

24 obviously we lost in our attempt because the lender acquired

25 the loan obligation from Citibank, not us.

1           We just learned, incredible as this seems, Mr.

2    Youngrice is a member of the lender.  Mr. Youngrice, who took

3    all our information, who was our broker, our agent, our

4    fiduciary, is now a member of the lender.  So obviously, this

5    is, you know, a critical event which should have been disclosed

6    to us, but, at the very least, in terms of going forward, it is

7    incredibly significant because we believe the entire loan

8    transaction now may be tainted.

9           In addition to that, we have received from them the

10   note purchase agreement from Citibank in which they made

11   representations to Citibank that they had no contact with us,

12   any of our people, any of our principals, any of our agents --

13           THE COURT:  I think we're getting ahead of ourselves.

14           MR. KRINSKY:  Bottom line, Your Honor --

15           THE COURT:  Sounds to me like you'd like some

16   discovery from them.

17           MR. KRINSKY:  Bottom line, Your Honor, we want some

18   discovery from them.  It goes to a potential defense.

19           THE COURT:  You have -- you can subpoena that.  You

20   can send them a notice.

21           MR. KRINSKY:  And I would also point out, not only do

22   we want discovery --

23           THE COURT:  We have pending a --

24           MR. KRINSKY:  -- contested.

25           THE COURT:  -- not only a contested confirmation, but

1 we have still Mr. Feuerstein's motion for relief from the stay

2 which we consolidated with the confirmation, contested

3 confirmation hearing because it's really the same issue -- have

4 similar issues.

5          MR. KRINSKY:  So in terms of the big picture, we

6 believe this may give us a defense to the entire transaction --

7          THE COURT:  Well, are you going to be here --

8          MR. KRINSKY:  -- or alternatively --

9          THE COURT:  -- are you going to be here in another

10 three weeks claiming that he hasn't given you all of the

11 documents and they're not sorted out properly in accordance

12 with the federal rules?

13          MR. KRINSKY:  Your Honor, I -- hopefully, Mr. Frankel

14 will be here in a few weeks so I don't have to answer that

15 question.

16          THE COURT:  All right.

17          MR. KRINSKY:  In addition to that, at the very least,

18 we would have a potential damage claim, breach of fiduciary

19 duty, which would be a setoff claim which all goes to the

20 amount of their claim for confirmation.

21          And putting that all aside, it's relevant to -- it

22 highlights how ridiculous their discovery is because this

23 person was the prior owner of the property and he had access to

24 our discovery which is all imputed to them.

25          THE COURT:  Well, he has -- he may have some, he may

1    not and it may --

2            MR. KRINSKY:  Fair enough.

3            THE COURT:  -- be the reason why this is such a

4    friendly case.  All right.

5            MR. KRINSKY:  That's it.

6            THE COURT:  Thank you.

7            MR. KRINSKY:  Thank you for putting up with me.

8            MR. KASTNER:  Good morning, Your Honor.  My name is

9    Menachem Kastner.  I represent We Care Housing Services.  There

10   are two We Care entities, We Care Housing Services, as well as

11   Jay and Stuart Podolsky.  I --

12           THE COURT:  Who are the Podolskys?

13           MR. KASTNER:  The Podolskys are principals who

14   oversee the business interests that are going forward here.

15           THE COURT:  The We Care business interest or --

16           MR. KASTNER:  They oversee the We Care.  They're

17   involved with -- yes.  They're involved with the debtor's

18   interest in Tri-State.  They are not, however, members, as will

19   become clear, of these entities themselves.  They are not the

20   members of the entities.

21           This morning, I actually spent the weekend going

22   through documents, documents are going over to Mr. Feuerstein's

23   office on behalf of We Care, Jay Podolsky and Stuart Podolsky,

24   literally a two feet of documents including tax returns,

25   operating statements, everything to show organizational charts

16

1  and we're ready to proceed in good faith with document

2  production and depositions.

3          The only hitch here is I was just retained into this

4  case.  I, alas, was on vacation when I was called to come into

5  this case.  I got into it right away and then I have the Jewish

6  holidays coming up which I would like to work around in some

7  fashion and so -- because all of the parties that I represent

8  do observe all of the Jewish holidays.

9          THE COURT:  All right.  Well --

10          MR. KASTNER:  And with that, Your Honor, we're ready

11  to proceed otherwise.

12          THE COURT:  All right.

13          MR. KASTNER:  Thank Your Honor.

14          MR. MILTENBERG:  Your Honor, Andrew Miltenberg for

15  Tri-State and Charles Wertman.

16          THE COURT:  All right.  Now, tell me who Tri-State

17  is --

18          MR. MILTENBERG:  Tri-State is --

19          THE COURT:  -- in your view.

20          MR. MILTENBERG:  -- a 97 percent holder of AV 243,

21  LLC, which is the entity through which 243rd Street Bronx R&R,

22  LLC is held.

23          THE COURT:  So it's the second tier owner of the

24  debtor?

25          MR. MILTENBERG:  Yes.

17

1          THE COURT:  And Mr. Wertman?

2          MR. MILTENBERG:  Mr. Wertman is, individually, a

3  general counsel and an owner of the prior -- I'm sorry, what?

4          MR. KASTNER:  He's a member of AV 243.

5          MR. MILTENBERG:  And a member of AV 243.

6          THE COURT:  Okay.  The managing member?

7          MR. MILTENBERG:  Yes.

8          THE COURT:  All right.  All right.

9          MR. MILTENBERG:  And we've produced Mr. Wertman for

10  four or five hours.  We're prepared -- we have dates to

11  continue and finish with his deposition.  We also have dates

12  for a representative of Tri-State.  We've turned over four

13  large boxes with 20,000 or plus documents which were not as

14  helter-skelter as Jerry describes and we have another set of

15  documents which we should be producing within the next 48

16  hours.

17          THE COURT:  All right.  Anything further?

18                    (No audible response)

19          THE COURT:  Sounds like we're making --

20          MR. FEUERSTEIN:  I guess we're making --

21          THE COURT:  -- some progress --

22          MR. FEUERSTEIN:  -- some progress, I mean, the

23  interesting thing --

24          THE COURT:  -- in terms of the number of documents

25  are piling up.

1          MR. FEUERSTEIN:  Right.  I mean, the interesting

2  thing, Your Honor, is that it appears that the disclosure

3  statement and the plan -- I'm sorry, the disclosure statement,

4  the plan and the petition are incorrect as to the ownership of

5  the debtor.  So that's --

6          THE COURT:  Well, counsel --

7          MR. FEUERSTEIN:  -- certainly a reason --

8          THE COURT:  -- has just come into the case.  We'll

9  see.  We have to know who owns the debtor before this case can

10 be confirmed, both who owns it technically and who controls the

11 debtor.

12         I looked at your document demand or your -- the

13 documents that you stayed are still outstanding and --

14         MR. FEUERSTEIN:  In my reply, Your Honor, you mean?

15         THE COURT:  -- in your reply, Pages 5 to 7.  And I

16 can hear from the parties, but -- on each of these, but let me

17 tell you my initial reaction.

18         The first item, all organizational documents of the

19 debtor, Tri-State, We Care and We Care Housing Services,

20 obviously you're entitled to all organizational documents of

21 the debtor.  Of Tri-State, We Care and We Care Housing

22 Services, I think you're entitled to know who they are and

23 where they're coming from and that it would be useful for you

24 to have their basic organizational document, so we can get

25 those issues out of the case.

1      Names and addresses of all equity holders or interest

2  holders of the debtor, I think that's a no-brainer.

3          MR. FEUERSTEIN:  Your Honor, if I may --

4          THE COURT:  And anyone can speak up.

5          MR. FEUERSTEIN:  -- there are various levels to that,

6  as I've learned throughout the deposition, of what documents

7  have been produced, so I just don't want to be put in a

8  situation where I see --

9          THE COURT:  Well, we ought to at least go up until we

10  get some individuals involved.

11          MR. FEUERSTEIN:  Okay.  Thank Your Honor.

12          THE COURT:  So as they say in the tax law when we get

13  to, you know, the two-legged owners, but I think it's --

14  there's a, you know, an element of reason here.  If we know who

15  the controlling management member is and there's a particular

16  reason for confidentiality of all multiple members, that's an

17  issue that we can take up if we have to another day.

18          Page 6, a payment history of -- for each of the

19  debtor's leases with We Care Housing Services and/or We Care,

20  it seems to me that the debtor claims that it provided general

21  ledger.  I don't know how far back that goes, but that you're

22  going to get all of the receipts from a general ledger

23  perspective and disbursements of the debtor, is that right?

24          MR. FEUERSTEIN:  Yes, Your Honor, I'd just like to

25  have an understanding considering it's what's really behind

1  this plan, that there is something behind the plan and that

2  there's a history behind it.

3          THE COURT:  Okay.

4          MR. MILTENBERG:  Your Honor, I --

5          THE COURT:  Yes?

6          MR. MILTENBERG:  -- I'm fairly confident that we've

7  provided --

8          THE COURT:  You're -- okay.

9          MR. MILTENBERG:  -- all of that.

10          THE COURT:  Good.  That's --

11          MR. MILTENBERG:  But to the extent there's anything

12  outstanding --

13          THE COURT:  That's coming.

14          MR. MILTENBERG:  -- we'll make another search.

15          MR. KASTNER:  And if I may add, the leases are

16  actually in the pile of documents that I've forwarded to

17  Jerry's office this morning.

18          THE COURT:  All right.

19          MR. KASTNER:  The actual leases.

20          THE COURT:  Okay.  So there -- and the second issue,

21  all documents concerning how We Care and We Care Housing

22  Services is paid by any entity, do you have documents on that

23  issue?

24          MR. MILTENBERG:  Again, I believe I'm fairly

25  confident that we've provided those.

1          MR. FEUERSTEIN:  Your Honor, I'm pretty confident

2    that they haven't provided those.  I mean --

3          MR. KASTNER:  And I am very --

4          THE COURT:  Well, he hasn't provided you with

5    anything yet.

6          MR. KASTNER:  And I am very --

7          MR. MILTENBERG:  We have.

8          MR. FEUERSTEIN:  Mr. Miltenberg is the one who

9    provided me with the --

10          MR. MILTENBERG:  Yes.

11          MR. FEUERSTEIN:  -- multiple boxes.

12          MR. KASTNER:  And I will say that, in this morning's

13    production, there is a breakdown of the payments made, when

14    they were made, the amount made, the first three documents that

15    he will see when he opens the boxes.

16          MR. FEUERSTEIN:  But just --

17          THE COURT:  Payments from We Care to the debtor?

18          MR. KASTNER:  We Care to the debtor, correct.

19          THE COURT:  What about --

20          MR. FEUERSTEIN:  That's not what I'm looking for,

21    Your Honor.

22          MR. KASTNER:  And your --

23          THE COURT:  What about where We Care gets its

24    payments from --

25          MR. KASTNER:  They're --

22

1          THE COURT:  -- from the City?

2          MR. KASTNER:  Those are delineated on the first page

3  in the group --

4          THE COURT:  All right.

5          MR. KASTNER:  -- of the documents this morning.

6          MR. FEUERSTEIN:  So where the -- where We Care gets

7  its money from.

8          MR. KASTNER:  Correct.

9          MR. FEUERSTEIN:  Okay.

10          MR. KASTNER:  I am sure if it's not there, let me

11  know, but --

12          THE COURT:  All right.

13          MR. KASTNER:  -- I recall seeing the first chart.

14          THE COURT:  But it does seem to me that that can be a

15  subject that you --

16          MR. KASTNER:  Very simple.

17          THE COURT:  -- are going to have to ask about on

18  deposition.

19          All communications concerning anyone's willingness to

20  pay rent increases, seems to me that that's a subject you can

21  ask about on deposition.

22          MR. FEUERSTEIN:  Well, if there's any --

23          THE COURT:  If they --

24          MR. FEUERSTEIN:  -- underlying documents,

25  negotiation --

1          THE COURT:  If there are any documents, certainly --

2     they certainly can be produced, but I think they would have to

3     be in the debtor's files.

4          All payments received by the debtor from Wertman

5     Amsterdam and then there are a dozen or more other entities.

6     If you're going to get a general ledger of the debtor, you

7     should get all payments that the debtor's received from any

8     source and you can inquire about them.

9          All documents concerning the debtor's relationship

10    with Wertman in connection with any other properties, I really

11    leave that up to the -- I think that's something you can

12    inquire about on deposition, at least in the first instance.

13         MR. FEUERSTEIN:  Okay.  I mean, the point is that I

14    don't want to --

15         THE COURT:  If it's relevant, you can ask for some

16    documents in the tried and true New York method which is to ask

17    for the documents at the time of the deposition and to continue

18    the deposition if you need to.

19         MR. FEUERSTEIN:  Okay.

20         THE COURT:  All communications whatsoever between the

21    debtor and Wertman and all the other entities, communications

22    seem to be un -- not qualified, not limited.  I don't know what

23    the debtors produced or what the debtor can produce, which

24    identifies the -- oh, I beg your pardon.  It is limited, which

25    identifies the principals.  I would think, if there are any,

1 but I would think that your deposition has got to try to bring

2 out that information, assuming that it's relevant.

3      The next item are communications which evidence or

4 describe the debtor's indebtedness.  Well, first, I think

5 you're going to get the -- hopefully, you'll get the ledger.

6 Second, this is a bankruptcy and we have a bar date in this

7 case.  I looked it up, it's February 10th.  You should have

8 access to all the proofs of claim and that will tell you what

9 the indebtedness is or if there -- or it's wiped out.

10      MR. FEUERSTEIN:  Right.  Let me just quickly respond

11 to that issue, Your Honor.  There is one -- there's an insider

12 of this case which I believe is Tri-State and when I -- at the

13 deposition of Mr. Wertman, I had asked --

14      THE COURT:  Why do you say Tri-State is an insider?

15      MR. FEUERSTEIN:  Why do I -- I think it's admitted

16 that Tri-State's an insider in this case.

17      THE COURT:  All right.  But tell me what the

18 relationship is.

19      MR. FEUERSTEIN:  I believe that the principals of

20 Tri-State are identical.  They're down -- they're up the chain

21 of the debtor.

22      THE COURT:  All right.  Okay.  That answers the

23 question.

24      MR. FEUERSTEIN:  If fact, if you look at the tax

25 returns, it seems to -- of -- the tax returns of AV which is --

25

1  which appears to be the sole member, Tri-State appears to be a

2  99 or a 98 percent --

3           THE COURT:  Okay.

4           MR. FEUERSTEIN:  -- member of that entity.

5           THE COURT:  All right.  Now you answered my question,

6  okay.

7           MR. FEUERSTEIN:  Right.  So being that it's an

8  insider, I asked the question at the deposition, what evidences

9  that?  And there really wasn't a clear answer as to --

10          THE COURT:  What evidence of --

11          MR. FEUERSTEIN:  What evidences the -- this -- it's

12 listed on the petition as unsecured debt, but I said, was it

13 unsecured debt, is it a capital contribution?  I mean, I was

14 trying to get some clarity as to that issue and I couldn't get

15 clarity and I've, in fact, asked for documentation with respect

16 to that.  They said well, there may be some checks.  It's in

17 the box, but, you know, the question is, is I want to make sure

18 there's no promissory note or anything to that extent which

19 shows that it's debt as to a capital contribution.

20          THE COURT:  All right.

21          MR. MILTENBERG:  Your Honor, I believe that we

22 produced it.  To the extent that there's anything else

23 outstanding, we will, but, again, I think it's something that

24 -- that's already there.

25          THE COURT:  All right.  The next is how the debtor

26

1  utilized funds from any of the indicated parties, I assume

2  that, you know, you're going to get accounting records.  It's

3  shows the debtor's receipt and -- receipt history and

4  expenditure.

5          MR. FEUERSTEIN:  Okay.

6          THE COURT:  The next item, itemization of all

7  payments received by the indicated entities as they were made

8  by the debtor to the indicated entities.  Well, you're going to

9  get the debtor's side of it and I don't know what the other

10  party's position is.  Are you producing documents?

11             (No audible response)

12          THE COURT:  Well, I think we can start by getting the

13  debtor's side of what it says it paid these parties.  And I --

14  have they filed proofs, have there been proofs of claim filed

15  by the insiders on --

16          MR. MILTENBERG:  No, I don't think so.  No, I don't

17  think so, Your Honor.

18          THE COURT:  All right.  Well, that may be even better

19  for you, Mr. Feuerstein.

20          MR. FEUERSTEIN:  I understand, Your Honor.  I mean, a

21  lot of this --

22          THE COURT:  They may not be creditors.

23          UNIDENTIFIED ATTORNEY:  Your Honor, I think there is

24  a proof of claim filed.

25          UNIDENTIFIED ATTORNEY:  There was?

1          UNIDENTIFIED ATTORNEY:  There was -- I think there

2 was a proof of claim filed --

3          THE COURT:  All right.

4          UNIDENTIFIED ATTORNEY:  -- on behalf of Tri-State.

5          THE COURT:  Okay.

6          MR. FEUERSTEIN:  I mean, a lot of this is trying to

7 show the interrelationship between to all these particular

8 parties and that -- it's not necessarily with respect to

9 claims.  It's also with respect to, you know, it appears to us

10 that We Care, and the debtor, and Tri-State and all the

11 entities in the chain, they're all -- all the -- everything is

12 controlled by one party and that's what we're trying to --

13          THE COURT:  Well, that may be both good and bad.

14 From a feasibility perspective, it may be fine or it may not,

15 but it -- does it not depend on whether or not the debtor is

16 going to have enough income over the period of your client's

17 mortgage to make the mortgage payments --

18          MR. FEUERSTEIN:  Right.  Understood, but it also

19 goes --

20          THE COURT:  -- and stay out of bankruptcy but --

21          MR. MILTENBERG:  And if I may --

22          THE COURT:  Yes.

23          MR. MILTENBERG:  -- Your Honor, just to move our

24 attention from this for one second.  Mr. Feuerstein spent, as

25 well he was able to, quite a bit of time at the Wertman

deposition discussing that and while that's certainly his

prerogative, I don't want to run too far afield of Rule 30 as

far as giving him seven and I'll be gracious for a little extra

time for a deposition.  But I don't want to -- I -- I'm going

to want to want Your Honor to give us some sort of parameters

for the depositions that are coming up because we spent a lot

of time on that.  And, again, while it's his prerogative, in my

view, there wasn't a tremendous amount, if anything, directed

at whether the plan was a bonafide plan and whether -- and

questions directed at the issue of whether it would stand up to

a confirmation hearing or not.

        And I don't want to, again, get too far afield.

Everyone that he's mentioning has different business interests

and whether or not it's controlled by one, three, 300 different

people, it may or may not be interesting, but it ultimately

doesn't really go to the issue of confirmation which is what

Your Honor just seized upon.  So when we're going to give dates

for the continuation of the Wertman deposition and, you know, I

-- I'm not going to hold Jerry to the minute, but I'm going to

hold him close.

        MR. FEUERSTEIN:  Your Honor, if I may respond to

that.  I took the deposition in good faith because I wanted to

get discovery moving.  I took that deposition two days after I

received 20,000 documents and did my best to look through all

the documents, but certainly was not able to get through 20,000

1  documents.

2          And with respect to the issue of the connection

3  between the parties as to the feasibility of the plan, we have

4  what's admittedly a related party which has signed these 55

5  leases for, all of a sudden, out of the kindness of its heart,

6  $900 more a month.  Those leases are all -- can be terminated

7  on 30 days notice, so I think it's certainly important to see

8  the interrelationship between the parties because an argument

9  could be made that they're -- that these leases were -- these

10 lease amendments were signed and they could easily be

11 terminated right after confirmation based upon the fact that

12 they're -- they are, in fact, related parties.

13         So, it doesn't give the secured creditor all that

14 much comfort that we have all these leases which could easily

15 be terminated.

16         THE COURT:  What is the period of time for the

17 cram-down debt of the secured party in this case?

18         MR. FEUERSTEIN:  Well, this is actually a

19 reinstatement plan, Your Honor.

20         THE COURT:  A reinstatement?

21         MR. FEUERSTEIN:  Yes.

22         THE COURT:  So what's the remaining term of the

23 mortgage?

24         MR. FEUERSTEIN:  I believe it matures in 2014.

25         THE COURT:  That's only two years from now.

30

1          MR. FEUERSTEIN:  Understood, Your Honor.

2          THE COURT:  And if we drag this out very much

3 further, it will be right upon us.

4          MR. FEUERSTEIN:  Understood, Your Honor.  But it's

5 still something that our client has to deal with and --

6          THE COURT:  Yes.

7          MR. FEUERSTEIN:  -- we're down the road in

8 foreclosure and had a motion for summary judgment --

9          THE COURT:  If this is a -- I recall now this is a

10 reinstatement.

11          MR. FEUERSTEIN:  It is.

12          THE COURT:  If this is a reinstatement case then

13 really the only issue if feasibility.

14          MR. MILTENBERG:  Well, and --

15          THE COURT:  Is that right?  The main issue let us

16 say.

17          MR. FEUERSTEIN:  It's feasibility, I mean, I think

18 there's some question --

19          THE COURT:  The main issue is feasibility.

20          MR. FEUERSTEIN:  -- there's a question as to are the

21 -- also the interrelationship between the parties could be

22 evidenced that there -- that this debtor isn't insolvent, so

23 it's a big difference --

24          MR. MILTENBERG:  Well --

25          MR. FEUERSTEIN:  -- between default interest and note

1   rate interest based upon that.

2            MR. MILTENBERG:  And you --

3            THE COURT:  Well, that's a separate issue --

4            MR. MILTENBERG:  And you --

5            THE COURT:  -- and that can be briefed.

6            MR. MILTENBERG:  You just -- or Jerry's just touched

7   upon what makes the discovery of Mr. Youngrice's role, pre and

8   post-petition, that much more troubling.  And so, while we do

9   want some discovery to address that, again, I -- what we don't

10  want and what I don't think the debtor wants and -- is to spend

11  a tremendous amount of time reconstructing the business

12  dealings of these entities and not focusing on a plan that can

13  be confirmed or not.  The end of the day, they want their

14  money.  We can argue about the amount, but I don't want that

15  million two to suddenly become 80,000 because there's lots of

16  billable hours and lots of whiteboards and charts and graphs

17  with lines back and forth.

18            And so I really want to be careful and the Youngrice

19  discovery is troubling when Jerry tells us that the connect --

20  the interconnection between the parties is of paramount concern

21  to him.  That even further raises a concern.

22            MR. FEUERSTEIN:  I don't see how one thing has to do

23  with the other and, frankly, first of all, I don't know who Mr.

24  Youngrice is as I stand here today, but putting that aside --

25            THE COURT:  But you'll find out.

1        MR. FEUERSTEIN:  -- but I certainly will find out.

2   The interconnection between the parties I think is an important

3   issue to go through as I said because I think it goes to the

4   issue of how much the debtor is going to pay upon

5   reinstatement, whether it's interest at the note rate or

6   interest at the default rate.

7        THE COURT:  Well, that's --

8        MR. FEUERSTEIN:  I mean, if the debtor wants to

9   consent interest at the default rate, maybe -- it certainly

10  narrows a number of the discovery issues.

11       THE COURT:  Well, I wrote a decision on --

12       MR. FEUERSTEIN:  I read it, Your Honor.

13       THE COURT:  -- your issue.  It -- the losing party

14  took it to the -- directly to the second circuit and I don't

15  know, has it been -- you may know if you've looked, you -- has

16  it been argued?

17       MR. FEUERSTEIN:  I don't believe so, Your Honor.

18       MR. MILTENBERG:  No, Judge.

19       THE COURT:  It hasn't been argued yet.  Well, that's

20  -- they're usually pretty fast and it's been up there for a

21  while.  Well, I can't tell you what they're going to do.  I can

22  only do the best I can do and if I could predict what the

23  circuit court would do in every case, I'd never get reversed.

24  Yes, sir.

25       MR. KASTNER:  I'm just hoping that Mr. Feuerstein --

33

1          THE COURT:  Just state your name, so we can keep the

2     record.

3          MR. KASTNER:  I'm sorry, Menachem Kastner.  I'm just

4     hoping that Mr. Feuerstein will be as generous in discovery

5     when we try to show the interrelationship of Phoenix Realty,

6     Dala (phonetic) Management and Metropolitan Housing which is

7     also a setup with Mr. Youngrice's interest which taints the

8     entire restructure plan that they're proposing here.  And we'll

9     go in with the --

10         THE COURT:  Well, I don't have -- all I have is their

11    objection.  I don't have any --

12         MR. KASTNER:  Right.  Well, we'll be at that --

13         THE COURT:  I don't have any alternative plan.  I

14    certainly strongly urge the parties to recognize that they can

15    continue to fight each other, tooth and nail, and spend a great

16    deal on attorneys' fees, but we have a single property in the

17    Bronx.  We have a mortgage with, if reinstated, has all of two

18    years to go.  There's got to be a better way, but --

19         MR. KASTNER:  I agree.

20         THE COURT:  -- let me just go through the remaining

21    documents.  It seems to me that the documents that you've

22    listed on Page 7 are all documents that there's probably no

23    dispute about except the last item seeks all tax returns from

24    the We Care entities and I don't know what their position is on

25    that.

1              MR. KASTNER:  We provided tax returns --

2              THE COURT:  You're providing them.  All right.  Then

3  there's no dispute.

4              All right.  What do you suggest I do today other than

5  I can enter an order with regard to the production?  But I'll

6  so order the record with regard to the production of further

7  documents.  We have an October, is it October 10th for

8  confirmation?

9              MR. FEUERSTEIN:  Correct, Your Honor.

10             THE COURT:  Is that a realistic date at this point?

11 I know Mr. Feuerstein's already suggested that it should be put

12 off.

13             MR. FEUERSTEIN:  I mean --

14             THE COURT:  If I put it off to two thousand --

15             MR. FEUERSTEIN:  -- I think the other parties agreed,

16 as well.

17             THE COURT:  If I put it off to 2014, there may not be

18 any further issues in this case.

19             MR. KASTNER:  The 1.2 will be gone, too.

20             THE COURT:  Probably.  What date do you suggest?

21             MR. FEUERSTEIN:  I mean, I need to hear back when the

22 -- when parties are going to be produced for depositions.

23             MR. MILTENBERG:  Well, I can --

24             THE COURT:  Well, we have a -- we do have a -- we

25 have a scheduling order with some dates in there, but they're

35

1  all in early September and they may not be practical at this

2  point.  They would be, you know, it would be good to keep to

3  those dates as far as possible to move this along and get it

4  over with.

5          MR. MILTENBERG:  Well, I -- Jerry, I can offer you

6  dates now --

7          MR. FEUERSTEIN:  Okay.

8          MR. MILTENBERG:  -- if that helps.  Everybody else

9  lock in what dates they may or may not be available.

10         MR. FEUERSTEIN:  Okay.

11         MR. MILTENBERG:  I can do -- we can finish up Charles

12  on the 10th, 11th or -- the 11th, 12th or 13th of September.

13         MR. FEUERSTEIN:  Well, as I told you last time, I

14  have court ordered depositions --

15         MR. MILTENBERG:  I --

16         MR. FEUERSTEIN:  -- in another case.

17         MR. MILTENBERG:  I forgot --

18         MR. FEUERSTEIN:  They're pretty much all week that

19  week.

20         MR. MILTENBERG:  I forgot those -- okay.  We can do

21  Charles the --

22         THE COURT:  Well, I can let you discuss it --

23         MR. MILTENBERG:  Of course, Your Honor.

24         THE COURT:  -- take a break or I can ask you to

25  submit a revised scheduling order.  Perhaps that makes sense.

1  If you need me --

2        UNIDENTIFIED ATTORNEY:  It makes sense, Your Honor.

3  I'd like to speak to my clients first.

4        THE COURT:  If you need me, I can come back on the

5  record, but actually the best thing to do would be to, if you

6  can't come up with dates, to submit the dates and I'll, you

7  know, submit letters to the Court and I'll --

8        MR. FEUERSTEIN:  And the only problem --

9        THE COURT:  -- but I assume you can come up with

10  those dates.

11        MR. FEUERSTEIN:  Yes, and the only problem with that

12  is we're dealing with three different attorneys and --

13        THE COURT:  Well --

14        MR. FEUERSTEIN:  -- it would be easier if we -- you

15  said you had dates now to agree upon dates, so we can --

16        MR. MILTENBERG:  Well, I just gave you three of my

17  four good dates in the next three weeks.

18        MR. FEUERSTEIN:  Through the week that I have the

19  depositions.

20        MR. MILTENBERG:  I didn't recall that you had

21  deposition that week.

22        MR. KASTNER:  Your Honor, if I may, perhaps it would

23  be easier if we spoke after court adjourned and we can send a

24  letter to the Court with dates in it.

25        THE COURT:  I assume you can find dates.

1          MR. KASTNER:  Yes, we can find dates.

2          THE COURT:  What date are you thinking -- well, I
3    have October, November are very open in terms of giving you a
4    day or two or three for a confirmation hearing.

5          MR. FEUERSTEIN:  Okay.  I mean, we --

6          THE COURT:  I don't know how many issues there are
7    going to be.  I would think feasibility is the main issue.  The
8    question of default interest is perhaps more of a question of
9    law than it is a fact.

10          MR. FEUERSTEIN:  Understood, Your Honor.

11          THE COURT:  Although there's a question is the debtor
12    solvent or not?

13          MR. MILTENBERG:  And the value of the property.

14          THE COURT:  But sounds to me like most of your
15    arguments, Mr. Feuerstein, haven't been the debtor is solvent.
16    It's been the that the debtor has a lease with We Care that We
17    Care increased the amount and the debtor really doesn't have
18    the resources that it claims to have.

19          MR. FEUERSTEIN:  Well, but based upon the
20    interconnection, it does and that --

21          THE COURT:  Well --

22          MR. FEUERSTEIN:  -- creates my solvency argument.

23          THE COURT:  -- that doesn't require We Care to pay
24    more, just may give them an incentive to or it may not.

25          In any case, what date were you thinking about for

1  confirmation?

2          MR. FEUERSTEIN:  I'm in the second week in November,

3  is that -- I need to look at my schedule, I guess it's the week

4  of November 5th.

5          MR. MILTENBERG:  If we can run into the next week,

6  that would be helpful, for me, anyway.

7          MR. FEUERSTEIN:  As in the week of November 12th?

8          MR. MILTENBERG:  Yes.

9          THE COURT:  That's a -- yes, that's better than the

10  week of the 5th for me.  The week of the 5th is -- part of that

11  week is closed, so the week of the 12th, other than the 12th,

12  which I think may be a court holiday.

13          MR. KASTNER:  Those are the holidays.  It is a

14  holiday.

15          MR. FEUERSTEIN:  I'm okay with the week of -- that

16  week.

17          THE COURT:  Do you want to set it for the 13th or the

18  14th running over to the 15th, if necessary?

19          MR. FEUERSTEIN:  Those two dates work for me.

20          THE COURT:  All right.

21          MR. KRINSKY:  So, I'm sorry, we're going to use the

22  13th and the 14th --

23          MR. FEUERSTEIN:  No, the 14th and the 15th.

24          MR. KRINSKY:  -- or the 14th and the 15th?

25          MR. MILTENBERG:  No, the 14th and the 15th.

39

1          MR. KRINSKY:  Okay.  That's fine.

2          THE COURT:  Either way, but -- say 14th and 15th.

3          MR. KRINSKY:  Thank Your Honor.

4          MR. FEUERSTEIN:  And what about objections and

5     ballots, Your Honor?

6          THE COURT:  Yes.  Do we have -- we have an approved

7     disclosure statement, is there a voting deadline now?  There

8     probably is.

9          MR. FEUERSTEIN:  I believe there is, Your Honor.

10          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

11          THE COURT:  Do you want to extend that?  Then discuss

12     it.  I would think you'd want, since it's so far out, you'd

13     want objections by say the 7th.

14          MR. FEUERSTEIN:  November 7th?

15          THE COURT:  November 7th, if you want --

16          MR. FEUERSTEIN:  That's fine.

17          THE COURT:  -- objections and voting?

18          MR. FEUERSTEIN:  That's fine.

19          MR. KRINSKY:  Your Honor, I -- could I just leave

20     that open?  I have to run it by Mr. Frankel is that's possible.

21          THE COURT:  Yes.

22          MR. KRINSKY:  Thank you.

23          MR. FEUERSTEIN:  Including the confirmation date?

24          MR. KRINSKY:  No, I think the confirmation date is

25     fine.

40

1          THE COURT:  All right.  Well, whatever, that gives

2  you a week, but if you want more, we can move it back.  Then

3  you'd have a chance for a reply if you want one.  I should put

4  a limit on the number of pages though, I think.  I'll -- we'll

5  see.  We'll see what the next few weeks bring.  We have a lot

6  of -- I think there's been a great deal of progress having

7  other counsel in here and I appreciate that there's been some

8  cooperation and hope that there will be between now and

9  November.

10         Why don't I leave it up to the parties to request, if

11  you need another conference, pick up the phone and ask it or

12  send a very brief letter asking for a conference?  I think we

13  should try to avoid multiple-page motions, if we can.  If you

14  need a conference, just ask for it and we'll have it in short

15  order.  All right.  Thanks, very much.

16         UNIDENTIFIED ATTORNEY:  Okay.  Thank Your Honor.

17         MR. FEUERSTEIN:  Thank Your Honor.

18         UNIDENTIFIED ATTORNEY:  Your Honor, thank you for

19  your time this morning.

20                         *  *  *  *  *

21

22

23

24

25

41

# C E R T I F I C A T I O N

I, AMY L. RENTNER, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

*Amy Rentner*                    DATE:  September 5, 2012

AMY L. RENTNER

J&J COURT TRANSCRIBERS, INC.