UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                                                    Chapter 11

243rd Street Bronx R&R LLC                                               Case No.  11-13321

                            Debtor.
------------------------------------------------------------x
STATE OF NEW YORK      )
                        ) s.s.:
COUNTY OF NEW YORK   )

## <u>AFFIDAVIT IN SUPPORT OF PLAN CONFIRMATION</u>

Charles Wertman, being duly affirmed, deposes and says as follows:

1.    I am the managing member of AV 243 LLC ("AV 243"), the sole member of

243 Bronx R&R LLC (the "Debtor"), and I am submitting this affidavit in support of

confirmation of the Debtor's Second Amended Plan of Reorganization filed on June 4, 2012 (the

"Plan").  Annexed hereto as Exhibit A is the Debtor's Operating Agreement designating AV 243

as the Debtor's managing member.  Annexed hereto as Exhibit B is the Operating Agreement

designating me as AV 243's managing member.

2.    On September 21, 2004, AV 243 acquired 49% of the Debtor's membership's

interests (Exhibit C).  On May 8, 2007, AV 243 acquired the remaining 51% of the Debtor's

membership interests (Exhibit D).

3.    AV 243's members include Tristate Realty Holdings LLC 97% and myself

3%.

4.    The Debtor owns the real property located at 708-710 and 740 East 243rd

Street, Bronx, New York  The 708-710 Property is a 5 story apartment building, with 50

residential units, and 5 commercial units.  The 740 Property is a 6 story apartment building with

72 residential units.

5.     The Property has a $9,800,000.  Such value is based upon appraisals previously filed in this case in support of the lift stay motion interposed by 243rd Street Lender LLC (the "Mortgagee").

6.     The Property is encumbered by New York City real estate tax, water, sewer and other liens in the amount of a $734,673 as of November 7, 2012 (Exhibit E).

7.     The Mortgagee asserts a first mortgage claim for principal and interest at the contract rate in the amount of $10,680,000.

8.     With respect to *overdue* principal and interest at the contract rate, the Mortgagee asserts that $1,588,251 is due as of November 7, 2012.  My calculation indicates that the amount due as of November 7, 2012 is $1,590,411.  (Exhibit F).

9.     In addition, the Property is encumbered by other subordinate liens in the aggregate amount of approximately $99,692, which constitute classes 3, 4 and 5 under the Plan.

10.    The Debtor's general unsecured claims, total approximately $840,598, $820,000 of which is insider debt as indicated by the Debtor's Schedules.

11.    The immediate reason for the Debtor's Chapter 11 filing was a pending foreclosure action and the appointment of a receiver.

12.    The Debtor problems arose from the economic downturn which inhibited the Debtor's ability to keep up with the mortgage and upkeep of the Property.  In order to make the Properties profitable in the long run, the Debtor invested substantial sums for renovation. This strategy necessitated longer vacancies during renovations which further strained the Debtor's cash flow.  That led to mortgage defaults.

13.     The Debtor's objective in this Chapter 11 case was to stabilize the Debtor's finances, so that ultimately the Property could be refinanced or sold, or the mortgage reinstated or restructured for the benefit of all interested parties

14.     Since filing this case, the Debtor has achieved its objective of stabilizing the Debtor's finances through the success of We Care Housing Services ("We Care") an affiliate of the Debtor.  As of the filing of this case, We Care was building a business as a provider of housing for the homeless to the New York City Department of Homeless Services.  During the course of this case the venture has grown into a success.  As will be described in more detail below, We Care has agreed to pay additional rent to ensure that the Debtor will be able to pay its bills as they come due during the duration of the Plan.

15.     During the course of this case, the Debtor has retained counsel by order of the Bankruptcy Court, opened a debtor in possession bank account, obtained a bar date for creditor claims, and stipulated with the Mortgagee to permit the State Court appointed Receiver to operate the Property.  With exception of debt service and certain obligations to the City of New York including real estate taxes, the Debtor believes that the Receiver has paid his obligations as they came due.  The Debtor has filed monthly operating reports based upon the Receiver's management reports as and when the Receiver has provided such reports.

16.  The last operating report supplied by the Receiver was September 2012.  That report indicates cash on hand of approximately $450,000.

17.     The Debtor filed a Plan and Disclosure Statement, obtained approval of its Disclosure Statement and solicited votes.  Upon information and belief, all impaired creditors who voted, accepted the Plan.

18.   Class 1 under the Plan is the City of New York.  As of November 12, 2012, the New York City Department of Finance online statement indicates that outstanding New York City lien claims for real estate tax, water and sewer charges against the Property total $629,627. The Plan provides for payment of those claims in full in cash on the Effective Date with interest at the statutory rate.  In addition, the Debtor will pay New York City claims arising from violations against the Property which have matured into liens in the amount of $105,046, for a grand total $734,673.

19.   Class 2 under the Plan is the Mortgagee.  As set forth on Exhibit F hereto, the Debtor estimates that the Mortgagee's claim for overdue mortgage payments (including principal and interest at the non-default contract rate) totals $1,590,411.

20.   The Plan provides for payment of the amount necessary to reinstate on the Effective Date, and the Debtor respectfully submits that such amount should be $1,590,411.

21.   Class 3 under the Plan is Blue Diamond, which has a mechanic's lien claim scheduled in the amount of $77,000.  Class 4 under the Plan is CS Brown which has a $9,816 mechanic's lien and Class 5 is Castle Oil which has a $12,876 mechanics lien.  The grand total of the mechanic's liens is 99,694.

22.   Since the Class 1 and Class 2 Claim exceed the appraised value of the Property, my understanding is that those claims would be deemed unsecured and they are therefore getting the same treatment as Class 7 general unsecured creditors.

23.   That means that Classes 3, 4 and 5 will be paid 25% of the allowed amount of each such Claims on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date, and 25% shall be paid on the 24 month anniversary of the Effective Date.

24.    Class 6 is priority claims.  I am aware of no priority claims

25.    Class 7 is general unsecured claims.  Such Claims were scheduled in the amount of $840,598.  Such Claims will be paid over 2 years in 4 semi-annual payments commencing 6 months after the effective date

26.    Of the general unsecured claims, Tristate's is probably an insider claim by virtue of its ownership of AV 243.  Tristate's claim is $820,000.  To make the Plan more feasible, Tristate has also agreed to defer payment on its claim until all other creditors are paid in full.

27.    In total general unsecured claims are $20,598 and undersecured lien claims are $99,694, for a total of $120,292.  Each of the required 4 quarterly payments to general unsecured creditors under the plan will therefore total $30,073

28.    Class 8 is ownership interests.  Those will be unchanged under the Plan.

29.    The source of funding for the plan is AV 243, which will be paying the amounts due on the Effective Date.  Thereafter, plan payments will be made from net operating income.

30.    As set forth on Exhibit G hereto, I estimate that $2,400,084 will be due on the Effective Date.  This amount includes $75,000 for attorney fees, $734,673 for NYC lien and claims, $1,590,411 for the Mortgagee reinstatement amount.  The Receiver is estimated to have $500,000 in cash on the Effective Date, which leaves outstanding amount of $1,900,084.  $1,925,000 has been deposited in Debtor's counsel's IOLA account, which exceeds the estimated amount needed by my calculations.

31.    I have examined the pending nonmonetary violations and other NYC charges against the Property and have prepared Exhibit H hereto.  As indicated on Exhibit H,

large numbers of the violations date back years and decades. Indeed, I believe that most of the

apartments that have been cited have subsequently undergone gut renovations. It is my

experience managing real property that in these circumstances, it is reasonable to estimate $500

per apartment in the aggregate to cure violations of this sort, which would total about $60,000 for

the Property. In this case, the Debtor nonetheless projects additional amounts above and beyond

routine maintenance of $25,000 per month. Accordingly, the Debtor believes that it has the

funds necessary to remove the violations in the ordinary course of business.

32.    Annexed hereto as Exhibit I are post-petition operating projections. The

projections indicate substantial positive cash flow and demonstrate that the Reorganized Debtor

will be able to meet all of its ongoing obligations to trade vendors and the Mortgagee.

33.    In order to achieve these results, as set forth on Exhibit I hereto, the Debtor

intends to decrease expenses by eliminating certain inefficiencies inherent in receivership

management and to increase the rent We Care pays from approximately $1,050 per month to

$1,960 per month.

34.    It is my understanding that We Care has agreed to pay such increased rent.

We Care is owned by the same parties who own Tristate, and, therefore, this is a means by which

the common owners can protect their investments in both the Properties and in We Care.

35.    As set forth on Exhibit J hereto, at maturity, I project the mortgage debt to

be $6,920,413. The Debtor will be able to afford to pay the principal due by refinancing. I have

already been told by loan brokers that the Debtor would qualify for refinancing in the amount of

approximately $7,500,000 at 3.7% interest at this time. With the Property out of bankruptcy and

stabilized, the Debtor will be in a position to refinance in 2014.

36.     Annexed as Exhibit B to the Disclosure Statement are the Debtor's balance sheet and liquidation analysis.

37.     In a liquidation, it is unlikely that the Debtor would be able to pay its vendors or subordinate lien holders any distribution because they would be subordinate to New York City liens and the Mortgagee's lien, which exceed the Mortgagee's appraised value.

38.     In summary, the Debtor's agreement with We Care has resulted in a Plan providing for payment in full to general unsecured trade creditors and a complete rehabilitation of the Debtor's finances, as opposed to a forfeiture to the Mortgagee in a liquidation.

39.     The Plan complies with the applicable provisions of the Bankruptcy Code, pursuant to section 1129(a)(1), such as compliance with the rules for classification of claims under section 1122 of the Code and the plan requirements under section 1123 of the Code.

40.     The Debtor has complied with the applicable provisions of the Bankruptcy Code pursuant to section 1129(a)(2) such as compliance with the disclosure and solicitation requirements of section 1125 and 1126 of the Code.

41.     The Plan has been proposed in good faith and not by any means forbidden by law pursuant to section 1129(a)(3) inasmuch as the plan is consistent with the general intent of the Code to permit the reorganization of companies by restructuring debt.

42.     Any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after

confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as

reasonable, pursuant to section 1129(a)(4).

43.    As set forth in the Disclosure Statement, I will continue to manage the

Debtor by virtue of my role as managing member of AV 243, the Debtor's managing member.

Accordingly, the Debtor has disclosed the identity and affiliations of any individual proposed to

serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an

affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under

the Plan.  Given payment in full to creditors under the Plan, the Debtor submits that my

continuance is consistent with the interests of Creditors and equity security holders and with

public policy, pursuant to section 1129(a)(5).

44.    The Plan does not propose a rate change for which governmental regulatory

commission approval is required, pursuant to section 1129(a)(6).

45.    Subordinate lien creditors and general unsecured creditors are impaired but

will receive payment in full over two years under the plan.  In a liquidation, such creditors would

receive no distribution.  Accordingly, the requirement under section 1129(a)(7) of the

Bankruptcy Code is deemed satisfied, i.e., with respect to each class of impaired Claims, either

each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain

under the Plan on account of such Claim or interest property of a value, as of the Effective Date

of the Plan, in an amount that is not less than the amount that such holder would so receive or

retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code.

46.    Each class entitled to vote that actually voted, accepted the Plan.  No class is

impaired under the Plan, and thus the requirement of section 1129(a)(8) is also deemed satisfied,

i.e., that each class has accepted the Plan, or is not impaired under the Plan.

47.    Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that priority and administration claims will be paid in full on the Effective Date, or as soon thereafter as the Allowed Amounts of such Claims are determined, thereby satisfying thereby satisfying section 1129(a)(9) of the Code.

48.    Because all impaired classes that voted on the Plan accepted the Plan, the requirement of section 1129(a)(10) of the Code that at least one class of impaired Claims accept the Plan has been satisfied.

49.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan pursuant to section 1129(a)(11), since as indicated herein, the Debtor's owner is advancing the amounts necessary to reinstate the first mortgage, and We Care has agreed to increase its rental payments to ensure that the Debtor will remain current with the Mortgage and so as to be well positioned to refinance at maturity.

50.    All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan pursuant to section 1129(a)(12).

51.    The Debtors do not have retirement benefits obligations, and, therefore, section 1129(a)(13) relating to retirement benefits does not apply to this case.

52.    In addition, to the foregoing, there is an additional important factor that I only recently discovered which further supports confirmation of the Plan.  Specifically, the Debtor has claims against the Mortgagee which it intends to prosecute vigorously, which could substantially reduce the amounts due under the first mortgage.

53.   I first discovered the Debtor's claims during a break when I was being deposed by the Mortgagee on August 16, 2012.  I was approached by J. Michael Fried, who introduced himself as a principal of the Mortgagee.  Fried further advised me that his "partners" in the Mortgagee included Aaron Jungreis and Ralph Herzka, who I believe to be an individual who works with Mr. Jugreis at Meridian Capital.

54.   I was shocked because Jungreis was the broker who sold the Property to me in 2004.  And in 2010, he approached me again to act on the Debtor's behalf to facilitate a refinance, workout and/or sale of the Debtor's loan with Citibank, who then held the mortgage. In the capacity as workout broker, in the Spring of 2011, I provided Jungreis with confidential information and documents concerning the Property, as well as the Debtor's strategy and bidding parameters for both the Property and the Citibank loan.  Thereafter, Jungries conducted discussions with Citibank and others who might be able to help the Debtor.

55.   After Fried approached me with his information, I spoke to Jungries to confront him over his ownership interest in the Mortgagee.  During the conversation, Jungreis admitted that he has an ownership interest in the Mortgagee.  Ralph Herzka also confirmed to me that both he and Jungreis held interests in the Mortgagee.

56.   I then revisited the Mortgagee's prior document production (in response to the Debtor's prior subpoena, dated December 29, 2011), in order to uncover clues concerning Jungreis' involvement with the Mortgagee.  I discovered that the Mortgagee had produced a Rent Roll from the Property (the "Rent Roll") which the Debtor had previously provided to Jungreis in confidence to aid him in his negotiations with Citibank.  I also discovered an Offering Memorandum or Set Up (the "Offering Memorandum") for the Property from Rosewood Realty Group, Inc. ("Rosewood"), of which Jungreis is a principal.  Thus, the Mortgagee previously

10

produced documents in its possession which show that Jungreis took confidential information

and an actual document from the Debtor and provided them to the Mortgagee; and that Jungreis

was really working for and trying to obtain the Property for the Mortgagee, and/or its members.

57.   The Mortgagee also produced a document entitled Note Purchase

Agreement, entered into by and between it and Citibank as of June 30, 2011, which states that it

purchased the Citibank loan for $7.7 million, an amount which was suspiciously just above the

bidding parameters that the Debtor had provided to Jungreis, and/or the offer that the Debtor had

made to Citibank.

58.   After Citibank sold its note and mortgage, I observed the new owner's

address from a letter from Citibank identifying the Wrublins as contact persons.  I asked Jungreis

about them and he described them as Bronx real estate investors who were connected with a

hedge fund.  He offered to set up a meeting but he never disclosed his interest in the group.

59.   Based upon the foregoing, I think the Debtor will be able to prove that

Jungreis cheated the Debtor by delivering a deal for the Citibank note and mortgage to the

Mortgagee, of which he is an investor, rather than the Debtor to whom he had a duty of loyalty.

I believe that the note holder knew about this, and that at a minimum, the Debtor should

therefore get the benefit of the bargain the Mortgagee enjoys.

60.   In that regard, the Mortgagee bought the note for $7.7 million.  The current

mortgage indebtedness should be reduced at least to that amount.  There may be other legal

theories that would provide even more damages but I think that giving the Debtor the benefit of

the Mortgagee's bargain is a good starting point.

61.   Based upon the foregoing, the Debtor respectfully requests that the Court

confirm the Plan.

<u>s/ Charles Wertman</u>

Affirmed to before me this
13th day of November 2012


s/Mark Frankel
_____
Notary Public

# EXHIBIT A

# AMENDED AND RESTATED

# OPERATING AGREEMENT

# OF

# 243RD STREET BRONX R&R LLC

## Table of Contents

ARTICLE 1 DEFINITIONS ....................................................................................................... 2
  1.1   Definitions ......................................................................................................... 2
  1.2   Exhibits ............................................................................................................. 2
ARTICLE 2 THE COMPANY .................................................................................................. 5
  2.1   Continuation of Limited Liability Company ................................................... 5
  2.2   Name of Company ............................................................................................ 5
  2.3   Purpose of Company ........................................................................................ 5
  2.4   Principal and Registered Office ....................................................................... 5
  2.5   Further Assurances .......................................................................................... 6
  2.6   Expenses of Formation .................................................................................... 6
  2.7   No Individual Authority ................................................................................... 6
  2.8   No Restrictions ................................................................................................. 6
  2.9   Neither Responsible for Other's Commitments ............................................... 6
  2.10  Affiliates .......................................................................................................... 7
  2.11  Operations in Accordance With the Act; Ownership ....................................... 7
ARTICLE 3 TERM ................................................................................................................... 7
  3.1   Term ................................................................................................................. 7
  3.2   No Termination.  Notwithstanding any provision of this Agreement to the contrary, the Executive Committee may not vote to terminate this Agreement, or consent to the termination of this Agreement, at any time prior to the date that is eighty-two (82) months after the Effective Date.  At any time prior to the date that is eighty-two (82) months after the Effective Date, this Agreement may be terminated only by the unanimous vote of all Members ............................... 7
ARTICLE 4 CAPITAL CONTRIBUTIONS OF THE MEMBERS ........................................ 8
  4.1   Initial Capital Contributions of the Members ................................................. 8
  4.2   No Other Required Contributions .................................................................... 8
  4.3   No Interest Payable .......................................................................................... 8
  4.4   No Withdrawals ................................................................................................ 8
  4.5   Additional Contributions ................................................................................. 8
  4.6   Percentage Interest .......................................................................................... 8
ARTICLE 5 LOANS BY MEMBERS ...................................................................................... 8
  5.1   Loans ................................................................................................................ 8
  5.2   Payments of Loans .......................................................................................... 8
ARTICLE 6 MANAGEMENT OF THE COMPANY .............................................................. 8
  6.1   Management; Executive Committee ................................................................ 8
  6.2   Bank Accounts ................................................................................................. 8
  6.3   Reimbursement for Costs and Expenses ......................................................... 9
  6.4   Fidelity Bonds and Insurance .......................................................................... 9
  6.5   Matters Requiring Unanimous Consent ......................................................... 10
ARTICLE 7 BOOKS AND RECORDS, AUDITS, TAXES, ETC ........................................ 10
  7.1   Books; Statements .......................................................................................... 10
  7.2   Where Maintained .......................................................................................... 10
  7.3   Tax Returns .................................................................................................... 10

7.4    Tax Matters Partner. ................................................................................ 11
7.5    Tax Policy. ............................................................................................ 11
7.6    Section 754 Election. .............................................................................. 11
7.7    Capital Accounts. ................................................................................... 11
ARTICLE 8 FISCAL YEAR .............................................................................. 11
8.1    Calendar Year. ....................................................................................... 12
ARTICLE 9 DISTRIBUTIONS AND ALLOCATIONS ........................................ 12
9.1    Percentage Interests in Company. ............................................................ 12
9.2    Certain Definitions. ................................................................................ 12
9.3    Cash Flow Distributions. ........................................................................ 12
9.4    Intentionally Omitted. ............................................................................ 14
9.5    Allocation of Gross Income; Profits and Losses For Capital Account Purposes. 15
9.6    Allocations of Gross Income; Profits and Losses for Tax Purposes. ........... 15
ARTICLE 10 ASSIGNMENT AND OFFER TO PURCHASE ................................ 15
10.1    Transfers. ............................................................................................. 16
10.2    Intentionally Omitted. ........................................................................... 16
10.3    Assumption by Assignee. ....................................................................... 16
10.4    Amendment of Certificate of Formation. ................................................. 16
10.5    Other Assignments Void. ....................................................................... 16
10.6    Call Option. .......................................................................................... 16
10.7    Sales Pursuant to Call. ........................................................................... 17
ARTICLE 11 DISSOLUTION OR BANKRUPTCY OF A MEMBER ...................... 17
11.1    Dissolution or Merger. ........................................................................... 18
11.2    Bankruptcy. etc. .................................................................................... 18
11.3    Reconstitution. ...................................................................................... 18
ARTICLE 12 DISSOLUTION .............................................................................. 19
12.1    Winding Up by Members. ....................................................................... 19
12.2    Winding Up by Liquidating Member. ...................................................... 19
12.3    Offset for Damages. ............................................................................... 20
12.4    Distributions of Operating Cash Flow. .................................................... 21
12.5    Distributions of Proceeds of Liquidation. ................................................ 21
12.6    Orderly Liquidation. .............................................................................. 21
12.7    Financial Statements. ............................................................................. 22
ARTICLE 13 MEMBERS ................................................................................... 22
13.1    Liability. ............................................................................................... 22
ARTICLE 14 NOTICES ..................................................................................... 22
14.1    In Writing; Address. .............................................................................. 22
14.2    Copies. ................................................................................................. 22
ARTICLE 15 MISCELLANEOUS ....................................................................... 23
15.1    Additional Documents and Acts. ............................................................. 23
15.2    Estoppel Certificates. ............................................................................. 23
15.3    Interpretation; Waivers. .......................................................................... 24
15.4    Survival. ............................................................................................... 24
............................................................................................................... 24

15.5    Waiver of Jury Trial. ................................................................................

15.6    THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION, ............24
PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT OR TORT)
BROUGHT BY ANY PARTY HERETO AGAINST ANY OTHER PARTY IN RESPECT OF
ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT...24

15.7    References to this Agreement. ..................................................................24

15.8    Headings; Interpretation. ........................................................................24

15.9    Entire Agreement. This Agreement, the ................................................25

15.10    Attorneys' Fees. ...................................................................................25

15.11    Time of Essence. ..................................................................................25

15.12    Binding Effect. All of the terms, covenants and conditions of this Agreement shall be
binding upon and shall inure to the benefit of Prime Member, on the one hand, and Wertman
Member, on the other hand, and their respective successors, permitted assigns, heirs and legal
representatives. Except as expressly provided herein, no Member shall in any event have any
personal liabilities or obligations under this Agreement and each Member's liabilities and
obligations shall be limited solely to its interest in the Company. .......................................25

15.13    Counterparts. .........................................................................................25

15.14    Conduct of the Parties. No conduct or course of action undertaken or performed by
the parties shall have the effect of, or be deemed to have the effect of, modifying, altering or
amending the terms, covenants and conditions of this Agreement. Failure of any party to
exercise any power or right given hereunder or to insist upon strict compliance with the terms
hereof shall not be, or be deemed to be, a waiver of such party's right to demand exact
compliance with the terms of this Agreement. .......................................................25

15.15    Amendments. .........................................................................................25

15.16    Exhibits. ................................................................................................26

15.17    Severability. ..........................................................................................26

15.18    Qualification in Other States. ................................................................26

15.19    Forum. ...................................................................................................26

15.20    No Third Party Beneficiaries. ................................................................26

15.21    Reporting Person. .................................................................................26

15.22    Confidentiality; Press Releases. ............................................................26

15.23    Representations of Prime Member. ........................................................26

15.24    Representations of Wertman Member. ....................................................27
....................................................................................................................27

## Schedules and Exhibits

Schedule 1    Capital Contributions, Capital Accounts and Percentage Interests

Exhibit A    Legal Description

# AMENDED AND RESTATED OPERATING AGREEMENT
## OF
### 243RD STREET BRONX R&R LLC

THIS AMENDED AND RESTATED OPERATING AGREEMENT OF 243RD STREET BRONX R&R LLC (this "Agreement") is entered into and shall be effective as of September __, 2004, by and between PRIME RESIDENTIAL BRONX R&R II, L.L.C., a Delaware limited liability company ("Prime Member"), and AV 243 LLC, a New York limited liability company ("Wertman Member"), pursuant to the provisions of the Act (as hereinafter defined). Prime Member and Wertman Member are sometimes referred to herein, collectively, as the "Members" and individually as a "Member."

## R E C I T A L S

WHEREAS, 243rd Street Bronx R&R LLC (the "Company") is a Delaware limited liability company existing pursuant to that certain Certificate of Formation dated as of August __, 2004 and filed with the Secretary of State of the State of Delaware on August __, 2004; and

WHEREAS, the Company is authorized to do business in the State of New York; and

WHEREAS, the Company is the fee owner of the Premises (as hereinafter defined), which has the street addresses of 708 and 740 East 243rd Street, Bronx, New York;

WHEREAS, as the sole member of the Company, Prime Member entered into a certain Operating Agreement of the Company dated as of August __, 2004 (the "Original Operating Agreement"); and

WHEREAS, pursuant to a certain LLC Interest Purchase Agreement dated as of April __, 2004, Wertman Member has agreed to acquire a forty-nine percent (49.00%) membership interest in the Company from Prime Member (such acquisition, the "Acquisition"); and

WHEREAS, in light of Prime Member's no longer being the sole member of the Company, Wertman Member's becoming a member of the Company, and a guaranty and/or other security being provided by certain principals of Wertman Member to Lender (as hereinafter defined), the Members desire to amend and restate the Original Operating Agreement in its entirety as hereinafter set forth.

NOW, THEREFORE, in order to carry out their intent as expressed above and in consideration of the mutual agreements and covenants hereinafter contained, the Members hereby covenant and agree as follows:

# ARTICLE 1
## DEFINITIONS

1.1 _Definitions._ The following terms shall have the following meanings when used herein, it being acknowledged that other words used in this Agreement are defined elsewhere in this Agreement:

_Acquisition._ As described in the Recitals to this Agreement.

_Act._ The Delaware Limited Liability Company Act.

_Additional Capital._ For a Member, the sum of all Additional Capital Contributions made by such Member under this Agreement.

_Additional Capital Contribution._ For a Member, any contribution of cash or property by such Member to the Company other than a Loan by such Member or such Member's Initial Capital Contribution.

_Affiliate._ An "Affiliate" of a Person is any Person which, directly or indirectly, controls, is controlled by or is under common control with, such Person. The term "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used with respect to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or by contract or otherwise.

_Agreement._ As described in the preamble hereto.

_Appraisal Notice._ As described in Section 12.2.

_Business Day._ Any weekday that is not an official holiday in the City or State of New York.

_Call Notice._ As described in Section 10.6.

_Capital Account._ As described in Section 7.9.

_Capital Contribution._ For each Member, the aggregate of all sums contributed to the Company by such Member pursuant to Article 4 hereof other than as a Loan, including such Member's Initial Capital Contribution

_Code._ The Internal Revenue Code of 1986, as amended from time to time, and any successor thereto.

_Company._ As described in the Recitals to this Agreement.

_Defaulting Member._ As described in Section 12.1.

_Effective Date._ The date this Agreement is signed by all the Members.

unrestored loss of Company property or any part thereof or interest therein by casualty, failure of title or otherwise.

Majority of the Executive Committee. A majority in number of members of the Executive Committee then entitled to vote.

Manager. Wertman Member or any successor manager (within the meaning of the Act) as shall be appointed by the affirmative vote or written consent of a Majority of the Executive Committee.

Managing Member. Wertman Member or any successor as shall be appointed by the affirmative vote or written consent of a Majority of the Executive Committee.

Members. Prime Member and Wertman Member, collectively, and either of them when the reference is singular, and their respective permitted successors in interest and permitted assigns.

New Debt. As described in Section 4.5.

Operating Cash Flow. As described in Section 9.2.

Operating Return. As described in Section 9.2.

Percentage Interest. As described in Section 9.1.

Permits. Collectively, any and all approvals, orders, franchises, licenses, permits, registrations, certificates, qualifications, consents, authorizations, orders, variances, determinations, filings and declarations required by any Governmental Authority or other party, including compliance with applicable rent stabilization and/or rent control statutes, Section 8 requirements, Department of Social Services and Division of Housing and Community Renewal requirements, applicable health codes, applicable environmental requirements (including oil storage permits and approvals and lead paint disclosure and other compliance) and other similar provisions, or pursuant to any agreement affecting the Premises or by which Wertman Member or the Company is bound, necessary to own, develop, improve or operate the Premises for its current and intended use, including for the ownership or operation of the Improvements.

Person. Any individual or entity, including a partnership, corporation, limited liability company, association or trust.

Personalty. Collectively, any and all personal property and fixtures owned by the Company and at any time attached to, located in or on, or used in connection with, the maintenance and operation of the Improvements, including all mechanical, electrical, lighting and plumbing systems, fixtures and equipment, all ventilating, air conditioning and heating systems, fixtures and equipment, all water and power systems and engines, boilers, generators, furnaces, motors, landscaping and sprinkler systems and equipment, all furniture, furnishings, appliances, supplies and other personal property (tangible or intangible) of every nature and description, all maintenance equipment, tools and supplies, and all master keys, office keys and other keys used in connection with the Premises.

Electing Member. As described in Section 12.2.

Entire Interest. A Member's entire interest in the Company.

Executive Committee. As described in Section 6.1.

Extraordinary Cash Flow. As described in Section 9.2.

Fair Market Value. As described in Section 12.2.

Governmental Authority. Any governmental or quasi-governmental authority or official, including any federal, state, territorial, county, district, municipal or other governmental or quasi-governmental agency, board, branch, bureau, commission, court, department, other instrumentality, political unit, subdivision or official, whether domestic or foreign.

Improvements. The improvements on the Land and appurtenances, betterments and additions thereto and replacements thereof and all auxiliary amenities and facilities used in connection with the Premises.

Initial Capital Contribution. As described in Section 4.1.

Land. That certain land located in the County of Bronx, City and State of New York, as more particularly described in Exhibit A hereto.

Law. All federal, state and local laws, ordinances, statutes, rules and regulations, including zoning and permitting laws and codes, building codes, environmental and land use regulations and persons with disabilities requirements and interpretations of the foregoing by any Governmental Authority.

Lender. New York Community Bank or any other lender providing mortgage financing to the Company secured by the Premises.

Liquidating Member. The Member in sole charge of winding up the Company and having the powers described in Section 12.2.

List. As described in Section 12.2.

Loan. Any loan made by any Member to the Company as permitted under this Agreement inclusive of New Debt (as defined in this Agreement).

Major Capital Event. One (1) or more of the following. (i) sale of all or any part of or interest in Company property (including the Premises), exclusive of sales or other dispositions of tangible personal property in the ordinary course of business, (ii) placement and funding of any indebtedness of the Company secured by some or all of its assets with respect to borrowed money, excluding short term borrowing in the ordinary course of business, (iii) condemnation of all or any material part of or interest in the Premises through the exercise of the power of eminent domain or any conveyance of all or any material part of or interest in the Premises in lieu thereof and (iv) any

Premises. Collectively, the Land, the Improvements and the Personalty. All references to the "Premises" shall be deemed to mean all or any portion thereof.

Prime Member. As described in the preamble hereto, together with such party's permitted successors in interest and permitted assigns..

Regulations or Treasury Regulations. The Income Tax Regulations, including Temporary Regulations, promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

TMP. As described in Section 7.6.

Triggering Member. As described in Section 11.1.

Unreturned Additional Capital. As described in Section 9.2.

Unreturned Initial Capital. As described in Section 9.2.

Wertman Member. As described in the preamble hereto, together with such party's permitted successors in interest and permitted assigns.

The definitions in this Section 1.1 shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation."

1.2        Exhibits. The schedules and exhibits to this Agreement are incorporated herein by reference as if fully set forth herein.

## ARTICLE 2
## THE COMPANY

2.1        Continuation of Limited Liability Company. The Members hereby agree to continue the Company as a limited liability company under and pursuant to the provisions of the Act. The terms and provisions hereof will be construed and interpreted in accordance with the Act.

2.2        Name of Company. The name of the Company shall continue to be "243rd Street Bronx R&R LLC". All business of the Company shall be conducted under such name or under such variations thereof as a Majority of the Executive Committee deems necessary or appropriate. A Majority of the Executive Committee shall have the power to change the name of the Company at any time.

2.3        Purpose of Company. The purpose of the Company is to carry on the business of owning, operating, managing, improving, repairing, rehabilitating, constructing, renting, mortgaging, refinancing, selling, conveying and otherwise dealing with the Premises or any part thereof and all activities reasonably related thereto. Except as permitted by this Section or as approved or ratified by a Majority of the Executive Committee, the Company shall not engage in any other business other than the purchase of additional properties through future acquisitions in

accordance with this Agreement (whereupon each such property shall become and be a Property hereunder). In furtherance of the foregoing purposes, but expressly subject to the other provisions of this Agreement, the Company is empowered to enter into contracts containing agreements to arbitrate disputes to the extent such contracts are approved by a Majority of the Executive Committee. The Company is authorized to take any legal measures which will assist it in accomplishing its purpose or benefit the Company.

2.4      Principal and Registered Office.  The principal office of the Company shall be c/o Lev Management, 26 Broadway, New York, New York 10004 or such other place as a Majority of the Executive Committee may from time to time determine.  The registered address of the Company shall be c/o Lev Management, 26 Broadway, New York, New York 10004.  The registered agent of the Company at such address shall be Corporation Service Company.  A Majority of the Executive Committee may elect to change the Company's registered agent and the Company's registered and principal offices by complying with the relevant requirements of the Act.

2.5      Further Assurances.  The parties hereto will execute whatever certificates and documents, and will file, record and publish such certificates and documents, which are required to operate a limited liability company under the laws of the State of Delaware and the state in which the Premises is located.  The parties hereto will also execute and file, record and publish, such certificates and documents as they, upon advice of counsel, may deem necessary or appropriate to comply with other applicable Law governing the operation of a limited liability company.

2.6      Expenses of Formation.  The Company shall be responsible for all legal fees associated with the continuation of the Company, the operating agreement negotiations as well as the negotiations of the management and leasing agreements, and the financing of the Premises; and all matters relating to any of the foregoing, except as this Agreement may otherwise provide, and except that in no event shall the Company incur any (i) brokerage, financial advisor or other similar consultants' fee or other charge in connection with the continuation of the Company or (ii) costs incurred by counsel or other service providers to the Company for periods prior to the date of this Agreement.

2.7      No Individual Authority.  Except as otherwise specifically set forth herein, none of the Members, acting collectively or alone, shall have any authority to act for, undertake or assume any obligations or responsibility on behalf of the Company or any of the other Members.

2.8      No Restrictions.  Nothing contained in this Agreement shall be construed so as to prohibit any Member or any firm or corporation controlled by or controlling such Member or any other Affiliate of a Member from owning, operating or investing in any real estate or real estate development not owned or operated by the Company, wherever located.  Each Member agrees that the other Members, any Affiliate or any director, officer, employee, partner or other Person related to such other Members may engage in or possess an interest in another business venture or ventures of any nature and description, independently or with others, including the ownership, financing, leasing, operation, management, syndication, brokerage and development of real property, and neither the Company nor the Members shall have any rights by virtue of this Agreement in and to such independent ventures or to the income or profits derived therefrom.

2.9     <u>Neither Responsible for Other's Commitments</u>. Neither the Members nor the Company shall be responsible or liable for any indebtedness or obligation of a particular Member incurred either before or after the execution of this Agreement, except as to joint responsibilities, liabilities, debts or obligations incurred pursuant to the terms of this Agreement, and each Member indemnifies and agrees to hold the other Members and the Company harmless from such personal obligations and debts, except as provided above in this Section. Furthermore, except as may be expressly stated herein, no Member shall be responsible or liable for any indebtedness or obligation of the Company.

2.10    <u>Affiliates</u>. Any and all activities to be performed by Wertman Member hereunder may be performed by officers or employees of one or more Affiliates of Wertman Member, and all actions taken by such persons on behalf of Wertman Member in connection with this Agreement shall be binding upon Wertman Member.

2.11    <u>Operations in Accordance With the Act; Ownership</u>. Except as expressly set forth in this Agreement to the contrary, the rights and obligations of the Members and the administration, operation and termination of the Company shall be governed by the Act, as it may be amended. The interest of each Member in the Company shall be personal property for all purposes. All real and other property owned by the Company shall be deemed owned by the Company as a company, and no Member, individually, shall have any ownership interest in such property.

ARTICLE 3<br>TERM

3.1     <u>Term</u>. Unless otherwise terminated or extended by the affirmative vote or written consent of a Majority of the Executive Committee (but subject to Section 3.2), the term of the Company shall continue until the first (1st) to occur of the following:

(a)     the forty-ninth (49th) anniversary of the date of this Agreement;

(b)     The sale or other disposition of all or substantially all of the Premises, other than to a nominee or trustee of the Company for financial or other business purposes;

(c)     Dissolution of the Company pursuant to the express provisions of this Agreement; or

(d)     The occurrence of any event or circumstance that causes the dissolution of the Company under the Act.

3.2     <u>No Termination</u>. Notwithstanding any provision of this Agreement to the contrary, the Executive Committee may not vote to terminate this Agreement, or consent to the termination of this Agreement, at any time prior to the date that is eighty-two (82) months after the Effective Date. At any time prior to the date that is eighty-two (82) months after the Effective Date, this Agreement may be terminated only by the unanimous vote of all Members.

# ARTICLE 4
## CAPITAL CONTRIBUTIONS OF THE MEMBERS

4.1    _Initial Capital Contributions of the Members_.  Upon execution of this Agreement, the Members' initial capital contributions to the Company of cash and property shall be deemed to be as set forth on Schedule 1 hereto under the heading Capital Contributions (each, an "Initial Capital Contribution").

4.2    _No Other Required Contributions_.  Except as expressly required by this Article, no Member shall have any obligation to make any contribution to the Company nor to advance any funds thereto.

4.3    _No Interest Payable_.  No Member shall receive any interest on any of its Capital Contribution (except as provided in Section 4.5).

4.4    _No Withdrawals_.  No Capital Contribution shall be withdrawn, except as hereinafter expressly provided.

4.5    _Additional Contributions_.  If a Majority of the Executive Committee determines in its good faith business judgment that the Company is in need of additional funding, Wertman Member shall have the right, without obligation, to make such funding.  All such amounts as funded by Wertman Member shall, at Wertman Member's request, either be (a) a Loan ("New Debt") which shall bear interest at a rate selected by Wertman Member (but not greater than the maximum amount permitted by Law) until repaid in full or (b) an Additional Capital Contribution.  In no event shall Prime Member have the right or obligation to make any further fundings in respect of the Company, whether as Loans or Additional Capital Contributions, unless the Executive Committee unanimously approves such funding.

4.6    _Percentage Interest_.  In no event shall any Member's Percentage Interest be modified by reason of any funding of Additional Capital Contributions, New Debt or otherwise unless agreed to by all of the Members.

# ARTICLE 5
## LOANS BY MEMBERS

5.1    _Loans_.  No Member shall be obligated to lend any money to the Company.

5.2    _Payments of Loans_.  Loans shall be repaid in accordance with the provisions of Section 9.3.

# ARTICLE 6
## MANAGEMENT OF THE COMPANY

6.1    _Management; Executive Committee_.  Subject to the provisions of this Agreement requiring the unanimous consent of all Members, the Members, through the participation of their appointees on the "Executive Committee," shall have responsibility for the management, supervision and control of the Company, including all aspects of its activities, operations and business and all decisions to be made by or on behalf of the Company.  The

Executive Committee shall consist of a committee having three (3) members, two (2) of whom shall be appointed by Wertman Member and one (1) of whom shall be appointed by Prime Member. Notwithstanding anything to the contrary contained in this Agreement, (a) Prime Member hereby appoints Richard Aidekman as its sole and exclusive agent and representative with the power and authority to act on its behalf with regard to the affairs of the Company and (b) Wertman Member hereby appoints Charles Wertman and David Simon as its sole and exclusive agents and representatives with the power and authority to act on its behalf with regard to the affairs of the Company. Each of Prime Member and Wertman Member shall have the right to remove its respective appointees from the Executive Committee and to replace them with other appointees of its choosing from time to time. Additionally, Wertman Member shall have the right at any time and from time to time to designate one (1) of its appointees to vote on behalf of both of its appointees. The Executive Committee shall be responsible for the establishment of all policy and operating procedures respecting the business affairs of the Company and all of its activities and shall have the authority to make all decisions for or affecting, and take or fail to take all actions on behalf of, the Company, including without limitation entering into management agreements with respect to the Premises so long as the same are reasonable and customary. Except as expressly provided for in Section 6.5 or as otherwise expressly delegated to a Member, all Company action is taken upon the consent of a Majority of the Executive Committee. Only those Company actions identified in Section 6.5 shall require the unanimous consent of the Executive Committee. If any provision of this Agreement requires an act or decision of "the Members," such act or decision shall, except as otherwise specifically set forth herein, be undertaken or made with the consent of a Majority of the Executive Committee and, if such consent is obtained, all Members shall automatically and irrevocably be deemed to have consented to such act or decision. Any loan of the Company shall be non-recourse to Prime Member unless expressly approved by Prime Member or its Executive Committee appointee

Notwithstanding anything herein to the contrary, whether or not a meeting of the Executive Committee shall occur, any action which requires an approval by the Executive Committee may be confirmed or ratified by the requisite number of Executive Committee Members by a signed resolution.

All actions that may be taken by the Manager may at the direction of a Majority of the Executive Board be performed by the Managing Member

6.2    Bank Accounts. The Company will maintain separate bank accounts in such banks as a Majority of the Executive Committee may designate exclusively for the deposit and disbursement of all funds of the Company. All funds of the Company shall be promptly deposited in such accounts. A Majority of the Executive Committee from time to time shall authorize signatories for such accounts.

6.3    Reimbursement for Costs and Expenses. A Majority of the Executive Committee will fix the amounts, if any, by which the Company will reimburse each Member for any costs and expenses incurred by such Member on behalf and for the benefit of the Company. No overhead or general administrative expenses of any Person other than the Company itself shall be allocated to the operation of the Company, and no salaries, fees, commissions or other compensations shall be paid by the Company to any Affiliate of any Member or to any partner, officer, employee or Executive Committee appointee of either Member or its Affiliates for any

J0011594Bv4

services rendered to the Company, except as may be expressly provided herein or by other written agreement approved by a Majority of the Executive Committee.

6.4    _Fidelity Bonds and Insurance._  At the direction of the Executive Committee and in its discretion, the Company will obtain fidelity bonds with reputable surety companies, covering all Persons having access to the Company's funds and indemnifying the Company against loss resulting from fraud, theft, dishonesty and other wrongful acts of such Persons. The Company shall carry or cause to be carried on its behalf in companies acceptable to a Majority of the Executive Committee all property, liability and worker's compensation insurance as shall be required under applicable mortgages, leases, agreements and other instruments and statutes or as may be required by a Majority of the Executive Committee, but never in amounts less than those agreed upon by a Majority of the Executive Committee.

6.5    _Matters Requiring Unanimous Consent._  The only matters requiring the unanimous written consent of the Executive Committee shall be as follows: (a) a modification, alteration or amendment to this Agreement if such modification, alteration or amendment would have a material and adverse impact on the rights of Prime Member hereunder or (b) any action which would increase or create third-party recourse liability to Prime Member.

ARTICLE 7
BOOKS AND RECORDS, AUDITS, TAXES, ETC.

7.1    _Books; Statements._  In addition to the establishment and maintenance of Capital Accounts pursuant to Section 7.9 and the preparation of such financial documentation as shall be expressly required by this Article 7, the Company shall establish and maintain such other books and records as a Majority of the Executive Committee shall determine. The financial statements of the Company shall be prepared in accordance with generally accepted accounting principles consistently applied. The Company shall prepare and timely provide to each Member all K-1's and other records as may be reasonably necessary in order for such Member to timely and accurately file its Federal and state tax returns. Notwithstanding anything to the contrary contained in this Agreement, for so long as Wertman Member remains a Member, Wertman Member shall be responsible for the preparation of and shall prepare, or cause to be prepared, all of the financial materials contemplated by this Section 7.1 as and when required hereunder. In consideration for the timely preparation of all such reports in accordance with this Section 7.1, Wertman Member (or its designee) shall be compensated reasonable amounts as determined by a Majority of the Executive Committee. All third-party costs incurred in connection with the preparation of such financial statements, upon the approval of a Majority of the Executive Committee, which approval shall not be unreasonably withheld or delayed, shall be costs of the Company, and not of Wertman Member.

7.2    _Where Maintained._  The books, accounts and records of the Company shall be at all times maintained at its principal office.

7.3    _Tax Returns._  The Company shall be treated and shall file its tax returns as a partnership for Federal, state, municipal and other governmental income tax and other tax purposes. The Company shall prepare or cause to be prepared, on a cash basis, all Federal, state and municipal partnership tax returns required to be filed. Unless otherwise determined by a

(ii)    _Deductions_. There shall be subtracted from such net income or added to such loss (i) the amount of payments made on account of principal upon mortgage loans secured by Company property, including for such purpose, but without double counting, mortgage loans secured by the Premises, and upon any other loans made to the Company whether made directly or indirectly, excluding Loans by Members, (ii) funds disbursed for capital expenditures or any other similar expenses that are required to be capitalized, (iii) the proceeds of a Major Capital Event to the extent included in net income or loss, and (iv) any amount to establish or increase cash reserves pursuant to a determination of a Majority of the Executive Committee that such reserve and the amount thereof is necessary or appropriate in order to retain sufficient working capital in the Company or to properly reserve for other actual or contingent obligations of the Company or improvements (including apartment renovations) to the Premises.

(b)    "_Extraordinary Cash Flow_" shall mean the net cash receipts of the Company from a Major Capital Event as reduced by (i) the costs and expenses incurred by the Company in connection with such Major Capital Event, including title, survey, appraisal, recording, escrow, transfer tax and similar costs, brokerage expense and attorneys' and other professional fees, and amounts spent on reconstruction or repair, (ii) funds deposited in reserves pursuant to a determination of a Majority of the Executive Committee (including for such purposes, reserves required to be maintained by lenders under loan documents evidencing mortgage indebtedness secured by all or any portion of the Premises) that each such reserve and the amount thereof is required or appropriate to provide for actual or contingent obligations of the Company or improvements (including apartment renovations) to the Premises, and (iii) funds applied to pay or prepay any indebtedness of the Company (including Loans from Members) in connection with such Major Capital Event. To the extent that any amount received pursuant to a Major Capital Event has been set aside as a reserve for expenses and a Majority of the Executive Committee thereafter determines that all or a portion of such amount is not required for such purposes, such amount shall be included in Operating Cash Flow when a Majority of the Executive Committee determines that it is no longer necessary or appropriate to retain such amount as a reserve. Any non-cash consideration received pursuant to a Major Capital Event, including promissory notes or deferred payment obligations, shall only be deemed to be included in Extraordinary Cash Flow when received in cash by the Company; provided, however, that, in the discretion of a Majority of the Executive Committee, such non-cash assets may be distributed in kind to the Members, in lieu of cash, treating the fair market value of such non-cash assets at the date of distribution as Extraordinary Cash Flow.

(c)    "_Operating Return_" shall mean, for Wertman Member, an annual cumulative preferred return equal to twenty-five percent (25.0%) per annum on such Wertman Member Member's Unreturned Initial Capital and Unreturned Additional Capital. If and to the extent Operating Return is not paid, said amount shall accrue and be payable from first available Operating Cash Flow and Extraordinary Cash Flow as provided for in this Article 9. Further, accrued and unpaid Operating Return shall be applied against the purchase price of Prime Member's Entire Interest pursuant to Section 10.7.

(d)    "_Unreturned Initial Capital_" shall mean, for each Member, the sum of such Member's Initial Capital Contribution reduced by any distributions in repayment thereof pursuant to Section 9.3.

Majority of the Executive Committee, such tax returns shall be prepared by independent certified public accountants selected pursuant to Section 7.6, who shall sign such returns as preparers. The Company shall file all returns by such dates as may be required by Law (taking into account all applicable extensions). Each Member shall notify the other Member(s) upon receipt of any notice of tax examination of the Company by Federal, state or local authorities.

    7.4        <u>Tax Matters Partner</u>. The Manager shall be the tax matters partner ("TMP"), as defined in Section 6231(a)(7) of the Code, with respect to operations conducted by the Company. The TMP shall comply with the requirements of Section 6221 through 6232 of the Code. The TMP shall have the authority to select and appoint independent certified public accountants to prepare tax returns and annual audited financial statements for the Company, the expense of which shall be borne by the Company.

    7.5        <u>Tax Policy</u>. The Company shall make any and all tax accounting and reporting elections and adopt such procedures as a Majority of the Executive Committee, in its reasonable judgment, may determine.

    7.6        <u>Section 754 Election</u>. At the request of a Member, the Company shall make and file a timely election under Section 754 of the Code (and a corresponding election under applicable state or local law) in the event of a transfer of an interest in the Company permitted hereunder or the distribution of property to a Member. Any adjustments resulting from such an election shall be reflected in the Capital Accounts of the Members in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv)(m). Any Member or transferee first requesting an election hereunder shall reimburse to the Company the reasonable out-of-pocket expenses incurred by the Company in connection with such election including any legal or accountants' fees. Thereafter, each transferee shall reimburse such expenses with respect to adjustments under Section 743 of the Code in the proportion which the interest of each transferee bears to the sum of the interests of all transferees.

    7.7        <u>Capital Accounts</u>.

    (a)   There shall be established on the books of the Company a single capital account (the "Capital Account") for each Member. As of the Effective Date, the Members agree and acknowledge that the balance of each Member's Capital Account shall be as set forth on <u>Schedule 1</u> attached hereto.

    (b)   The Capital Account of each Member shall be maintained for each Member in accordance with the rules of Regulations Section 1.704-1(b)(2)(iv), and this Section 7.9 shall be interpreted and applied in a manner consistent with said Section of the Regulations. The Company may adjust the Capital Accounts of its Members to reflect revaluations of the Company property whenever the adjustment would be permitted under Regulations Section 1.704-1(b)(2)(iv)(f). In the event that the Capital Accounts of the Members are so adjusted, (i) the Capital Accounts of the Members shall be adjusted in accordance with Regulations Section 1.704-1(b)(2)(iv)(g) for allocations of depreciation, depletion, amortization and gain or loss, as computed for book purposes, with respect to such property, and (ii) the Members' distributive shares of depreciation, depletion, amortization and gain or loss, as computed for tax purposes, with respect to such

property shall be determined so as to take account of the variation between the adjusted tax basis and book value of such property in the same manner as under Section 704(c) of the Code.

(c)    In the event that Code Section 704(c) applies to Company property, the Capital Accounts of the Members shall be adjusted in accordance with Regulations Section 1.704-1(b)(2)(iv)(g) for allocations of depreciation, depletion, amortization and gain and loss, as computed for book purposes, with respect to such property.

(d)    Notwithstanding any provision contained herein to the contrary, no Member shall be required to restore any negative balance in its Capital Account.

(e)    The Capital Account of a Member shall carry over to the transferee of the Member to the extent of the interest assigned.

## ARTICLE 8
## FISCAL YEAR

8.1    <u>Calendar Year</u>. The fiscal year of the Company shall be the calendar year, unless (subject to obtaining consent of the Internal Revenue Service) a Majority of the Executive Committee otherwise require.

## ARTICLE 9
## DISTRIBUTIONS AND ALLOCATIONS

9.1    <u>Percentage Interests in Company</u>. The initial "Percentage Interest" of each of the Members shall be as set forth as Schedule 1 attached hereto. The Manager shall have the right to complete and update Schedule 1 to reflect the Members' respective Percentage Interests as the same may be adjusted from time to time in accordance with this Agreement.

9.2    <u>Certain Definitions</u>. The following terms shall have the following meanings when used herein:

(a)    "<u>Operating Cash Flow</u>" shall mean the net income or loss of the Company for the fiscal period in question, as determined in accordance with generally accepted accounting principles, consistently applied and adjusted as follows or as otherwise determined by a Majority of the Executive Committee:

(i)    <u>Additions</u>. There shall be added to such net income or subtracted from such loss (i) the amount charged for depreciation, amortization or any other deduction not involving a cash expenditure, (ii) the amount of Capital Contributions or Loans pursuant to Section 5.1, (iii) the costs and expenses attributable to a Major Capital Event to the extent deducted in the determination of net income or loss and (iv) any amount by which cash reserves previously established by a Majority of the Executive Committee from Operating Cash Flow prior to the applicable accounting period in order to retain sufficient working capital in the Company or to properly reserve for actual or contingent obligations of the Company or improvements (including apartment renovations) to the Premises have been reduced (other than through the payment of expenses).

(iv)     Fourth, to Prime Member an amount equal to Prime Member's Unreturned Initial Capital and Unreturned Additional Capital; and

(v)     Thereafter, to Wertman Member and Prime Member in accordance with their respective Percentage Interests.

Notwithstanding the foregoing, if the Company is being liquidated and dissolved as a result of the Major Capital Event which generated such Extraordinary Cash Flow, the assets of the Company (including such Extraordinary Cash Flow) shall be distributed as provided in Article 13 hereof.

9.4          Intentionally Omitted.

9.5          Allocation of Gross Income; Profits and Losses For Capital Account Purposes. In general, allocations to the Members under this Agreement shall be made in compliance with the requirements of Section 704(b) of the Code and the Regulations promulgated thereunder in a manner that reflects the distribution provisions set forth in Section 9.3. Specifically, all items of Company income, gain, loss and deduction as determined for book purposes shall be allocated among the Members and credited or debited to their respective Capital Accounts in accordance with Regulations Section 1.704-1(b)(2)(iv) so as to ensure to the maximum extent possible (i) that such allocations satisfy the economic effect equivalence test of Regulations Section 1.704-1(b)(2)(ii)(i) (as provided hereinafter), and (ii) that all allocations of items that cannot have economic effect (including credits and nonrecourse deductions) are allocated to the Members in accordance with the Members' interests in the Company, which, unless otherwise required by Code Section 704(b) and the Regulations promulgated thereunder, shall be in proportion to their Percentage Interests. To the extent possible, items that can have economic effect shall be allocated in such a manner that the balance of each Member's Capital Account at the end of any taxable year (increased by the sum of (a) such Member's "share of partnership minimum gain" as defined in Regulations Section 1.704-2(g)(1) and (b) such Member's share of "partner nonrecourse debt minimum gain" as defined in Regulations Section 1.704-2(i)(5)) would be positive to the extent of the amount of cash that such Member would receive (or would be negative to the extent of the amount of cash that such Member would be required to contribute to the Company) if the Company sold all of its property for an amount of cash equal to the book value (as determined pursuant to Regulations Section 1.704-1(b)(2)(iv)) of such property (reduced, but not below zero, by the amount of nonrecourse debt to which such property is subject) and all of the cash of the Company remaining after payment of all liabilities (other than nonrecourse liabilities) of the Company were distributed in liquidation immediately following the end of such taxable year in accordance with Section 9.3(b).

9.6          Allocations of Gross Income; Profits and Losses for Tax Purposes.

(a)     For Federal income tax purposes, each item of income, gain, loss and deduction of the Company shall be allocated among the Members in the same manner as its correlative item of "book" income, gain, loss or deduction has been allocated pursuant to Section 9.5 hereof, except to the extent otherwise required by Section 704 of the Code and the Regulations thereunder.

(e)  "Unreturned Additional Capital" shall mean, for each Member, such Member's Additional Capital, reduced by any distributions in repayment thereof pursuant to Section 9.3.

9.3     Cash Flow Distributions.

(a)  Operating Cash Flow.  The Company shall distribute Operating Cash Flow, for each month during the term of the Company in which there is Operating Cash Flow based on the Company's estimate of Operating Cash Flow for the current fiscal year, which estimate shall be prepared by the Manager (such distribution to be made within twenty-eight (28) days after the end of each such month), to the Members as follows:

(i)  First, to the Members in amounts necessary to repay (A) accrued (compounded annually) and current interest on Loans, and thereafter (B) the outstanding principal balance payable on Loans, which distributions shall be made to the Members in proportion to the amounts owed under any then outstanding Loans if more than one (1) Member has outstanding Loans;

(ii)  Second, to Wertman Member, an amount equal to the Operating Return payable to Wertman Member for the current month and any unpaid Operating Return for all prior months of the current fiscal year and all prior fiscal years of the Company;

(iii)  Third, to Wertman Member, an amount equal to the sum of Wertman Member's Unreturned Initial Capital and Unreturned Additional Capital;

(iv)  Fourth, to Prime Member an amount equal to Prime Member's Unreturned Initial Capital and Unreturned Additional Capital; and

(v)  Thereafter, pro rata to Wertman Member and Prime Member in accordance with their respective Percentage Interests.

(b)  Extraordinary Cash Flow.  The Company shall distribute Extraordinary Cash Flow following completion of a Major Capital Event to the Members as follows:

(i)  First, to the Members, in amounts necessary to repay (A) accrued (compounded annually) and current interest on Loans, and thereafter (B) the outstanding principal balance payable on Loans, which shall be payable as provided in such Section, which distributions shall be made to the Members in proportion to the amounts owed under any then outstanding Loans if more than one (1) Member has outstanding Loans;

(ii)  Second, to Wertman Member, an amount equal to the Operating Return payable to Wertman Member for the current month and any unpaid Operating Return for all prior months of the current fiscal year and all prior fiscal years of the Company;

(iii)  Third, to Wertman Member, an amount equal to the sum of Wertman Member's Unreturned Initial Capital and Unreturned Additional Capital;

(b)   The Executive Committee shall have the authority to elect the method(s) to be used by the Company for allocating items of income, gain, and expense as required by Section 704(c) of the Code and the Regulations thereunder, and such election(s) shall be binding on all Members.

## ARTICLE 10
## ASSIGNMENT AND OFFER TO PURCHASE

10.1     Transfers.  Except as expressly set forth in Section 10.6, each Member, or any assignee or successor in interest of a Member shall not sell, assign, give, pledge, hypothecate, encumber or otherwise transfer its interest in the Company, in whole or in part, until the date which is forty-one (41) months after the date of this Agreement and thereafter only with the prior written consent of Manager (which shall not be unreasonably withheld, delayed or conditioned).

10.2     Intentionally Omitted.

10.3     Assumption by Assignee.  Any assignment of an Entire Interest in the Company permitted under this Article 10 shall be in writing, and shall be an assignment and transfer of all of the assignor's rights and obligations hereunder, and the assignee shall expressly agree in writing to be bound by all of the terms of this Agreement and assume and agree to perform all of the assignor's agreements and obligations existing or arising at the time of and subsequent to such assignment.  Upon any such permitted assignment of the assignor's Entire Interest, and after such assumption, the assignor shall be relieved of its agreements and obligations hereunder arising after such assignment and the assignee shall become a Member in place of the assignor.  An executed counterpart of each such assignment of a Entire Interest in the Company and assumption of a Member's obligations shall be delivered to each Member and to the Company.  The assignee shall pay all expenses incurred by the Company in admitting the assignee as a Member.  Except as otherwise expressly provided herein, no permitted assignment shall terminate the Company.  As a condition to any assignment of an Entire Interest, the selling Member(s) shall obtain such consents as may be required from third parties, if any, or waivers thereof.  The other Members shall use reasonable efforts to cooperate with the selling Member(s) in obtaining such consents or waivers.

10.4     Amendment of Certificate of Formation.  If an assignment of an Entire Interest in the Company shall take place pursuant to the provisions of this Article 10, then unless the Company is dissolved by such assignment, the continuing Members promptly thereafter shall cause to be filed, to the extent necessary, an amendment to the Company's Certificate of Formation with all applicable state authorities, together with any necessary amendments to the fictitious or assumed name(s) of the Company in order to reflect such change or take such similar action as may be required.

10.5     Other Assignments Void.  Except as otherwise provided in this Article 10, no sale, assignment, gift, pledge, hypothecation, encumbrance or other transfer by a Member of its Entire Interest in the Company, or in any part thereof, or in all or any part of the assets of the Company shall be permitted.  Any purported sale, assignment, gift, pledge, hypothecation, encumbrance or other transfer of a Member's Entire Interest in the Company not otherwise specifically permitted by this Article 10 shall be null and void and of no effect whatsoever.

10.6        Call Option.

(a)    Commencing on the date that is the earlier of (i) the date of any Major Capital Event occurring on or after the forty-one (41) month anniversary of the Effective Date and (ii) the eighty-two (82) month anniversary of the Effective Date, and at any time thereafter, Wertman Member shall have the right to make an offer to purchase Prime Member's Entire Interest for a purchase price determined in accordance with Section 10.7, which shall be payable in cash at the closing of any such transaction, by delivery of written notice (the "Call Notice") to the other in accordance with Section 14.1.

(b)    Upon delivery of a Call Notice, Prime Member shall be obligated to sell its Entire Interest to Wertman Member on the terms set forth herein.

(c)    The purchase and sale pursuant to Section 10.6(b) shall take place within sixty (60) days following the delivery of Call Notice pursuant to Section 10.6(a). The closing shall take place during normal business hours at the office of the Company.

10.7        Sales Pursuant to Call.  The following provisions shall be applicable to sales under Section 10.6, as applicable:

(a)    If, under the provisions of Section 10.6, a Call Notice is delivered to Prime Member, the purchase price payable by Wertman Member to Prime Member shall be determined as follows:

(i)    The amount of Prime Member's Unreturned Initial Capital and Unreturned Additional Capital; and

(ii)    Then subtracting the aggregate amount of any accrued and undistributed Operating Returns (i.e. any accrued and unpaid Operating Returns for Wertman Member) as of the date of the consummation of the sale and purchase of Prime Member's Entire Interest; however, in no event shall the purchase price be reduced below ten dollars ($10).

(b)    On payment of the purchase price for Prime Member's Entire Interest Wertman Member shall, at its option, either (i) obtain a release of Prime Member from all liability, direct or contingent, by all holders of all Company debts, obligations or claims against the Company for which Prime Member is or may be personally liable, except for any debts, obligations or claims which are fully insured by public liability insurer(s) acceptable to Prime Member, or (ii) cause all such debts, obligations or claims to be paid in full at the closing, or (iii) deliver to Prime Member an agreement in form and substance satisfactory to Prime Member to defend, indemnify and save Prime Member harmless from any actions, claims or loss arising from any debt, obligation or claim of the Company arising prior to date of sale.

(c)    Prime Member shall be entitled to its share of any distributions of Operating Cash Flow from the Company following the giving of the notice of election and until the closing.

(d)    At the closing of the sale of the Entire Interest of Prime Member, Prime Member shall execute an assignment of its interest in the Company, free and clear of all liens,

encumbrances and adverse claims, which assignment shall be in form acceptable to all of the Members (in their reasonable discretion) and such other instruments as Wertman Member shall reasonably require to assign the Entire Interest of Prime Member to Wertman Member or such entity as Wertman Member may designate. Prime Member shall be responsible for any New York State or New York City transfer taxes resulting from such closing, and shall upon Wertman Member's request execute and deliver an indemnity with respect to such obligation (which indemnity shall be in form and substance reasonably acceptable to Prime Member and Wertman Member, and shall not be subject to the provisions of the second sentence of Section 15.12 hereof). For any sale or transfer under this Article 10, Wertman Member may designate the assignee of the Entire Interest, which assignee need not be an Affiliate of Wertman Member.

(e)   It is the intent of the parties to this Agreement that the requirements or obligations, if any, of Prime Member to sell its Entire Interest to Wertman Member shall be enforceable by an action for specific performance of a contract relating to the purchase of real property or an interest therein. In the event that Prime Member shall have created or suffered any unauthorized liens, encumbrances or other adverse interests against either the Premises or Prime Member's interest in the Company, Wertman Member shall be entitled either to an action for specific performance to compel the selling Member to have such defects removed, in which case the closing shall be adjourned for such purpose, or, at the purchasing Member's option, to an appropriate offset against the purchase price, which offset shall include all reasonable costs associated with enforcement of this Section.

(f)   The purchase and sale of an Entire Interest will be structured to avoid, if possible, a termination of the Company for Federal tax purposes and/or under the Act.

## ARTICLE 11
## DISSOLUTION OR BANKRUPTCY OF A MEMBER

11.1      Dissolution or Merger.  If any Member (a "Triggering Member") shall be dissolved, or merged with or consolidated into another corporation, or if all or substantially all of its assets shall be sold, or transferred, then unless such dissolution, merger, consolidation, sale or transfer is expressly permitted under Article 10, such dissolution, merger, consolidation, sale or transfer shall be a dissolution of the Company, and the Manager shall be the Liquidating Member in the dissolution of the Company (unless the Manager shall be the Triggering Member).

11.2      Bankruptcy, etc.  In the event:

(a)   any Member shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or seek any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself under the present or any future Federal bankruptcy code or any other present or future applicable Federal, state, or other statute or law relative to bankruptcy, insolvency, or other relief for debtors, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator or liquidator of said Member or its interest in the Company (the term "acquiesce" includes but is not limited to the failure to file a petition or motion to vacate or discharge any order, judgment or decree providing for such appointment within ten (10) days after the appointment); or

(b)   a court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against any Member seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future Federal bankruptcy code or any other present or future applicable Federal, state or other statute or law relating to bankruptcy, insolvency, or other relief for debtors, and said Member shall acquiesce in the entry for such order, judgment or decree (the term "acquiesce" includes but is not limited to the failure to file a petition or motion to vacate or discharge such order, judgment or decree within ten (10) days after the entry of the order, judgment or decree) or such order, judgment or decree shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof, or any trustee, receiver, conservator or liquidator of said Member or of all or any substantial part of said Member's property or its interest in the Company shall be appointed without the consent or acquiescence of said Member and such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

(c)   any Member shall admit in writing its inability to pay its debts generally as they mature; or

(d)   any Member shall give notice to any governmental body of insolvency, or pending insolvency, or suspension or pending suspension of operations; or

(e)   any Member shall make a general assignment for the benefit of creditors or take any other similar action for the protection or benefit of creditors;

then such event shall cause the dissolution of the Company and the Manager shall be the Liquidating Member (unless the Manager shall be the cause of such dissolution).

11.3     _Reconstitution_.  Notwithstanding the provisions of Section 11.1 and 11.2, the remaining Members may, within ninety (90) days of any event described in this Article 11, agree by unanimous written consent to (1) continue the Company or (2) transfer the assets of the Company to a newly organized entity and accept ownership interests in such entity in exact proportion to their respective interests in the Company at the time of dissolution, provided that at the time the event described in this Article 11 occurs, the Company has at least one (1) continuing Member.  An appropriate amendment to or cancellation of the Certificate of Formation and all other filings required by law shall be made in accordance with any action taken pursuant to this Section 11.3.

## ARTICLE 12
## DISSOLUTION

12.1     _Winding Up by Members_.  Upon dissolution of the Company by expiration of the term hereof, by operation of law, by any provision of this Agreement or by agreement between the Members, the Company's business shall be wound up and all its assets distributed in liquidation.  In such dissolution, except as otherwise expressly provided in Articles 10 and 11, the Members shall be co-liquidating Members and shall continue to act through the Majority of the Executive Committee.  In such event the Members shall have rights acting through the Majority of the Executive Committee to wind up the Company and shall proceed to cause the Company's

property to be sold and to distribute the proceeds of sale as provided in Section 12.5. Except in respect of (i) all assets on which a single, non-severable mortgage or other lien will be in effect after such distribution, and (ii) any assets which the Members shall determine are not readily severable or distributable in kind, the Members, to the extent that liquidation of such assets is not required to fulfill the payments, if any, under subsections (a), (b), (c) and (d) of Section 12.5, shall, if they agree, have the right to distribute, in kind, all or a portion of the assets of the Company to the Members.

12.2     <u>Winding Up by Liquidating Member</u>.

(a)     In a dissolution pursuant to Articles 10 and 11, the Liquidating Member shall be as therein provided and such Liquidating Member shall have the right to:

(i)     Wind up the Company and cause the Company's assets to be sold and the proceeds of sale distributed as provided in Section 12.5; or

(ii)     Notwithstanding anything to the contrary contained in this Agreement, cause the assets of the Company to be appraised in accordance with Section 12.2(b) and at its option, purchase the Entire Interest of the other Members in accordance with Section 12.2(b).

(b)     (i) The Liquidating Member, within thirty (30) days after the commencement of the dissolution of the Company (such Member giving the notice being referred to herein as the "Electing Member"), may give notice (the "Appraisal Notice") to the other Members electing to have the Fair Market Value of the Company's assets determined by appraisal pursuant to Section 12.2(b)(ii). The fees and expenses of such appraisers shall be borne by the Company. The Electing Member shall have the option, by notice given to the other Members within thirty (30) days after receipt of the determination of Fair Market Value pursuant to Section 12.2(b)(ii), to purchase the other Members' Entire Interest at a price equal to the amount which would have been distributable to the other Members in accordance with the provisions of Section 9.3(b) and Section 12.5 if all of the Company's assets had been sold for an amount equal to such appraised value and any debts, liabilities and expenses which would have been payable by the Company pursuant to Section 12.5 out of the proceeds of such sale were deducted in determining the appraised value. Such option may be exercised by the Electing Member within forty-five (45) days after receipt of the determination of Fair Market Value pursuant to Section 12.2(b)(ii) by written notice to the other Members. If after the receipt of the determination of Fair Market Value pursuant to Section 12.2(b)(ii), the Electing Member elects not to exercise the option to purchase the other Members' Entire Interest pursuant to this Section, then the Electing Member shall have all of its rights under this Section 12.2 as if the Appraisal Notice had not been given.

(ii)     If the fair market value (the "Fair Market Value") of the assets of the Company is required for purposes of Section 12.2(b)(i), such Fair Market Value, if not otherwise agreed upon by the Members, shall be determined as set forth in this Section 12.2(b)(ii). All appraisers referred to herein shall be real estate appraisers which are members of the New York City Chapter of the American Institute of Real Estate

Appraisers for at least seven (7) years. As used herein, Fair Market Value is the fair market value of all the assets of the Company. Each Member shall select one (1) appraiser. In the event that either party fails to select an appraiser within thirty (30) days after notice of the exercise of an option or election requiring a valuation, then such party's appraiser shall be selected by the other party from a list of no fewer than five (5) appraisers compiled and maintained by the Majority of the Executive Committee (the "List"). After the selection, each appraiser shall independently determine the gross fair market value of the assets of the Company. If the separate appraisals differ, the Members shall have a period of ten (10) days after receipt of the appraisals to agree on the Fair Market Value. In the event the Members cannot agree on the Fair Market Value in accordance with the preceding sentence, the two (2) appraisers referred to therein shall within ten (10) days after the expiration of the ten (10) day period described in the preceding sentence select a third (3rd) appraiser. In the absence of such a selection, the third (3rd) appraiser shall be selected by the New York City Chapter of the American Institute of Real Estate Appraisers. The third (3rd) appraiser shall decide which of the two (2) appraisals established by the appraisers in accordance with this Section constitutes the Fair Market Value, and such decision shall be conclusive and binding on the Members.

12.3    Offset for Damages. In the event of dissolution resulting from an event described in Article 11 or 12, the Liquidating Member shall be entitled to deduct from the amount payable to the other Members pursuant to Section 12.2(a) or (b), Section 12.4 or Section 12.5, the amount of damages, including reasonable attorneys' fees and disbursements, incurred by the Liquidating Member proximately resulting from any such event, as established by a court order.

12.4    Distributions of Operating Cash Flow. Subject to Section 12.5 hereof as to proceeds of liquidation, upon the dissolution of the Company for any reason during the period of liquidation and until termination of the Company, the Members shall continue to receive the Operating Cash Flow and to share profits and losses for all tax and other purposes as provided elsewhere in this Agreement.

12.5    Distributions of Proceeds of Liquidation. For purposes of this Section 12.5, "proceeds of liquidation" shall equal cash available for liquidation, net of liens secured by the Premises, provided that neither the Company nor either of the Members shall be personally liable on, or they shall be released from, such debts. The proceeds of liquidation shall be applied in the following order of priority:

(a)  First. To the payment of:

(1)  debts and liabilities of the Company except Loans (as referenced in Section 12.5(c), below) that may have been made by Members to the Company, and

(2)  expenses of liquidation.

(b)  Second. To the setting up of any reserves which the Liquidating Member or Members, as the case may be, may deem necessary for any contingent or unforeseen liabilities or obligations of the Company or of the Members arising out of or in connection with the Company.

Such reserves may be deposited by the Company in a bank or trust company acceptable to the Liquidating Member or Members, as the case may be, to be held by it for the purpose of disbursing such reserves in payment of any of the aforementioned liabilities or obligations, and at the expiration of such period as the Liquidating Member or Members, as the case may be, shall deem advisable, distributing the balance, if any, thereafter remaining, in a manner hereinafter provided.

(c)    Third.  To the repayment of any Loans that may have been made by the Members, but if the amount available for such repayment shall be insufficient to repay all Loans, then repayment shall be made in the same manner as provided in Section 9.3(a)(i).

(d)    Fourth.  Any balance remaining shall be distributed to the Members in accordance with Section 9.3(b).

12.6    Orderly Liquidation.  A reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Members to minimize the losses normally attendant upon a liquidation.

12.7    Financial Statements.  During the period of winding up, the Company's then independent certified public accountants shall prepare and furnish to each of the Members, until complete liquidation is accomplished, all the financial statements provided for in Section 7.1.

ARTICLE 13
MEMBERS

13.1    Liability.  A Member shall not be personally liable for the debts, liabilities or obligations of the Company.  Notwithstanding the foregoing, a Member will be liable for any distributions made to it, if, after such distribution, the outstanding liabilities of the Company (other than liabilities to Members on account of their interests in the Company and liabilities for which the recourse of creditors is limited to specific Company property) exceed the fair value of the Company's assets (provided that the fair value of Company property that secures recourse liability shall be included only to the extent its fair value exceeds such liability) and the Member had knowledge of this fact at the time the referenced distribution was received.

ARTICLE 14
NOTICES

14.1    In Writing; Address.  Each notice, request, demand, consent, approval and other communication required or permitted under or otherwise delivered in connection with this Agreement shall be in writing (and shall not be effective unless so) and will be deemed to have been duly given (i) when delivered by hand (so long as the delivering party shall have received a receipt of delivery executed by the party to whom such notice was delivered), (ii) three (3) Business Days after deposit in United States certified or registered mail, postage prepaid, return receipt requested, (iii) when sent by fax (with receipt confirmed) provided a copy is also sent by United States certified or registered mail postage prepaid, return receipt requested or (iv) one (1) Business Day after delivery to a recognized overnight courier service, in each case addressed to the parties as follows (or to such other address as a party may designate by notice to the others):

If to Wertman Member (or its representatives on the Executive Committee):

26 Broadway, 21st Floor
New York, NY 10004
Telephone No.: (212) 363-7701
Facsimile No.: (212) 363-7703

with a copy (which by itself shall not constitute notice) to:

Jacob Dyckman, Esq.
Salon, Marrow, Dyckman & Newman LLP
292 Madison Avenue
New York, NY 10017
Telephone No.: (212) 661-7100
Facsimile No.: (212) 661-3339

If to Prime Member (or its representative on the Executive Committee):

c/o Prime Realty Services LLC
139A Haven Avenue
New York, NY 10032
Attn: Mr. Arthur Green
Telephone No.: (212) 543-1400
Facsimile No.: (212) 927-5368

with a copy (which by itself shall not constitute notice) to:

Kent S. Nevins, Esq.
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT 06901
Telephone No.: (203) 348-2300
Facsimile No.: (203) 965-8226

A copy of any notice or any written communication from the Internal Revenue Service to the Company shall be given to each Member at the addresses provided for above.

14.2     Copies. A copy of any notice, service of process, or other document in the nature thereof, received by any Member from anyone other than the other Members, shall be delivered by the receiving Member to the other Members as soon as practicable.

ARTICLE 15
MISCELLANEOUS

15.1     Additional Documents and Acts. In connection with this Agreement, as well as all transactions contemplated by this Agreement, each Member agrees to execute and deliver such additional documents and instruments, and to perform such additional acts, as may be

necessary or appropriate to effectuate, carry out and perform all of the terms, provisions and conditions of this Agreement and all such transactions. All approvals of either party hereunder shall be in writing.

15.2    Estoppel Certificates. Each Member shall at any time and from time to time upon not less than twenty (20) days prior written notice from any other Member execute, acknowledge and send to such other Member a statement in writing certifying that this Agreement is unmodified and in full force and effect (or if there have been modifications, that the Agreement is in full force and effect as modified and stating the modifications) and stating whether or not any Member is in default in keeping, observing or performing any of the terms contained in this Agreement, and if in default, specifying each such default (limited, as regards the other's defaults, to those defaults of which the certifying Member has knowledge).

15.3    Interpretation; Waivers. This Agreement and the rights and obligations of the members hereunder shall be interpreted in accordance with the laws of the State of New York. Prime Member, on the one hand, and Wertman Member, on the other hand, shall have the right at any time in each of their sole discretion to (i) waive any inaccuracies in the representations or warranties contained in this Agreement or in any document delivered pursuant to this Agreement made by the other party, (ii) waive compliance with any of the covenants, agreements, representations or warranties of the other party contained in this Agreement, or (iii) waive or extend the time for performance of all or any portion of any of the obligations of the other party hereto. No such waiver shall be effective unless it is intentionally and specifically waived in a writing signed by the party granting such extension or waiver.

15.4    Survival. Notwithstanding any other provision in this Agreement (other than an express provision with respect to the survival of such provision), and subject to the terms of this Section below, all representations and warranties made by the parties each to the other in or pursuant to this Agreement or any Exhibit hereto will survive any investigation that may have been made by any party and the Effective Date for a period of twenty-four (24) full calendar months following the Effective Date. For the purposes of this Section 15.4, a representation or warranty made hereunder shall not be subject to the time limitation set forth in the preceding sentence, and shall be deemed to have survived (and shall continue to survive), and the responsible party shall continue to be liable therefor, if the other party hereto shall have brought a claim with respect thereto before a judicial, administrative, or other Governmental Authority responsible for adjudicating such claim on or before the last day of the expiration of the survival period set forth in the preceding sentence.

15.5    Waiver of Jury Trial. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT OR TORT) BROUGHT BY ANY PARTY HERETO AGAINST ANY OTHER PARTY IN RESPECT OF ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

15.7    References to this Agreement. Numbered or lettered articles, sections and subsections herein contained refer to articles, sections and subsections of this Agreement unless otherwise expressly stated.

300115948v4                                    24

15.8     Headings; Interpretation. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement. The term "Agreement" as used herein, as well as the terms "herein" "hereof" "hereunder" and the like mean this Agreement in its entirety and all exhibits and schedules attached hereto and made a part hereof. The captions, article, section and paragraph headings hereof are for reference and convenience only, do not enter into or become a part of the context and shall be ignored in interpreting this Agreement. All pronouns, singular or plural, masculine, feminine or neuter, shall mean and include the person, entity, firm or corporation to which they relate as the context may require. Wherever the context may require, the singular shall mean and include the plural and the plural shall mean and include the singular.

15.9     Entire Agreement. This Agreement, the Exhibits and Schedules hereto, and any documents executed by the parties simultaneously herewith or pursuant hereto, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all other prior agreements and understandings, written or oral, between the parties with respect to such subject matter.

15.10     Attorneys' Fees. If any action arising out of this Agreement is brought by any Member against any other Member, then and in that event the unsuccessful party to such action shall pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred by such prevailing party, and if the prevailing party shall recover judgment in such action, such costs, expenses and attorneys' fees shall be included in and as part of such judgment.

15.11     Time of Essence. Time is of the essence to the Members in the performance of this Agreement, and they have agreed that strict compliance by each of them is required as to any date set out herein. If the final day of any period of time set out in any provision of this Agreement falls upon a day which is not a Business Day, then and in such event, the time of such period shall be extended to the next Business Day.

15.12     Binding Effect. All of the terms, covenants and conditions of this Agreement shall be binding upon and shall inure to the benefit of Prime Member, on the one hand, and Wertman Member, on the other hand, and their respective successors, permitted assigns, heirs and legal representatives. Except as expressly provided herein, no Member shall in any event have any personal liabilities or obligations under this Agreement and each Member's liabilities and obligations shall be limited solely to its interest in the Company.

15.13     Counterparts. This Agreement may be executed in any number of counterparts, each of which shall for all purposes constitute one agreement which is binding on all of the parties hereto.

15.14     Conduct of the Parties. No conduct or course of action undertaken or performed by the parties shall have the effect of, or be deemed to have the effect of, modifying, altering or amending the terms, covenants and conditions of this Agreement. Failure of any party to exercise any power or right given hereunder or to insist upon strict compliance with the terms hereof shall not be, or be deemed to be, a waiver of such party's right to demand exact compliance with the terms of this Agreement.

15.15    <u>Amendments</u>. This Agreement may not be amended, altered or modified except by a written instrument signed by all parties.

15.16    <u>Exhibits</u>. All exhibits and schedules annexed hereto are expressly made a part of this Agreement, as fully as though completely set forth herein, and all references to this Agreement herein or in any of such exhibits or schedules shall be deemed to refer to and include all such exhibits or schedules.

15.17    <u>Severability</u>. Each provision hereof is intended to be severable and the invalidity or illegality of any portion of this Agreement shall not affect the validity or legality of the remainder.

15.18    <u>Qualification in Other States</u>. In the event the business of the Company is carried on or conducted in any locations in addition to Delaware, then the Members agree that the Company shall exist under the laws of each state or district in which business is actually conducted by the Company, and they severally agree to execute such other and further documents as may be required or requested in order that the Members legally may qualify the Company in such states and districts to the extent possible. A Company office or principal place of business in any state or district may be designated from time to time by the approval of a Majority of the Executive Committee.

15.19    <u>Forum</u>. Any action by one or more Members against the Company or by the Company against one or more Members which arises under or in any way relates to this Agreement, actions taken or failed to be taken or determinations made or failed to be made by the Members or relating to the Company including transactions permitted hereunder or otherwise related in any way to the Company, may be brought only in the state courts of the State of New York or the United States District Court for the Southern District of New York. Each Member hereby consents to the jurisdiction of such courts to decide any and all such actions and to such venue.

15.20    <u>No Third Party Beneficiaries</u>. The parties hereto do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto.

15.21    <u>Reporting Person</u>. The parties hereto hereby designate the Seller's Counsel to act as and perform the duties and obligations of the "reporting person" with respect to the transaction contemplated by this Agreement for purposes of 26 C.F.R. Section 1.6045-4(e)(5) relating to the requirements for information reporting on real estate transaction closed on or after January 1, 1991. The parties hereto agree that Seller's counsel is the reporting person with respect to the transactions contemplated by this Agreement.

15.22    <u>Confidentiality; Press Releases</u>. All information obtained pursuant to this Agreement by any party hereto from the other parties hereto and the matters and provisions hereof shall be and remain confidential (subject to the necessity of divulging to third parties, including attorneys, accountants, engineers, architects and prospective equity partners and lenders, such information as either party may need to do in order to perform its obligations hereunder and subject to disclosure of all information required by Governmental Authorities and any lender to the Company). Each Members will not issue or cause the issuance of, and will use best efforts to

prevent its employees or agents from issuing or causing the issuance of, any press or media release or other information in the nature of a press release relating to this Agreement or the transaction contemplated hereby except upon the prior approval by the other Member of the exact text of such press release.

15.23    Representations of Prime Member.  Prime Member hereby represents to Wertman Member that (a) immediately prior to the Acquisition, Prime Member was the sole member, owner and holder of one hundred percent (100%) of the membership interests in the Company, (b) Prime Member held such membership interests, and continues to hold its remaining membership interests, free and clear of any liens, pledges, security interests, claims and encumbrances, and has the full power and right to transfer same to Wertman Member, (c) except for the Acquisition Prime Member has not sold, transferred, assigned, pledged, hypothecated, conveyed or encumbered any of the membership interests in the Company since they were first created and (d) Prime Member has duly and validly executed and delivered this Agreement and has the requisite power and authority and legal right to effect the transactions contemplated hereby. The representations set forth in this Section 15.23 shall survive for so long as Prime Member shall be a Member.

15.24    Representations of Wertman Member.  Wertman Member hereby represents to Prime Member that Wertman Member has duly and validly executed and delivered this Agreement and has the requisite power and authority and legal right to effect the transactions contemplated hereby.  The representation set forth in this Section 15.24 shall survive for so long as Wertman Member shall be a Member.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, as of the day and year first above written.

AV 243 LLC, a New York limited liability company

By: _____

Name:

Title:

PRIME RESIDENTIAL BRONX R&R II, L.L.C., a Delaware limited liability company

By: _____

Name:

Title:

28

Schedule 1 – Capital Contributions, Capital Accounts and Percentage Interests

| Name | Capital Contributions | Capital Accounts | Percentage Interests |
|------|------|------|------|
| Wertman Member | $1,000,000 | $1,000,000 | 49.00% |
| Prime Member | $1,040,000 | $1,040,000 | 51.00% |

300115948v4

Exhibit A – Legal Description of the Land

## ASSIGNMENT AND ASSUMPTION
### OF
### MEMBERSHIP INTEREST
### IN
### 243RD STREET BRONX R&R LLC

Reference is made to that certain limited liability company known as 243rd Street Bronx R&R LLC having an office c/o Lev Management, 26 Broadway, New York, New York 10004.

Prime Residential Bronx R&R II, L.L.C., a Delaware limited liability company (the "Assignor"), the holder of a fifty one (51%) percent membership interest in the Company hereby assigns to AV 243 LLC, a New York limited liability Company having an office c/o Lev Management, 26 Broadway, New York, New York 10004 (the "Assignee") all of Assignor's membership interest in the company. Assignee hereby accepts such membership interest and hereby assumes all obligations as member with regard to the membership interest so transferred from and after the date hereof.

**IN WITNESS WHEREOF,** the parties hereto have executed this Assignment and Assumption as of the ___8___ day of ___May___, 2007.

ASSIGNOR:

PRIME RESIDENTIAL BRONX R&R II, L.L.C.

By: _____

ASSIGNEE:

AV 243 LLC

By: _____

#123941.1-Word

STATE OF ~~NEW YORK~~ *Connecticut*  )
                                     ss:
COUNTY OF *Fairfield*   )

On the 8th day of *May* in the year 2007, before me, the undersigned, personally appeared *Arthur C Green*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Signature and Office of Individual
taking acknowledgment

MARCOS de JESUS
Notary Public, Connecticut
My Commission Expires *11/30/09*

STATE OF NEW YORK    )
                     ss:
COUNTY OF            )

On the 18 day of *May* in the year 2007, before me, the undersigned, personally appeared *Charles W. Hine*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Signature and Office of individual
taking acknowledgment

OFFER WAIDE
NOTARY PUBLIC, State of New York
No. 02WA6095163
Qualified in Kings County
Commission Expires July 7, 2007

#123941.1-Word

# EXHIBIT B

LIMITED LIABILITY COMPANY OPERATING AGREEMENT

of

AV 243, LLC

A NEW YORK LIMITED LIABILITY COMPANY

Adopted as of September 21st, 2004

Doc:103334-5.wpd

OPERATING AGREEMENT
OF
AV 243, LLC

A New York Limited Liability Company

TABLE OF CONTENTS

ARTICLE I
DEFINITIONS

1.01   Definitions
1.02   Construction


ARTICLE II
ORGANIZATION

2.01   Formation
2.02   Name
2.03   Registered Office; Registered Agent; Principal Office in the
       United States; Other Offices
2.04   Purposes
2.05   Foreign Qualification
2.06   Term
2.07   Mergers and Exchanges


ARTICLE III
MEMBERSHIP; DISPOSITIONS OF INTERESTS

3.01   Initial Members
3.02   Restrictions on the Disposition of Membership Interests
3.03   Additional Members
3.04   Interests in a Member
3.05   Information
3.06   Liability to Third Parties
3.07   Withdrawal of Capital Contributions


ARTICLE IV
CAPITAL CONTRIBUTIONS

4.01   Initial Contributions
4.02   Additional Capital Contributions; No Subsequent Contributions
       Required

Doc:103334-S.wpd

-i-

4.03    Return of Contributions
4.04    Advances by Members
4.05    Capital Accounts

ARTICLE V
ALLOCATIONS AND DISTRIBUTIONS

5.01    Distributions
5.02    Adjustments to Sharing Ratio
5.03    Adjustments to Voting Power of Members
5.04    Distribution Upon Liquidation
5.05    Allocation of Profits and Losses

ARTICLE VI
MANAGER

6.01    Number, Tenure, and Qualifications
6.02    Management by Manager
6.03    Liability for Certain Acts
6.04    Resignation
6.05    Removal
6.06    Delegation of Authority and Duties
6.07    Actions by Members

ARTICLE VII
MEETINGS OF MEMBERS

7.01    Meetings
7.02    Voting List
7.03    Proxies
7.04    Conduct of Meetings
7.05    Action by Written Consent or Telephone Conference

ARTICLE VIII
INDEMNIFICATION

8.01    Indemnification

ARTICLE IX
TAXES

9.01    Tax Returns
9.02    Tax Elections
9.03    Tax Matters Partner

Doc:103334-5.wpd

## ARTICLE X
## BOOKS, RECORDS, REPORTS, AND BANK ACCOUNTS

10.01  Maintenance of Books
10.02  Reports
10.03  Accounts

## ARTICLE XI
## DISSOLUTION, LIQUIDATION, AND TERMINATION

11.01  Dissolution
11.02  Dissolution Process
11.03  Distributions upon Dissolution
11.04  Deficit Capital Accounts
11.05  Articles of Dissolution

## ARTICLE XII
## DISPUTE RESOLUTION

12.01  Arbitration

## ARTICLE XIII
## GENERAL PROVISIONS

13.01  Offset
13.02  Notices
13.03  Entire Agreement; Supersession
13.04  Effect of Waiver or Consent
13.05  Amendment or Modification
13.06  Binding Effect
13.07  Governing Law; Severability
13.08  Further Assurances
13.09  Waiver of Certain Rights
13.10  Notice to Members of Provisions of this Agreement
13.11  Counterparts

EXHIBITS

EXHIBIT A – Names and Addresses of Members

EXHIBIT B – Sharing Ratios and Voting Power of Members

EXHIBIT C – Capital Sharing Ratios

Doc:103334-5.wpd

OPERATING AGREEMENT
OF
AV 243, LLC

A New York Limited Liability Company

This Operating Agreement of AV 243, LLC (the "Operating Agreement"), dated as of September 14, 2004 is (a) adopted by the Members (as defined below) and (b) executed and agreed to, for good and valuable consideration, by the Members (as defined below).

## ARTICLE I
### DEFINITIONS

1.01  **Definitions.**  As used in this Operating Agreement, the following terms have the following meanings (unless otherwise expressly provided herein):

"Act" means the New York Limited Liability Company Law, Chapter 34 of the Consolidated Laws, as amended from time to time, and including any successor statute of similar import.

"Adjusted Capital Contribution" means a Member's Capital Contribution adjusted downward for distributions made pursuant to section 5.01(b)(ii).

"Affiliate" means, with respect to any Person, any other Person that directly or indirectly controls, is controlled by, or is under common control with, the Person in question.

"Agreed Value" means with respect to a Member's Membership Interest, the fair market value of such Membership Interest as determined in good faith by a Majority In Interest.

"Articles" means the articles of organization of the Company as provided for pursuant to the Act, as originally filed with the Office of the Secretary of State of New York, as amended and restated from time to time as herein provided.

"Business Day" means any day other than a Saturday, a Sunday, or a holiday on which national banking associations in the State of New York are closed or are authorized by law or executive action to close.

"Capital Account" means the capital account maintained for a Member pursuant to Section 4.05.

"Capital Contribution" means any contribution by a Member to the capital of the Company.

Doc:103336-5.wpd

"Capital Proceeds" means the net proceeds from the disposition of any assets of the Company, any net insurance proceeds or net condemnation proceeds paid to the Company and/or any net refinancing proceeds of the Company.

"Capital Sharing Ratio" means the ratio with respect to any Member or Transferee as set forth on Exhibit C as same may be amended from time to time.

"Code" means the Internal Revenue Code of 1986 and any successor statute as amended from time to time.

"Company" means AV 243, LLC a New York limited liability company.

"Cumulative Preferred Return Amount" means the accrued but unpaid Preferred Return Amount as it exists from time to time.

"Depreciation" means, for each Fiscal Year, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such Fiscal Year, except that if the Gross Asset Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Manager.

"Dispose," "Disposing," or "Disposition" means a sale, assignment, transfer, exchange, mortgage, pledge, grant of a security interest, or other disposition or encumbrance (including, without limitation, by operation of law), or the acts thereof.

"Economic Interest" means a Member's or a Transferee's share of the Company's Profits, Losses, items of income, gain, loss, deduction, and credit, and distributions pursuant to this Operating Agreement and the Act, but shall not include any right to vote or participate in management or the affairs of the Company. The Economic Interest of a Member or Transferee shall be equal to such Member's or Transferee's Sharing Ratio, as set forth on Exhibit B or Exhibit C, respectively.

"Fiscal Year" means (i) the period commencing on the effective date of this Operating Agreement and ending on December 31, 2004, (ii) any subsequent twelve (12) month period commencing on January 1 and ending on December 31, or (iii) any portion of the period described in clause (ii) for which the Company is required to allocate Profits, Losses and other items of income, gain, loss, deduction or credit pursuant to Article V hereof.

Doc: 103334-5.wpd

-2-

"Gross Asset Value" means, with respect to any asset, the asset's Adjusted Basis except as follows:

(i)    The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by a Majority in Interest of the Members;

(ii)    The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross fair market values, as reasonably determined by a Super Majority in Interest of the Members as of the following times: (a) the acquisition of a Membership Interest in the Company by any new Member or the acquisition of an additional Economic Interest in the Company by any existing Member in exchange for more than a de minimis Capital Contribution and (b) the distribution by the Company to a Member of more than a de minimis amount of Company assets as consideration for such Member's Membership Interest in the Company or in connection with the complete liquidation of the Company; and

(iii) The Gross Asset Value of any Company asset distributed to any Member shall be adjusted to equal the gross fair market value of such asset on the date of distribution as determined by a Super Majority in Interest of the Members.

"Incapacity" means the inability of an employee or the Manager to perform his employment or management function in his customary manner by reason of mental, emotional or physical disease or disability.

"Majority In Interest" means one or more Members having among them more than fifty percent (50%) of the Voting Power of all Members.

"Manager" means Charles Wertman, or any successor manager elected by the Members in accordance with this Operating Agreement.

"Member" means a Person who (i) has been admitted to the Company as an initial Member in accordance with the Articles or this Operating Agreement, (ii) has been admitted to the Company as an additional Member pursuant to Section 3.03 hereof or (iii) is a qualified Transferee under Section 3.02(a) or Section 3.02(b) who is admitted to the Company pursuant to Section 3.03 hereof. As of the date hereof, the Members are those Persons set forth on Exhibit A hereof. A Member shall either be a Preferred Member or Non-Preferred Member.

"Membership Interest" means a Member's rights in the Company collectively, including the Member's Economic Interest, the Member's Capital Account in the Company, the Member's right to vote or participate in the management of the Company, and the Member's right, if any, to information concerning the business and affairs of the Company provided by the Act.

Doc:103334-5.wpd

-3-

"Net Cash Flow" means for any applicable period the excess, if any, of Operating Revenues over the sum of (i) Operating Expenses and (ii) Reserves.

"Non-Preferred Member" shall mean a Member who is not a Preferred Member.

"Nonrecourse Deductions" has the meaning set forth in Treasury Regulations § 1.704-2(b)(1).

"Nonrecourse Liability" has the meaning set forth in Treasury Regulations § 1.704-2(b)(3).

"Operating Agreement" has the meaning given that term in the introductory paragraph.

"Operating Expenses" means, for any applicable period, the aggregate amount of expenses paid or incurred by the Company in connection with its operations other than expenses properly allocable to transactions and activities giving rise to Capital Proceeds.

"Operating Revenues" means, for any applicable period, the aggregate amount of revenues derived by the Company in connection with its operations; provided, however, that Operating Revenues shall not include Capital Proceeds or Capital Contributions.

"Person" means an individual, partnership, trust, estate, association, corporation, limited liability company, or other entity, whether residing in or formed pursuant to the laws of the State of New York or otherwise.

"Preferred Member" means a Member set forth as such on Exhibit A hereof.

"Preferred Return Amount" means, with respect to the Non-Manager Member for any applicable period, an amount equal to a cumulative, annual rate of return of ten percent (10%) calculated on the daily weighted average balance of such Member's Adjusted Capital Contribution.

"Profits" and "Losses" means, for each Fiscal Year, an amount equal to the Company's taxable income or loss for such Fiscal Year, determined in accordance with Section 703(a) of the Code (for this purposes, all items of income, gain, loss, or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss) with the following adjustments:

(i) Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be added to such taxable income or loss;

(ii) Any expenditures of the Company described in Section 705(a)(2)(B) of the Code or treated as Section 705(a)(2)(B) of the Code as expenditures pursuant to Treasury Regulations §1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be subtracted from such taxable income or loss;

(iii) In the event the Gross Asset Value of any asset is adjusted (in accordance with the definition thereof), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(iv) Gain or loss resulting from any disposition of an asset with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of such asset disposed of, notwithstanding that the adjusted basis (as determined under the Code) of such asset differs from its Gross Asset Value;

(v) In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year, computed in accordance with the definition thereof; and

(vi) Notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Section 5.02 of this Operating Agreement shall not be taken into account in computing Profits or Losses. The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to this Operating Agreement shall be determined by applying rules analogous to those set forth in this definition.

"Reserves" means the amount of operating reserves, capital reserves and other reasonable reserves established by the Manager.

"Securities Act" means the Securities Act of 1933, as amended.

"Sharing Ratio" with respect to any Member or Transferee means the Sharing Ratio of each Member or Transferee as set forth on Exhibit B hereof, as amended from time to time. The Sharing Ratios of the Members and Transferees shall be subject to adjustment pursuant to Section 5.02 hereof.

"Supermajority In Interest" means Member or Members having, individually or among them, ninety percent (90%) or more of the Voting Power of all Members.

Doc:103334-5.wpd

"Tax Matters Partner" means any Member designated under Section 9.03 to be the "tax matters partner" of the Company pursuant to Section 6231(a)(7) of the Code, but does not include any Member who has ceased to be such "tax matters partner" of the Company.

"Transferee" means an owner of an Economic Interest who is not admitted as a Member of the Company. A Member's Transferees are those Transferees to whom such Member transferred Economic Interests.

"Treasury Regulations" means the regulations promulgated under the Code from time to time.

"Voting Power" with respect to any Member means the Voting Power, expressed as a percentage, as set forth on Exhibit B.

Other terms defined herein have the meanings so given them.

1.02 **Construction.** Whenever the context requires, the gender of all words used in this Operating Agreement includes the masculine, feminine, and neuter. Unless otherwise expressly provided herein, all references to Articles and Sections refer to articles and sections of this Operating Agreement, and all references to Exhibits, if any, are to Exhibits attached hereto, each of which is made a part hereof for all purposes.

## ARTICLE II
## ORGANIZATION

2.01 **Formation.** The Company has been organized as a New York limited liability company by the filing of the Articles. The Members hereby agree to execute, file and record (or the Manager shall execute, file and record) all such other certificates and documents, including amendments to the Articles, and to such other acts as may be appropriate to comply with all requirements for the formation, continuation and operation of a limited liability company, the ownership of property and the conduct of business under the laws of the State of New York and any other jurisdiction in which the Company may own property or conduct business.

2.02 **Name.** The name of the Company is "AV 243 LLC" and all Company business must be conducted in that name or such other names that comply with applicable law as a Majority in Interest of the Members may select from time to time.

2.03 **Registered Office; Registered Agent Principal Office in the United States; Other Offices.** The registered office of the Company required by the Act to be maintained in the State of New York shall be the office of the initial registered agent named in the Articles or such other office (which need not be a place of business of the Company) as the Manager may designate, from time to time in the manner provided by law. The registered agent of the Company in the State of New York shall be the initial registered agent named in the Articles or

such other Person or Persons as the Manager may designate from time to time in the manner provided by law. The principal office of the Company in the United States shall be at 26 Broadway, 21st Floor, New York, New York 10004, or such place as the Manager may designate from time to time, and the Company shall maintain records there as required by the Act and shall keep the street address of such principal office in the registered office of the Company. The Company may have such other offices as the Majority in Interest of the Members may designate, from time to time.

2.04 **Purposes.** The purposes for which the Company is organized are to transact any or all lawful business for which limited liability companies may be organized under the Act, including, but not limited to, the leasing, acquisition, ownership, management, operation and disposition of real estate.

2.05 **Foreign Qualification.** Prior to the Company's conducting business in any jurisdiction other than New York, the Manager shall cause the Company to comply, to the extent procedures are available and those matters are reasonably within the control of the Manager, with all requirements necessary to qualify the Company as a foreign limited liability company in that jurisdiction. Each Member shall execute, acknowledge, swear to, and deliver all certificates and other instruments conforming with this Operating Agreement that are necessary or appropriate to qualify, continue, and terminate the Company as a foreign limited liability company in all such jurisdictions in which the Company may conduct business.

2.06 **Term.** The Company commenced on the date the Articles were filed with the Secretary of State of New York and shall continue in existence for the period fixed in the Articles for the duration of the Company, or such earlier time as this Operating Agreement may specify.

2.07 **Mergers and Exchanges.** Subject to the requirements of the Act, the Articles, and Section 6.02(b)(ii) hereof, the Company may be a party to a merger, consolidation, share or interest exchange, reorganization or other transaction authorized by the Act.

### ARTICLE III
### MEMBERSHIP; DISPOSITIONS OF INTERESTS

3.01 **Initial Members.** The initial Members of the Company are the Persons executing this Operating Agreement as of the date of this Operating Agreement as Members, each of whom is admitted to the Company as a Member effective contemporaneously with the execution by such Person of this Operating Agreement and each of whom is set forth on Exhibit A hereto.

3.02 **Restrictions on the Disposition of Membership Interests.** (a) Except as otherwise expressly provided in this Article III, no Member shall Dispose of all or any portion of his Membership Interest, including his Economic Interest, whether voluntarily, involuntarily or by operation by law, and any attempted Disposition of a Membership Interest in violation of this prohibition shall not be effective to pass any right, title or interest therein, but shall instead be

Doc:103334-5.wpd

-7-

null, void and of no effect. Notwithstanding the preceding prohibition against any Disposition of a Membership Interest (including an Economic Interest), any Member may Dispose of its Membership Interest (or a portion thereof) to a Person provided such Member obtains the prior written consent of the Majority In Interest of the Members (other than the Member whose Membership Interest is to be transferred) which written consent may be withheld by the Majority In Interest of such nontransferring Members, at his (or their) sole and absolute discretion. Anything in this Article III to the contrary notwithstanding, no Transferee shall be admitted to the Company as a Member without the prior written consent of the Majority of Interest of the Members (other than the Member whose Transferee is being considered for admission) which written consent may be withheld by the Majority In Interest of the Members at his (or their) sole and absolute discretion.

(b) Notwithstanding the prohibition against any Disposition of a Membership Interest (including an Economic Interest) set forth in Section 3.02(a) hereof, a Member may Dispose of all or any portion of his Membership Interest without the requisite written consent of Section 3.02(a) if the Disposition is to a Permitted Transferee. A "Permitted Transferee" is a (i) parent, child or spouse of such Member, (ii) a corporation, limited liability company or partnership which is directly or indirectly controlled by such Member or by a parent, child or spouse of such Member, (iii) a corporation, limited liability company or partnership which directly or indirectly controls such Member, or (iv) a trust of which such Member, or a parent, child or spouse of such Member, is a principal beneficiary. Notwithstanding the right of any Member to Dispose of his Membership Interest (or any position thereof) to his Permitted Transferee, such Permitted Transferee shall not be admitted as a Member without (i) the prior written consent of a Majority In Interest of the Members (other than the Member whose Permitted Transferee is under consideration for admission) which written consent may be withheld by such Majority In Interest of the Members at his (or their) sole and absolute discretion, and (ii) satisfaction of the conditions set forth in Section 3.02(c) hereof.

(c) A Transferee shall only be admitted to the Company as a Member upon satisfaction of the following conditions, as applicable:

(i) the Transferee shall be admitted as a substitute Member upon the requisite written consent pursuant to Section 3.02(a) or Section 3.02(b) hereof, with the Capital Account, Sharing Ratio and other rights, duties and obligations (or the applicable portion thereof) of the Disposing Member;

(ii) the Manager shall cause this Operating Agreement to be amended to reflect such Disposition and admission of a substitute Member, if applicable;

(iii) the Transferee shall in writing assume and agree to perform all of its duties and obligations as a Member under this Operating Agreement;

Doc:103334-5.wpd

-8-

(iv) the Disposing Member shall pay, or agree to reimburse the Company for, all costs incurred by the Company in connection with the Disposition;

(v) the Disposing Member shall agree fully to indemnify on an after-tax basis the other Members against any adverse tax consequences to them which might result from any termination of the Company for tax purposes on account of such transfer; and

(vi) the Company shall have received from counsel reasonably satisfactory to the Members an opinion that the Disposition was made in accordance with all applicable laws and regulations (including securities laws), and that the Disposition, when added to the total of all other Dispositions within the preceding 12 months, would not result in the Company's being considered to have terminated within the meaning of Section 708 of the Code.

(d) If a Member disposes of his Membership Interest (or a portion thereof), to a Transferee in accordance with Section 3.02(a) or Section 3.02(b) hereof, and such Transferee is not admitted to the Company as a Member in accordance with Section 3.02(c) hereof, then for purposes of this Operating Agreement, such Transferee shall be treated as having acquired the Economic Interest, Sharing Ratio and Capital Account (or a corresponding portion thereof) of such Member; however, such Transferee shall not be treated as having been transferred the Voting Power (or corresponding portion thereof) of such Member.

3.03  **Additional Members.**  Membership Interests may be issued to additional Persons and such Persons may become Members only upon the prior consent of a Supermajority In Interest of the Members which consent may be withheld in his (or their) sole and absolute discretion, and on such terms and conditions as may be specified in such written consent. The terms and conditions of any such additional Membership Interests may include, without limitation, provisions regarding the removal of such new Member upon, for example, the termination of such new Member's employment with the Company, the material breach by such new Member of a provision of this Operating Agreement or such other reason as the Manager shall deem appropriate, and the payment by the Company to such removed Member in redemption of its Membership Interests. Any admission of a new Member under this Section 3.03 shall be effective only after the new Member has executed and delivered to the Company its agreement to be bound by this Operating Agreement.

3.04  **Interests in a Member.**  A Member that is not a natural person may not cause or permit an interest, direct or indirect, in itself to be Disposed of such that, after the Disposition, (a) the Company would be considered to have terminated within the meaning of section 708 of the Code or (b) without the written consent of the Majority in Interest of the Members, which consent may be withheld in his (or their) sole and absolute discretion, that Member shall cease to be controlled by substantially the same Persons who control it as of the date of its admission to the Company.  Transfer of control to a Permitted Transferee shall not require the aforementioned

Doc:103334-5.wpd

consent. On any breach of the provisions of clause (b) of the immediately preceding sentence, the Company shall have the option to buy, and on exercise of that option the breaching Member shall sell, at a price consisting of the Agreed Value, the breaching Member's Membership Interest.

3.05  **Information.**  (a) In addition to the other rights specifically set forth in this Operating Agreement, each Member is entitled to all information to which that Member is entitled to have access pursuant to Section 1102(b) of the Act under the circumstances and subject to the conditions therein stated. Subject to the immediately preceding sentence, the Members agree that the Manager from time to time may determine, due to contractual obligations, business concerns, or other considerations, that certain information regarding the business, affairs, properties, and financial condition of the Company should be kept confidential and not provided to some or all other Members, and that it is not just or reasonable for those Members or assignees or representatives thereof to examine or copy that information. Notwithstanding anything herein to the contrary, such information shall be made available to any Member having a Supermajority In Interest.

(b) The Members acknowledge that, from time to time, they may receive information from or regarding the Company in the nature of trade secrets or that otherwise is confidential, the release of which may be damaging to the Company or Persons with which it does business. Each Member shall hold in strict confidence any information it receives regarding the Company and may not disclose it to any Person other than another Member, except for disclosures (i) compelled by law (but the Member must notify all of the other Members promptly of any request for that information, before disclosing it if practicable), (ii) to advisers or representatives of the Member or Persons to which that Member's Membership Interest may be Disposed as permitted by this Operating Agreement, but only if the recipients have agreed to be bound by the provisions of this Section 3.05(b), or (iii) of information which the Member also has received from a source independent of the Company if the Member reasonably believes that such source obtained that information without breach of any obligation of confidentiality. The Members acknowledge that breach of the provisions of this Section 3.05(b) may cause irreparable injury to the Company for which monetary damages are inadequate, difficult to compute, or both. Accordingly, the Members agree that the provisions of this Section 3.05(b) may be enforced by specific performance.

3.06  **Liability to Third Parties.**  Except as otherwise expressly agreed in writing, no Member shall be liable for the debts, obligations or liabilities of the Company, including under a judgment decree or order of a court.

3.07  **Withdrawal of Capital Contributions.**  No Member or Transferee shall have the right or power to withdraw any part of his Capital Contribution or Capital Account from the Company without the consent of a Supermajority In Interest.

Doc:103334-5.wpd

-10-

# ARTICLE IV
## CAPITAL CONTRIBUTIONS

4.01  **Initial Contributions.** Contemporaneously with the execution by such Member of this Operating Agreement (except as otherwise provided), each Member shall make Capital Contributions as follows:

| | |
|---|---|
| (a) ] | $75,000.00 |
| (b) | $140,000.00 |
| (c) | $100,000.00 |
| (d) | $100,000.00 |
| (e) | $50,000.00 |
| (f) | $36,000.00 |
| (g | $161,000.00 |
| (h) | $70,000.00 |
| (i) | $70,000.00 |
| (j) | $70,000.00 |
| (k) | $50,000.00 |
| (l) | $50,000.00 |
| (m) | $302,000.00 |
| (n) | $126,000.00 |

4.02  **Additional Capital Contributions; No Subsequent Contributions Required.** The Members shall have the option (but not the obligation) from time to time to make additional cash contributions to the capital of the Company at such times and in such amounts as the Manager determines in his (or their) sole and absolute discretion to be necessary or desirable in furtherance of the Company's purposes.

4.03  **Return of Contributions.**  A Member is not entitled to the return of any part of his Capital Contributions or to be paid interest in respect of either his Capital Account or his Capital Contributions.  An unrepaid Capital Contribution is not a liability of the Company or of any Member.  A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions.

4.04  **Advances by Members.**  Except as otherwise provided in the Articles or this Operating Agreement, if the Company does not have sufficient cash to pay its obligations, any Member(s) that may agree to do so with the written consent of the Majority In Interest of the Members may advance all or part of the needed funds to or on behalf of the Company (a "Member Advance"). A Member Advance shall be an obligation of the Company, and shall bear interest at a rate agreed upon by the Member making such advance and the Manager.

Doc:103334-5.wpd

**4.05  Capital Accounts.**  The Company shall maintain for each Member a separate Capital Account in accordance with the rules of the Treasury Regulations promulgated from time to time under Section 704(b) of the Code.  For purposes of computing the amount of each item of income, gain, deduction, or loss to be reflected in the Capital Accounts of the Members, the determination, recognition, and classification of such items shall be the same as the determination, recognition, and classification for federal income tax purposes, unless otherwise required by such Treasury Regulations.  Upon a qualified Disposition of a Membership Interest or an Economic Interest in the Company (or a portion thereof), the Capital Account of the transferor Member (or the applicable portion thereof) shall become the Capital Account of the Transferee.

## ARTICLE V
## ALLOCATIONS AND DISTRIBUTIONS

**5.01  Distributions.**

(a)  **Net Cash Flow.**  Distributions of the Company's Net Cash Flow for any Fiscal Year shall be made at least annually, at such other times as the Manager designates, and in no event later than the date of filing of the federal income tax return for such Fiscal Year (in which case the Company's accountants shall designate in writing the amount of any such distributions that are attributable to such Fiscal Year).  Any such distribution shall be made in the following order:

(i) First, solely to the Preferred Members ratably until they have been distributed an amount of Net Cash Flow and/or Capital Proceeds equal to their respective Cumulative Preferred Return Amount;

(ii) Second, any remaining Net Cash Flow shall be distributed to the Members in proportion to their respective Sharing Ratios as of the date of such distribution, except that from and after the date the Adjusted Capital Contribution of the Preferred Member or Members is reduced to zero, all Net Cash Flow shall be distributed to the Members in proportion to their respective Capital Sharing Ratios as of the date of such distribution.

(b)  **Capital Proceeds.**  Distributions of the Company's Capital Proceeds for any Fiscal Year, if any, shall be made at least annually, at such other times as the Manager designates, and in no event later than the date of filing of the federal income tax return for such Fiscal Year (in which case the Company's accountants shall designate in writing the amount of any such distributions that are attributable to such Fiscal Year).  Any such distribution shall be made in the following order:

(i) First, solely to the Preferred Members until they have been distributed an amount of Net Cash Flow and/or Capital Proceeds equal to their respective Cumulative Preferred Return Amount;

Doc:103334-5.wpd

-12-

(ii) Second, any remaining Capital Proceeds shall be distributed ratably between the Members until they have been distributed an amount of Capital Proceeds equal to their respective Adjusted Capital Contributions; and

(iii) Remaining Capital Proceeds, if any, shall be distributed ratably in accordance with the Capital Sharing Ratio.

5.02  **Adjustments to Sharing Ratio.**  The Sharing Ratio of each of the Members and Transferees shall be appropriately adjusted to take into account additional Capital Contributions made by such Members and Transferee pursuant to Section 4.02 hereof, if any. The Manager, with the consent of a Majority In Interest of the Members, shall amend Exhibit B from time to time to reflect the adjustments, if any, made to the Sharing Ratios of the Members pursuant to this Section 5.02.

5.03  **Adjustments to Voting Power of Members.**  (a) In the event the Sharing Ratio of one or more Members is adjusted pursuant to Section 5.02, the Voting Power of the Members subject to such adjustments shall be similarly adjusted.

5.04  **Distribution Upon Liquidation.**  (a) On liquidation, the Company assets shall be distributed in payment of the liabilities of the Company and to the Members in the following order:

(i) To the payment of the debts and liabilities of the Company, including any Member Advances, and the expenses of liquidation, including a sales commission to the selling agent, if any.

(ii) To the setting up of any reserves which the Manager deems reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company or of the Members arising out of or in connection with the Company. At the expiration of such period as the Manager shall deem advisable, the balance thereof, if any, shall be distributed in the manner provided in this Article, and in the order named.  Such reserves shall not be unreasonable and shall be in accordance with acceptable accounting and business standards.

(iii) To the Members in accordance with Section 5.01.

(b)  A reasonable time, as determined by the Manager, shall be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Members or their representatives to minimize any losses attendant upon liquidation.

(c)  Anything in this Agreement to the contrary notwithstanding, no Member shall be personally liable for the return of the Capital Contribution of any other Member, or any portion thereof, or of the monetary value thereof; it is expressly understood that any such return shall be

Doc:103334-5.wpd

-13-

made solely from Company assets. No Member shall have the right to demand or receive any property other than cash in connection with termination and liquidation of the Company.

5.05 **Allocation of Profits and Losses.** Except as otherwise provided by Section 704 of the Code and the related Treasury Regulations, Profits and Losses shall be allocated among the Members as follows:

(a) <u>Allocation of Profits</u>. Profits for any Fiscal Year shall be allocated as follows:

(i) First, if any Member's Adjusted Capital Contribution at the end of such Fiscal Year shall exceed the credit balance in such Member's Capital Account at the end of such Fiscal Year (as determined prior to the allocation of Profits for such Fiscal Year and by adding to the actual balance in such Capital Account such Member's share of partnership minimum gain of the Company and such Member's share of partner nonrecourse debt minimum gain of the Company), to the Member or Members whose Adjusted Capital Contribution so exceeds such balance (as so determined), in proportion to such excesses (as so determined), until such excesses (as so determined) are reduced to zero;

(ii) then, to the Members, pro rata, until each Member has received an amount equal to the amount distributed or required to be distributed to such Member pursuant to Section 5.0(1)(b)(iii); and

(iii) Thereafter, to the Members in accordance with their respective Sharing Ratios.

(b) <u>Allocation of Losses</u>. Losses for any Fiscal Year shall be allocated as follows:

(i) First, if the Profits allocated to the Members for all prior Fiscal Years exceed the sum of distributions made to them pursuant to Section 5.01(a)(ii) and 5.01(b)(iii) hereof and Losses allocated to them pursuant to this Section 5.05 for all prior Fiscal Years and for the Fiscal Year in question, then to such Members ratably until such excess is reduced to zero;

(ii) then, to the Members in proportion to the respective credit balances in their Capital Accounts (as determined immediately after the allocation described in Section 5.05(i) for such Fiscal Year and by adding to the actual balance in each Member's Capital Account such Member's share of partnership minimum gain of the Company and such Member's share of partner nonrecourse debt minimum gain of the Company), determined as of the last day of such Fiscal Year, until such credit balances (as so determine) are reduced to zero; and

(iii) thereafter, to the Members in accordance with their respective Sharing Ratios.

Doc:103334-5.wpd

-14-

## ARTICLE VI
## MANAGER

**6.01  Number, Tenure, and Qualifications.**  The Company shall have one (1) Manager. The initial Manager shall be Charles Wertman. Upon the occurrence of a Manager Dissolution Event (as defined in Section 11.01(b)), if a Majority In Interest votes to continue the existence of the Company, then the Members shall be required to elect a successor Manager. Any successor Manager shall be elected by the affirmative vote of a Majority In Interest of the Members. The successor Manager (a) must be a Member of the Company and (b) need not be a resident of the State of New York. Anything in this Agreement to the contrary notwithstanding, if a Majority In Interest votes to continue the Company and selects a successor Manager who is not a Member, such successor Manager shall be immediately admitted to the Company and issued a Membership Interest (including a Sharing Ratio and Voting Rights) as the Majority In Interest of the Members shall determine, with such adjustments made to the Sharing Ratios and Voting Rights of the existing Members as determined by such Majority In Interest of the Members, other than the successor Manager.

**6.02  Management by Manager.**  (a) Subject to the provisions of Sections 6.02(b) and 6.07, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, the Manager. The Manager may make all decisions and take all actions for the Company not otherwise provided for in this Operating Agreement, including, without limitation, the following:

> (i) subject to Section 6.02(b)(i), sell, lease, exchange, transfer, assign, license, mortgage, pledge, grant a security interest in, or otherwise dispose of or encumber any and all the properties or assets of the Company, or interests therein;

> (ii) entering into, making and performing contracts, agreements, and other undertakings binding the Company that may be necessary, appropriate, or advisable in furtherance of the purposes of the Company and making all decisions and waivers thereunder;

> (iii) select and hire a management company and agree on behalf of the Company to pay such management company such fees as he shall in his sole discretion determine. Such fees shall be at the rate of 5% of the gross rental or the industry standard whichever is higher;

> (iv) maintaining the assets of the Company in good order;

> (v) select, remove, or change the authority and responsibility of lawyers, accountants, and other advisers and consultants retained by the Company;

(xii) authorize any act that would make it impossible to carry on the ordinary business of the Company.

(c)  The Manager shall devote as much time to the management of the Company in accordance with this Agreement as is necessary to ensure that the purposes of this Agreement are fulfilled as provided for herein, which time may be less than full time.

**6.03  Liability for Certain Acts.**  The Manager shall perform his managerial duties in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. The Manager, under such circumstances, shall not have any liability by reason of being or having been a Manager of the Company. The Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct, breach of fiduciary duty, or a wrongful taking by the Manager.

**6.04  Resignation.**  The Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of the Manager shall take effect upon receipt of that notice or at such later time as shall be specified in the notice; and, unless otherwise specified in the notice, the acceptance of the resignation shall not be necessary to make it effective. The resignation of the Manager shall not affect his rights as a Member and shall not constitute his withdrawal from the Company. The resignation of the Manager shall constitute a Manager Dissolution Event (as defined in Section 11.01(b)).

**6.05  Removal.**  At a meeting called expressly for that purpose, (a) the Manager may be removed at any time, with or without cause, by the affirmative vote of the Supermajority in Interest of the Members and (b) the Manager may be removed at any time, with cause, by the Majority In Interest of the Members. For purposes of this Section, cause shall mean the permanent Incapacity of the Manager or a material breach by the Manager of any of his duties or obligations, whether as a Manager or a Member, pursuant to this Operating Agreement. The removal of the Manager shall not affect his rights as a Member and shall not constitute his withdrawal from the Company. The removal of the Manager shall constitute a Manager Dissolution Event (as defined in Section 11.01(b)).

**6.06  Delegation of Authority and Duties.**  The Manager may, from time to time and in his sole discretion, appoint officers of the Company and delegate to such officers such authority and duties as the Manager may deem advisable.  Unless otherwise provided in the Articles or other provision of law, such officers need not be Members of the Company.  Any officer to whom a delegation is made pursuant to this section shall serve in the capacity delegated unless and until such delegation is revoked by the Manager.  The officers, if appointed, shall exercise such powers and perform such duties as specified in this Operating Agreement and as shall be determined from time to time by the Manager and in any event a decision or veto by the Manager shall supersede any decision made by any of the officers of the Company.

**6.07  Actions by Members.**  In managing the business and affairs of the Company and exercising its powers, the Members shall act collectively through meetings and written consents consistent as may be provided or limited in the Articles or other provisions of this Operating Agreement.

## ARTICLE VII
## MEETINGS OF MEMBERS

**7.01  Meetings.**  (a)  A quorum shall be present at a meeting of Members if the holders of a Majority In Interest are represented at the meeting in person or by proxy. With respect to any matter, other than a matter for which the affirmative vote of the holders of a specified portion of the Voting Power of all Members entitled to vote is required by the Act, the Articles, or this Operating Agreement, the affirmative vote of a Majority In Interest at a meeting of Members at which a quorum is present shall be the act of the Members.

(b)  All meetings of the Members shall be held at the principal place of business of the Company or at such other place within or without the State of New York as shall be specified or fixed in the notices or waivers of notice thereof; provided that any or all Members may participate in any such meeting by means of conference telephone or similar communications equipment pursuant to Section 7.05.

(c)  Notwithstanding the other provisions of the Articles or this Operating Agreement, the chairman of a meeting of the Members at which a quorum is present shall have the power to adjourn such meeting from time to time, without any notice other than announcement at the meeting of the time and place of the holding of the adjourned meeting. If such meeting is adjourned by the Members, such time and place shall be determined by a vote of the holders of a Majority In Interest. Upon the resumption of such adjourned meeting, any business may be transacted that might have been transacted at the meeting as originally called.

(d)  An annual meeting of the Members, for the transaction of all business as may properly come before the meeting, may be held at such place, within or without the State of New York, on such date and at such time as the Manager Member shall fix and set forth in the notice of the meeting.

(e)  Special meetings of the Members for any proper purpose or purposes may be called at any time by the holders of at least twenty five percent (25%) of the Voting Power of all Members. If not otherwise stated in or fixed in accordance with the remaining provisions hereof, the record date for determining Members entitled to call a special meeting is the date any Member first signs the notice of that meeting. Only business within the purpose or purposes described in the notice (or waiver thereof) required by this Operating Agreement may be conducted at a special meeting of the Members.

Doc:103334-5.wpd

(f)  Written or printed notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten nor more than 60 days before the date of the meeting, either personally or by mail, by or at the direction of the Member or Members calling the meeting, to each Member entitled to vote at such meeting. If mailed, any such notice shall be deemed to be delivered when deposited in the United States mail, addressed to the Member at his address as set forth on Exhibit A, with postage thereon prepaid.

(g)  The date on which notice of a meeting of Members is mailed or the date on which a resolution declaring a distribution is adopted by the Members, as the case may be, shall be the record date for the determination of the Members entitled to notice of or to vote at such meeting, including any adjournment thereof, or the Members and Transferees entitled to receive such distribution.

(h)  Anything in this Article VII to the contrary notwithstanding, a special meeting of the Members shall be held within ninety (90) days of the occurrence of a Manager Dissolution Event (as defined in Section 11.01(b) hereof) for the purpose of (i) voting on whether to consent to the continuation of the Company and (ii) in the event of an affirmative vote on the continuation of the Company, electing a successor Manager in accordance with Section 6.01 hereof.

7.02  **Voting List.**  The Member or other Person having charge of the records reflecting the Membership Interest of each Member shall make, at least ten days before each meeting of Members, a complete list of the Members (and their proxies, if any) entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order, with the address of and the Voting Power held by each, which list, for a period of ten days prior to such meeting, shall be kept on file at the registered office or principal place of business of the Company and shall be subject to inspection by any Member at any time during usual business hours.  Such list shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any Member during the whole time of the meeting.  The original membership records shall be prima-facie evidence as to who are the Members entitled to examine such list or transfer records or to vote at any meeting of Members.  Failure to comply with the requirements of this Section shall not affect the validity of any action taken at the meeting.

7.03  **Proxies.**  A Member may vote either in person or by proxy executed in writing by the Member. A telegram, telex, cablegram or similar transmission by the Member, or a photographic, photostatic, facsimile or similar reproduction of a writing executed by the Member shall be treated as an execution in writing for purposes of this Section. Proxies for use at any meeting of Members or in connection with the taking of any action by written consent shall be filed with the Company, before or at the time of the meeting or execution of the written consent, as the case may be. All proxies shall be received and taken charge of and all ballots shall be received and canvassed by the chairman of the meeting, who shall decide all questions touching upon the qualif~cations of voters, the validity of the proxies, and the acceptance or rejection of votes, unless an inspector or inspectors shall have been appointed by the chairman of the

Doc:103334-5.wpd

-20-

meeting, in which event such inspector or inspectors shall decide all such questions. No proxy shall be valid after 11 months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable and the proxy is coupled with an interest. Should a proxy designate two or more Persons to act as proxies, unless that instrument shall provide to the contrary, a majority of such Persons present at any meeting at which their powers thereunder are to be exercised shall have and may exercise all the powers of voting or giving consents thereby conferred, or if only one be present, then such powers may be exercised by that one; or, if an even number attend and a majority do not agree on any particular issue, the Company shall not be required to recognize such proxy with respect to such issue if such proxy does not specify how the Voting Power that is the subject of such proxy is to be voted with respect to such issue.

7.04  **Conduct of Meetings.**  All meetings of the Members shall be presided over by the chairman of the meeting, who shall be a Member (or representative thereof) designated by a Majority In Interest. The chairman of any meeting of Members shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him in order.

7.05  **Action by Written Consent or Telephone Conference.**  Any action required or permitted to be taken at any annual or special meeting of Members may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of not less than the minimum Voting Power that would be necessary to take such action at a meeting at which the holders of all Voting Power entitled to vote on the action were present and voted. Every written consent shall bear the date of signature of each Member who signs the consent. A telegram, telex, cablegram or similar transmission by a Member, or a photographic, photostatic, facsimile or similar reproduction of a writing signed by a Member, shall be regarded as signed by the Member for purposes of this Section. Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent shall be given to those Members who did not consent in writing to the action.

(a)  The record date for determining Members entitled to consent to action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Company by delivery to its registered office, its principal place of business, or the Member having custody of the records in which proceedings of meetings of Members are recorded. Delivery shall be by hand or by certified or registered mail, return receipt requested. Delivery to the Company's principal place of business shall be addressed to the Member having custody of the records in which proceedings of the meetings of Members are recorded.

(b)  If any action by Members is taken by written consent, any articles or documents filed with the Secretary of State of New York as a result of the taking of the action shall state, in lieu of any statement required by the Act concerning any vote of Members, that written consent has

Doc:103334-5.wpd

-21-

een given in accordance with the provisions of the Act and that any written notice required by
e Act has been given.

(c)  Members may participate in and hold a meeting by means of conference telephone or
milar communications equipment by means of which all Persons participating in the meeting
an hear each other, and participation in such meeting shall constitute attendance and presence in
erson at such meeting, except where a Person participates in the meeting for the express purpose
f objecting to the transaction of any business on the ground that the meeting is not lawfully
alled or convened.

## ARTICLE VIII
## INDEMNIFICATION

8.01  **Indemnification.**  To the fullest extent permitted by law, each Member shall
idemnify the Company and each other Member and hold them harmless from and against all
osses, costs, liabilities, damages, and expenses (including, without limitation, costs of suit and
ttorney's fees) they may incur on account of any breach by that Member of this Operating
greement.

## ARTICLE IX
## TAXES

9.01  **Tax Returns.**  The Tax Matters Partner shall cause to be prepared and filed all
iecessary federal and state income tax returns for the Company, including making the elections
lescribed in Section 9.02. Each Member shall furnish to the Tax Matters Partner all pertinent
nformation in its possession relating to Company operations that is necessary to enable the
Company's income tax returns to be prepared and filed.

9.02  **Tax Elections.**  The Company shall make the following elections on the
ippropriate tax returns:

(a)  to adopt the calendar year as the Company's fiscal year;

(b)  to adopt the cash method of accounting and to keep the Company's books and records
m the income-tax method;

(c)  if a distribution of Company property as described in section 734 of the Code occurs
r if a transfer of a Membership Interest as described in section 743 of the Code occurs, on
written request of any Member, to elect, pursuant to section 754 of the Code, to adjust the basis
of Company properties;

(d)  to elect to amortize the organizational expenses of the Company and the startup expenditures of the Company under section 195 of the Code ratably over a period of 60 months as permitted by section 709(b) of the Code; and

(e)  any other election the Tax Matters Partner may deem appropriate and in the best interests of the Members.

Neither the Company nor any Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter 1 of subtitle A of the Code or any similar provisions of applicable state law, and no provision of this Operating Agreement (including, without limitations, Section 2.08) shall be construed to sanction or approve such an election.

9.03  **Tax Matters Partner.**  The Company's initial Tax Matters Partner shall be Charles Wertman.  Thereafter, a Majority In Interest of the Members shall designate a successor Tax Matters Partner.  The Tax Matters Partner shall take such action as may be necessary to cause each other Member to become a "notice partner" within the meaning of section 6223 of the Code. The Tax Matters Partner shall inform each other Member of all significant matters that may come to its attention in its capacity as "tax matters partner" (as defined in section 6231 of the Code) by giving notice thereof on or before the fifth Business Day after becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications it may receive in that capacity.  The Tax Matters Partner may not take any action contemplated by sections 6222 through 6232 of the Code without the consent of a Majority In Interest, but this sentence does not authorize such Member (or any other Member) to take any action left to the determination of an individual Member under sections 6222 through 6232 of the Code.

## ARTICLE X
## BOOKS, RECORDS, REPORTS, AND BANK ACCOUNTS

10.01  **Maintenance of Books.**  The Company shall keep books and records of accounts, shall keep minutes of the proceedings of its Members, and shall keep such other books and records as provided by the Act and as the Company may deem necessary or advisable.

10.02  **Reports.**  On or before the 90th day following the end of each fiscal year during the term of the Company, the Tax Matters Partner shall cause each Member to be furnished with the following:

(a)  an unaudited balance sheet and statement of operations, Members' equity and changes in financial position, all of which shall be prepared in accordance with accounting principles generally employed for the cash-basis records consistently applied (except as therein noted); and

Doc:103334-5.wpd

(b) (i) U.S. federal income tax Form K-1 and any similar forms required by any state or local taxing authority and (ii) any other information concerning the Company reasonably necessary for the preparation of the Members' federal and state income tax returns.

Upon showing good cause (which shall be determined without regard to the foreseeability of such cause), the Tax Matters Partner shall be entitled to a reasonable extension of the 90-day period applicable to the items described in Section 10.02(b). The Tax Matters Partner also may cause to be prepared or delivered such other reports as he or she may deem appropriate. The Company shall bear the costs of all these reports.

10.03 **Accounts.** The Manager or such officer of the Company to which the Manager delegates shall establish and maintain one or more separate bank and investment accounts and arrangements for Company funds in the Company name with financial institutions and firms that the Manager or such officer of the Company determines, subject to the prior consent of a Majority In Interest of the Members. No Member may commingle the Company's funds with the funds of any Member; however, Company funds may be invested in a manner the same as or similar to the Members' investment of their own funds or investments by their Affiliates.

## ARTICLE XI
## DISSOLUTION, LIQUIDATION, AND TERMINATION

11.01 **Dissolution.** The Company shall dissolve and its affairs shall be wound up on the first to occur of the following:

(a) the written consent of a Supermajority In Interest of the Members;

(b) the death, retirement, resignation, expulsion, bankruptcy or incapacity of the Manager (a "Manager Dissolution Event"), provided, however, that if an event described in this Section 11.01(b) shall occur, the Company shall not be dissolved, and the business of the Company shall be continued, if a Majority In Interest of the Members so consent in writing within ninety (90) Business Days after the date of the occurrence of such Manager Dissolution Event and in connection therewith elects a successor Manager in accordance with Section 7.01(h) hereof;

(c) entry of a decree of judicial dissolution of the Company under section 702 of the Act; or

(d) the expiration of the term of the Company as stated in the Articles, if any.

11.02 **Dissolution Process.** Dissolution of the Company shall commence as of the day on which the event occurs giving rise thereto. Notwithstanding the dissolution of the Company and prior to the termination thereof, the business of the Company and the affairs of the Members, as such, shall continue to be governed by this Operating Agreement. Upon the commencement of the dissolution of the Company, an independent certified public accounting firm shall be

Doc:103334-5.wpd

designated by a Majority In Interest of the Members to audit the Company's financial statements and prepare and deliver to each Member, within sixty (60) days after its appointment, a report containing a balance sheet as of the effective date of such dissolution and statements of income, capital account and changes in financial position for the portion of the fiscal year prior to, through and including the effective date of such dissolution. Pending the preparation and delivery of such report, the assets of the Company shall be applied and distributed as contemplated by Section 11.03 hereof.

11.03  **Distributions upon Dissolution.**  A reasonable time shall be allowed for the orderly liquidation of the assets of the Company, the settlement of its accounts and the discharge of its liabilities to creditors, so as to minimize the losses attendant upon liquidation. The then remaining assets of the Company shall be applied in the following order of priority:

(a)  to the payment of creditors, other than the Members, in the order of priority provided by law;

(b)  to the payment of any indebtedness of the Company to Members for money borrowed, including without limitation any loans by Members to the Company pursuant to Section 4.04 hereof;

(c)  to the setting up of any contingency reserves which the Majority In Interest of the Members (or any liquidator appointed thereby) deems reasonably necessary for the payment of any contingent or unforeseen liabilities or obligations of the Company, such reserves to be paid over to such bank or other person as shall be appointed by the Majority In Interest of the Members (or the appointed liquidator) and held for the purpose of disbursing such reserves in payment of any such contingencies until, at the expiration of such period as the Majority In Interest of the Members (or the appointed liquidator) shall deem advisable, the bank or such other person shall distribute the balance thereafter remaining in the priority and manner provided in this Section 11.03; and

(d)  to the Members and Transferees in accordance with their positive Capital Account balances at that time.

The distribution of cash and/or property to a Member or Transferee in accordance with the provisions of this Section 11.03 shall constitute a complete distribution to the Member or Transferee of its interest in all the Company's property and a compromise to which all Members or Transferee have consented within the meaning of the Act.

11.04  **Deficit Capital Accounts.**  Notwithstanding anything to the contrary contained in this Operating Agreement, and notwithstanding any custom or rule of law to the contrary, upon dissolution of the Company no Capital Account deficit shall be an asset of the Company and such Members or Transferees shall not be obligated to contribute such amount to the Company to bring the balance of such Member's or Transferee's Capital Account to zero.

Doc:103334-5.wpd

-25-

11.05 **Articles of Dissolution.** On completion of the distribution of Company assets as provided herein, the Company is terminated, and such Person or Persons as the Act may require or permit shall file Articles of Dissolution with the Secretary of State of New York, cancel any other filings made pursuant to Section 2.05, and take such other actions as may be necessary to terminate the Company.

## ARTICLE XII
## DISPUTE RESOLUTION

12.01 **Arbitration.**

(a) Any controversy, dispute or claim arising out of or relating to this Operating Agreement, or the breach thereof, shall be resolved by arbitration before a panel of three (3) arbitrators under the auspices of the American Arbitration Association and in accordance with its then outstanding Commercial Rules. A ruling of the arbitrators shall be final and binding and may be entered as a judgment in any court of competent jurisdiction and shall be based upon the substantive law of the State of New York. The prevailing party shall be entitled to costs of the arbitration and reasonable attorney's fees as well as travel and lodging expenses. Any arbitration pursuant to this provision shall be held in the State of New York, unless otherwise agreed by the parties, applying the substantive laws of the State of New York, without giving effect to its conflicts of laws principles.

(b) Notwithstanding subsection 12.01(a), the Company or the Members shall retain the right to seek from a court of competent jurisdiction, upon seventy-two (72) hours notice given prior to seeking such relief, preliminary or permanent injunctive relief, specific performance or any other equitable remedy with respect to any aspect of this Operating Agreement.

## ARTICLE XIII
## GENERAL PROVISIONS

13.01 **Offset.** Whenever the Company is to pay any sum to any Member or Transferee, any amounts that Member or Transferee owes the Company may be deducted from that sum before payment.

13.02 **Notices.** Except as expressly set forth to the contrary in this Operating Agreement, all notices, requests, or consents provided for or permitted to be given under this Operating Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and a notice, request, or consent given under this Operating Agreement is effective on receipt by the Person to receive it. All notices, requests, and consents to be sent to a Member and Transferees must be sent to or made at the addresses given for that Member and Transferees on Exhibit A or in the instrument described in Section 3.02(d), or such other address

as that Member and Transferees may specify by notice to the other Members and Transferees. Whenever any notice is required to be given by law, the Articles or this Operating Agreement, a written waiver thereof, signed by the Person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

13.03  **Entire Agreement; Supersession.**  This Operating Agreement constitutes the entire agreement of the Members and their Affiliates relating to the Company and supersedes all prior contracts or agreements with respect to the Company, whether oral or written.

13.04  **Effect of Waiver or Consent.**  A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company. Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Company, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute of limitations period has run.

13.05  **Amendment or Modification.**  This Operating Agreement may be amended or modified from time to time only as provided in the Articles and Section 6.02(b)(x).

13.06  **Binding Effect.**  Subject to the restrictions on Dispositions set forth in this Operating Agreement, this Operating Agreement is binding on and inures to the benefit of the Members and their respective heirs, legal representatives, successors, and assigns.

13.07  **Governing Law; Severability.**  THIS OPERATING AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK, EXCLUDING ANY CONFLICT-OF-LAWS RULE OR PRINCIPLE THAT MIGHT REFER THE GOVERNANCE OR THE CONSTRUCTION OF THIS OPERATING AGREEMENT TO THE LAW OF ANOTHER JURISDICTION. In the event of a direct conflict between the provisions of this Operating Agreement and (a) any provision of the Articles, or (b) any mandatory provision of the Act the applicable provision of the Articles or the Act shall control. If any provision of this Operating Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Operating Agreement and the application of that provision to other Persons or circumstances is not affected thereby and that provision shall be enforced to the greatest extent permitted by law.

13.08  **Further Assurances.**  In connection with this Operating Agreement and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Operating Agreement and those transactions.

Doc:103334-5.wpd

**13.09  Waiver of Certain Rights.** Each Member irrevocably waives any right it may have to maintain any action for partition of the property of the Company.

**13.10  Notice to Members of Provisions of this Agreement.** By executing this Operating Agreement, each Member acknowledges that it has actual notice of (a) all of the provisions of this Operating Agreement, including, without limitation, the restrictions on the transfer of Membership Interests set forth in Article III, and (b) all of the provisions of the Articles. Each Member hereby agrees that this Operating Agreement constitutes adequate notice of all such provisions, including, without limitation, any notice requirement under the Act and each Member hereby waives any requirement that any further notice thereunder be given.

**13.11  Counterparts.** This Operating Agreement may be executed in any number of counterparts with the same effect as if all signing parties had signed the same document. All counterparts shall be construed together and constitute the same instrument.

The undersigned, being all the initial Members of the Company, hereby certify that this Operating Agreement was unanimously adopted by the Members.

Doc:103334-5.wpd

IN WITNESS WHEREOF, the Members have executed this Operating Agreement as of the date first set forth above.

MEMBERS:

EXHIBIT A

<u>Names and Addresses of Members</u>

I.    <u>Preferred Members</u>:

       (a)

       (b)

       (c)

       (d)

       (e)

       (f)

       (g)

       (h)

       (i)

       (j)

       (k)

       (l)

       (m)

       (n)

(l)    <u>Non-Preferred Members</u>:

MEMBERS:



EXHIBIT A

Names and Addresses of Members

1.       Preferred Members:

(1)      Non-Preferred Members:



Preferred Members:

(a)

(b)

(c)

(d)

(e)

(f)

(g)

(h)

(i)

(j)

(k)

(l)

(m)

(n)

Non-Preferred Members:

(1)

Signatures of Members

EXHIBIT C



**EXHIBIT C**

**_Signatures of Members_**

**_Preferred Members:_**

_Frank Maiorano_

**_Non-Preferred Members:_**

(1)

(i)

Non-Preferred Members:

Preferred Members:

Signatures of Members

EXHIBIT C

-11-

24

EXHIBIT C

Signatures of Members

Preferred Members:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(1)    Non-Preferred Members:

_____

Doc:103334-5.wpd

-31-

Sharing Ratios and Voting Power of Members

| Name | Sharing Ratio | Voting Power |
|---|---|---|
| (a) | 4.29% | 4.29% |
| (b) | 8.00% | 8.00% |
| (c) | 5.71% | 5.71% |
| (d) | 5.71% | 5.71% |
| (e) | 2.86% | 2.86% |
| (f) | 2.06% | 2.06% |
| (g) | 9.20% | 9.20% |
| (h) | 4.00% | 4.00% |
| (i) | 4.00% | 4.00% |
| (j) | 4.00% | 4.00% |
| (k) | 2.86% | 2.86% |
| (l) | 2.86% | 2.86% |
| (m) | 17.26% | 17.26% |
| (n) | 7.20% | 7.20% |
| (n) | 20.00% | 20.00% |

- 32 -

2q

EXHIBIT C

## Capital Sharing Ratios

| Name | Capital Sharing Ratio |
|---|---|
| (a) | 4.29% |
| (b) | 8.00% |
| (c) | 5.71% |
| (d) | 5.71% |
| (e) | 2.86% |
| (f) | 2.06% |
| (g) | 9.20% |
| (h) | 4.00% |
| (i) | 4.00% |
| (j) | 4.00% |
| (k) | 2.86% |
| (l) | 2.86% |
| (m | 17.26% |
| (n) | 7.20% |
| (n | 20.00% |

- 33 -

# EXHIBIT C

## ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTEREST

WHEREAS, PRIME RESIDENTIAL BRONX R&R II, L.L.C. ("Assignor") is the owner of one hundred percent (100%) of the membership interests in and to 243rd Street Bronx R&R LLC, a Delaware limited liability company (the "Company"); and

WHEREAS, by that certain LLC Interest Purchase Agreement between Assignor and Charles Wertman ("Wertman") dated as of April 19, 2004 (the "Purchase Agreement"), Assignor has agreed to assign to Wertman, a forty-nine and 00/100 percent (49.00%) membership interest in the Company (the "Assigned Interest") and Wertman has agreed to assume the Assigned Interest; and

WHEREAS, pursuant to Section 22.02 of the Purchase Agreement, Wertman has designated AV 243 LLC ("Assignee") as the party to which the Assigned Interest is to be transferred; and

WHEREAS, Assignee desires to acquire the Assigned Interest;

NOW, THEREFORE, THIS INSTRUMENT WITNESSETH:

1.  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Assignor, the Assignor does hereby grant, bargain, sell, convey and assign to the Assignee all right, title and interest, legal or equitable, of the Assignor in and to the Assigned Interest TO HAVE AND TO HOLD said Assigned Interest, with all the appurtenances thereto, unto the Assignee, its successors and assigns, and for its and their own use forever, free and clear of all liens, charges, encumbrances, easements, defects, security interests, claims, options, restrictions or adverse claims of any nature whatsoever.

2.  Each of the Assignor and the Assignee hereby covenants that it will, whenever and as often as required so to do by the other, execute, acknowledge and deliver any and all such other and further acts, deeds, assignments, transfers, conveyances, confirmations, powers of attorney and any instruments of further assurance, approvals and consents as the other may reasonably require in order to complete, insure and perfect the transfer, conveyance and assignment to the Assignee of all the right, title and interest of the Assignor in and to the Assigned Interest hereby granted, bargained, sold, conveyed or assigned.

3.  The assignment made herein is without representation, warranty or covenant of any kind or nature, except to the extent any of the same are expressly made in the Purchase Agreement and are expressly stated in the Purchase Agreement to survive the Closing.

4.  Pursuant to Section 11.13 of the Purchase Agreement, Assignor hereby indemnifies and holds harmless Assignee from and against, and to reimburse Assignee for, any and all claims, demands, causes of action, loss, damage, liabilities, costs and expenses (including reasonable attorney's fees and court costs) asserted against or incurred by Assignee by reason of or arising out of (a) the Seller Entities' failure to perform its obligations as lessor under any Lease before the date of the Closing, (b) Assignor's failure to pay any New York State or New York City transfer tax due upon the consummation of the transactions contemplated in the

*[handwritten annotations]* revise reject 300142243v1 including but not limited to any and all obligations as set forth under a certain Statement of Understanding dated Sept 21, 2004 signed by Assignor and Assignee in favor of New York Community Bank with each party taking responsibilities in accordance with the passing of title

*Items docketed again Prime Residential Bronx R & F TE LLC subsequent to the closing* (Re)

Purchase Agreement or (c) the untruth of any material representation by Assignor that survives Closing under the express terms of the Purchase Agreement.

5.    Pursuant to Section 12.02 of the Purchase Agreement, Wertman and Assignee hereby confirm their agreements pursuant to Section 4.03 of the Purchase Agreement.

6.    Pursuant to Section 12.03 of the Purchase Agreement, Wertman and Assignee hereby indemnify and agree to defend Assignor against any loss or liability (including, without limitation, reasonable attorney's fees and disbursements) which arises out of the Company's failure to perform its obligations as lessor under any Lease first arising after the date of the Closing.

7.    Pursuant to Section 12.04 of the Purchase Agreement, Wertman hereby indemnifies and agrees to defend each of Assignor, Arthur Green, Richard Aidekman and Howard Schwade (each, an "Indemnitee") against any loss or liability (including, without limitation, reasonable attorney's fees and disbursements) which arises out of any guaranty or indemnity given by such Indemnitee to Existing Mortgagee and relates to the Company's failure after Closing to fulfill its obligations to Existing Mortgagee and its successors and assigns.

8.    Each of the Assignor and the Assignee hereby covenants and agrees, to and for the benefit of the other, that it shall, from and after the effective date hereof, be bound by all of the terms of the operating agreement of the Company, as the same may be amended and/or restated by the then-members of the Company.

9.    Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than the parties hereto and their respective successors and assigns, any remedy or claim under or by reason of this instrument or any term, covenant or condition hereof, and all the terms, covenants, conditions and agreements contained in this instrument shall be for the sole and exclusive benefit of the parties hereto and their successors and assigns.

10.    This Assignment and Assumption of Membership Interest shall be governed by and construed in accordance with the internal substantive laws, and not the choice of law rules, of the State of Delaware.

11.    This Assignment and Assumption of Membership Interest shall become effective as of September 21, 2004.

12.    This Assignment and Assumption of Membership Interest may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

13.    Capitalized terms used herein without definition shall have the respective meanings ascribed thereto in the Purchase Agreement.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

300142243v1

IN WITNESS WHEREOF, the undersigned have caused this Assignment and Assumption of Membership Interest to be executed as of this _Ʋ5ł_ day of September 2004.

PRIME RESIDENTIAL BRONX R&R II, L.L.C., as Assignor

By: Prime Residential R&R Holdings, LLC, its sole member

By: Multi-Dwelling Properties IV, LLC, its sole member

By: _____
Name:
Title:


AV 243 LLC, as Assignee

By: _____
Name:
Title:

_____
Charles Wertman

# EXHIBIT D

## ASSIGNMENT AND ASSUMPTION
## OF
## MEMBERSHIP INTEREST
## IN
## 243RD STREET BRONX R&R LLC

Reference is made to that certain limited liability company known as 243rd Street Bronx R&R LLC having an office c/o Lev Management, 26 Broadway, New York, New York 10004.

Prime Residential Bronx R&R II, L.L.C., a Delaware limited liability company (the "Assignor"), the holder of a fifty one (51%) percent membership interest in the Company hereby assigns to AV 243 LLC, a New York limited liability Company having an office c/o Lev Management, 26 Broadway, New York, New York 10004 (the "Assignee") all of Assignor's membership interest in the company. Assignee hereby accepts such membership interest and hereby assumes all obligations as member with regard to the membership interest so transferred from and after the date hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption as of the ___8___ day of ___M-y___, 2007.

ASSIGNOR:                              PRIME RESIDENTIAL BRONX R&R II, L.L.C.

By: _____

ASSIGNEE:                              AV 243 LLC

By: _____

#123941.1-Word

STATE OF ~~NEW YORK~~ *Connecticut*  )
                                     ) ss:
COUNTY OF *Fairfield*  )


On the 8th day of *May* in the year 2007, before me, the undersigned, personally appeared *Arthur C. Green*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Signature and Office of individual          MARCOS de JESUS
taking acknowledgment                       Notary Public, Connecticut
                                            My Commission Expires 10/31/09



STATE OF NEW YORK    )
                     ) ss:
COUNTY OF            )


On the 18 day of *May* in the year 2007, before me, the undersigned, personally appeared *Charles Weston*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Signature and Office of individual
taking acknowledgment

              OFFER WAIDE
NOTARY PUBLIC, State of New York
         No. 02WA6095163
      Qualified in Kings County
Commission Expires July 7, 2007


#123941.1-Word

# EXHIBIT E

## 243rd Street Bronx R&R, LLC.
## Outstanding To NYC
### November 12, 2012

Real Estate Taxes:

| | | |
|---|---:|---:|
| 738 East 243rd St | 247,718.50 | |
| 710 East 243rd St **(LIEN SOLD)** | 123,396.14 | |
| Miscellaneous Violations (E.R.P. Etc.) | 2,857.33 | |
| **Total Dept. of Finance** | | $ 373,971.97 |

Water & Sewer Charges:

| | | |
|---|---:|---:|
| 738 East 243rd St | 126,081.70 | |
| 710 East 243rd St | 41,648.33 | |
| 710 East 243rd St | 87,925.08 | |
| **Total Water & Sewer** | | $ 255,655.11 |

Violations:

| | | |
|---|---:|---:|
| 738 East 243rd St | 74,606.00 | |
| 710 East 243rd St | 30,440.00 | |
| | | $ 105,046.00 |

**Total amount Outstanding to NYC:**              734,673.08


**NYC**
**Finance**

# Property Tax Bill
## Quarterly Statement
### Activity through August 17, 2012

**Owner name:** 243RD STREET BRONX R.
**Property address:** 738 E. 243RD ST.
**Borough, block & lot:** BRONX (2), 05115, 0047

**Mailing address:**
243RD STREET BRONX R.
738 EAST 243 STREET
BRONX, NY 10470

| | |
|---|---|
| Outstanding Charges | $247,718.50 |
| New Charges | $0.00 |
| **Amount Due** | **$247,718.50** |

*Please pay by October 1, 2012*

Did you know...
you can pay your property taxes through your bank's website or online bill pay site?
It's safe, fast, and easy!  See reverse side for details.

Pay today the easy way at nyc.gov/payonline.

Visit us at nyc.gov/finance or call 311 for more information.

001400.01
84957

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**NYC**
**Finance**

Please include this coupon if you pay by mail or in person.   2-05115-0047

**Total amount due by October 1, 2012**
If you want to pay everything you owe by October 1, 2012 please pay

$247,718.50
$320,377.58

**Amount enclosed:** [                ]

\*BWNFFBV
\*8133464120817011\*

243RD STREET BRONX R.
738 EAST 243 STREET
BRONX NY 10470

**Mail payment to:**
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

8133464120817 01 2051150047 0000024771850 0000032037758 121001270081001   8


**Finance**

August 17, 2012
243rd Street Bronx R.
738 E. 243rd St.
2-05115-0047
Page 2

## Billing Summary

| | Date | Amount |
|---|---|---|
| Outstanding charges including interest and payments | | |
| Total amount due | | $247,718.50 |
| | | **$247,718.50** |

## Charges You Can Pre-pay

| | Activity Date | Date | Amount |
|---|---|---|---|
| Finance-Property Tax | | 01/01/2013 | $72,659.08 |
| Total charges you can pre-pay | | | $72,659.08 |
| If you want to pay everything you owe by October 1, 2012 please pay | | | **$320,377.58** |

## Annual Property Tax Detail

Tax class   2 -  Residential, More Than 10 Units
Current tax rate

Tax rate
13.4330%

Estimated market value  **$2,404,000**

| | Billable assessed value | | tax rate | | Taxes |
|---|---|---|---|---|---|
| Tax before exemptions and abatements | $1,081,800 | X | 13.4330% | = | $145,318 |
| Tax before abatements | | | | | $145,318 |
| Annual property tax | | | | | $145,318 |

### Home banking payment instructions:

1. **Log** into your bank or online bill pay website
2. **Add** the new payee: NYC DOF Property Tax.  Enter your account number, which is your boro, block and lot, as it appears here: 2-05115-0047.  You may also need to enter the address for the Department of Finance.  The address is P.O. Box 680, Newark, NJ 07101-0680.
3. **Schedule** your online payment using your checking or savings account

### Did your mailing address change?

If so, please visit us at nyc.gov/changemailingaddress or call **311**.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.





**NYC**
**Finance**

# Property Tax Bill
## Quarterly Statement
Activity through August 17, 2012

**Owner name:**       243RD STREET BRONX R.
**Property address:**  710 E. 243RD ST.
**Borough, block & lot:**  **BRONX (2), 05115, 0028**

**Mailing address:**
243RD STREET BRONX R.
710 E. 243RD ST.
BRONX, NY 10470-1230

Outstanding Charges                    $0.00

New Charges                            $0.00

**Amount Due**                         **$0.00**

Did you know...
you can pay your property taxes through your bank's website or online bill pay site?
It's safe, fast, and easy!  See reverse side for details.
***The Department of Environmental Protection records indicate that you have not paid your water bill***
***Please call (718) 595-7890 immediately to pay or set-up a payment arrangement.***

Pay today the easy way at nyc.gov/payonline.

Visit us at nyc.gov/finance or call 311 for more information.

001400.01
84950

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**NYC**
**Finance**

Please include this coupon if you pay by mail or in person.   2-05115-0028

**Total amount due by October 1, 2012**
**If you want to pay everything you owe by October 1, 2012 please pay**          $0.00
                                                                                 $45,846.40

**Amount enclosed:** _____

*BWNFFBV
*8133457120817015*

243RD STREET BRONX R.
710 E. 243RD ST.
BRONX NY 10470-1230

**Mail payment to:**
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

8133457120817 01 2051150028 0000000000000 0000004584640 1210012700810001   5



August 17, 2012
243rd Street Bronx R.
710 E. 243rd St.
2-05115-0028
Page 2

## Billing Summary

| | Date | |
|---|---|---|
| Outstanding charges including interest and payments | | **Amount** |
| **Total amount due** | | $0.00 |
| | | **$0.00** |

## Charges You Can Pre-pay

| | Activity Date | Date | **Amount** |
|---|---|---|---|
| Finance-Property Tax | | 01/01/2013 | $45,846.40 |
| **Total charges you can pre-pay** | | | **$45,846.40** |
| **If you want to pay everything you owe by October 1, 2012 please pay** | | | **$45,846.40** |

## Annual Property Tax Detail

| | | | | | |
|---|---|---|---|---|---|
| Tax class   2 -  Residential, More Than 10 Units | | **Tax rate** | | | |
|   Current tax rate | | 13.4330% | | | |
| **Estimated market value  $1,541,000** | | | | | |
| | | **Billable assessed** | | | |
| **Tax before exemptions and abatements** | | **value** | **tax rate** | | **Taxes** |
| | | $693,450   X | 13.4330% | = | $93,151 |
| **Tax before abatements** | | | | | **$93,151** |
|   J51 Abatement | | | | | **$-1,458** |
| **Annual property tax** | | | | | **$91,693** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### Home banking payment instructions:

1. **Log** into your bank or online bill pay website
2. **Add** the new payee:  NYC DOF Property Tax.  Enter your account number, which is your boro, block and lot, as it appears here: 2-05115-0028.  You may also need to enter the address for the Department of Finance.  The address is P.O. Box 680, Newark, NJ 07101-0680.
3. **Schedule** your online payment using your checking or savings account

### Did your mailing address change?

If so, please visit us at nyc.gov/changemailingaddress or call 311.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.



Back to NYCServ •••••••••••••••••••••• • The Official New York City Web Site

# Property Tax | View Items

### Profile

| Name(s): | 243RD STREET BRONX R | Mailing Address: | 738 EAST 243 STREET BRONX, NY 10470 |
|---|---|---|---|
| **Planned Payment Date:** | 11/09/2012 | **BBL:** | 2-05115-0047/0 |

To display additional details for the item, click  in the Details column. (A new window will open.)

**Charges as of Friday, Nov 9, 2012 11:46 AM**

☐ Check this box to select or deselect all items

| | Select | Account Type / BBL | Account ID | Period Begin | Details | Amount Due | | Amount to Pay |
|---|---|---|---|---|---|---|---|---|
| 1 | ☑ | Health-Inspection 2-05115-0047/0 | | 03/06/2009 | 🛈 | 163.72 | $ | 163.72 |
| 2 | ☑ | Buildings-Elevator 2-05115-0047/0 | | 04/06/2009 | 🛈 | 119.02 | $ | 119.02 |
| 3 | ☑ | Housing-Emergency Repair 2-05115-0047/0 | 0035849 | 05/06/2009 | 🛈 | 70.46 | $ | 70.46 |
| 4 | ☑ | Housing-Emergency Repair 2-05115-0047/0 | 0035849 | 05/19/2009 | 🛈 | 133.96 | $ | 133.96 |
| 5 | ☑ | Housing-Emergency Repair 2-05115-0047/0 | 0035849 | 05/20/2009 | 🛈 | 809.67 | $ | 809.67 |
| 6 | ☑ | Buildings-Elevator 2-05115-0047/0 | | 12/09/2009 | 🛈 | 103.98 | $ | 103.98 |
| 7 | ☑ | Health-Inspection 2-05115-0047/0 | | 06/04/2010 | 🛈 | 138.37 | $ | 138.37 |
| 8 | ☑ | Housing-Rent Stabilization 2-05115-0047/0 | 700200 | 04/01/2009 | 🛈 | 977.85 | $ | 977.85 |
| 9 | ☑ | Buildings-Elevator 2-05115-0047/0 | | 11/15/2010 | 🛈 | 133.63 | $ | 133.63 |
| 10 | ☐ | Finance-Property Tax 2-05115-0047/0 | | 07/01/2011 | 🛈 | 89,517.36 | $ | 0.00 |
| 11 | ☐ | Finance-Property Tax 2-05115-0047/0 | | 01/01/2012 | 🛈 | 82,733.63 | $ | 0.00 |
| 12 | ☑ | Buildings-Elevator 2-05115-0047/0 | | 03/09/2012 | 🛈 | 106.67 | $ | 106.67 |
| 13 | ☐ | Finance-Property Tax 2-05115-0047/0 | | 07/01/2012 | 🛈 | 77,506.75 | $ | 0.00 |
| 14 | ☑ | Buildings-Elevator 2-05115-0047/0 | | 09/25/2012 | 🛈 | 100.00 | $ | 100.00 |

11/9/2012 11:46 AM

**Not Due**

| 15 | ☐ | Finance-Property Tax 2-05115-0047/0 | 01/01/2013 |  | 72,659.08 | $ | 0.00 |

|  | Total Due | Amount to Pay |
|---|---|---|
|  | $325,274.15 | $ **2,857.33** |

Items and amounts might not reflect recent payments you have made. Check here to check the last payment received . If the information provided here is not accurate, please Contact Us. (A new window will open).

CANCEL    CONTINUE

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us | FAQs | Privacy Statement | Site Map | Search

Copyright ©2001 New York City D.O.F. All rights reserved. - Contact NYCServ (A new window will open).

11/9/2012 11:46 AM

Back to NYCServ ✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦ *The Official New York City Web Site*

# Property Tax | View Items

## Profile

| Name(s): | 243RD STREET BRONX R | Mailing Address: | 710 E 243RD ST BRONX, NY 10470-1230 |
|---|---|---|---|
| Planned Payment Date: | 11/09/2012 | BBL: | 2-05115-0028/0 |

## This property is in LIEN SOLD status

To display additional details for the item, click [i] in the Details column. (A new window will open.)

**Charges as of Friday, Nov 9, 2012 11:46 AM**

| Select | Account Type / BBL | Account ID | Period Begin | Details | Amount Due | Amount to Pay |
|---|---|---|---|---|---|---|
| 1 ☐ | Finance-Property Tax 2-05115-0028/0 | | 01/01/2013 | [i] | 45,846.40 | $ 0.00 |
| | | | | | Total Due | Amount to Pay |
| | | | | | $45,846.40 | $ 0.00 |

*Not Due*

Items and amounts might not reflect recent payments you have made. Check here to check the last payment received . If the information provided here is not accurate, please Contact Us. (A new window will open.)

[ CANCEL ]    [ CONTINUE ]

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us | FAQs | Privacy Statement | Site Map | Search

Copyright ©2001 New York City D.O.F. All rights reserved. - Contact NYCServ (A new window will open.)

# NYC
## Finance

# Property Tax Bill
## Quarterly Statement
### Activity through June 08, 2012

**Owner name:**  243RD STREET BRONX R.
**Property address:**  710 E. 243RD ST.
**Borough, block & lot:**  **BRONX (2), 05115, 0028**

**Mailing address:**
243RD STREET BRONX R.
710 E. 243RD ST.
BRONX, NY 10470-1230

Outstanding Charges          $123,396.14    — Sold in Lien Sale

New Charges                  $45,846.40     — Not Due until 2013 - January

**Amount Due**               **$169,242.54**

*Please pay by July 2, 2012*

Did you know...
you can pay your property taxes through your bank's website or online bill pay site?
It's safe, fast, and easy!  See reverse side for details.

WARNING:  Finance will sell a lien on your property unless you resolve outstanding property tax and/or water sewer charges
by July 17, 2012.  Please contact Finance's Tax Lien Ombudsperson at (212) 504-4039.

**\*\*\*The Department of Environmental Protection records indicate that you have not paid your water bill\*\*\***
**\*\*\*Please call (718) 595-7890 immediately to pay or set-up a payment arrangement.\*\*\***

Pay today the easy way at nyc.gov/payonline.

Visit us at nyc.gov/finance or call 311 for more information.

001400.01
87957

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# NYC
## Finance

Please include this coupon if you pay by mail or in person.   2-05115-0028

**Total amount due by July 2, 2012**
**If you want to pay everything you owe by July 2, 2012 please pay**

$169,242.54
$214,172.01

Amount enclosed:


*BWNFFBV
*9084049120608010*

243RD STREET BRONX R.
710 E. 243RD ST.
BRONX NY 10470-1230

**Mail payment to:**
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

9084049120608 01 2051150028 0000016924254 0000021417201 1207022700081001    4

# NYC Finance

Statement Details

June 8, 2012
243rd Street Bronx R.
710 E. 243rd St.
2-05115-0028
Page 2

## Billing Summary

| Outstanding charges including interest and payments | Date | Amount |
|---|---|---|
| Finance-Property Tax | 07/01/2012 | $123,396.14 |
| J51 Abatement | 06/08/2012 | $46,575.56 |
| **Total amount due** | | $-729.16 |
| | | **$169,242.54** |

## Charges You Can Pre-pay

| Finance-Property Tax | Activity Date | Date | Amount |
|---|---|---|---|
| J51 Abatement | | 01/01/2013 | $46,575.56 |
| | 06/08/2012 | | $-729.16 |
| **Total charges you can pre-pay** | | | $-729.16 |
| **If you want to pay everything you owe by July 2, 2012 please pay** | | | **$45,846.40** |
| If you pay everything you owe by July 2, 2012, you would save: | | | **$214,172.01** |
| | | | $916.93 |

## Annual Property Tax Detail

Tax class  2 -  Residential, More Than 10 Units
  Current tax rate

Tax rate
13.4330%

**Estimated market value  $1,541,000**

| Tax before exemptions and abatements | Billable assessed value | tax rate | Taxes |
|---|---|---|---|
| **Tax before abatements** | $693,450   X | 13.4330% = | $93,151 |
| J51 Abatement | | | **$93,151** |
| **Annual property tax** | | | $-1,458 |
| | | | **$91,693** |

You are required to tell us the income and expenses for your property before September 4, 2012.
Please file the information electronically by visiting  nyc.gov/rpie.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### Home banking payment instructions:

1. **Log** into your bank or online bill pay website
2. **Add** the new payee:  NYC DOF Property Tax.  Enter your account number, which is your boro, block and lot, as it appears here: 2-05115-0028.  You may also need to enter the address for the Department of Finance.  The address is P.O. Box 680, Newark, NJ 07101-0680.
3. **Schedule** your online payment using your checking or savings account

### Did your mailing address change?

If so, please visit us at nyc.gov/changemailingaddress or call **311.**

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.



# DEP Water Bill | City of New York

## Profile

**Billing Name and Address:**

BRONX R+R II
4824 WHITE PLAINS RD
BRONX NY 10470-1102

**Account Number:** 00002-22839-001
**Bill Date:** August 7, 2012
**Payment Due By:** Sep 4, 2012

**Amount Due:** $ 41,648.33

Make check payable to: NYC Water Board.

NYC WATER B_
PO BOX 37148_
PITTSBURGH, _

Reminders:
1. Enclose chec_
2. Enclose top p_ _heck.

**Please note:** Late _ _ the balance after the Due Date
of the bill.

## Billing Information

**Description**

| | Amount |
|---|---|
| Previous bill - May 8, 2012 | $39,877.50 |
| Interest Charge - Jun 7, 2012 | 299.08 |
| Interest Charge - Jul 9, 2012 | 301.32 |
| **PRIOR BALANCE** | 40,477.90 |
| Interest charge on past due amount | 303.58 |

## Rate Items

**Description**

**RATE:** BASIC WATER AND SEWER - MINIMUM CHARGE

| Meter Number | K14835176 | From | 5/3/12 | To | 7/31/12 | Days | 89 |
| Read Type | ACTUAL | Prior Read | 14100 | Current Read | 14400 | Usage | 300 |

300 Cubic Feet = 3 Hundred Cubic Feet (HCF).

Total Usage 3 HCF

Water charge    39.20
Sewer charge    62.33

**RATE:** BASIC WATER AND SEWER

| Meter Number | K15891803 | From | 4/30/12 | To | 8/2/12 | Days | 94 |
| Read Type | ESTIMATED | Prior Read | 598000 | Current Read | 607100 | Usage | 9100 |

9100 Cubic Feet = 91 Hundred Cubic Feet (HCF).

Total Usage 91 HCF

Water charge    295.49
Sewer charge    469.83

This bill reflects payments processed before Aug 7, 2012. Total amount due     **$41,648.33**

Your next bill date is scheduled for Nov 8, 2012.

Your meter(s) will be read during the preceding week. PLEASE PAY THIS AMOUNT     **$41,648.33**

A copy of your bill has been sent to 243RD ST BRONX REALTY

Service Address:

4824 WHITE PLAINS RD
BRONX NY 10470-1102

Please direct correspondence or calls to:

DEP/BCS CUSTOMER SERVICE
PO BOX 739055
ELMHURST, NY 11373-9055
(718) 595-7000

IMPORTANT MESSAGES

This billing period:

For meter K14835176

Your daily average usage = 0.03 HCF (22 GALLONS)

Your daily average cost = $ 1.14

For meter K15891803

Your daily average usage = 0.97 HCF (726 GALLONS)

Your daily average cost = $ 8.14

SAVE TIME AND PAPER, VISIT NYC.GOV/DEP AND SIGN UP FOR PAPERLESS BILLING TODAY.

TO LEARN MORE ABOUT THE CITY'S WORLD-CLASS WATER SYSTEM, FOLLOW
US ON FACEBOOK AT WWW.FACEBOOK.COM/NYCWATER OR TWITTER AT
WWW.TWITTER.COM/NYCWATER.
THIS BILL IS AN ESTIMATE OF THE WATER YOU HAVE USED. AN
ESTIMATED BILL BASED ON PREVIOUS CONSUMPTION IS A VALID BILL
AND WILL ACCRUE INTEREST IF NOT PAID WHEN DUE. THIS BILL MAY BE
HIGHER OR LOWER THAN YOUR ACTUAL CONSUMPTION, AND WHEN YOUR
METER IS READ, YOUR CHARGES MAY BE ADJUSTED TO REFLECT THE
ACTUAL CONSUMPTION REGISTERED ON THE METER IF IT IS OPERATING
CORRECTLY. IF YOU BELIEVE THERE IS A SUBSTANTIAL DIFFERENCE
BETWEEN YOUR ESTIMATED AND ACTUAL USAGE, PLEASE CALL
718-595-7000 TO SCHEDULE AN INSPECTION.

Copyright © 2012 The City of New York

Disclaimer

11/9/2012 11:08 AM

NYCProperty | Statements List | Accounts List | Add/Remove Accounts | DOF Home | DEP Home | NYC.GOV | Home

## DEP Water Bill | City of New York

### Profile

**Billing Name and Address:**

AV 243, LLC
710 E 243 ST
BRONX, NY 10470-1230

| | |
|---|---|
| Account Number: | 30002-22840-001 |
| Bill Date: | October 22, 2012 |
| Payment Due By: | Nov 19, 2012 |

Amount Due:    $ 87,925.08

Make check payable to: NYC Water Board

NYC WATER BOARD
PO BOX 371488
PITTSBURGH, PA 15250-7488



**Reminders:**
1. Enclose check with Water Account Numbers written on face of check.
2. Enclose top portion of this bill.

**Please note:  Late Payment Charges (LPC) will be added to the balance after the Due Date of the bill.**

### Billing Information

| Description | Amount |
|---|---|
| Previous bill - Sep 20, 2012 | |
| **PRIOR BALANCE** | $87,270.55 |
| Interest charge on past due amount | 87,270.55 |
| | 654.53 |
| This bill reflects payments processed before Oct 22, 2012. Total amount due | **$87,925.08** |
| PLEASE PAY THIS AMOUNT | **$87,925.08** |

Service Address:
708 E 243 ST
BRONX NY 10470-1264

of 2

11/9/2012 11:08 AM

Please direct correspondence or calls to:

DEP/BCS CUSTOMER SERVICE
PO BOX 739055
ELMHURST, NY 11373-9055
(718) 595-7000

IMPORTANT MESSAGES
SAVE TIME AND PAPER, VISIT NYC.GOV/DEP AND SIGN UP FOR PAPERLESS
BILLING TODAY.
TO LEARN MORE ABOUT THE CITY'S WORLD-CLASS WATER SYSTEM, FOLLOW
US ON FACEBOOK AT WWW.FACEBOOK.COM/NYCWATER OR TWITTER AT
WWW.TWITTER.COM/NYCWATER.

Copyright © 2012 The City of New York

Disclaimer

Statements List || Accounts List || Add/Remove Accounts || Home

Go To:  Finance Home Page | NYC.gov Home Page | Contact NYC.gov | FAQs | Privacy Statement | Site Map

| NYCProperty | Statements List | Accounts List | Add/Remove Accounts | DOF Home | DEP Home | NYC.GOV | Home |

*The Official New York City Web Site*

# DEP Water Bill | City of New York

## Profile

**Billing Name and Address:**

AV 243 LLC
% QUALITY I MANAGEMENT
PO BOX 1550 RADIO CITY STATION
NEW YORK NY 10101-1550

**Account Number:** 50002-22845-001
**Bill Date:** October 22, 2012
**Payment Due By:** Nov 19, 2012

**Amount Due:** $ 126,081.70

Make check payable to: NYC Water Board.

NYC WATER BOARD
PO BOX 371488
PITTSBURGH, PA 15250-7488


**Environmental Protection**

Reminders:
1. Enclose check with Water Account Numbers written on face of check.
2. Enclose top portion of this bill.

**Please note:  Late Payment Charges (LPC) will be added to the balance after the Due Date of the bill.**

### Billing Information

| Description | Amount |
| --- | --- |
| Previous bill - Sep 20, 2012 | $125,143.13 |
| **PRIOR BALANCE** | 125,143.13 |
| Interest charge on past due amount | 938.57 |
| This bill reflects payments processed before Oct 22, 2012. Total amount due | **$126,081.70** |
| PLEASE PAY THIS AMOUNT | **$126,081.70** |

Service Address:
738 740- E 243 ST
BRONX NY 10470

11/9/2012 11:09 AM

Please direct correspondence or calls to:

DEP/BCS CUSTOMER SERVICE
PO BOX 739055
ELMHURST, NY 11373-9055
(718) 595-7000

IMPORTANT MESSAGES

SAVE TIME AND PAPER, VISIT NYC.GOV/DEP AND SIGN UP FOR PAPERLESS BILLING TODAY.

TO LEARN MORE ABOUT THE CITY'S WORLD-CLASS WATER SYSTEM, FOLLOW US ON FACEBOOK AT WWW.FACEBOOK.COM/NYCWATER OR TWITTER AT WWW.TWITTER.COM/NYCWATER.

Copyright © 2012 The City of New York

Disclaimer

Statements List || Accounts List || Add/Remove Accounts || Home

Go To: Finance Home Page | NYC.gov Home Page | Contact NYC.gov | FAQs | Privacy Statement | Site Map

11/9/2012 11:09 AM

EXHIBIT F

243rd Street Bronx R&R, LLC.
## Outstanding Principal & Interest
November 7, 2012

| Date | Contract Interest Rate | Interest Amount | Principal Amount | Principal Balance |
|------|------------------------|-----------------|------------------|-------------------|
| 10/1/2010 | 6.520% | 52,068.54 | | 9,583,166.57 |
| 11/1/2010 | 6.520% | 52,068.54 | 9,433.04 | 9,583,166.57 |
| 12/1/2010 | 6.520% | 52,068.54 | 9,484.29 | 9,583,166.57 |
| 1/1/2011 | 6.520% | 52,068.54 | 9,535.83 | 9,583,166.57 |
| 2/1/2011 | 6.520% | 52,068.54 | 9,587.64 | 9,583,166.57 |
| 3/1/2011 | 6.520% | 52,068.54 | 9,639.73 | 9,583,166.57 |
| 4/1/2011 | 6.520% | 52,068.54 | 9,692.11 | 9,583,166.57 |
| 5/1/2011 | 6.520% | 52,068.54 | 9,744.77 | 9,583,166.57 |
| 6/1/2011 | 6.520% | 52,068.54 | 9,797.71 | 9,583,166.57 |
| 7/1/2011 | 6.520% | 52,068.54 | 9,850.95 | 9,583,166.57 |
| 8/1/2011 | 6.520% | 52,068.54 | 9,904.47 | 9,583,166.57 |
| 9/1/2011 | 6.520% | 52,068.54 | 9,958.28 | 9,583,166.57 |
| 10/1/2011 | 6.520% | 52,068.54 | 10,012.39 | 9,583,166.57 |
| 11/1/2011 | 6.520% | 52,068.54 | 10,066.79 | 9,583,166.57 |
| 12/1/2011 | 6.520% | 52,068.54 | 10,121.49 | 9,583,166.57 |
| 1/1/2012 | 6.520% | 52,068.54 | 10,176.48 | 9,583,166.57 |
| 2/1/2012 | 6.520% | 52,068.54 | 10,231.77 | 9,583,166.57 |
| 3/1/2012 | 6.520% | 52,068.54 | 10,287.37 | 9,583,166.57 |
| 4/1/2012 | 6.520% | 52,068.54 | 10,343.26 | 9,583,166.57 |
| 5/1/2012 | 6.520% | 52,068.54 | 10,399.46 | 9,583,166.57 |
| 6/1/2012 | 6.520% | 52,068.54 | 10,455.96 | 9,583,166.57 |
| 7/1/2012 | 6.520% | 52,068.54 | 10,512.77 | 9,583,166.57 |
| 8/1/2012 | 6.520% | 52,068.54 | 10,569.89 | 9,583,166.57 |
| 9/1/2012 | 6.520% | 52,068.54 | 10,627.32 | 9,583,166.57 |
| 10/1/2012 | 6.520% | 52,068.54 | 10,685.07 | 9,583,166.57 |
| 11/1/2012 | 6.520% | 26,034.27 | 10,743.12 | 9,583,166.57 |
| | | | 10,801.49 | 9,583,166.57 |

Last payment is per Diem for 15 days

| | | 1,327,747.73 | 262,663.47 | |

**Total Cure**      1,590,411.19

BANK: CITI

### 243rd Street Bronx R&R, LLC.
## Outstanding Claim Comparison
November 12, 2012

| | W/O Debtor's Claim | With Debtor's Claim | Lender's Claim |
|---|---|---|---|
| Interest Outstanding: | | | |
| Oct 1/10 - Oct 31/12 | $ 1,301,713.46 | $ 1,045,916.67 | 1,320,805.26 |
| Nov 1/12 - Nov 15/12 | 26,034.27 | 20,918.33 | 26,034.27 |
| **Total Interest Outstanding:** | 1,327,747.73 | 1,066,835.00 | 1,346,839.53 |
| Missed Principal Payments: | 262,663.47 | 262,663.47 | 241,411.04 |
| **Total Principal & Interest:** | $ 1,590,411.19 | $ 1,329,498.47 | $ 1,588,250.57 |
| Default Rate Interest: | $ - | $ - | $ 951,661.68 |
| Late Charges: | $ - | $ - | $ 96,436.50 |
| Fees, Penalties, Other: | - | - | 35.00 |
| Appraisal and Other Property- Related Expenses: | - | - | 15,750.00 |
| Legal Costs: | - | - | 158,843.50 |
| Interest Charges on Protective Advances | - | - | 1,827.60 |
| **Total amount needed to pay Lender to Cure:** | 1,590,411.19 | 1,329,498.47 | 2,812,804.85 |
| Real Estate Taxes: | | | |
| 738 East 243rd St | 247,718.50 | 247,718.50 | 371,234.00 |
| 710 East 243rd St **(LIEN SOLD)** | 123,396.14 | 123,396.14 | 309,909.00 |
| Miscellaneous Violations (E.R.P. Etc.) | 2,857.33 | 2,857.33 | - |
| Violations: | | | |
| 738 East 243rd St | 74,606.00 | 74,606.00 | 74,606.00 |
| 710 East 243rd St | 30,440.00 | 30,440.00 | 30,440.00 |
| Cost to repair Non-Monetary Violations: | | | |
| 738 East 243rd St | - | - | 324,250.00 |
| 710 East 243rd St | - | - | 181,500.00 |
| Other: | | | |
| 3 Junior Liens | - | - | 99,692.00 |
| Projected U.S. Trustee Fees | - | - | 10,000.00 |
| Water & Sewer Charges: | | | |
| 738 East 243rd St | 126,081.70 | 126,081.70 | - |
| 710 East 243rd St | 41,648.33 | 41,648.33 | - |
| 710 East 243rd St | 87,925.08 | 87,925.08 | - |
| Less: Receiver's Excess in Holding | (500,000.00) | (500,000.00) | |
| **Total amount needed to Reinstate Loan:** | 1,825,084.27 | 1,564,171.55 | 4,214,435.85 |

# EXHIBIT G

## 243rd Street Bronx R&R, LLC.
# Outstanding Charges
### November 12, 2012

Interest Outstanding:

| | | |
|---|---:|---:|
| Oct 1/10 - Oct 31/12 | $ 1,301,713.46 | |
| Nov 1/12 - Nov 15/12 | 26,034.27 | |
| **Total Interest Outstanding:** | | $ 1,327,747.73 |
| Missed Principal Payments: | | 262,663.47 |
| **Total Principal & Interest:** | | $ 1,590,411.19 |

Real Estate Taxes:

| | | |
|---|---:|---:|
| 738 East 243rd St | 247,718.50 | |
| 710 East 243rd St **(LIEN SOLD)** | 123,396.14 | |
| Miscellaneous Violations (E.R.P. Etc.) | 2,857.33 | |
| **Total Dept. of Finance** | | $   373,971.97 |

Water & Sewer Charges:

| | | |
|---|---:|---:|
| 738 East 243rd St | 126,081.70 | |
| 710 East 243rd St | 41,648.33 | |
| 710 East 243rd St | 87,925.08 | |
| **Total Water & Sewer** | | $   255,655.11 |

Violations:

| | | |
|---|---:|---:|
| 738 East 243rd St | 74,606.00 | |
| 710 East 243rd St | 30,440.00 | |
| **Total GROSS amount needed to cure:** | | $   105,046.00 |
| | | $ 2,325,084.27 |
| Less: Receiver's Excess in Holding | | (500,000.00) |
| **Total amount needed to cure:** | | 1,930,130.27 |

Exhibit H

# Property Details

## 710 East 243rd St
## Bronx, NY 10470



## Property Information

**710 East 243rd St**

Bronx, NY 10470

Block & Lot: 05115/0028

HPD# 73440 MDR# 201041

BIN# 2071916

50 Units on 6 Stories

Corp: 243rd Street Bronx R & R LLC

Emerg. Contact: Marc Levine

Emerg. Contact: Michael Gallagher

Emerg. Contact: Michael Pollis

Emerg. Contact: Nate Schwartz

Emerg. Contact: Zlatan Ibrahimovic

Head Officer: Marc Levine



## EMPOWER
NEW YORK

710 East 243rd St

## HPD

### Complaints

| | |
|---|---|
| Open Complaints: | 12 |
| Total Complaints: | 171 |
| CVR: | 29.5% |

### Violations

| | |
|---|---|
| Open Violations: | 108 |
| Open C Class: | 26 |
| VPU: | 2.16 |

### Emergency Repairs

| | |
|---|---|
| Active Repairs: | 0 |
| Repairs Balance: | $0 |
| Repairs Paid (12M): | $0 |

### Litigation

| | |
|---|---|
| Current Open Cases: | 0 |
| Comprehensive: | 0 |
| Closed Cases (12M): | 11 |

## DOB

### Complaints

| | |
|---|---|
| Open Complaints: | 0 |
| Urgent Complaints: | 0 |
| Total Complaints: | 20 |

### Violations

| | |
|---|---|
| Open Violations: | 4 |
| Violations (12M): | 0 |



### ECB

| | |
|---|---|
| Open Violations: | 9 |
| Total Penalty(12M): | $0 |
| Outstanding Balance: | $30,440 |

### WATER

| | |
|---|---|
| Open Balance: | $130,200 |
| Total Payments (12M): | $0 |
| $$ Per Unit: | n/a |

## COMPLIANCE

| Elevator | Boiler | DEP Boiler | Facade |
|---|---|---|---|

## DOF

| | |
|---|---|
| Current Open Charges: | $45,846 |
| Total Payments (12M): | $0 |
| Market Value: | $1,541,000 |
| Assessed Value: | $693,450 |
| Tax Value: | $693,450 |

## Charges By Agency



### DOF

| # Charges | Balance | Payments (12m) |
|---|---|---|
| 1 | $45,846 | $0 |

### Tax

| # Charges | Balance | Payments (12m) |
|---|---|---|
| 0 | $0 | $0 |

### FDNY

| # Charges | Balance | Payments (12m) |
|---|---|---|
| 0 | $0 | $0 |

| # Charges | Balance | Payments (12m) |
|---|---|---|
| 0 | $0 | $0 |

### HPD

| # Charges | Balance | Payments (12m) |
|---|---|---|
| 0 | $0 | $0 |

© Copyright 2012 EMPOWER NY

# Department of Housing Preservation and Development

## Violation Totals

**HPD Complaints:**

| | |
|---|---|
| Open Complaints: | 12 |
| Total Complaints: | 171 |
| Violation Ratio (CVR): | 29.5% |

**HPD Violations:**

| | |
|---|---|
| Open Violations: | 108 |
| Open C Class: | 26 |
| Violations Per Unit (VPU): | 2.16 |

**HPD Emergency Repairs:**

| | |
|---|---|
| Active Emergency Repairs: | 0 |
| Active ERP Award Amount: | $0 |
| Total Repairs Paid: | $0 |

## Violations by Unit

| Apt. | Class A | B | C | Total |
|---|---|---|---|---|
| C | 3 | 10 | 1 | 14 |
| 1C | 2 | 3 | 7 | 12 |
| K | 2 | 7 | 3 | 12 |
| - | 4 | 6 | 2 | 12 |
| 3J | | 1 | 9 | 10 |
| 1A | 2 | 6 | 1 | 9 |
| D | | 9 | | 9 |
| 3F | 1 | 5 | 1 | 7 |
| E | | 5 | | 5 |
| 1B | | 4 | | 4 |
| 2C | 1 | 3 | | 4 |
| 2D | | 3 | | 3 |
| 2K | | | 2 | 2 |
| 1E | | 2 | | 2 |
| 2H | | 1 | | 1 |
| 4-H | | 1 | | 1 |
| !F | | 1 | | 1 |

## Violation Classes



■ class A  ■ class B  ■ class C

## Violation Types



## Violation History by Class (12 Months)



## Emergency Repairs Count History (12 Months)



## Complaints Count History (12 Months)



## HPD Complaint Details

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 6139700 | 11/8/2012 | 4D | HEAT | NO HEAT/WATER | ENTIRE BUILDING | open |
| 6138765 | 11/8/2012 | NA | HEAT | NO HEAT/WATER | ENTIRE BUILDING | open |
| 6139379 | 11/8/2012 | 2C | HEAT | NO HEAT/WATER | ENTIRE BUILDING | open |
| 6108318 | 10/22/2012 | 2C | MOLD | MOLD | ENTIRE APT | violation |
| 6108318 | 10/22/2012 | 2C | WALLS | PEELING | ENTIRE APT | violation |
| 6106349 | 10/19/2012 | 8 | RUBBISH | ACCUMULATION | ENTIRE BUILDING | open |
| 6106349 | 10/19/2012 | 8 | VERMIN | BEDBUGS | ENTIRE APT | open |
| 6106349 | 10/19/2012 | 8 | VERMIN | MICE | ENTIRE APT | open |
| 6106349 | 10/19/2012 | 8 | WATER-LEAKS | CASCADING | BATHROOM | open |
| 6068758 | 9/3/2012 | 3H | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 6068894 | 9/3/2012 | 3H | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5989679 | 5/14/2012 | 3F | WINDOW GUARDS | WINDOW GUARDS | LIVING ROOM | violation |
| 5900099 | 2/12/2012 | G | HEAT | NO HEAT | ENTIRE APT | closed |
| 5879819 | 1/28/2012 | C | ELECTRIC-SUPPLY | NO-SUPPLY | BATHROOM | closed |
| 5879819 | 1/28/2012 | C | LIGHTING | FIXT MISS/HANG | BATHROOM | closed |
| 5831612 | 1/3/2012 | 2J | WATER-LEAKS | CEILING | BEDROOM | closed |
| 5831612 | 1/3/2012 | 2J | ELECTRIC-SUPPLY | APT | ENTIRE APT | closed |
| 5831612 | 1/3/2012 | 2J | ELEC/GAS-RANGE | GAS SHUT_OFF VA | KITCHEN | closed |
| 5777852 | 11/20/2011 | C | HEAT | NO HEAT | ENTIRE APT | closed |
| 5765611 | 11/20/2011 | C | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5765623 | 11/20/2011 | C | DOORS | DOOR-FRAME | ENTRANCE | violation |
| 5765620 | 11/20/2011 | C | REFRIGERATOR | INOPERATIVE | KITCHEN | closed |
| 5663865 | 8/19/2011 | 2B | CEILING | COLLAPSING | BATHROOM | closed |
| 5663865 | 8/19/2011 | 2B | ELECTRIC-WIRING | ILLEGAL TAPS | FOYER | closed |
| 5649605 | 7/28/2011 | 3F | SEWER | RAW SEWER | BASEMENT | closed |
| 5589274 | 5/4/2011 | GND | SEWER | RAW SEWER | ENTIRE APT | closed |
| 5589274 | 5/4/2011 | GND | SEWER | RAW SEWER | ENTIRE BUILDING | closed |
| 5567503 | 4/11/2011 | 1A | LOCKS | BROKEN-DEFECT | ENTRANCE | closed |
| 5567503 | 4/11/2011 | 1A | BATHTUB | CHIPPING/ERODE | BATHROOM | closed |
| 5553907 | 3/29/2011 | 1A | FLOOR | BROKE / DEF | LIVING ROOM | closed |
| 5553907 | 3/29/2011 | 1A | FLOOR | BROKE / DEF | BEDROOM | closed |
| 5553907 | 3/29/2011 | 1A | RADIATOR | CRACKED/MISSING | KITCHEN | closed |
| 5553907 | 3/29/2011 | 1A | RADIATOR | CRACKED/MISSING | BEDROOM | closed |
| 5553907 | 3/29/2011 | 1A | WINDOWS | BROKEN FRAME | ENTIRE APT | closed |
| 5553907 | 3/29/2011 | 1A | FLOOR | BROKE / DEF | PRIVATE HALL | closed |
| 5553907 | 3/29/2011 | 1A | LOCKS | BROKEN-DEFECT | ENTRANCE | closed |
| 5553907 | 3/29/2011 | 1A | RADIATOR | CRACKED/MISSING | BATHROOM | closed |
| 5553907 | 3/29/2011 | 1A | RADIATOR | CRACKED/MISSING | LIVING ROOM | closed |
| 5540146 | 3/19/2011 | 2K | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5513370 | 2/25/2011 | 1A | FLOOR | BROKE / DEF | ENTIRE APT | violation |
| 5513370 | 2/25/2011 | 1A | WALLS | PAINT DIRTY | ENTIRE APT | violation |
| 5513370 | 2/25/2011 | 1A | MOLD | MOLD | BATHROOM | closed |
| 5513370 | 2/25/2011 | 1A | TOILET | BOWL-STOPPED | BATHROOM | closed |
| 5513370 | 2/25/2011 | 1A | VERMIN | MICE | ENTIRE APT | violation |
| 5513370 | 2/25/2011 | 1A | WINDOWS | BROKEN FRAME | ENTIRE APT | violation |
| 5513370 | 2/25/2011 | 1A | ELECTRIC-WIRING | DEF/SEALED OUT | BEDROOM | closed |
| 5511703 | 2/24/2011 | 2K | HEAT | NO HEAT | BEDROOM 3 | closed |
| 5511292 | 2/23/2011 | 2K | HEAT | NO HEAT | ENTIRE APT | closed |
| 5441183 | 1/13/2011 | 4D | CEILING | HOLE | KITCHEN | violation |
| 5441183 | 1/13/2011 | 4D | WATER-LEAKS | ROOF-LEAK | ENTIRE APT | violation |
| 5441183 | 1/13/2011 | 4D | WINDOWS | BROKEN FRAME | LIVING ROOM | violation |
| 5441183 | 1/13/2011 | 4D | CEILING | HOLE | KITCHENETTE | open |
| 5441183 | 1/13/2011 | 4D | MOLD | MOLD | KITCHENETTE | open |
| 5441183 | 1/13/2011 | 4D | WATER-LEAKS | ROOF-LEAK | KITCHENETTE | open |
| 5441183 | 1/13/2011 | 4D | CEILING | PLASTER PEELING | ENTIRE BUILDING | closed |
| 5441183 | 1/13/2011 | 4D | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5441183 | 1/13/2011 | 4D | WALLS | PEELING | ENTIRE BUILDING | closed |
| 5441183 | 1/13/2011 | 4D | WINDOWS | BROKEN FRAME | BEDROOM | closed |

## HPD Complaint Details (continued)

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 5441183 | 1/13/2011 | 4D | CEILING | PLASTER PEELING | KITCHEN | violation |
| 5441183 | 1/13/2011 | 4D | WATER-LEAKS | ROOF-LEAK | KITCHEN | violation |
| 5441183 | 1/13/2011 | 4D | CEILING | PLASTER PEELING | KITCHENETTE | open |
| 5441183 | 1/13/2011 | 4D | WATER-LEAKS | ROOF-LEAK | PUBLIC HALL | closed |
| 5441183 | 1/13/2011 | 4D | WINDOWS | BROKEN FRAME | BEDROOM 2 | closed |
| 5428227 | 1/7/2011 | 1A | WATER-SUPPLY | WATER-SUPPLY | BATHROOM | closed |
| 5428227 | 1/7/2011 | 1A | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5420310 | 1/2/2011 | 1A | WATER-SUPPLY | NO COLD/HW ONE | ENTIRE APT | closed |
| 5420313 | 1/2/2011 | BLDG | WATER-SUPPLY | NO-WATER-SUPPLY | ENTIRE BUILDING | no status |
| 5420310 | 1/2/2011 | 1A | WINDOWS | BROKEN/MISSING | BATHROOM | closed |
| 5420313 | 1/2/2011 | 1A | WATER-SUPPLY | NO-WATER-SUPPLY | ENTIRE APT | violation |
| 5417287 | 12/30/2010 | 1A | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5409204 | 12/26/2010 | 3K | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5387155 | 12/15/2010 | 4816 | HEAT | NO HEAT | ENTIRE APT | closed |
| 5384885 | 12/15/2010 | 2C | HEAT | NO HEAT | ENTIRE APT | closed |
| 5384885 | 12/15/2010 | 2C | RADIATOR | CRACKED/MISSING | BEDROOM 2 | closed |
| 5337171 | 11/23/2010 | 2C | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5337146 | 11/23/2010 | | ELECTRIC-SUPPLY | PUBLIC AREA | ENTIRE APT | closed |
| 5330071 | 11/19/2010 | 2C | HEAT | NO HEAT | ENTIRE APT | closed |
| 5329883 | 11/19/2010 | D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5327332 | 11/17/2010 | | HEAT | NO HEAT | ENTIRE APT | closed |
| 5303655 | 11/4/2010 | 2C | WATER-SUPPLY | NO-WATER-SUPPLY | ENTIRE BUILDING | closed |
| 5291224 | 10/29/2010 | 2C | HEAT | NO HEAT | ENTIRE APT | |
| 5286595 | 10/25/2010 | 2D | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5286595 | 10/25/2010 | 2D | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5285994 | 10/24/2010 | 1A | WINDOWS | WINDOW-LOCK | BEDROOM | closed |
| 5285994 | 10/24/2010 | 1A | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5285994 | 10/24/2010 | 1A | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5271791 | 10/16/2010 | 2C | HEAT | NO HEAT | ENTIRE APT | closed |
| 5273677 | 10/16/2010 | 1A | HEAT | NO HEAT | ENTIRE APT | closed |
| 5272686 | 10/16/2010 | 1A | MOLD | MOLD | BATHROOM | closed |
| 5272686 | 10/16/2010 | 1A | WINDOWS | BROKEN FRAME | BEDROOM | closed |
| 5227924 | 8/13/2010 | D | VERMIN | MICE | ENTIRE APT | violation |
| 5227924 | 8/13/2010 | | VERMIN | ROACHES | ENTIRE APT | violation |
| 5225013 | 8/9/2010 | 1A | DOORS | BROKEN | LOBBY | violation |
| 5225013 | 8/9/2010 | 1A | VERMIN | MICE | ENTIRE APT | violation |
| 5225156 | 8/9/2010 | 4G | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5199249 | 6/29/2010 | 2H | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5199249 | 6/29/2010 | 2H | MOLD | MOLD | BATHROOM | closed |
| 5192558 | 6/18/2010 | 2C | WATER-LEAKS | CEILING | BATHROOM | violation |
| 5192558 | 6/18/2010 | 2C | DOORS | ROOM-WITHIN | BATHROOM | closed |
| 5192558 | 6/18/2010 | 2C | ELEC/GAS-RANGE | PILOT LIGHT INO | KITCHEN | violation |
| 5192558 | 6/18/2010 | 2C | REFRIGERATOR | INOPERATIVE | KITCHEN | closed |
| 5192558 | 6/18/2010 | 2C | WALLS | PEELING | ENTIRE APT | closed |
| 5162951 | 5/7/2010 | 2C | CERAMIC-TILE | LOOSE-WALL | BATHROOM | open |
| 5162951 | 5/7/2010 | 2C | WALLS | PEELING | BATHROOM | violation |
| 5142238 | 4/14/2010 | 4C | DOORS | BROKEN | BATHROOM | violation |
| 5135117 | 4/5/2010 | 2C | MAIL-BOX | BROKEN | LOBBY | closed |
| 5135117 | 4/5/2010 | 2C | DOORS/FRAME | PEELING/FLAKING | BATHROOM | violation |
| 5135117 | 4/5/2010 | 2C | WINDOW/FRAME | PEELING PAINT | BEDROOM 2 | violation |
| 5131065 | 3/31/2010 | 4H | WINDOW/FRAME | PEELING PAINT | LIVING ROOM | violation |
| 5131065 | 3/31/2010 | 4H | WATER-LEAKS | ROOF-LEAK | BEDROOM | closed |
| 5131065 | 3/31/2010 | 4H | WINDOW/FRAME | PEELING PAINT | BEDROOM | violation |
| 131065 | 3/31/2010 | 4H | WINDOWS | BROKEN FRAME | LIVING ROOM | violation |
| 5127582 | 3/29/2010 | 2K | BATHTUB | CHIPPING/ERODE | BATHROOM | closed |
| 5127582 | 3/29/2010 | 2K | VERMIN | OTHER | ENTIRE APT | violation |
| | | | ELECTRIC-SUPPLY | NO-SUPPLY | ENTIRE APT | closed |



© Copyright 2012 EMPOWER NY

## HPD Complaint Details (continued)

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 5127582 | 3/29/2010 | 2K | FLOOR | FLOOR-TORN | ENTIRE APT | closed |
| 5127582 | 3/29/2010 | 2K | WALLS | PEELING | ENTIRE APT | violation |
| 5127582 | 3/29/2010 | 2K | WATER-LEAKS | CONT ABOVE APT | LIVING ROOM | violation |
| 5127582 | 3/29/2010 | 2K | DOORS | BROKEN | ENTRANCE | closed |
| 5127582 | 3/29/2010 | 2K | VERMIN | MICE | ENTIRE APT | closed |
| 5123706 | 3/26/2010 | 2K | ELECTRIC-SUPPLY | NO-SUPPLY | ENTIRE APT | closed |
| 5098255 | 3/4/2010 | 4E | HEAT | NO HEAT | ENTIRE APT | closed |
| 5089856 | 2/25/2010 | 4D | CEILING | HOLE | KITCHENETTE | closed |
| 5089856 | 2/25/2010 | 4D | MOLD | MOLD | KITCHEN | closed |
| 5089856 | 2/25/2010 | 4D | WATER-LEAKS | CONT ABOVE APT | KITCHENETTE | closed |
| 5089856 | 2/25/2010 | 4D | WINDOWS | BROKEN/MISSING | KITCHEN | closed |
| 5069795 | 2/10/2010 | 2K | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5069380 | 2/10/2010 | 3E | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5048854 | 1/30/2010 | 3K | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5049045 | 1/30/2010 | 2K | HEAT | NO HEAT | ENTIRE APT | closed |
| 5048795 | 1/30/2010 | 4E | HEAT | NO HEAT | ENTIRE APT | closed |
| 5048541 | 1/30/2010 | BLDG | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5044722 | 1/29/2010 | 4D | WATER-LEAKS | CASCADING | PRIVATE HALL | closed |
| 5044722 | 1/29/2010 | 4D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5044479 | 1/29/2010 | H | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5043921 | 1/29/2010 | 2C | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5044722 | 1/29/2010 | 4D | WATER-LEAKS | CASCADING | KITCHENETTE | closed |
| 5044722 | 1/29/2010 | 4D | CEILING | PLASTER PEELING | KITCHENETTE | closed |
| 5044703 | 1/29/2010 | 4D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5043775 | 1/29/2010 | 2K | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5043487 | 1/29/2010 | D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5043119 | 1/28/2010 | BLDG | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5042732 | 1/28/2010 | 2C | HEAT | NO HEAT | ENTIRE APT | closed |
| 5041411 | 1/28/2010 | BLDG | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5040203 | 1/27/2010 | E | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5039673 | 1/27/2010 | D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5036632 | 1/25/2010 | 4H | HEAT | NO HEAT | ENTIRE APT | closed |
| 5035043 | 1/23/2010 | D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5034167 | 1/22/2010 | BLDG | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5033075 | 1/22/2010 | D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5032653 | 1/21/2010 | 2C | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5030880 | 1/20/2010 | 2C | HEAT | NO HEAT | ENTIRE APT | closed |
| 5024927 | 1/15/2010 | 2C | WALLS | PEELING | PRIVATE HALL | violation |
| 5024927 | 1/15/2010 | 2C | DOORS | DOOR-FRAME | ROOM | closed |
| 5024927 | 1/15/2010 | 2C | FLOOR | FLOOR-TORN | BEDROOM | violation |
| 5024927 | 1/15/2010 | 2C | WALLS | PEELING | BEDROOM | violation |
| 5024927 | 1/15/2010 | 2C | ELEC/GAS-RANGE | OVEN DOOR | KITCHEN | closed |
| 5024927 | 1/15/2010 | 2C | LIGHTING | FIXT MISS/HANG | FOYER | closed |
| 5002426 | 1/5/2010 | NA | DOORS | BROKEN | ENTIRE BUILDING | closed |
| 4985272 | 12/29/2009 | 1A | ELECTRIC-SUPPLY | APT | ENTIRE APT | closed |
| 4969625 | 12/21/2009 | 2C | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 4937591 | 12/9/2009 | A | WATER-LEAKS | ROOF-LEAK | FOYER | violation |
| 4937591 | 12/9/2009 | A | WATER-LEAKS | ROOF-LEAK | BATHROOM | violation |
| 4937591 | 12/9/2009 | A | MOLD | MOLD | FOYER | closed |
| 4933060 | 12/7/2009 | 2F | CEILING | COLLAPSING | BEDROOM | violation |
| 4933060 | 12/7/2009 | 2F | RADIATOR | CRACKED/MISSING | BATHROOM | violation |
| 4933060 | 12/7/2009 | 2F | WATER-LEAKS | CONT ABOVE APT | BEDROOM | violation |
| 4933060 | 12/7/2009 | 2F | BASIN/SINK | DETACHED | BATHROOM | violation |
| 4916808 | 11/27/2009 | 1J | HEAT | NO HEAT | ENTIRE APT | closed |
| 4916808 | 11/27/2009 | 1J | HEAT | NO HOT WATER | ENTIRE APT | closed |

## HPD Violation Details - Class A

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9620797 | 4508903 | 10/25/2012 | 10/23/2012 | 2C | A | 502 / repair | 2/11/2013 | 10/25/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective wood floor in the foyer located at apt 2c, 4th story, 2nd apartment from east at south |
| 9495611 | 4446012 | 7/9/2012 | 8/29/2012 | 3F | A | 556 / paint/plast | 10/26/2012 | 7/9/2012 | NOV SENT |
| 27-2013 adm code paint with light colored paint to the satisfaction of this department all peeling paint surfaces in the 3rd room from north, the 2nd room from north at east, the bathroom , the private hallway located at apt 3f, 3rd story, 1st apartment from south at west |
| 9269147 | 4329430 | 1/5/2012 | 12/31/2011 | C | A | 529 / door | 4/23/2012 | 1/5/2012 | NOV SENT |
| 7-2005 adm code refit the closet door at east wall in the 2nd private hallway from north located at apt c, 2nd story, 1st apartment from south at west , section at west |
| 9269122 | 4329430 | 1/5/2012 | 12/31/2011 | C | A | 554 / paint/plast | 4/23/2012 | 1/5/2012 | NOV SENT |
| 7-2005 adm code paint metal in accordance with dept. regulation the 1st riser from south at west wall in the bathroom located at apt c, 2nd story, 1st apartment from south at west, section at west |
| 9271591 | 4329430 | 1/5/2012 | 12/31/2011 | C | A | 556 / paint/plast | 4/23/2012 | 1/5/2012 | NOV SENT |
| 27-2013 adm code paint with light colored paint to the satisfaction of this department all peeling paint surfaces in the foyer , the 2nd private hallway from north located at apt c, 2nd story, 1st apartment from south at west , section at west |
| 9219831 | 4304715 | 11/28/2011 | 11/23/2011 | - | A | 484 / post | 3/16/2012 | 11/28/2011 | NOV SENT |
| 29, m/d law and dept. rules and regs. provide a completed certificate of inspection visits in a proper frame at or near mailboxes, bottom edge of frame between 48-62 inches above floor ... at public hall, 1st story |
| 9219826 | 4304715 | 11/28/2011 | 11/23/2011 | - | A | 700 / post | 3/16/2012 | 11/28/2011 | NOV SENT |
| 7-2045 adm code post a proper notice of smoke detector requirements, in a form approved by the commissioner, at or near the mail box .. at public hall, 1st story |
| 8837652 | 4124938 | 3/4/2011 | 3/2/2011 | 1A | A | 505 / replace | 6/21/2011 | 6/1/2011 | NOT COMPLIED |
| 7-2005 adm code replace with new the broken or defective window counter balance lower sash at north 2 window in the 2nd room from east at south located at apt 1a, west section , 2nd story, 1st apartment from north at east |
| 8837653 | 4124938 | 3/4/2011 | 3/2/2011 | 1A | A | 502 / repair | 6/21/2011 | 6/1/2011 | NOT COMPLIED |
| 7-2005 adm code properly repair with similar material the broken or defective wood floor in the 2nd room from east at south located at apt 1a, west section , 2nd story, 1st apartment from north at east |
| 8473346 | 3956676 | 5/18/2010 | 6/16/2010 | - | A | 561 / rust | 10/5/2010 | 6/18/2010 | NOV SENT |
| 7-2014 adm code and dept. rules and regulations. scrape and remove rust scales and paint with 2 coats of paint fire escapes at front of building east and west stacks |
| 8473354 | 3956676 | 6/18/2010 | 6/16/2010 | - | A | 561 / rust | 10/5/2010 | 6/18/2010 | NOV SENT |
| 7-2014 adm code and dept. rules and regulations. scrape and remove rust scales and paint with 2 coats of paint fire escape at east side of building |
| 4216675 | 1828621 | 5/21/2010 | 5/21/2002 | K | A | 502 / repair | 9/13/2002 | 6/17/2010 | 1 NO ACCESS |
| 7-2005 adm code properly repair with similar material the broken or defective entrance door jamb in the entrance located at apt k, 1st story, 1st apartment from south at west |
| 4216684 | 1828621 | 5/21/2010 | 5/21/2002 | K | A | 505 / replace | 9/13/2002 | 6/17/2010 | 1 NO ACCESS |
| 7-2005 adm code replace with new the broken or defective lower sash spring controls in the entire apartment located at apt k, 1st story, 1st apartment from south at west |
| 6554649 | 2929782 | 5/21/2010 | 3/19/2007 | 1C | A | 554 / paint/plast | 7/13/2007 | 6/17/2010 | NOT COMPLIED |
| 7-2005 adm code paint metal in accordance with dept. regulation the 1st riser from south at west wall in the bathroom located at apt 1c, west section , 2nd story, 2nd apartment from east at south |
| 6554657 | 2929782 | 5/21/2010 | 3/19/2007 | 1C | A | 554 / paint/plast | 7/13/2007 | 6/17/2010 | NOT COMPLIED |
| 7-2005 adm code paint metal in accordance with dept. regulation the 1st radiator from north at east wall, the 1st riser from east at south wall in the foyer located at apt 1c, west section , 2nd story, 2nd apartment from east at south |

## HPD Violation Details - Class B

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9620799 | 4508904 | 10/25/2012 | 10/23/2012 | 2C | B | 550 / mold | 12/13/2012 | 10/25/2012 | NOV SENT |
| 27-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... at ceiling and east wall in the bathroom located at apt 2c, 4th story, 2nd apartment from east at south |
| 9620800 | 4508904 | 10/25/2012 | 10/23/2012 | 2C | B | 508 / paint/plast | 12/13/2012 | 10/25/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at ceiling in the bathroom located at apt 2c, 4th story, 2nd apartment from east at south |
| 9491783 | 4446013 | 7/9/2012 | 6/29/2012 | 3F | B | 508 / paint/plast | 8/27/2012 | 7/9/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the west wall , ceiling in the bathroom located at apt 3f, 3rd story, 1st apartment from south at west |
| 9491785 | 4446013 | 7/9/2012 | 6/29/2012 | 3F | B | 502 / repair | 8/27/2012 | 7/9/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective ceramic floor tiles in the bathroom located at apt 3f, 3rd story, 1st apartment from south at west |
| 9491786 | 4446013 | 7/9/2012 | 6/29/2012 | 3F | B | 505 / replace | 8/27/2012 | 7/9/2012 | NOV SENT |
| 27-2005 adm code replace with new the broken or defective marble saddle in the bathroom located at apt 3f, 3rd story, 1st apartment from south at west |
| 9491787 | 4446013 | 7/9/2012 | 6/29/2012 | 3F | B | 568 / vermin | 8/27/2012 | 7/9/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of roaches in the entire apartment located at apt 3f, 3rd story, 1st apartment from south at west |


**EMPOWER** NEW YORK

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 3491788 | 4446013 | 7/9/2012 | 6/29/2012 | 3F | B | 569 / vermin | 8/27/2012 | 7/9/2012 | NOV SENT |
| | | | 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 3f, 3rd story. 1st apartment from south at west | | | | | | |
| 9320892 | 4353886 | 2/10/2012 | 2/8/2012 | C | B | 702 / smoke | 3/30/2012 | 2/10/2012 | NOV SENT |
| | | | 27-2045 adm code repair or replace the smoke detector missing in the entire apartment located at apt c, 2nd story. 1st apartment from south at west | | | | | | |
| 9320893 | 4353886 | 2/10/2012 | 2/8/2012 | C | B | 1502 / CO | 3/30/2012 | 2/10/2012 | NOV SENT |
| | | | 27-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the entire apartment located at apt c. 2nd story. 1st apartment from south at west | | | | | | |
| 9269114 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 702 / smoke | 2/23/2012 | 1/5/2012 | NOV SENT |
| | | | 7-2045 adm code repair or replace the smoke detector missing in the entire apartment located at apt c, 2nd story. 1st apartment from south at west , section at west | | | | | | |
| 9269115 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 1502 / CO | 2/23/2012 | 1/5/2012 | NOV SENT |
| | | | 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the entire apartment located at apt c. 2nd story. 1st apartment from south at west , section at west | | | | | | |
| 9269116 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 505 / replace | | 1/5/2012 | NOV SENT |
| | | | 7-2005 adm code replace with new the broken or defective marble saddle in the bathroom located at apt c, 2nd story. 1st apartment from south at west , section at west | | | | | | |
| 9269118 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 501 / repair | | 1/5/2012 | NOV SENT |
| | | | 7-2005 adm code properly repair the broken or defective door in the entrance located at apt c. 2nd story. 1st apartment from south at west , section at west | | | | | | |
| 9269119 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 510 / nuisance | 2/23/2012 | 1/5/2012 | NOV SENT |
| | | | 7-2005 adm code & 309 m/d law abate the nuisance consisting of evidence of water leak at 1st closet from north at east wall ceiling in the 2nd private hallway from north located at apt c, 2nd story. 1st apartment from south at west, section at west | | | | | | |
| 9269120 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 510 / nuisance | 2/23/2012 | 1/5/2012 | NOV SENT |
| | | | 7-2005 adm code & 309 m/d law abate the nuisance consisting of evidence of water leak at ceiling in the bathroom located at apt c, 2nd story. 1st apartment from south at west , section at west | | | | | | |
| 9269121 | 4329431 | 1/5/2012 | 12/31/2011 | C | B | 508 / paint/plast | 2/23/2012 | 1/5/2012 | NOV SENT |
| | | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the north wall, east wall, ceiling in the bathroom located at apt c. 2nd story. 1st apartment from south at west , section at west | | | | | | |
| 9219830 | 4304716 | 11/28/2011 | 11/23/2011 | - | B | 1502 / CO | 1/16/2012 | 11/28/2011 | NOV SENT |
| | | | 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. at public hall. 1st story | | | | | | |
| 8935702 | 4170016 | 5/10/2011 | 5/8/2011 | - | B | 504 / provide | 6/28/2011 | 5/10/2011 | NOV SENT |
| | | | 7-2005 adm code provide an acceptable heavy duty lock and latch set at the entrance door to the building , 2nd story. west section | | | | | | |
| 90440 | 4136388 | 3/21/2011 | 3/16/2011 | 1A | B | 501 / repair | 5/9/2011 | 3/21/2011 | NOV SENT |
| | | | 7-2005 adm code properly repair the broken or defective lighting fixture at ceiling in the 2nd room from east at north located at apt 1a. 2nd story. 1st apartment from east at south | | | | | | |
| 8860441 | 4136388 | 3/21/2011 | 3/15/2011 | 1A | B | 702 / smoke | 5/9/2011 | 3/21/2011 | NOV SENT |
| | | | 7-2045 adm code repair or replace the smoke detector missing in the entire apartment located at apt 1a, 2nd story | | | | | | |
| 8860442 | 4136388 | 3/21/2011 | 3/15/2011 | 1A | B | 1502 / CO | 5/9/2011 | 3/21/2011 | NOV SENT |
| | | | 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the entire apartment located at apt 1a. 2nd story | | | | | | |
| 8837654 | 4124939 | 3/4/2011 | 3/2/2011 | 1A | B | 569 / vermin | 4/22/2011 | 6/1/2011 | NOT COMPLIED |
| | | | 7-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 1a, west section , 2nd story. 1st apartment from north at east | | | | | | |
| 8702298 | 4061699 | 11/26/2010 | 11/19/2010 | - | B | 721 / janitor | 1/14/2011 | 11/26/2010 | NOV SENT |
| | | | 7-2053 adm code provide dwelling with a janitor or responsible person or janitorial service. at public hall | | | | | | |
| 8579429 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 510 / nuisance | 10/20/2010 | 11/30/2010 | NOV LATE |
| | | | 7-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at east wall in the kitchen located at apt d, 1st story. 1st apartment from west at north | | | | | | |
| 8579430 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 502 / repair | 10/20/2010 | 11/30/2010 | NOV LATE |
| | | | 7-2005 adm code properly repair with similar material the broken or defective ceramic floor tiles in the bathroom located at apt d, 1st story. 1st apartment from west at north | | | | | | |
| 8579432 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 510 / nuisance | 10/20/2010 | 11/30/2010 | NOV LATE |
| | | | 7-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at ceiling in the 5th room from north located at apt d, 1st story. 1st apartment from west at north | | | | | | |
| 8579436 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 508 / paint/plast | 10/20/2010 | 11/30/2010 | NOV LATE |
| | | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the south wall, west wall in the foyer located at apt d. 1st story. 1st apartment from west at north | | | | | | |
| 8579437 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 508 / paint/plast | 10/20/2010 | 11/30/2010 | NOV LATE |
| | | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the east wall in the 3rd room from north at apt d. 1st story. 1st apartment from west at north | | | | | | |
| 8579441 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 569 / vermin | | 11/30/2010 | NOV LATE |
| | | | 7-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt d. 1st story. 1st apartment from west at north | | | | | | |
| 8579442 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 1502 / CO | 10/20/2010 | 11/30/2010 | NOV LATE |
| | | | 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the entire apartment located at apt d. 1st story. 1st apartment from west at north | | | | | | |

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|-------|-------|------------|----------------|-----|-------|------------|-----------|-------------|--------|
| 8579443 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 702 / smoke | 10/20/2010 | 11/30/2010 | NOV LATE |
| | 7-2045 adm code repair or replace the smoke detector defective in the entire apartment located at apt d, 1st story, 1st apartment from west at north | | | | | | | | |
| 8580316 | 4006272 | 9/1/2010 | 8/30/2010 | D | B | 568 / vermin | 10/20/2010 | 11/30/2010 | NOV LATE |
| | 7-2018 admin. code: abate the nuisance consisting of roaches in the entire apartment located at apt d, 1st story, 1st apartment from west at north | | | | | | | | |
| 8554525 | 3994729 | 8/16/2010 | 8/12/2010 | 1A | B | 566 / vermin | 10/4/2010 | 8/16/2010 | NOV SENT |
| | 7-2018 adm code abate the nuisance consisting of vermin mice in the entire apartment located at apt 1a, 1st story, 1st apartment from north at east | | | | | | | | |
| 8551751 | 3994342 | 8/13/2010 | 8/11/2010 | - | B | 501 / repair | 10/1/2010 | 8/13/2010 | NOV SENT |
| | 7-2005 adm code properly repair the broken or defective door lock and assembly at lobby, 1st story | | | | | | | | |
| 8510538 | 3994244 | 7/15/2010 | 7/13/2010 | 2H | B | 502 / repair | 9/2/2010 | 10/28/2010 | NOV LATE |
| | 7-2005 adm code properly repair with similar material the broken or defective grout around bath tub in the bathroom located at apt 2h, east section , 2nd story, 1st apartment from north at east | | | | | | | | |
| 8473357 | 3961418 | 6/24/2010 | 6/16/2010 | 1B | B | 702 / smoke | 8/12/2010 | 10/29/2010 | NOV LATE |
| | 7-2045 adm code repair or replace the smoke detector which is missing in the foyer located at apt 1b, west section , 2nd story, 1st apartment from east at south | | | | | | | | |
| 8473362 | 3961418 | 6/24/2010 | 6/16/2010 | 1B | B | 1502 / CO | 8/12/2010 | 10/29/2010 | NOV LATE |
| | 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules, in the entire apartment located at apt 1b, west section , 2nd story, 1st apartment from east at south | | | | | | | | |
| 8473363 | 3961418 | 6/24/2010 | 6/16/2010 | 1B | B | 742 / gas | 8/12/2010 | 10/29/2010 | NOV LATE |
| | 7-2070 adm code provide an adequate supply of gas to the fixtures , in the entire apartment located at apt 1b, west section , 2nd story, 1st apartment from east at south | | | | | | | | |
| 8473319 | 3956675 | 6/18/2010 | 6/16/2010 | 1C | B | 502 / repair | 8/6/2010 | 6/18/2010 | NOV SENT |
| | 7-2005 adm code properly repair with similar material the broken or defective reglaze bathtub in the bathroom located at apt 1c, west section , 2nd story, 2nd apartment from east at south | | | | | | | | |
| 8473322 | 3956675 | 6/18/2010 | 6/16/2010 | 1C | B | 502 / repair | 8/6/2010 | 6/18/2010 | NOV SENT |
| | 7-2005 adm code properly repair with similar material the broken or defective ceramic wall tiles above bathtub in the bathroom located at apt 1c, west section , 2nd story, 2nd apartment from east at south | | | | | | | | |
| 8473327 | 3956675 | 6/18/2010 | 6/16/2010 | 1C | B | 505 / replace | 8/6/2010 | 6/18/2010 | NOV SENT |
| | 7-2005 adm code replace with new the broken or defective escutcheon plate around steam riser in ceiling in the bathroom located at apt 1c, west section , 2nd story, 2nd apartment from east at south | | | | | | | | |
| 7577998 | 3509911 | 5/21/2010 | 11/18/2008 | E | B | 502 / repair | 1/8/2009 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code properly repair with similar material the broken or defective wood floor (non walking area) in the entire apartment located at apt e, west section 708, 1st story, 1st apartment from north at east | | | | | | | | |
| 7578000 | 3509911 | 5/21/2010 | 11/18/2008 | E | B | 566 / vermin | 1/8/2009 | 6/17/2010 | 1 NO ACCESS |
| | 7-2018 adm code abate the nuisance consisting of vermin mice (infestation) in the entire apartment located at apt e, west section 708, 1st story, 1st apartment from north at east | | | | | | | | |
| 7578008 | 3509911 | 5/21/2010 | 11/18/2008 | E | B | 510 / nuisance | 1/8/2009 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code & 309 m/d law abate the nuisance consisting of odor thru-out in the entire apartment located at apt e, west section 708, 1st story, 1st apartment from north at east | | | | | | | | |
| 7578009 | 3509910 | 5/21/2010 | 11/18/2008 | E | B | 510 / nuisance | 1/8/2009 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code & 309 m/d law abate the nuisance consisting of no electrical supply to outlets and ceiling light fixture in the bathroom located at apt e, west section 708, 1st story, 1st apartment from north at east | | | | | | | | |
| 7578018 | 3509910 | 5/21/2010 | 11/18/2008 | E | B | 510 / nuisance | 1/8/2009 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code & 309 m/d law abate the nuisance consisting of no electrical supply to outlets and ceiling light fixture in the 1st room from east at south located at apt e, west section 708, 1st story, 1st apartment from north at east | | | | | | | | |
| 4994949 | 2164602 | 5/21/2010 | 6/14/2004 | K | B | 509 / secure | 8/9/2004 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code properly secure the loose sink in the kitchen located at apt k, 1st story, 1st apartment from west at north | | | | | | | | |
| 4994845 | 2164602 | 5/21/2010 | 6/14/2004 | K | B | 502 / repair | 8/9/2004 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code properly repair with similar material the broken or defective vinyl floor tile in the kitchen located at apt k, 1st story, 1st apartment from west at north | | | | | | | | |
| 4994960 | 2164602 | 5/21/2010 | 6/14/2004 | K | B | 702 / smoke | 8/9/2004 | 6/17/2010 | 1 NO ACCESS |
| | 7-2045 adm code repair or replace the smoke detector broken in the foyer located at apt k, 1st story, 1st apartment from west at north | | | | | | | | |
| 4355221 | 1891038 | 5/21/2010 | 9/27/2002 | 4-H | B | 566 / vermin | 11/23/2002 | 6/17/2010 | 1 NO ACCESS |
| | 7-2018 adm code abate the nuisance consisting of vermin mice at entire apartment, 4th story, apartment | | | | | | | | |
| 4216669 | 1828622 | 5/21/2010 | 5/21/2002 | K | B | 509 / secure | 7/15/2002 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code properly secure the loose washbasin in the bathroom located at apt k, 1st story, 1st apartment from south at west | | | | | | | | |
| 4216695 | 1828622 | 5/21/2010 | 5/21/2002 | K | B | 505 / replace | 7/15/2002 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code replace with new the broken or defective wood cabinets in the kitchen located at apt k, 1st story, 1st apartment from south at west | | | | | | | | |
| 4153544 | 1803383 | 5/21/2010 | 3/28/2002 | K | B | 502 / repair | 5/28/2002 | 6/17/2010 | 1 NO ACCESS |
| | 7-2005 adm code properly repair with similar material the broken or defective flooring around radiator in the 1st room from north at west located at apt k, east section, 1st story, 1st apartment from west at north | | | | | | | | |
| 4153634 | 1803383 | 5/21/2010 | 3/28/2002 | K | B | 702 / smoke | 5/26/2002 | 6/17/2010 | 1 NO ACCESS |
| | 7-2045 adm code repair or replace the smoke detector missing in the foyer located at apt k, east section , 1st story, 1st apartment from west at north | | | | | | | | |

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 1248571 | 3854192 | 5/21/2010 | 1/23/2010 | 2C | B | 521 / fire | 3/15/2010 | 6/9/2010 | NOT COMPLIED |
| 7-2005, 2007 adm code fire egress defective. remove obstructing bars or unlawful gates from window to fire escape or provide approved type gate ., in the kitchen located at apt 2c, west section , 4th story, 2nd apartment from east at south | | | | | | | | | |
| 8082386 | 3771469 | 5/21/2010 | 8/28/2009 | 3J | B | 509 / secure | 9/28/2009 | 6/9/2010 | NOT COMPLIED |
| 7-2005 adm code properly secure the loose wash basin in the bathroom located at apt 3j, 3rd story, 1st apartment from west at north | | | | | | | | | |
| 8068771 | 3763455 | 5/21/2010 | 9/21/2009 | 1B | B | 505 / replace | 11/12/2009 | 6/17/2010 | NOT COMPLIED |
| 7-2005 adm code replace with new the broken or defective lower sash balance of all windows at all rooms in the entire apartment located at apt 1b, west section , 2nd story, 1st apartment from east at south | | | | | | | | | |
| 7798854 | 3606927 | 5/21/2010 | 3/30/2009 | 1A | B | 502 / repair | 5/20/2009 | 6/9/2010 | NOT COMPLIED |
| 7-2018 adm code properly repair with similar material the broken or defective wood floor in the 1st room from north at west located at apt c, 1st story, 1st apartment from south at west | | | | | | | | | |
| 7020309 | 3155459 | 5/21/2010 | 11/16/2007 | 1A | B | 566 / vermin | 1/7/2008 | 6/9/2010 | NOT COMPLIED |
| 7-2018 adm code abate the nuisance consisting of vermin mice in the entire apartment located at apt 1a, 2nd story, 2nd apartment from north at east | | | | | | | | | |
| 5299998 | 2329708 | 5/21/2010 | 1/17/2005 | 1E | B | 566 / vermin | 3/19/2005 | 6/15/2010 | NOT COMPLIED |
| 7-2018 adm code abate the nuisance consisting of vermin mice in the entire apartment located at apt 1e, 1st story, 1st apartment from north at east | | | | | | | | | |
| 5300000 | 2329708 | 5/21/2010 | 1/17/2005 | 1E | B | 566 / vermin | 3/19/2005 | 6/15/2010 | NOT COMPLIED |
| 7-2018 adm code abate the nuisance consisting of vermin roaches in the entire apartment located at apt 1e, 1st story, 1st apartment from north at east | | | | | | | | | |
| 5217053 | 2300306 | 5/21/2010 | 11/24/2004 | 2D | B | 1502 / CO | 1/25/2005 | 6/9/2010 | NOT COMPLIED |
| 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the private hallway located at apt 2d, west section , 5th story, apartment at north | | | | | | | | | |
| 4720542 | 2052369 | 5/21/2010 | 9/30/2003 | 2D | B | 501 / repair | 11/25/2003 | 6/9/2010 | NOT COMPLIED |
| 7-2005 adm code properly repair the broken or defective window counter balance. in the 1st room from north located at apt 2d, 3rd story, 1st apartment from west at north | | | | | | | | | |
| 571767 | 197372 | 5/21/2010 | 12/23/1997 | 2D | B | 501 / repair | 3/2/1998 | 6/9/2010 | NOT COMPLIED |
| 7-2005 adm code properly repair the broken or defective lower window sashes thru out 3rd sty east apt 2d | | | | | | | | | |
| 571739 | 197361 | 5/21/2010 | 10/20/1992 | D | B | 566 / vermin | 2/1/1993 | 6/15/2010 | NOT COMPLIED |
| 7-2018 adm code abate the nuisance consisting of vermin mice & roaches 1st sty northeast apt e | | | | | | | | | |
| 8367754 | 3917994 | 5/21/2010 | 4/20/2010 | B | B | 501 / repair | 6/10/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code properly repair the broken or defective mail box at public hall, 1st story | | | | | | | | | |

## HPD Violation Details - Class C

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9491784 | 4446014 | 7/9/2012 | 6/29/2012 | 3F | C | 790 / win guard | 8/4/2012 | 7/9/2012 | NOV SENT |
| 27-2043.1 hmc install the missing or repair/replace the defective window guard(s) in accordance with the specifications of the new york city health code section 24 rcny chapter 12. wg to install = 0; wg to replace = 0; wg to repair = 2; northeast = 1 , north 3 = 1 in the entire apartment located at apt 3f, 3rd story, 1st apartment from south at west | | | | | | | | | |
| 9271502 | 4329432 | 1/5/2012 | 12/31/2011 | C | C | 617 / lead | 2/5/2012 | 3/14/2012 | 1 NO ACCESS |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st window frame from north at east wall in the bathroom located at apt c, 2nd story, 1st apartment from south at west , section at west | | | | | | | | | |
| 9219829 | 4304717 | 11/28/2011 | 11/23/2011 | | C | 671 / access | 12/9/2011 | 11/28/2011 | NOV SENT |
| 7-2033 adm code post notice, in form approved by the department, stating the name and location of the person designated by the owner to have key to buildings heating system .. at public hall, 1st story | | | | | | | | | |
| 8935700 | 4170017 | 5/10/2011 | 5/8/2011 | | C | 526 / lock | 5/21/2011 | 6/9/2011 | NOV LATE |
| 7-2005, 2007 adm code remove the illegal fastening an unacceptable electromagnetic locking device at the entrance door to the building , 2nd story, west section | | | | | | | | | |
| 8753586 | 4085645 | 1/5/2011 | 1/3/2011 | 1A | C | 577 / hot water | 1/16/2011 | 2/4/2011 | NOV LATE |
| 7-2024 adm code provide adequate supply of hot water for the fixtures .. in the entire apartment located at apt 1a, 1st story, 1st apartment from east at south | | | | | | | | | |
| 8753639 | 4085646 | 1/5/2011 | 1/3/2011 | 1C | C | 577 / hot water | 1/16/2011 | 2/4/2011 | NOV LATE |
| 7-2024 adm code provide adequate supply of hot water for the fixtures .. in the entire apartment located at apt 1c, 1st story, 1st apartment from south at west | | | | | | | | | |
| 8392303 | 3918836 | 5/21/2010 | 4/21/2010 | 2K | C | 617 / lead | 5/24/2010 | 7/2/2010 | 1 NO ACCESS |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door frame from south at west wall in the private hallway located at apt 2k, 4th story, 1st apartment from west at north | | | | | | | | | |
| 8392304 | 3918836 | 5/21/2010 | 4/21/2010 | 2K | C | 617 / lead | 5/24/2010 | 7/2/2010 | 1 NO ACCESS |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door from east at south wall in the bathroom located at apt 2k, 4th story, 1st apartment from west at north | | | | | | | | | |
| 4216722 | 1828624 | 5/21/2010 | 5/21/2002 | K | C | 612 / lead | 6/27/2002 | 6/17/2010 | 1 NO ACCESS |
| 7-2056.5 adm code - correct the lead-based paint hazard - presumed lead paint that is on a deteriorated subsurface that is unstable or unsound using exclusive interim controls. north wall in the bathroom located at apt k, 1st story, 1st apartment from south at west | | | | | | | | | |

## HPD Violation Details - Class C (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 4216740 | 1828624 | 5/21/2010 | 5/1/2002 | K | C | 612 / lead | 6/27/2002 | 6/17/2010 | 1 NO ACCESS |
| 7-2056.5 adm code - correct the lead-based paint hazard - presumed lead paint that is on a deteriorated subsurface that is unstable or unsound using exclusive interim controls. east wall in the 1st room from north located at apt k. 1st story, 1st apartment from south at west | | | | | | | | | |
| 4153532 | 1803384 | 5/21/2010 | 3/28/2002 | K | C | 610 / lead | 5/8/2002 | 6/17/2010 | 1 NO ACCESS |
| 7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or is on a deteriorated subsurface - using exclusive interim controls. ceiling in the 2nd room from north located at apt k. east section , 1st story, 1st apartment from west at north | | | | | | | | | |
| 8116447 | 3793098 | 5/21/2010 | 10/21/2009 | 3J | C | 617 / lead | 11/23/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door from east at south wall, 1st door frame from east at south wall, 2nd window frame from west at north wall, 1st window frame from west at north wall i... | | | | | | | | | |
| 8116449 | 3793098 | 5/21/2010 | 10/21/2009 | 3J | C | 617 / lead | 11/23/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door frame from west at north wall in the 3rd room from north located at apt 3j, 5th story, 2nd apartment from west at north | | | | | | | | | |
| 8116450 | 3793098 | 5/21/2010 | 10/21/2009 | 3J | C | 617 / lead | 11/23/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door and closet from south at west wall door frame, west wall in the foyer located at apt 3j, 5th story, 2nd apartment from west at north | | | | | | | | | |
| 8116451 | 3793098 | 5/21/2010 | 10/21/2009 | 3J | C | 617 / lead | 11/23/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door from east at south wall, west wall in the bathroom located at apt 3j, 5th story, 2nd apartment from west at n... | | | | | | | | | |
| 8116452 | 3793098 | 5/21/2010 | 10/21/2009 | 3J | C | 617 / lead | 11/23/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st closet from south at west wall door, 1st door frame from south at west wall, 1st window frame from west at north wall in... | | | | | | | | | |
| 8087911 | 3776486 | 5/21/2010 | 9/28/2009 | 3J | C | 616 / lead | 11/2/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) 1st door from east at south wall in the bathroom located at apt 3j, 3rd story, 1st apartment from west at north | | | | | | | | | |
| 8087912 | 3776486 | 5/21/2010 | 9/28/2009 | 3J | C | 616 / lead | 11/2/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) 1st door from west at north wall in the private hallway located at apt 3j, 3rd story, 1st apartment from west at north | | | | | | | | | |
| 8087913 | 3776486 | 5/21/2010 | 9/28/2009 | 3J | C | 616 / lead | 11/2/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) ceiling in the kitchen located at apt 3j, 3rd story, 1st apartment from west at north | | | | | | | | | |
| 8087914 | 3776486 | 5/21/2010 | 9/28/2009 | 3J | C | 616 / lead | 11/2/2009 | 6/9/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) north wall in the 3rd room from north at east located at apt 3j, 3rd story, 1st apartment from west at north | | | | | | | | | |
| 6656180 | 2929784 | 5/21/2010 | 3/19/2007 | 1C | C | 617 / lead | 4/21/2007 | 6/23/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door frame from west at north wall, west wall in the bathroom located at apt 1c, west section , 2nd story, 2nd apartment from east at south | | | | | | | | | |
| 6656181 | 2929784 | 5/21/2010 | 3/19/2007 | 1C | C | 617 / lead | 4/21/2007 | 6/23/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) baseboard at south wall, baseboard at north wall, west wall, south wall in the 3rd room from north located at apt 1c, west section , 2nd story, 2nd apartment ... | | | | | | | | | |
| 6656182 | 2929784 | 5/21/2010 | 3/19/2007 | 1C | C | 617 / lead | 4/21/2007 | 6/23/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) west wall, east wall in the kitchen located at apt 1c, west section , 2nd story, 2nd apartment from east at south | | | | | | | | | |
| 6656183 | 2929784 | 5/21/2010 | 3/19/2007 | 1C | C | 617 / lead | 4/21/2007 | 6/23/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) baseboard at south wall, 1st door frame from east at south wall, east wall, south wall, north wall, 1st window frame from south at west wall in the 1st room f... | | | | | | | | | |
| 6656185 | 2929784 | 5/21/2010 | 3/19/2007 | 1C | C | 617 / lead | 4/21/2007 | 6/23/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) west wall, south wall, north wall in the foyer located at apt 1c, west section , 2nd story, 2nd apartment from east at south | | | | | | | | | |
| 6660631 | 2931325 | 5/21/2010 | 3/19/2007 | 1C | C | 617 / lead | 4/23/2007 | 6/23/2010 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) baseboard at north wall, 1st door frame from north at east wall, west wall, 2nd window frame from south at west wall, 1st window frame from south at west wall. | | | | | | | | | |

## HPD Violation Details - Class I

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 7547082 | | 5/21/2010 | 10/30/2008 | 1F | I | 759 / shelter | 12/31/1989 | | 1 NO ACCESS |
| 7-2091 hmc, § 302 mdl : apartments have been issued a commissioner's order and occupants are in need of relocation services. apartments cannot be re-occupied until the commissioner's order is revoked after hpd inspection of apartments. commissioners order # 08/0126 in the entire apartment located at apt 1f, 1st story | | | | | | | | | |


EMPOWER
NEW YORK

©Copyright 2012 EMPOWER NY

## HPD Emergency Repairs Details

| OMO # | Issue Date | Repair Type | Award Amt. | Category | Date Complete | Status | Reason |
|-------|-----------|-------------|-----------|----------|---------------|--------|--------|
| ED04011 | 8/6/2012 | OMO | $74 | GC | 9/15/2012 | cancel | No Access |
| as per requirement contractapt. #3repair or replace (2) window giards at entire apartment. remove all work related debris contractor ||||||||
| EB14495 | 11/8/2012 | OMO | $91 | DELEAD | 11/15/2012 | history | OMO Complete |
| perform total lead analysis of 14 dust wipe sample(s) via environmental protection agency (epa) sw8453050-7420 method utilizing flame atomic absorption ||||||||
| EB08086 | 8/25/2010 | AOR | $92 | GC | 12/31/1969 | history | OMO Complete |
| apt. 2c.bedroom1(north): install one- way screws at wguard. ||||||||
| EB07918 | 8/23/2010 | OMO | $637 | GC | 9/1/2010 | history | OMO Complete |
| at apt # 2h- trace  abate nuisance of mold and mildew at north and east wall in bathrm.remove all obstructions. repair all defects in wasteline ||||||||
| EA32704 | 4/14/2010 | OMO | $33 | DELEAD | 4/19/2010 | history | OMO Complete |
| perform total lead analysis of 07 dust wipe sample(s) via environmental protection agency (epa) sw8453050-7420 method utilizing flame atomic absorptio ||||||||
| EA31312 | 4/1/2010 | OMO | $434 | GC | 5/25/2010 | history | OMO Complete |
| public parts, 1st. story, west section:replace with new the broken or defective wire-glass light of upper sash east window at intermediate landing ||||||||
| EA29515 | 3/17/2010 | OMO | $9,356 | DELEAD | 4/9/2010 | history | OMO Complete |
| local law #1 violation : as per rc # and attached scope of work thoroughly remove all lead violations as per new york city administrative code 27-20 ||||||||
| EA27271 | 2/25/2010 | OMO | $124 | GC | 3/7/2010 | cancel | No Access |
| public part - front areaway - demolish and remove existing broken, cracked  defective concrete from front areaway. remove all loose materials  prepa ||||||||
| EA21671 | 1/7/2010 | OMO | $867 | GC | 5/24/2010 | history | OMO Complete |
| apt. #2f, 1st. room from east.trace  repair the concealed water leaks from ceilings of 1st room from east  2nd room from north (kitchen)repair ||||||||
| EA21073 | 12/31/2009 | OMO | $341 | GC | 1/20/2010 | history | OMO Complete |
| apt #3j) at 1st window from west at north in the 1st room from north at fire escape : replace with new the broken glass to bottom sash, approx. 26"x30 ||||||||
| EA16627 | 11/16/2009 | OMO | $1,325 | PLUMB | 3/18/2010 | history | OMO Complete |
| apt. #1b .trace and repair gas leak at kitchen  restore gas to stove.all debris must be removed and disposed appropriately.    non-swp ||||||||
| EA13633 | 10/20/2009 | OMO | $700 | GC | 11/9/2009 | history | OMO Complete |
| (public area) at front court yard east section: replace with new the broken defective wire glass window pane. at 1st floor public hall stai ||||||||
| E905315 | 8/6/2008 | OMO | $86 | GC | 9/19/2008 | cancel | Refuse Access |
| at 3rd and 4th floor public hall; provide and install (2) new kalamein fire rated public hall windows with wire glass. includes integral term, caulkin ||||||||
| E821883 | 2/5/2008 | OMO | $86 | HEAT | 2/7/2008 | cancel | Other |
| make all necessary repairs to #2 oil fired burner and restore to proper working order. restore heat to entire building.contractor must sign and r ||||||||
| E820804 | 1/25/2008 | OMO | $3,868 | UTIL | 1/26/2008 | history | Fuel Deliv |
| provide single fuel drop with prime and start #2 fuel fill tank. please report any problems immediately to esb fuel unit. (212) 863-8781 ||||||||
| E729534 | 5/4/2007 | OMO | $371 | DELEAD | 5/15/2007 | history | Part Comp |
| local law #1 violation : as per hpd's abatement requirement contracts and attached scope of work thoroughly remove all lead violations as per new yor ||||||||
| E623004 | 3/30/2006 | OMO | $91 | GC | 2/17/2006 | cancel | LL Complied |
| (public area)remove and replace with new. the metal grating at building court yard approx 6 sq.ft.note: contractor must contact cordell (718) ||||||||
| E623009 | 1/30/2006 | OMO | $91 | GC | 2/17/2006 | cancel | Refuse Access |
| (public area)demo approx 10 sq.ft. of ceramic tiles floor at 2nd story west section in public hall. repair with similar materials note: contrac ||||||||
| E614710 | 11/18/2005 | OMO | $91 | GC | 12/13/2005 | cancel | Refuse Access |
| west bulkhead:replace w new the missing glass lites at the west bulkhead skylight. total of (10) panes approx. (160 sq. ft.) total area.contr ||||||||
| E614493 | 11/17/2005 | OMO | $80 | DELEAD | 11/30/2005 | history | OMO Complete |
| as per rc #2006001274402 (enviro-probe, inc.), perform total lead analysis of 17 dust wipe sample(s) via environmental protection agency (epa) sw845- ||||||||
| E613477 | 11/4/2005 | OMO | $433 | GC | 11/21/2005 | history | Part Comp |
| public area.replace existing broken skylight, including top and bottom screens and restoration approx  60 sq. ft. remove all work related debris. ||||||||
| E612007 | 10/24/2005 | OMO | $91 | GC | 11/9/2005 | cancel | Refuse Access |
| (public area) at west section remove existing and install new skylight complete at roof bulkhead, approx. 7' x 14', repair leaking bulkhead roof and ||||||||
| E611795 | 10/20/2005 | OMO | $91 | GC | 11/15/2005 | cancel | Refuse Access |
| at west section: supply and install new marble nose treads at bulkhead landing total (1) and at 3rd to 4th floor intermediate landing total (1) at ||||||||
| E611800 | 10/20/2005 | OMO | $433 | GC | 11/1/2005 | history | OMO Complete |
| public hall west section  supply and install new wire safety glass at 3rd to 4th intermediate landing lower window sash. ||||||||
| E611807 | 10/20/2005 | OMO | $91 | GC | 1/26/2006 | cancel | Refuse Access |
| supply and install a new steel handrail at steps of entrance at front courtyard right side.note: contractor must contact cordell (718) 635-3021 ||||||||



## HPD Emergency Repairs Details (continued)

| OMO # | Issue Date | Repair Type | Award Amt. | Category | Date Complete | Status | Reason |
|-------|-----------|-------------|------------|----------|---------------|--------|--------|
| E611038 | 10/13/2005 | OMO | $16,340 | DELEAD | 12/9/2005 | history | OMO Complete |
| local law #1 violation : as per secondary rc # 20050021342 (pdg) and attached scope of work thoroughly remove all lead violations as per new york cit | | | | | | | |
| E609420 | 9/26/2005 | OMO | $1,150 | GC | 11/21/2005 | history | OMO Complete |
| apt #3c:repair the broken and defective plaster surface from ceilings. scrape plaster and paint entire ceiling's. (510 sq. ft.) at foyer , livingr | | | | | | | |
| E609422 | 9/26/2005 | AOR | $128 | GC | 12/31/1969 | history | OMO Complete |
| apt #3c:provide  install (1) window guard at bathroom. | | | | | | | |
| E608007 | 9/13/2005 | AOR | $68 | MISC | 12/31/1969 | cancel | No Access |
| apt # b bathroom: install 1 new marble saddle remove debris. keep saddle as low as possible. note must call 24 hrs in advance. to set up appointmen | | | | | | | |
| E605713 | 8/22/2005 | OMO | $83 | DELEAD | 8/28/2005 | history | OMO Complete |
| as per rc #2005001338404 (enviro-probe inc), perform total lead analysis of 18 dust wipe sample(s) via environmental protection agency (epa) sw845-30 | | | | | | | |
| E603828 | 8/22/2005 | OMO | $6,082 | DELEAD | 7/29/2005 | history | OMO Complete |
| local law #1 violation : as per rc # 20050021374 (pdg) and attached scope of work thoroughly remove all lead violations as per new york city administ | | | | | | | |
| E602979 | 7/25/2005 | GC | $71 | GC | 12/31/1969 | history | OMO Complete |
| re-install two (2) window guards at master bedroom. | | | | | | | |
| E525560 | 3/21/2005 | OMO | $23 | DELEAD | 4/15/2005 | history | OMO Complete |
| as per rc #2005001338401 (enviro-probe inc), perform total lead analysis of 02 dust wipe sample(s) via environmental protection agency (epa) sw845-305 | | | | | | | |
| E522171 | 2/17/2005 | OMO | $1,000 | DELEAD | 4/4/2005 | history | OMO Complete |
| locate and repair roof leak cascading down into bulkhead of bldg. restore plaster ceiling, wall and paint to match. approx. 40 sq. ft remove all wor | | | | | | | |
| E519944 | 1/28/2005 | AOR | $139 | PLUMB | 12/31/1969 | cancel | Refuse Access |
| reinstall marble saddle. repair leak at flushometer. | | | | | | | |
| E519622 | 1/27/2005 | OMO | $91 | GC | 2/22/2005 | cancel | Refuse Access |
| public hall demo loose plaster and sheetrock in public hall 5 12 stories up and replace with new sheetrock, plaster and fire retardant material | | | | | | | |
| E507369 | 8/31/2004 | OMO | $57 | DELEAD | 9/19/2004 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 11 dust wipe sample(s) via environmental protection agency (epa) sw845-305 | | | | | | | |
| E505806 | 8/10/2004 | OMO | $3,322 | DELEAD | 9/22/2004 | history | OMO Complete |
| erp ll 38violation:as per attached scope of work. rc # 2003002580302 (pdg) thoroughly remove all lead violations as per new york city health code sec | | | | | | | |
| E424150 | 5/17/2004 | OMO | $873 | GC | 6/10/2004 | history | OMO Complete |
| apt 2d:find and repair all leaks affecting livingroom. demo sheetrock 30" x 60" and install new sheetrock. tape and compound, prime and paint at livi | | | | | | | |
| E407941 | 10/30/2003 | AOR | $0 | GC | 12/31/1969 | cancel | Compl Refuse |
| replace ceramic floor tiles at 3rd story public hall in front of apt #2d trip hazard. aprox. 2 sq ft. | | | | | | | |
| E322780 | 5/15/2003 | AOR | $237 | GC | 12/31/1969 | history | OMO Complete |
| (apt. #4h) reinstall (3) window guards with stops. remove all work related debris. | | | | | | | |
| E222352 | 6/18/2002 | AOR | $413 | GC | 12/31/1969 | history | OMO Complete |
| at bathroom (apt.#k) replace deteriorated vanity and top complete. and secure with wall. remove work debris. | | | | | | | |
| E219019 | 4/24/2002 | AOR | $0 | GC | 12/31/1969 | cancel | LL Complied |
| (apt #k) in kitchen, bdrm and bthrm install wgs, stops and screws also, replace wg and install stops at lvngrm window. | | | | | | | |
| E219021 | 4/24/2002 | AOR | $50 | GC | 12/31/1969 | cancel | Refuse Access |
| (apt #4d) in bdrm #1, bdrm #2, bdrm #3, lvngrm and bthrm replace wgs and install stops. | | | | | | | |
| E218783 | 4/19/2002 | AOR | $200 | PLUMB | 12/31/1969 | history | OMO Complete |
| (apt.#k) replace and secure kitchen sink faucet. | | | | | | | |
| E212965 | 1/16/2002 | AOR | $395 | GC | 12/31/1969 | history | OMO Complete |
| replace (1) broken marble nosing at 3rd floor public hallway stair, 8th marble tread. 2nd to 3rd story intermediate landing. remove work debris. | | | | | | | |
| E008768 | 6/24/1999 | AOR | $35 | GC | 12/31/1969 | cancel | Refuse Access |
| remove chained padlocked gate to street at east fire passage way. | | | | | | | |
| E008143 | 6/4/1999 | AOR | $25 | GC | 12/31/1969 | cancel | Refuse Access |
| apt.#h ext : install apartment door with insert . remove rubbish. | | | | | | | |



## HPD Litigation History

| Date Opened | Type | Status | Outstanding Judgment? |
|---|---|---|---|
| 6/17/2010 | Tenant Action | CLOSED | NO |
| 5/27/2010 | Access Warrant - Non-Lead | CLOSED | NO |
| 1/28/2010 | Comprehensive | CLOSED | NO |
| 9/14/2009 | Tenant Action | CLOSED | NO |
| 12/3/2008 | Heat and Hot Water | CLOSED | NO |
| 11/12/2008 | Tenant Action | CLOSED | NO |
| 6/10/2008 | Tenant Action | CLOSED | NO |
| 6/6/2008 | Tenant Action | CLOSED | NO |
| 12/6/2007 | Access Warrant - lead | CLOSED | NO |
| 10/21/2005 | Tenant Action | CLOSED | NO |
| 8/23/2005 | Tenant Action | CLOSED | NO |

# DOB Exposure Summary

## DOB Violation Totals

Violations Currently Active: **4**

Dismissed Violations: **5**

New Violations This Month: **0**

Open DOB Complaints: **0**

## DOB Violation Types



## DOB Violation History (12 Months)



Dec 11  Jan 12  Feb 12  Mar 12  Apr 12  May 12  Jun 12  Jul 12  Aug 12  Sep 12  Oct 12  Nov 12

# ECB Violation Details

## ECB Violation Totals

Not Complied:

| 0 |

Total Penalty (12m):

| $0 |

Outstanding Balance:

| $30,440 |

## ECB Violation Severity



## ECB Violation Types



## ECB Violation Issue History (12 Months)



Dec 11  Jan 12  Feb 12  Mar 12  Apr 12  May 12  Jun 12  Jul 12  Aug 12  Sep 12  Oct 12  Nov 12

## DOB Complaint Activity History (12 Months)



Dec 11  Jan 12  Feb 12  Mar 12  Apr 12  May 12  Jun 12  Jul 12  Aug 12  Sep 12  Oct 12  Nov 12

## DOB Complaint # 2154252

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2154252 | PLUMBING-DEFECTIVE/LEAKING/NOT MAINTAINED | 12/31/2010 | C | RESOLVED |

Details: THERE IS A LEAK INSIDE COMMERCIAL LOCATION, THAT PROPERTY OWNER IS REFUSING TO CORRECT. THERE ARE 2 LEAKS INSIDE OF THE STORE

Disposition: 3/30/2011 - H1 - PLEASE SEE COMPLAINT NUMBER
SEE COMPLAINT

## DOB Complaint # 2147865

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2147865 | FDNY REFERRAL - PILOT | 7/21/2010 | B | RESOLVED |

Details: EXPOSURE

Disposition: 8/19/2010 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION
THERE ARE NO CAPSTONES MISSING OR BROKEN AT ROOF

## DOB Complaint # 2138917

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2138917 | PLUMBING-DEFECTIVE/LEAKING/NOT MAINTAINED | 12/9/2009 | C | RESOLVED |

Details: CALLER STS THE HEATING PIPES IN CEILING OF BUILDING IS LEAKING WATER FOR PAST 2WKS. CALLER STS THIS IS A CHRONIC PROBLEM AND THE CEILING IS STARTING TO FALL DUE TO WATER DAMAGE

Disposition: 1/6/2010 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION
NO VAIOLTION WARRANT/ NO PIPES BEING AT TIME OF INSPECTION/ PIPES FIXED BY KIND LORD AS PER STORE OWNER

## DOB Complaint # 2138981

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2138981 | EGRESS - LOCKED/BLOCKED/IMPROPER/NO SECONDARY MEANS | 10/28/2009 | A | RESOLVED |

Details: EXIT PASSAGEWAY UNOBSTRUCTED

Disposition: 10/28/2009 - A1 - BUILDINGS VIOLATION(S) SERVED
(HAZ) ALTERNATE SERVICE FOR CORPORATION VIOLATION. EXTERIOR FIRE PASSAGEWAY IS BLOCKED BY PADLOCKED GATE

## DOB Complaint # 2136886

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2136886 | BOILER - DEFECTIVE / INOPERATIVE / NO PERMIT | 10/16/2009 | B | CLOSED |

Details: BOILER IS NOT WORKING IN APARTMENT BUILDING BOILER HAVENTBEEN WORKING SINCE WEDNESDAY

Disposition: 5/25/2010 - C2 - INSPECTOR UNABLE TO GAIN ACCESS - 2ND ATTEMPT
NO ACCESS

## DOB Complaint # 2136481

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2136481 | ELECTRICAL WIRING - DEFECTIVE / EXPOSED, IN PROGRESS | 10/6/2009 | B | RESOLVED |

Details: THE OUTLET IN THE BEDROOM SPARKS WHEN IN USE.THIS ISSUE HASBEEN GOING FOR MORE THAN ONE YR

Disposition: 12/3/2009 - A1 - BUILDINGS VIOLATION(S) SERVED
VIOL TO OWNER

## DOB Complaint # 2132274

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2132274 | EGRESS - LOCKED/BLOCKED/IMPROPER/NO SECONDARY MEANS | 6/27/2009 | A | RESOLVED |

Details: FAILURE TO PROVIDE UNOBSTRUCTED EXIT PASSAGEWAY

Disposition: 6/27/2009 - A1 - BUILDINGS VIOLATION(S) SERVED
(HAZ)ALTERNATE SERVICE FOR CORPORATION VIOLATION FAILURE TO PROVIDE UNOBSTRUCTED EXIT PASSAGEWAY

## DOB Complaint # 2131369

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2131369 | EGRESS - LOCKED/BLOCKED/IMPROPER/NO SECONDARY MEANS | 6/14/2009 | A | RESOLVED |

| Details: | FRONT DOOR EXIT IS JAMMED WILL NOT OPEN NO OTHER MEANS OF EGRESS, MADE SEVERAL COMPLAINTS TO BUILDING MGMT |
| --- | --- |
| Disposition: | 6/14/2009 - A8 - ECB VIOLATION SERVED<br>ECB VIOLATION ISSUED |

## DOB Complaint # 2124311

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2124311 | EGRESS - LOCKED/BLOCKED/IMPROPER/NO SECONDARY MEANS | 12/29/2008 | A | RESOLVED |

| Details: | CALLER STS NO SECOND MEANS OF EGRESS TO THE BACK AND SIDE ALLEY BECAUSE THE PASSAGE WAY IS PAD LOCK AND BLOCK BY GARBAGE ABOUT 8FT TALL PLS INVESTIGATE |
| --- | --- |
| Disposition: | 12/30/2008 - A8 - ECB VIOLATION SERVED<br>SIDE FIRE PASSAGE WAY OBSTRUCTED BY GARBAGE  PADLOCK |

## DOB Complaint # 2121699

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2121699 | PERMIT - NONE (BUILDING/ PA/ DEMO ETC.) | 10/29/2008 | B | RESOLVED |

| Details: | CALLER STATES THAT THERE IS ILLEGAL CONSTRUCTION WORK BEING DONE WITHOUT ANY PERMITS |
| --- | --- |
| Disposition: | 11/6/2008 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION<br>UNABLE TO LOCATE. NO LOCATION OR DESCRIPTION OF WORK GIVEN BUILDING HAS 24 APARTMENTS |

## DOB Complaint # 2121698

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2121698 | ELECTRICAL WORK UNLICENSED / ILLEGAL / IMPROPER IN PROGRESS | 10/29/2008 | B | RESOLVED |

| Details: | CALLER STATES THAT THERE IS ILLEGAL ELECTRICAL WORK BEING DONE CALLER STATES THAT THE WORKERS ARE UNLICENSED AND THERE ARE NO PERMITS.THIS IS THROUGH THE ENTIRE BUILDING |
| --- | --- |
| Disposition: | 10/30/2008 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION<br>NO FURTHER ACTION |

## DOB Complaint # 2120694

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2120694 | FAILURE TO MAINTAIN | 10/1/2008 | C | RESOLVED |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL |
| --- | --- |
| Disposition: | 10/1/2008 - A1 - BUILDINGS VIOLATION(S) SERVED<br>(HAZ) ALTERNATE SERVICE FOR CORPORATION VIOLATION SERVED |

## DOB Complaint # 2113331

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2113331 | FAILURE TO MAINTAIN | 4/25/2008 | C | RESOLVED |

| Details: | CLR STS HE IS THE OWNER OF THE STORE AND THERE IS A CONSTANT WATER LEAK INSIDE THE STORE FROM THE ABOVE APTS THAT THE LANDLORD OR SUPER WON |
| --- | --- |
| Disposition: | 4/29/2008 - A1 - BUILDINGS VIOLATION(S) SERVED<br>VIOLATION ISSUED |

## DOB Complaint # 2112355

| DOB Complaint # | Category | Received Date | Priority | Status |
| --- | --- | --- | --- | --- |
| 2112355 | WALL/RETAINING WALL - BULGING/CRACKED | 4/4/2008 | B | RESOLVED |

| Details: | DEFECTIVE PARAPET WALL |
| --- | --- |
| Disposition: | 4/4/2008 - A9 - ECB &amp; BUILDINGS VIOLATIONS SERVED<br>BRICK WALL IS IN DANGER OF COLLAPSING ABOVE STORE ENTRANCE - VACATE ORDER SUBMITTED |



## DOB Complaint # 2109458

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2109458 | BOILER - DEFECTIVE / INOPERATIVE / NO PERMIT | 1/26/2008 | B | RESOLVED |

| Details: | CALLER STS THE BOILER HAS BEEN BROKEN FOR A NUMBER OF DAYS AND NEEDS TO BE INSPECTED |
|---|---|

| Disposition: | 5/22/2008 - A1 - BUILDINGS VIOLATION(S) SERVED<br>BOILER INSPECTED, VIOLATION ISSUED |
|---|---|

## DOB Complaint # 2077673

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2077673 | ELECTRICAL WIRING - DEFECTIVE / EXPOSED, IN PROGRESS | 11/8/2005 | B | RESOLVED |

| Details: | CALLR STS JUST RENTED GROUND LEVEL SPACE AND THERE ARE NOELECTRICAL WIRE BOX FOR THE STORE TO HAVE ELECTRICITY HOOK-UP , ONLYONE ELECTRCAL METER NOT IN USE LOCATED IN THE BASEMENT |
|---|---|

| Disposition: | 11/15/2005 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION<br>NO FURTHER ACTION NECESSARY BASE UPON PHYSCICAL OBSER: |
|---|---|

## DOB Complaint # 2054834

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2054834 | BUILDING SHAKING/VIBRATING/STRUCT STABILITY AFFECTED | 9/30/2003 | A | CLOSED |

| Details: | APT 2D/ 3RD FL OF ABOVE LOCATION BATHROOM FLOOR IS SAGGINGMOVING/ DUE FROM FIRE IN APT 1D/ FIRE INSPECTOR SUGGESTED TENANT NOTWALK TOO HARD ON FLOOR |
|---|---|

| Disposition: | 10/10/2003 - C2 - INSPECTOR UNABLE TO GAIN ACCESS - 2ND ATTEMPT<br>NO RESPONSE TO INTERCOM |
|---|---|

## DOB Complaint # 2049630

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2049630 | BUILDING SHAKING/VIBRATING/STRUCT STABILITY AFFECTED | 12/19/2002 | A | RESOLVED |

| Details: | PARAPIT WALL LEANING IN THE FRONT OF THE BUILDING |
|---|---|

| Disposition: | 12/19/2002 - A9 - ECB &amp; BUILDINGS VIOLATIONS SERVED<br>PARAPET WALLS DEFECTIVE |
|---|---|

## DOB Complaint # 2035563

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2035563 | STOREFRONT OR BUSINESS SIGN/AWNING/MARQUEE/CANOPY _ ILLEGAL | 8/28/2000 | C | RESOLVED |

| Details: | HAVING INSTALLED AN AWNING WITHOUT A PERMIT |
|---|---|

| Disposition: | 8/29/2000 - A1 - BUILDINGS VIOLATION(S) SERVED<br>DOB VIOLATION |
|---|---|

## DOB Complaint # 2035556

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2035556 | STOREFRONT OR BUSINESS SIGN/AWNING/MARQUEE/CANOPY _ ILLEGAL | 8/28/2000 | C | RESOLVED |

| Details: | INSSTALLED AWNING/SIGNAGE WITHOUT PERMIT |
|---|---|

| Disposition: | 8/29/2000 - A1 - BUILDINGS VIOLATION(S) SERVED<br>DOB VIOLATION, DISMISSAL DENIED (03/09/2001) EXISTING SIGN,PARALLELL SIGN STILL ON |
|---|---|



**EMPOWER** NEW YORK

©Copyright 2012 EMPOWER NY

## DOB Violations Details

| Violation # | Issue Date | Vio Type | Category | Disp. Date | Status |
|---|---|---|---|---|---|
| 3993 | 1/1/2009 | LL6291 - boiler | V - violation | | Active |
| 0846 | 1/3/2008 | LL6291 - boiler | V - violation | | Active |
| 07223 | 1/19/2007 | LL6291 - boiler | V - violation | | Active |
| 06841 | 1/6/2006 | LL6291 - boiler | V - violation | | Active |
| ZSTF12YC | 8/29/2000 | C - construction | V - violation | 5/24/2001 | Dismissed |
| ZSTF11YC | 8/29/2000 | C - construction | V - violation | 2/8/2001 | Dismissed |
| 01876 | 5/17/1993 | LL6291 - boiler | V - violation | 11/8/2001 | Dismissed |
| ST04W(4826) | 12/7/1990 | ES - elec sign | V - violation | 4/23/2001 | Dismissed |
| V* 120790ESST04W(4826) | 12/7/1990 | ES - elec sign | V - violation | | Removed |

## ECB Violation # 34818104R

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34818104R / 102809CSTFMS03 | CONSTRUCTION - construc | CLASS - 3 | CLASS - 3 | Not Complied |

| Details: | FAILURE TO MAINTAIN BLDG WALLS OR APPURTENANCES NOTE: BROKEN CRACKED DEFECTIVE WALKING SURFACE AT FRONT COURTYD REMEDY:MAINTAIN & REPAIR DEFECT |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $500 | $0 | $500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 10/28/2009 | 10/28/2009 | 8/6/2010  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 304 | 28-302.1 | |

## ECB Violation # 34792401K

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34792401K / 062709C12JG05 | CONSTRUCTION - construc | CLASS - 1 | CLASS - 1 | Not Complied |

| Details: | FAILURE TO MAINTAIN BUILDING IN CODE-COMPLIANT MANNER. 1- RUSTING FIREESCAPES. 2- BROKEN/CRACK FRONT STEPS LANDING. 3- HARDWARE IN SIDE ALLEY BROKEN & PADLOCKED. 4- A/C WINDOW UNITS SUPPORTED BY WOOD AND/OR BRI |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $5,000 | $0 | $5,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 6/27/2009 | 6/27/2009 | 10/16/2009  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 102 | 28-301.1 | |

## ECB Violation # 34792402M

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 4792402M / 062709C12JG06 | CONSTRUCTION - construc | CLASS - 1 | CLASS - 1 | Not Complied |

| Details: | FAILURE TO PROVIDE UNOBSTRUCTED EXIT PASSAGEWAY. 1-SIDE EXTERIOR FIREPASSAGEWAY IS BLOCKED BY PADLOCKED GATE.2-EXCESSIVE GARBAGE & DEBRIS.4-FLOWER POTS ON FIRE ESCAPE (6/27/09).REMEDY:IMMEDIATELY MAKE SAFE -RE |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $6,000 | $0 | $6,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 6/27/2009 | 6/27/2009 | 12/18/2009  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 127 | 27-369,BC 1020.2 | |

## ECB Violation # 34755599M

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34755599M / 061409CNEGA01 | CONSTRUCTION - construc | CLASS - 2 | CLASS - 2 | Not Complied |

| Details: | FAILURE TO MAINTAIN BUILDING IN CODE COMPLAINT MANNER. DEFECT: FRONTENTRANCEWAY DOOR AT WEST DOES NOT OPEN FREELY & ADEQUATELY FROM INTERIOR PUBLIC HALL AT LOBBY AT TIME OF INSPECTION. REM: REPAIR AND REPLACE |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 6/14/2009 | 6/14/2009 | 9/25/2009  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 202 | 28-301.1 | |



## ECB Violation # 34735972N

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 4735972N / 123008C12SC01 | CONSTRUCTION - construc | CLASS - 1 | CLASS - 1 | Not Complied |

**Details:** FAILURE TO PROVIDE UNOBSTRUCTED EXIT PASSAGEWAY.SIDE EXTERIOR FIRE PASSAGEWAY IS BLOCKED BY A PADLOCKED GATE & EXCESSIVE GARBAGE & DEBRIS.REMEDY:IMMEDIATELY REMOVE OBSTRUCTIONS.

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $6,000 | $0 | $6,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/30/2008 | 12/30/2008 | 4/3/2009 10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 127 | 27-369,BC 1020.2 | |

## ECB Violation # 34712131R

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34712131R / 100108CSTFLW03 | CONSTRUCTION - construc | CLASS - 1 | CLASS - 1 | Not Complied |

**Details:** FAILURE TO MAINTAIN BUILDING WALL OR APPURTENANCES. NOTE: BRICK WORK ON THE LEFT SIDE OF THE ENTRANCE TO THE 1ST FLR STORE HAS DEVELOPED SEVERE STRESS CRACKS. MOVEMENT OF BRICKS ALSO OBSERVED OVER THE ENTRANCE

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $5,000 | $0 | $5,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 10/1/2008 | 4/27/2009 | 6/19/2009 8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 104 | 28-302.1 | |

## ECB Violation # 32055973N

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| J55973N / 052108BMD1487001 | BOILER - boiler | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

27-127 16 32A 40 42 46 50 50A 50B 50 TWO NUMBER 67 LOW WATER CUT OFF ON ON 1/2 RIPPLE 50A SMOKE PIPE SECURED WITH (BAND) IRON 50B MISSING AIR GAP ON BACKFLOW AND DISCHARGE PIPE

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $360 | $2,140 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 5/21/2008 | 5/21/2008 | 7/18/2008 10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B4A | 27-127 | Failure to maintain boiler |

## ECB Violation # 34614954Z

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34614954Z / 042908P12RT02 | PLUMBING - plumbing | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

**Details:** USE OR INSTALATION OF PLUMBING MATERIALS WHICH DO NOT COMPLY WITH RS-Y6 SAW THAT AT LOCATION A FERNCO COUPLINK WAS USED IN A LEAK REPAIR. REMEDY: REMOVE NON-COMPLING MATERIAL.

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/29/2008 | 4/29/2008 | 8/28/2009 8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BC1 | 27-902 | Use or installation of plumbing materials or equipment which do not comply with RS-16. |



## ECB Violation # 34614805P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34614805P / 040408C12SC01 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL. DEFECT IS: BRICK WALL IS CRACKED, BULGING AND IN DANGER OF COLLAPSE AT 1ST STORY ABOVE ENTRANCETO CORNER STORE. REMEDY: VACATE STORE IMMEDIATELY PROVIDE PARTIAL CLOS |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $800 | $0 | $800 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/4/2008 | 4/8/2008 | 9/12/2008  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |

## ECB Violation # 34385624J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34385624J / 031203C12BL01 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Cert Accepted |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL.DEFECTS ARE:BRICKS WALLS ARE OUT OF PLUMB-BLDG AND BRICK MORTAR MISSING AND SPALLING. THROUGHOUTSIX FLOOR.REMEDY:OBTAIN ALL NECESSARY PERMIT AND MAKE ALL REPAIRS |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $880 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 3/12/2003 | 3/12/2003 | |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |

## ECB Violation # 34387410N

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34387410N / 121902C12BL02 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Cert Accepted |

| Details: | FAILURE TO MAINTIAN EXTERIOR BUILDING WALL. DEFECTS ARE : BRICK PARAPET WALLS, ARE OUT OF PLUMB - BULGING, BRICK MORTAR MISSING AND SPALLINGTHROUGHOUT SIX FLOOR WINDOWS BRICK WORK IS BULGING IN VARIOUS LOCATION |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/19/2002 | 12/19/2002 | 2/7/2003  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |



# Building Code Compliance Summary

## DOB Boiler Compliance

| Device # | Annual Inspection | | Latest City Inspection |
|----------|-------------------|---|------------------------|
| 14870-01 |  | Nov 14th, 2011<br>NO DEFECTS | May 21st, 2010<br>C#2136886 NO ACCESS |

## DEP Boiler Registration

| Application # | Issue Date | Expire Date | Current Status |
|---------------|------------|-------------|----------------|
| CA085373P | Jul 9th, 1999 | Jul 1st, 2001 | ! |

## DOB Facade Compliance

*There are no facade records for this building.*

## DOB Elevator Compliance

*There are no elevator records for this building.*

# Building Code Compliance Detail

## DEP Boiler Records

| DEP Number | Issue Date | Expire Date | Certificate Type | Make / Model | # Units | Fuel | Secondary |
|---|---|---|---|---|---|---|---|
| CA065072P | 7/9/1999 | 7/1/2001 | CERT. TO OPERATE | ROCKMILLS MP-125 | 1 | NO. 4 OIL | NO DEFECTS |
| 14870-01 | | 11/14/2011 | | BENDJOUYA MICHAEL | | | NO DEFECTS |
| 14870-01 | | 9/23/2010 | | COPPOLA MICHAEL | | | NO DEFECTS |
| 14870-01 | | 5/21/2010 | | M. DIBONO 2157 (CY) | | | DOB COMPLAINT |
| 14870-01 | | 11/12/2009 | | COPPOLA MICHAEL | | | NO DEFECTS |
| 14870-01 | | 5/21/2008 | | MELILLO 2214(CR) | | | ECB VIOLATION |
| 14870-01 | | 12/15/2004 | | ROSE ROBERT | | | OTHER |
| 14870-01 | | 7/22/2004 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14870-01 | | 10/6/2003 | | COMER KEVIN | | | NO DEFECTS |
| 14870-01 | | 8/27/2003 | | BERLINGER 1936 (CB) | | | OTHER |
| 14870-01 | | 6/3/2002 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14870-01 | | 8/27/2001 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14870-01 | | 6/23/2000 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14870-01 | | 10/29/1999 | | MASINI BRUNO | | | NO DEFECTS |
| 14870-01 | | 12/22/1998 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14870-01 | | 12/11/1997 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14870-01 | | 12/23/1996 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14870-01 | | 12/5/1995 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14870-01 | | 12/26/1994 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14870-01 | | 12/23/1993 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14870-01 | | 12/29/1992 | | MULLIGAN JOHN | | | NO DEFECTS |



# Department of Finance Summary

| Current Balance: | **$45,846** | | Current Water Balance: | **$130,200** |
|---|---|---|---|---|

## DOF Current Open Charges by Type



DOF ($45,846)

## DOF Payment Totals By Type - Past Year



*There are no DOF payments available for the past 12 months.*

## DOF Payments - Past 12 Months



$5

$4

$3

$2

$1

: 11  Jan 12  Feb 12  Mar 12  Apr 12  May 12  Jun 12  Jul 12  Aug 12  Sep 12  Oct 12  Nov 12

## Recent Payments

## Water Payments - Past 12 Months



$5

$4

$3

$2

$1

$0  Dec 11  Jan 12  Feb 12  Mar 12  Apr 12  May 12  Jun 12  Jul 12  Aug 12  Sep 12  Oct 12  Nov 12

## Property Value



Market Value    Assessed Value    Taxable Value

$2,600,000
$2,400,000
$2,200,000
$2,000,000
$1,800,000
$1,600,000
$1,400,000
$1,200,000
$1,000,000
$800,000
$600,000
$400,000
$200,000
$0

2006    2007    2008    2009    2010    2011    2012

# Department of Finance Detail

## DOF Open Charges

| Account | Period Date | Due Date | Amount | Interest | Discount | Total |
|---|---|---|---|---|---|---|
| DOF - Property Tax | 1/1/2013 | 1/1/2013 | $45,846.40 | $0.00 | $0.00 | $45,846.40 |

## Open Water Charges

| Account | Charge Type | Charge Amount |
|---|---|---|
| 3000222840001 | Late Payment Fee | $4,920.20 |
| 3000222840001 | Utility | $83,004.88 |
| 222839001 | Other | $50.00 |
| 222839001 | Utility | $35,395.97 |
| 222839001 | Late Payment Fee | $6,829.43 |

# Property Details

# 738 East 243rd St
# Bronx, NY 10470



## Property Information

**738 East 243rd St**

Bronx, NY 10470

Block & Lot: 05115/0047

HPD# 73453 MDR# 207002

BIN# 2071921

72 Units on 6 Stories

Corp: 243rd Street Bronx R & R LLC

Emerg. Contact: Marc Levine

Emerg. Contact: Michael Gallagher

Emerg. Contact: Michael Pollis

Emerg. Contact: Nate Schwartz

Emerg. Contact: Zlatan Ibrahimovic

Head Officer: Marc Levine



**EMPOWER**
NEW YORK

# 738 East 243rd St



## HPD

| Complaints | | Violations | | Emergency Repairs | | Litigation | |
|---|---|---|---|---|---|---|---|
| Open Complaints: | 6 | Open Violations: | 223 | Active Repairs: | 0 | Current Open Cases: | 0 |
| Total Complaints: | 283 | Open C Class: | 28 | Repairs Balance: | $0 | Comprehensive: | 0 |
| CVR: | 68.5% | VPU: | 3.10 | Repairs Paid (12M): | $0 | Closed Cases (12M): | 10 |

## DOB

| Complaints | | Violations | |
|---|---|---|---|
| Open Complaints: | 0 | Open Violations: | 17 |
| Urgent Complaints: | 0 | Violations (12M): | 1 |
| Total Complaints: | 79 | | |



## ECB

| | |
|---|---|
| Open Violations: | 26 |
| Total Penalty(12M): | $1,500 |
| Outstanding Balance: | $70,880 |



## WATER

| | |
|---|---|
| Open Balance: | $126,082 |
| Total Payments (12M): | $0 |
| $$ Per Unit: | n/a |

## COMPLIANCE

| Elevator | Boiler | DEP Boiler | Facade |
|---|---|---|---|



## Charges By Agency



### DOF
| # Charges | Balance | Payments (12m) |
|---|---|---|
| 3 | $239,683 | $0 |

### HPD
| # Charges | Balance | Payments (12m) |
|---|---|---|
| 3 | $1,014 | $0 |

### DHCR
| # Charges | Balance | Payments (12m) |
|---|---|---|
| 1 | $978 | $0 |

### DOB
| # Charges | Balance | Payments (12m) |
|---|---|---|
| 5 | $563 | $0 |

| # Charges | Balance | Payments (12m) |
|---|---|---|
| 2 | $302 | $0 |

## DOF

| | |
|---|---|
| Current Open Charges: | $242,541 |
| Total Payments (12M): | $0 |
| Market Value: | $2,404,000 |
| Assessed Value: | $1,081,800 |
| Tax Value: | $1,081,800 |



# Department of Housing Preservation and Development

## Violation Totals

| **HPD Complaints:** | | **HPD Violations:** | | **HPD Emergency Repairs:** | |
|---|---|---|---|---|---|
| Open Complaints: | 6 | Open Violations: | 223 | Active Emergency Repairs: | 0 |
| Total Complaints: | 283 | Open C Class: | 28 | Active ERP Award Amount: | $0 |
| Violation Ratio (CVR): | 68.5% | Violations Per Unit (VPU): | 3.10 | Total Repairs Paid: | $0 |

## Violations by Unit

| Apt. | Class A | B | C | Total |
|---|---|---|---|---|
| 1K | 16 | 47 | 1 | 64 |
| 4J | 2 | 19 | | 21 |
| 1E | 5 | 5 | 3 | 13 |
| 6F | | 9 | 1 | 10 |
| 3B | 6 | 3 | 1 | 10 |
| 5A | | 10 | | 10 |
| - | 7 | 3 | | 10 |
| 5C | | 8 | 1 | 9 |
| 5D | 1 | 8 | | 9 |
| 1H | 2 | 4 | 2 | 8 |
| 6B | | 7 | | 7 |
| 4K | | | 6 | 6 |
| 4M | | 6 | | 6 |
| 4H | | 3 | 2 | 5 |
| 6D | | 4 | | 4 |
| 3H | | | 3 | 3 |
| H | | 2 | 1 | 3 |
| 1J | | 3 | | 3 |
| 3F | | 3 | | 3 |
| 1G | 1 | 2 | | 3 |
| 3K | | 1 | 1 | 2 |
| 4G | | 1 | 1 | 2 |
| 2A | | 2 | | 2 |
| 5L | | | 1 | 1 |
| 6M | | 1 | | 1 |
| 6G | | 1 | | 1 |
| 1D | | 1 | | 1 |
| 3L | | 1 | | 1 |
| 1A | | 1 | | 1 |
| 6C | | 1 | | 1 |
| 1F | | 1 | | 1 |
| 1C | 1 | | | 1 |
| 5B | 1 | | | 1 |

### Violation Classes



■ class A  ■ class B  ■ class C

### Violation Types



### Violation History by Class (12 Months)



### Emergency Repairs Count History (12 Months)



### Complaints Count History (12 Months)



## HPD Complaint Details

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 6098139 | 10/13/2012 | NA | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 6097709 | 10/12/2012 | NA | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 6080175 | 8/17/2012 | 4J | WALLS | CRACKED | BATHROOM | violation |
| 6060175 | 8/17/2012 | 4J | CEILING | BULGING/LOOSE | BATHROOM | violation |
| 6060175 | 8/17/2012 | 4J | WALLS | BULGING | LIVING ROOM | violation |
| 6060175 | 8/17/2012 | 4J | WALLS | CRACKED | LIVING ROOM | violation |
| 6045879 | 7/30/2012 | 1K | VERMIN | OTHER | BEDROOM | closed |
| 6045879 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | LIVING ROOM | closed |
| 6045879 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | KITCHEN | closed |
| 6045864 | 7/30/2012 | 1K | FLOOR | LARGE HOLE | BEDROOM | violation |
| 6045864 | 7/30/2012 | 1K | RADIATOR | RADIATOR-LEAK | ENTIRE APT | closed |
| 6045864 | 7/30/2012 | 1K | VERMIN | MICE | BEDROOM | violation |
| 6045864 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | KITCHEN | violation |
| 6045864 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | LIVING ROOM | violation |
| 6045879 | 7/30/2012 | 1K | VERMIN | MICE | ENTIRE APT | closed |
| 6045879 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | BATHROOM | closed |
| 6045879 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | BEDROOM | closed |
| 6045864 | 7/30/2012 | 1K | RADIATOR | SUMMER HEAT | ENTIRE APT | closed |
| 6045864 | 7/30/2012 | 1K | VERMIN | RATS | BEDROOM | closed |
| 6045864 | 7/30/2012 | 1K | WATER-LEAKS | CEILING | BATHROOM | violation |
| 6036672 | 7/18/2012 | 1J | CEILING | HOLE | BEDROOM | violation |
| 6036672 | 7/18/2012 | 1J | VERMIN | OTHER | BEDROOM | violation |
| 6036672 | 7/18/2012 | 1J | CEILING | COLLAPSING | BEDROOM | violation |
| 6034622 | 7/13/2012 | 1K | FLOOR | LARGE HOLE | BEDROOM | closed |
| 6034622 | 7/13/2012 | 1K | RADIATOR | RADIATOR-LEAK | ENTIRE APT | closed |
| 6034622 | 7/13/2012 | 1K | VERMIN | MICE | ENTIRE APT | closed |
| 6034622 | 7/13/2012 | 1K | VERMIN | OTHER | BEDROOM | closed |
| 6014325 | 6/18/2012 | 1K | VERMIN | OTHER | ENTIRE APT | closed |
| 6010097 | 5/13/2012 | 5K | VERMIN | BEDBUGS | ENTIRE APT | violation |
| 5991766 | 5/17/2012 | 1K | FLOOR | FLOOR-TORN | KITCHEN | violation |
| 5991766 | 5/17/2012 | 1K | MOLD | MOLD | BATHROOM | violation |
| 5991766 | 5/17/2012 | 1K | WATER-LEAKS | CASCADING | KITCHEN | violation |
| 5991766 | 5/17/2012 | 1K | FLOOR | FLOOR-TORN | BATHROOM | violation |
| 5991766 | 5/17/2012 | 1K | WALLS | BULGING | BATHROOM | violation |
| 5991766 | 5/17/2012 | 1K | WATER-LEAKS | CEILING | BEDROOM | violation |
| 5979184 | 5/2/2012 | 4J | VERMIN | MICE | ENTIRE APT | violation |
| 5979184 | 5/2/2012 | 4J | CABINETS | DEFECTIVE | KITCHEN | violation |
| 5979184 | 5/2/2012 | 4J | ELEVATOR | DIRTY / UNSAN | ENTIRE BUILDING | closed |
| 5979184 | 5/2/2012 | 4J | WATER-SUPPLY | NO-HOT- WATER | BATHROOM | closed |
| 5979184 | 5/2/2012 | 4J | WATER-LEAKS | CEILING | BATHROOM | violation |
| 5971347 | 4/24/2012 | 1K | MOLD | MOLD | PRIVATE HALL | closed |
| 5971347 | 4/24/2012 | 1K | MOLD | MOLD | LIVING ROOM | closed |
| 5971347 | 4/24/2012 | 1K | WALLS | PEELING | ENTIRE APT | closed |
| 5971347 | 4/24/2012 | 1K | WATER-LEAKS | CEILING | ENTIRE APT | closed |
| 5971347 | 4/24/2012 | 1K | WATER-LEAKS | CONT ABOVE APT | ENTIRE APT | closed |
| 5971347 | 4/24/2012 | 1K | CEILING | PLASTER PEELING | ENTIRE APT | closed |
| 5971347 | 4/24/2012 | 1K | MOLD | MOLD | BEDROOM | closed |
| 5971347 | 4/24/2012 | 1K | MOLD | MOLD | KITCHEN | closed |
| 5971347 | 4/24/2012 | 1K | WATER-LEAKS | WATER-LINE | ENTIRE APT | closed |
| 5968871 | 4/22/2012 | 1H | WATER-LEAKS | CONT ABOVE APT | LIVING ROOM | closed |
| 5968871 | 4/22/2012 | 1H | FLOOR | BROKE / DEF | LIVING ROOM | violation |
| 5951437 | 3/31/2012 | 4J | WATER-LEAKS | CONT ABOVE APT | BATHROOM | closed |
| 5948646 | 3/28/2012 | 5K | VERMIN | BEDBUGS | ENTIRE APT | closed |
| 5907628 | 2/18/2012 | 4M | VERMIN | MICE | ENTIRE BUILDING | violation |
| 5907628 | 2/18/2012 | 4M | BATHTUB | CHIPPING/ERODE | BATHROOM | violation |
| 5907628 | 2/18/2012 | 4M | WALLS | PAINT DIRTY | ENTIRE APT | violation |
| 5907628 | 2/18/2012 | 4M | WALLS | PEELING | ENTIRE APT | violation |
| 5907628 | 2/18/2012 | 4M | VERMIN | MICE | ENTIRE APT | violation |



## HPD Complaint Details (continued)

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 5832427 | 1/3/2012 | 4J | VERMIN | RATS | ENTIRE APT | closed |
| 5832427 | 1/3/2012 | 4J | WATER-LEAKS | CONT ABOVE APT | BATHROOM | violation |
| 5818488 | 12/26/2011 | BLDG | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5815943 | 12/23/2011 | 5A | HEAT | NO HEAT | ENTIRE APT | closed |
| 5815598 | 12/23/2011 | 1K | BASIN/SINK | FAUCET-BROKEN | KITCHEN | violation |
| 5815598 | 12/23/2011 | 1K | WALLS | HOLE | LIVING ROOM | violation |
| 5815598 | 12/23/2011 | 1K | VERMIN | RATS | ENTIRE APT | closed |
| 5815598 | 12/23/2011 | 1K | WALLS | HOLE | BATHROOM | violation |
| 5815598 | 12/23/2011 | 1K | WALLS | HOLE | KITCHEN | violation |
| 5778802 | 12/1/2011 | 1K | BASIN/SINK | FAUCET-BROKEN | KITCHEN | closed |
| 5778802 | 12/1/2011 | 1K | VERMIN | RATS | ENTIRE APT | closed |
| 5778802 | 12/1/2011 | 1K | WALLS | HOLE | KITCHEN | closed |
| 5778802 | 12/1/2011 | 1K | WALLS | HOLE | LIVING ROOM | closed |
| 5778802 | 12/1/2011 | 1K | WALLS | HOLE | BATHROOM | closed |
| 5740735 | 11/3/2011 | 1M | FLOOR | BROKE / DEF | KITCHEN | closed |
| 5740735 | 11/3/2011 | 1M | LOCKS | BROKEN-DEFECT | ENTRANCE | closed |
| 5740735 | 11/3/2011 | 1M | LIGHTING | DIMS | PRIVATE HALL | closed |
| 5723716 | 10/28/2011 | 1E | ELEC/GAS-RANGE | PILOT LIGHT INO | KITCHEN | closed |
| 5724680 | 10/28/2011 | 5D | CEILING | PLASTER PEELING | LIVING ROOM | violation |
| 5723716 | 10/28/2011 | 1E | FLOOR | LARGE HOLE | BATHROOM | closed |
| 5723716 | 10/28/2011 | 1E | LOCKS | BROKEN-DEFECT | BATHROOM | closed |
| 5724680 | 10/28/2011 | 5D | VERMIN | MICE | ENTIRE APT | violation |
| 5724680 | 10/28/2011 | 5D | CEILING | PLASTER PEELING | BEDROOM | violation |
| 5723716 | 10/28/2011 | 1E | HEAT | NO HEAT | ENTIRE APT | closed |
| 5724680 | 10/28/2011 | 5D | WALLS | HOLE | KITCHEN | violation |
| 5706328 | 10/14/2011 | 1K | VERMIN | RATS | LOBBY | closed |
| 5706328 | 10/14/2011 | 1K | VERMIN | RATS | ENTIRE APT | closed |
| 5706328 | 10/14/2011 | 1K | WALLS | HOLE | BATHROOM | violation |
| 5706328 | 10/14/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | PRIVATE HALL | closed |
| 5706328 | 10/14/2011 | 1K | WATER-LEAKS | ROOF-LEAK | FOYER | closed |
| 5706328 | 10/14/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | KITCHEN | violation |
| 5706328 | 10/14/2011 | 1K | FLOOR | FLOOR-TORN | LIVING ROOM | closed |
| 5706328 | 10/14/2011 | 1K | VERMIN | ROACHES | LOBBY | closed |
| 5706328 | 10/14/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | BATHROOM | closed |
| 5706328 | 10/14/2011 | 1K | WATER-LEAKS | CEILING | BEDROOM | violation |
| 5706328 | 10/14/2011 | 1K | WATER-LEAKS | ROOF-LEAK | LIVING ROOM | violation |
| 5700771 | 10/6/2011 | 4D | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5698761 | 10/4/2011 | 4D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5690420 | 9/22/2011 | 1K | FLOOR | FLOOR-TORN | LIVING ROOM | violation |
| 5690475 | 9/22/2011 | 4J | WALLS | CRACKED | LIVING ROOM | violation |
| 5690420 | 9/22/2011 | 1K | WATER-LEAKS | ROOF-LEAK | FOYER | violation |
| 5690475 | 9/22/2011 | 4J | CEILING | CRACKED | PRIVATE HALL | violation |
| 5690475 | 9/22/2011 | 4J | WALLS | CRACKED | BEDROOM | violation |
| 5690475 | 9/22/2011 | 4J | CEILING | CRACKED | BEDROOM | violation |
| 5690475 | 9/22/2011 | 4J | MOLD | MOLD | BATHROOM | violation |
| 5690420 | 9/22/2011 | 1K | VERMIN | RATS | ENTIRE APT | violation |
| 5690420 | 9/22/2011 | 1K | WALLS | HOLE | BATHROOM | violation |
| 5690420 | 9/22/2011 | 1K | WATER-LEAKS | ROOF-LEAK | LIVING ROOM | violation |
| 5690475 | 9/22/2011 | 4J | CEILING | CRACKED | BATHROOM | violation |
| 5690475 | 9/22/2011 | 4J | CEILING | CRACKED | KITCHEN | violation |
| 5590273 | 5/5/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | KITCHEN | violation |
| 5590273 | 5/5/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | PRIVATE HALL | violation |
| 5590273 | 5/5/2011 | 1K | FLOOR | FLOOR-TORN | LIVING ROOM | violation |
| 5590273 | 5/5/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | BATHROOM | violation |
| 5590273 | 5/5/2011 | 1K | WATER-LEAKS | CEILING | BEDROOM | violation |
| 5576911 | 4/20/2011 | 1K | WATER-LEAKS | CONT ABOVE APT | KITCHEN | closed |
| 5473210 | 1/30/2011 | 4G | WALLS | PEELING | BATHROOM | closed |
| 5473210 | 1/30/2011 | 4G | ELECTRIC-WIRING | DEF/SEALED OUT | BEDROOM | closed |


**EMPOWER**
NEW YORK

*738 East 243rd St ~ Bronx, NY*
*page 5/{nb}*

©Copyright 2012 EMPOWER NY

## HPD Complaint Details (continued)

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 5473210 | 1/30/2011 | 4G | FLOOR | FLOOR-TORN | BEDROOM | closed |
| 5473210 | 1/30/2011 | 4G | RADIATOR | PEELING/FLAKING | BEDROOM | closed |
| 5461855 | 1/24/2011 | 4G | CEILING | PLASTER PEELING | BATHROOM | violation |
| 5461855 | 1/24/2011 | 4G | FLOOR | BROKE / DEF | LIVING ROOM | violation |
| 5461855 | 1/24/2011 | 4G | FLOOR | FLOOR-TORN | KITCHEN | closed |
| 5461855 | 1/24/2011 | 4G | FLOOR | SAGGING | BATHROOM | violation |
| 5461855 | 1/24/2011 | 4G | WINDOW/FRAME | PEELING PAINT | BEDROOM | violation |
| 5461855 | 1/24/2011 | 4G | BASIN/SINK | FAUCET-BROKEN | BATHROOM | violation |
| 5461855 | 1/24/2011 | 4G | BATHTUB | BROKE/MISSING | BATHROOM | violation |
| 5461855 | 1/24/2011 | 4G | FLOOR | FLOOR-TORN | FOYER | closed |
| 5461855 | 1/24/2011 | 4G | FLOOR | LARGE HOLE | BEDROOM | violation |
| 5461855 | 1/24/2011 | 4G | VENTILATORS SYS | KIT/BTHRM | BATHROOM | closed |
| 5446670 | 1/17/2011 | 1K | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5446698 | 1/17/2011 | 1K | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5367468 | 12/8/2010 | 6D | BELL-BUZZER/INT | INOPER/ MISSING | ENTIRE APT | violation |
| 5367468 | 12/8/2010 | 6D | CEILING | CRACKED | BEDROOM | closed |
| 5367468 | 12/8/2010 | 6D | FLOOR | BROKE / DEF | BEDROOM | closed |
| 5367468 | 12/8/2010 | 6D | VERMIN | MICE | ENTIRE APT | violation |
| 5367468 | 12/8/2010 | 6D | WALLS | PEELING | ENTIRE APT | violation |
| 5367468 | 12/8/2010 | 6D | WINDOWS | SASH | BEDROOM | closed |
| 5367468 | 12/8/2010 | 6D | CEILING | CRACKED | LIVING ROOM | closed |
| 5367468 | 12/8/2010 | 6D | FLOOR | BROKE / DEF | LIVING ROOM | closed |
| 5367468 | 12/8/2010 | 6D | LOCKS | BROKEN-DEFECT | ENTRANCE | closed |
| 5367468 | 12/8/2010 | 6D | SMOKE-DETECTOR | DEFECT/MISSING | ENTIRE APT | violation |
| 5367468 | 12/8/2010 | 6D | VERMIN | ROACHES | ENTIRE APT | violation |
| 5367468 | 12/8/2010 | 6D | WALLS | CRACKED | BEDROOM | violation |
| 5367468 | 12/8/2010 | 6D | WALLS | CRACKED | LIVING ROOM | violation |
| 5367468 | 12/8/2010 | 6D | WATER-LEAKS | CEILING | BEDROOM | closed |
| 5324132 | 11/15/2010 | 5A | HEAT | NO HEAT | ENTIRE APT | closed |
| 5306806 | 11/5/2010 | 4G | CEILING | PLASTER PEELING | BATHROOM | closed |
| 5306806 | 11/5/2010 | 4G | FLOOR | BROKE / DEF | KITCHENETTE | closed |
| 5306806 | 11/5/2010 | 4G | BATHTUB | CHIPPING/ERODE | BATHROOM | closed |
| 5306806 | 11/5/2010 | 4G | CABINETS | FALLING | KITCHEN | closed |
| 5306806 | 11/5/2010 | 4G | FLOOR | BROKE / DEF | FOYER | closed |
| 5306806 | 11/5/2010 | 4G | WINDOW/FRAME | PEELING PAINT | BEDROOM | closed |
| 5281456 | 10/21/2010 | 1F | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5278705 | 10/20/2010 | 4D | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5274665 | 10/18/2010 | 6G | VERMIN | BEDBUGS | ENTIRE APT | violation |
| 5274665 | 10/18/2010 | 6G | WATER-LEAKS | ROOF-LEAK | BEDROOM | violation |
| 5274641 | 10/18/2010 | 4D | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5270403 | 10/15/2010 | 4D | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5266021 | 10/10/2010 | 4D | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5260459 | 10/4/2010 | 6G | VERMIN | BEDBUGS | ENTIRE APT | violation |
| 5237340 | 8/28/2010 | 6D | CEILING | BULGING/LOOSE | BATHROOM | open |
| 5237340 | 8/28/2010 | 6D | WALLS | CRACKED | LIVING ROOM | open |
| 5237340 | 8/28/2010 | 6D | WINDOWS | BROKEN FRAME | BATHROOM | open |
| 5237340 | 8/28/2010 | 6D | FLOOR | BROKE / DEF | ENTIRE APT | closed |
| 5237340 | 8/28/2010 | 6D | FLOOR | BROKE / DEF | KITCHEN | violation |
| 5237340 | 8/28/2010 | 6D | CEILING | CRACKED | KITCHEN | open |
| 5237340 | 8/28/2010 | 6D | WALLS | CRACKED | BEDROOM | open |
| 5237340 | 8/28/2010 | 6D | WINDOWS | BROKEN FRAME | BEDROOM | open |
| 5237340 | 8/28/2010 | 6D | FLOOR | BROKE / DEF | BATHROOM | violation |
| 5228682 | 8/15/2010 | 3K | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5222006 | 8/4/2010 | 1H | ELECTRIC-SUPPLY | NO-SUPPLY | BEDROOM | closed |
| 5222006 | 8/4/2010 | 1H | FLOOR | SAGGING | LIVING ROOM | violation |
| 5213539 | 7/21/2010 | 3K | CEILING | COLLAPSING | BATHROOM | closed |
| 5213539 | 7/21/2010 | 3K | BASIN/SINK | LEAKING | BATHROOM | violation |
| 5213539 | 7/21/2010 | 3K | WATER-LEAKS | CEILING | KITCHEN | closed |



© Copyright 2012 EMPOWER NY

## HPD Complaint Details (continued)

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 5212875 | 7/20/2010 | 1K | MOLD | MOLD | KITCHEN | violation |
| 5212875 | 7/20/2010 | 1K | MOLD | MOLD | BATHROOM | violation |
| 5211231 | 7/18/2010 | 3D | WALLS | PAINT DIRTY | BATHROOM | violation |
| 5211231 | 7/18/2010 | 3D | CEILING | PLASTER PEELING | BEDROOM 3 | closed |
| 5211231 | 7/18/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5211231 | 7/18/2010 | 3D | WALLS | PEELING | BATHROOM | violation |
| 5211231 | 7/18/2010 | 3D | WATER-LEAKS | CASCADING | BATHROOM | closed |
| 5211231 | 7/18/2010 | 3D | CEILING | HOLE | BATHROOM | violation |
| 5200179 | 6/30/2010 | 6B | WALLS | CRACKED | LIVING ROOM | violation |
| 5200179 | 6/30/2010 | 6B | WALLS | BULGING | BEDROOM 2 | violation |
| 5200179 | 6/30/2010 | 6B | WINDOW/FRAME | PEELING PAINT | LIVING ROOM | violation |
| 5199933 | 5/30/2010 | 3H | VERMIN | FLEAS | BASEMENT | closed |
| 5200179 | 6/30/2010 | 6B | CEILING | BULGING/LOOSE | BEDROOM 2 | violation |
| 5199933 | 6/30/2010 | 3H | ELEVATOR | DIRTY / UNSAN | OTHER | closed |
| 5199933 | 6/30/2010 | 3H | VERMIN | RATS | ENTIRE BUILDING | closed |
| 5199933 | 6/30/2010 | 3H | VERMIN | FLEAS | LOBBY | closed |
| 5200179 | 6/30/2010 | 6B | WATER-LEAKS | ROOF-LEAK | BEDROOM 2 | closed |
| 5200179 | 6/30/2010 | 6B | WATER-LEAKS | ROOF-LEAK | FOYER | closed |
| 5200179 | 6/30/2010 | 6B | CEILING | BULGING/LOOSE | FOYER | violation |
| 5200179 | 5/30/2010 | 6B | CEILING | COLLAPSING | BEDROOM 2 | violation |
| 5200179 | 6/30/2010 | 6B | CEILING | HOLE | BEDROOM 2 | violation |
| 5200179 | 6/30/2010 | 6B | CEILING | CRACKED | LIVING ROOM | violation |
| 5200179 | 6/30/2010 | 6B | CEILING | CRACKED | BEDROOM | violation |
| 5200179 | 6/30/2010 | 6B | WALLS | CRACKED | BATHROOM | violation |
| 5200179 | 6/30/2010 | 6B | WALLS | BULGING | FOYER | violation |
| 5200179 | 6/30/2010 | 6B | WALLS | CRACKED | BEDROOM | violation |
| 5200179 | 6/30/2010 | 6B | WINDOW/FRAME | PEELING PAINT | KITCHEN | violation |
| 5199933 | 6/30/2010 | 3H | VERMIN | OTHER | BASEMENT | closed |
| 5199933 | 6/30/2010 | 3H | VERMIN | FLEAS | ENTIRE BUILDING | closed |
| 5199933 | 6/30/2010 | 3H | VERMIN | FLEAS | ENTIRE APT | closed |
| 5200179 | 6/30/2010 | 6B | WATER-LEAKS | ROOF-LEAK | LIVING ROOM | closed |
| 5200179 | 6/30/2010 | 6B | CEILING | CRACKED | BATHROOM | violation |
| 5200179 | 6/30/2010 | 6B | CEILING | BULGING/LOOSE | LIVING ROOM | violation |
| 5200179 | 6/30/2010 | 6B | CEILING | CRACKED | BEDROOM 2 | violation |
| 5200179 | 6/30/2010 | 6B | CEILING | CRACKED | FOYER | violation |
| 5178894 | 5/28/2010 | 3H | VERMIN | FLEAS | BASEMENT | closed |
| 5176388 | 5/23/2010 | 3D | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5173826 | 5/19/2010 | 1H | FLOOR | SAGGING | LIVING ROOM | closed |
| 5172667 | 5/18/2010 | 1H | FLOOR | SAGGING | LIVING ROOM | closed |
| 5162140 | 5/6/2010 | 3D | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5150706 | 4/23/2010 | 4D | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5147712 | 4/20/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5147284 | 4/19/2010 | 3D | WATER-SUPPLY | NO-HOT- WATER | ENTIRE APT | closed |
| 5139342 | 4/11/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5139042 | 4/10/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5135999 | 4/7/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5129950 | 3/30/2010 | 3D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5125053 | 3/27/2010 | 1K | HEAT | NO HEAT | ENTIRE BUILDING | closed |
| 5120483 | 3/23/2010 | 4D | HEAT | NO HEAT | ENTIRE APT | closed |
| 5117283 | 3/20/2010 | 1K | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5117295 | 3/20/2010 | 1C | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5117283 | 3/20/2010 | 1K | HEAT | NO HOT WATER | ENTIRE BUILDING | closed |
| 5115476 | 3/18/2010 | 1C | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5111638 | 3/15/2010 | 1K | WALLS | BULGING | BEDROOM | violation |
| 5111638 | 3/15/2010 | 1K | WALLS | PEELING | BEDROOM | violation |
| 5111638 | 3/15/2010 | 1K | WATER-LEAKS | CASCADING | BEDROOM | violation |
| 5111060 | 3/15/2010 | 6D | WATER-SUPPLY | WATER-SUPPLY | ENTIRE APT | closed |
| 5111060 | 3/15/2010 | 6D | HEAT | NO HEAT/WATER | ENTIRE APT | closed |


EMPOWER
NEW YORK

738 East 243rd St ~ Bronx, NY
page 7/{nb}

©Copyright 2012 EMPOWER NY

## HPD Complaint Details (continued)

| Complaint # | Date | Apt | Condition | Detail | Location | Status |
|---|---|---|---|---|---|---|
| 5111638 | 3/15/2010 | 1K | WALLS | PAINT DIRTY | BEDROOM | violation |
| 5111638 | 3/15/2010 | 1K | MOLD | MOLD | BEDROOM | closed |
| 5111186 | 3/15/2010 | 3D | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5110706 | 3/14/2010 | 5A | ELECTRIC-SUPPLY | NO-SUPPLY | BEDROOM | closed |
| 5110837 | 3/14/2010 | 1K | HEAT | NO HEAT/WATER | ENTIRE BUILDING | violation |
| 5110706 | 3/14/2010 | 5A | LIGHTING | WATER-PRESENT | BATHROOM | closed |
| 5110706 | 3/14/2010 | 5A | MOLD | MOLD | BEDROOM | closed |
| 5110706 | 3/14/2010 | 5A | WALLS | COLLAPSING | BEDROOM | violation |
| 5110706 | 3/14/2010 | 5A | WATER-LEAKS | CASCADING | BEDROOM | violation |
| 5110706 | 3/14/2010 | 5A | BELL-BUZZER/INT | INOPER/ MISSING | FRNT AREAWAY | violation |
| 5110706 | 3/14/2010 | 5A | VERMIN | MICE | ENTIRE BUILDING | violation |
| 5110706 | 3/14/2010 | 5A | RUBBISH | ACCUMULATION | ENTIRE BUILDING | closed |
| 5110706 | 3/14/2010 | 5A | WATER-LEAKS | CASCADING | BATHROOM | violation |
| 5107395 | 3/12/2010 | 6B | BELL-BUZZER/INT | INOPER/ MISSING | ENTIRE BUILDING | violation |
| 5107395 | 3/12/2010 | 6B | SMOKE-DETECTOR | DEFECT/MISSING | PUBLIC HALL | closed |
| 5107395 | 3/12/2010 | 6B | CEILING | PLASTER PEELING | BEDROOM 2 | closed |
| 5107395 | 3/12/2010 | 6B | CEILING | CRACKED | BEDROOM | violation |
| 5107395 | 3/12/2010 | 6B | WATER-LEAKS | ROOF-LEAK | BEDROOM 2 | violation |
| 5102908 | 3/8/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5088780 | 2/25/2010 | 3D | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5088635 | 2/24/2010 | 3D | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5088175 | 2/24/2010 | 5F | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5084147 | 2/22/2010 | 3D | HEAT | NO HOT WATER | ENTIRE APT | closed |
| 5083528 | 2/21/2010 | 3D | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5082736 | 2/20/2010 | 1K | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5079320 | 2/18/2010 | 1K | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5073998 | 2/13/2010 | 1K | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5063559 | 2/7/2010 | 3K | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5048954 | 1/30/2010 | 1K | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5034995 | 1/23/2010 | 1K | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 5034995 | 1/23/2010 | 1K | BELL-BUZZER/INT | INOPER/ MISSING | ENTIRE APT | violation |
| 5011534 | 1/9/2010 | 3K | HEAT | NO HEAT/WATER | ENTIRE APT | closed |
| 5007117 | 1/7/2010 | BLDG | HEAT | NO HEAT/WATER | ENTIRE BUILDING | closed |
| 4965128 | 12/19/2009 | 2C | VERMIN | MICE | ENTIRE APT | violation |
| 4957583 | 12/17/2009 | 6H | WINDOWS | WINDOW-GUARDS | ENTIRE BUILDING | closed |
| 4957585 | 12/17/2009 | 6C | WINDOWS | WINDOW-GUARDS | ENTIRE BUILDING | closed |
| 4957582 | 12/17/2009 | 5J | WINDOWS | WINDOW-GUARDS | ENTIRE BUILDING | closed |
| 4957584 | 12/17/2009 | 4L | WINDOWS | WINDOW-GUARDS | ENTIRE BUILDING | closed |
| 4957586 | 12/17/2009 | 5C | WINDOWS | WINDOW-GUARDS | ENTIRE BUILDING | closed |
| 4929108 | 12/5/2009 | 5A | BELL-BUZZER/INT | INOPER/ MISSING | ENTIRE BUILDING | closed |
| 4929108 | 12/5/2009 | 5A | VERMIN | MICE | ENTIRE APT | closed |
| 4901552 | 11/16/2009 | 5J | WALLS | PEELING | ENTIRE APT | closed |
| 4901552 | 11/16/2009 | 5J | BASIN/SINK | LEAKY PIPE | BATHROOM | closed |
| 4901552 | 11/16/2009 | 5J | CEILING | PLASTER PEELING | ENTIRE APT | closed |
| 4901552 | 11/16/2009 | 5J | MOLD | MOLD | BATHROOM | closed |
| 4881406 | 11/4/2009 | 1F | MOLD | MOLD | ENTIRE APT | closed |
| 4878088 | 11/2/2009 | 1K | CEILING | CRACKED | FOYER | closed |
| 4878088 | 11/2/2009 | 1K | LIGHTING | DIMS | KITCHEN | closed |
| 4878088 | 11/2/2009 | 1K | TOILET | BOWL-LOOSE | BATHROOM | closed |
| 4878088 | 11/2/2009 | 1K | CEILING | PAINT DIRTY | KITCHEN | closed |
| 4878088 | 11/2/2009 | 1K | MOLD | MOLD | KITCHEN | closed |



©Copyright 2012 EMPOWER NY

**EMPOWER** NEW YORK

## HPD Violation Details - Class A

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9522918 | 4460524 | 8/2/2012 | 7/31/2012 | 1K | A | 596 / plumb | 11/19/2012 | 8/2/2012 | NOV SENT |
| 27-2026 adm code replace the broken or defective bathtub or reglaze in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9522920 | 4460524 | 8/2/2012 | 7/31/2012 | 1K | A | 505 / replace | 11/19/2012 | 8/2/2012 | NOV SENT |
| 27-2005 adm code replace with new the broken or defective glass pane at upper sash window in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9522923 | 4460524 | 8/2/2012 | 7/31/2012 | 1K | A | 583 / leak | 11/19/2012 | 8/2/2012 | NOV SENT |
| 27-2026, 2027 hmc: properly repair the source and abate the evidence of a water leak at north wall in the 1st room from north at west located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9522925 | 4460524 | 8/2/2012 | 7/31/2012 | 1K | A | 502 / repair | 11/19/2012 | 8/2/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective wood floor in the 1st room from north at east located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9513793 | 4454972 | 7/24/2012 | 7/23/2012 | 1K | A | 596 / plumb | 11/10/2012 | 7/24/2012 | NOV SENT |
| 27-2026 adm code replace the broken or defective bathtub or reglaze in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9513795 | 4454972 | 7/24/2012 | 7/23/2012 | 1K | A | 508 / paint/plast | 11/10/2012 | 7/24/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color all ceilings and all walls in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9449811 | 4422703 | 6/1/2012 | 5/25/2012 | 1K | A | 502 / repair | 9/18/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective wood floor in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north, section at west | | | | | | | | | |
| 9429593 | 4410558 | 5/14/2012 | 5/7/2012 | 4J | A | 501 / repair | 8/31/2012 | 5/14/2012 | NOV SENT |
| 27-2005 adm code properly repair the broken or defective eroded porcelain finish at bathtub in the bathroom located at apt 4j, 4th story, 1st apartment from east at south | | | | | | | | | |
| 9416278 | 4402243 | 4/27/2012 | 4/25/2012 | 1H | A | 508 / paint/plast | 7/16/2012 | 4/27/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the 2nd room from north located at apt 1h, 1st story, 4th apartment from east at south | | | | | | | | | |
| 9308465 | 4348111 | 2/2/2012 | 1/31/2012 | 4J | A | 508 / paint/plast | 5/21/2012 | 2/2/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and north wall in the bathroom located at apt 4j, 4th story, 5th apartment from east at south | | | | | | | | | |
| 9264895 | 4326669 | 1/3/2012 | 12/28/2011 | 1K | A | 508 / paint/plast | 4/21/2012 | 1/3/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and north wall in the 1st room from north at west located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9264914 | 4326669 | 1/3/2012 | 12/28/2011 | 1K | A | 508 / paint/plast | 4/21/2012 | 1/3/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling north and east wall in the 1st room from north at east located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9264916 | 4326669 | 1/3/2012 | 12/28/2011 | 1K | A | 508 / paint/plast | 4/21/2012 | 1/3/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and south wall in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9192335 | 4291473 | 11/7/2011 | 11/3/2011 | 5D | A | 554 / paint/plast | 2/24/2012 | 11/7/2011 | NOV SENT |
| 27-2013 adm code paint with light colored paint to the satisfaction of this department all peeling paint surfaces in the 1st room from north at west, the 1st room from north at east, the kitchen, the bathroom, the foyer, the private hallway located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9185558 | 4290644 | 11/4/2011 | 10/30/2011 | 1E | A | 554 / paint/plast | 2/21/2012 | 11/4/2011 | NOV SENT |
| 27-2005 adm code paint metal in accordance with dept. regulation at 1st window frame from west at north wall, 1st riser from north at east wall in the bathroom located at apt 1e, 1st story, 1st apartment from west at north, section at east | | | | | | | | | |
| 9185559 | 4290644 | 11/4/2011 | 10/30/2011 | 1E | A | 554 / paint/plast | 2/21/2012 | 11/4/2011 | NOV SENT |
| 27-2005 adm code paint metal in accordance with dept. regulation at 1st door frame from east at south wall, 1st door from east at south wall in the foyer located at apt 1e, 1st story, 1st apartment from west at north, section at east | | | | | | | | | |
| 9185560 | 4290644 | 11/4/2011 | 10/30/2011 | 1E | A | 556 / paint/plast | 2/21/2012 | 11/4/2011 | NOV SENT |
| 27-2013 adm code paint with light colored paint to the satisfaction of this department at 1st closet from south at west wall door in the foyer located at apt 1e, 1st story, 1st apartment from west at north, section at east | | | | | | | | | |
| 9189662 | 4290644 | 11/4/2011 | 10/30/2011 | 1E | A | 554 / paint/plast | 2/21/2012 | 11/4/2011 | NOV SENT |
| 27-2005 adm code paint metal in accordance with dept. regulation at 1st radiator from west at north wall in the 1st room from east located at apt 1e, 1st story, 1st apartment from west at north, section at east | | | | | | | | | |
| 9190852 | 4290644 | 11/4/2011 | 10/30/2011 | 1E | A | 556 / paint/plast | 2/21/2012 | 11/4/2011 | NOV SENT |
| 27-2013 adm code paint with light colored paint to the satisfaction of this department all peeling paint surfaces in the kitchenette located at apt 1e, 1st story, 1st apartment from west at north, section at east | | | | | | | | | |
| 9165521 | 4279441 | 10/20/2011 | 10/18/2011 | 1K | A | 508 / paint/plast | 2/6/2012 | 10/20/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the north wall in the 1st room from north at west located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9165523 | 4279441 | 10/20/2011 | 10/18/2011 | 1K | A | 508 / paint/plast | 2/6/2012 | 10/20/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the south wall in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 8526345 | 3981685 | 7/26/2010 | 7/24/2010 | 1K | A | 502 / repair | 11/12/2010 | 11/22/2010 | NOV LATE |
| 7-2005 adm code properly repair with similar material the broken or defective hard wood floor in the 1st room from north at east located at apt 1k, 1st story, 1st apartment from west at north | | | | | | | | | |

EMPOWER
NEW YORK

© Copyright 2012 EMPOWER NY

## HPD Violation Details - Class A (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 001931 | 3707175 | 8/7/2009 | 8/6/2009 | - | A | 561 / rust | 11/24/2009 | 8/7/2009 | NOV SENT |
| 7-2014 adm code and dept. rules and regulations. scrape and remove rust scales and paint with 2 coats of paint building front east and west at fire escape |
| 8001935 | 3707175 | 8/7/2009 | 8/6/2009 | 1K | A | 556 / paint/plast | 11/24/2009 | 8/7/2009 | NOV SENT |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department south wall in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north |
| 8001936 | 3707175 | 8/7/2009 | 8/6/2009 | 1K | A | 556 / paint/plast | 11/24/2009 | 8/7/2009 | NOV SENT |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department north wall in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north |
| 8001937 | 3707175 | 8/7/2009 | 8/6/2009 | 1K | A | 556 / paint/plast | 11/24/2009 | 8/7/2009 | NOV SENT |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department the ceiling in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north |
| 7362262 | 3376281 | 7/7/2008 | 7/5/2008 | - | A | 561 / rust | | 7/7/2008 | NOV SENT |
| 7-2014 adm code and dept. rules and regulations. scrape and remove rust scales and paint with 2 coats of paint the two front fire escapes |
| 7328608 | 3323757 | 6/16/2008 | 6/11/2008 | 5B | A | 556 / paint/plast | 10/3/2008 | 6/16/2008 | NOV SENT |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department walls and ceilings in the entire apartment located at apt 5b, 5th story, 1st apartment from east at south |
| 7328609 | 3323758 | 6/16/2008 | 6/11/2008 | - | A | 106 / fire | 10/3/2008 | 6/16/2008 | NOV SENT |
| 3, 187, 231 m/d law and department rules and regulations. provide a shoe properly secured to bottom of string of dropladder at east side fire escape |
| 6929780 | 3118693 | 9/17/2007 | 9/14/2007 | - | A | 561 / rust | 1/4/2008 | 9/17/2007 | NOV SENT |
| 7-2014 adm code and dept. rules and regulations. scrape and remove rust scales and paint with 2 coats of paint stairs and balconnies fire escape at north side of building entrance |
| 6388856 | 2821589 | 9/29/2006 | 9/27/2006 | 1G | A | 529 / door | 1/21/2007 | 9/29/2006 | NOV SENT |
| 7-2005 adm code refit door in the entrance located at apt 1g, 1st story, 3rd apartment from west at north |
| 6198597 | 2689347 | 6/12/2006 | 6/7/2006 | 3B | A | 556 / paint/plast | 10/4/2006 | 2/2/2007 | NOV LATE |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department the 1st window frame from east at south wall in the 4th room from north at west located at apt 3b, 3rd story, 1st apartment from east at south |
| 6198600 | 2689347 | 6/12/2006 | 6/7/2006 | 3B | A | 508 / paint/plast | 10/4/2006 | 2/2/2007 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 4th room from north at west located at apt 3b, 3rd story, 1st apartment from east at south |
| 6198603 | 2689347 | 6/12/2006 | 6/7/2006 | 3B | A | 554 / paint | 10/4/2006 | 2/2/2007 | NOV LATE |
| 7-2005 adm code paint metal in accordance with dept. regulation the 1st riser from east at south wall in the bathroom located at apt 3b, 3rd story, 1st apartment from east at south |
| 98606 | 2689347 | 6/12/2006 | 6/7/2006 | 3B | A | 593 / plumb | 10/4/2006 | 2/2/2007 | NOV LATE |
| 7-2026 adm code repair the flushing apparatus and maintain same so as to flush effectively the water closet .. in the bathroom located at apt 3b, 3rd story, 1st apartment from east at south |
| 6198609 | 2689347 | 6/12/2006 | 6/7/2006 | 3B | A | 556 / paint/plast | 10/4/2006 | 2/2/2007 | NOV LATE |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department the 1st window frame from north at east wall in the 2nd room from north located at apt 3b, 3rd story, 1st apartment from east at south |
| 6198611 | 2689347 | 6/12/2006 | 6/7/2006 | 3B | A | 556 / paint/plast | 10/4/2006 | 2/2/2007 | NOV LATE |
| 7-2013 adm code paint with light colored paint to the satisfaction of this department the 1st window frame from north at east wall in the kitchen located at apt 3b, 3rd story, 1st apartment from east at south |
| 571866 | 197419 | 3/17/2006 | 1/29/1991 | - | A | 654 / gutter | 6/21/1991 | 4/18/2006 | 1 NO ACCESS |
| 7-2027 adm code repair the broken or defective gutter at elevator bulkhead roof. |
| 6040379 | 2629582 | 3/13/2006 | 3/7/2006 | 1C | A | 491 / file | 7/5/2006 | 4/22/2006 | 1 NO ACCESS |
| 00 m/d law file plans and application and legalize the following alteration or restore to the legal condition existing prior to the making of said alteration illegal drop ceiling in the bathroom located at apt 1c, 1st story, 2nd apartment from south at west |
| 4093797 | 1780749 | 2/7/2002 | 1/31/2002 | 1H | A | 491 / file | 6/1/2002 | 4/22/2006 | 1 NO ACCESS |
| 00 m/d law file plans and application and legalize the following alteration or restore to the legal condition existing prior to the making of said alteration suspended tile ceiling in the bathroom located at apt 1h, 1st story, 3rd apartment from east at south |
| 571948 | 197450 | 7/21/1998 | 5/14/1998 | - | A | 561 / rust | | 4/10/2004 | NOT COMPLIED |
| 7-2014 adm code and dept. rules and regulations. scrape and remove rust scales and paint with 2 coats of paint front rear fire escapes all stys. |
| 571819 | 197391 | 8/4/1987 | 4/23/1987 | - | A | 652 / gutter | 11/27/1987 | 7/1/2008 | NOV SENT |
| 16.03 adm code repair the broken or defective rain leader elevator bulkhead roof. |

## HPD Violation Details - Class B

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9568224 | 4483324 | 9/12/2012 | 9/10/2012 | 1K | B | 522 / file | 10/31/2012 | 9/12/2012 | NOV SENT |
| 27-2005, 2007 adm code fire egress defective. remove obstructing bars or unlawful gates from at least 1 window or provide approved type gate in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north . section at west |



## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9558490 | 4477507 | 9/4/2012 | 8/30/2012 | 4J | B | 583 / leak | 10/23/2012 | 9/4/2012 | NOV SENT |
| 27-2026, 2027 hmc: properly repair the source and abate the evidence of a water leak at ceiling and south wall in the 2nd room from north located at apt 4j, 4th story, 1st apartment from east at south , section at west ||||||||||
| 9558484 | 4477507 | 9/4/2012 | 8/30/2012 | 4J | B | 583 / leak | 10/23/2012 | 9/4/2012 | NOV SENT |
| 27-2026, 2027 hmc: properly repair the source and abate the evidence of a water leak at ceiling and north wall in the bathroom located at apt 4j, 4th story, 1st apartment from east to south , section at west ||||||||||
| 9522921 | 4460525 | 8/2/2012 | 7/31/2012 | 1K | B | 1502 / CO | 9/20/2012 | 8/2/2012 | NOV SENT |
| 27-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device. installed in accordance with applicable law and rules. in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9522919 | 4460525 | 8/2/2012 | 7/31/2012 | 1K | B | 502 / repair | 9/20/2012 | 8/2/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective floor tiles in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9522922 | 4460525 | 8/2/2012 | 7/31/2012 | 1K | B | 702 / smoke | 9/20/2012 | 8/2/2012 | NOV SENT |
| 27-2045 adm code repair or replace the smoke detector defective in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9522924 | 4460525 | 8/2/2012 | 7/31/2012 | 1K | B | 569 / vermin | 9/20/2012 | 8/2/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9522926 | 4460525 | 8/2/2012 | 7/31/2012 | 1K | B | 583 / leak | 9/20/2012 | 8/2/2012 | NOV SENT |
| 27-2026, 2027 hmc: properly repair the source and abate the evidence of a water leak at ceiling and north wall in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9522928 | 4460525 | 8/2/2012 | 7/31/2012 | 1K | B | 583 / leak | 9/20/2012 | 8/2/2012 | NOV SENT |
| 27-2026, 2027 hmc: properly repair the source and abate the evidence of a water leak at ceiling, south and west walls in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9510109 | 4453876 | 7/23/2012 | 7/19/2012 | 1J | B | 583 / leak | 9/10/2012 | 7/23/2012 | NOV SENT |
| 27-2026, 2027 hmc: properly repair the source and abate the evidence of a water leak the ceiling in the 3rd room from north located at apt 1j, 1st story, 4th apartment from east at south ||||||||||
| 9510110 | 4453876 | 7/23/2012 | 7/19/2012 | 1J | B | 568 / vermin | 9/10/2012 | 7/23/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of roaches in the entire apartment located at apt 1j, 1st story, 4th apartment from east at south ||||||||||
| 9510111 | 4453876 | 7/23/2012 | 7/19/2012 | 1J | B | 569 / vermin | 9/10/2012 | 7/23/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 1j, 1st story, 4th apartment from east at south ||||||||||
| 9449810 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 502 / repair | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective ceramic floor tiles in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9449812 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 508 / paint/plast | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and north wall in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9449813 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 510 / nuisance | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code & 309 m/d law abate the nuisance consisting of moisture penetration at ceiling in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9449815 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 510 / nuisance | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code & 309 m/d law abate the nuisance consisting of moisture penetration at east wall in the 1st room from north at east located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9449816 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 510 / nuisance | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code & 309 m/d law abate the nuisance consisting of moisture penetration at ceiling in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9449817 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 508 / paint/plast | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and all walls in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9449818 | 4422704 | 6/1/2012 | 5/25/2012 | 1K | B | 550 / mold | 7/20/2012 | 6/1/2012 | NOV SENT |
| 27-2005 hmc:trace and repair the source and abate the nuisance consisting of mold ... at ceiling in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north , section at west ||||||||||
| 9429592 | 4410559 | 5/14/2012 | 5/7/2012 | 4J | B | 508 / paint/plast | 7/2/2012 | 5/14/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and all walls in the bathroom located at apt 4j, 4th story, 1st apartment from east at south ||||||||||
| 9429594 | 4409685 | 5/10/2012 | 5/7/2012 | 4J | B | 509 / secure | 6/28/2012 | 5/10/2012 | NOV SENT |
| 27-2005 adm code properly secure the loose cabinet at east wall in the kitchen located at apt 4j, 4th story, 1st apartment from east at south ||||||||||
| 9429595 | 4409685 | 5/10/2012 | 5/7/2012 | 4J | B | 510 / nuisance | 6/28/2012 | 5/10/2012 | NOV SENT |
| 27-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at ceiling in the bathroom located at apt 4j, 4th story, 1st apartment from east at south ||||||||||
| 9429596 | 4409685 | 5/10/2012 | 5/7/2012 | 4J | B | 566 / vermin | 6/28/2012 | 5/10/2012 | NOV SENT |
| 27-2018 adm code abate the nuisance consisting of vermin mice in the entire apartment located at apt 4j, 4th story, 1st apartment from east at south ||||||||||
| 9416281 | 4402244 | 4/27/2012 | 4/25/2012 | 1H | B | 502 / repair | 6/15/2012 | 4/27/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective wood floor and covering in the 2nd room from north located at apt 1h, 1st story, 4th apartment from east at south ||||||||||

EMPOWER
NEW YORK

© Copyright 2012 EMPOWER NY

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|-------|-------|-----------|----------------|-----|-------|-----------|-----------|-------------|--------|
| 37460 | 4362389 | 2/24/2012 | 2/22/2012 | 4M | B | 508 / paint/plast | 4/13/2012 | 2/24/2012 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceilings and all walls in the entire apartment located at apt 4m, 4th story, 1st apartment from west at north | | | | | | | | | |
| 9337456 | 4362389 | 2/24/2012 | 2/22/2012 | 4M | B | 1502 / CO | | | NOV SENT |
| 27-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the entire apartment located at apt 4m, 4th story, 1st apartment from west at north | | | | | | | | | |
| 9337457 | 4362389 | 2/24/2012 | 2/22/2012 | 4M | B | 702 / smoke | 4/13/2012 | 2/24/2012 | NOV SENT |
| 27-2005 adm code repair or replace the smoke detector defective in the entire apartment located at apt 4m, 4th story, 1st apartment from west at north | | | | | | | | | |
| 9337458 | 4362389 | 2/24/2012 | 2/22/2012 | 4M | B | 502 / repair | 4/13/2012 | 2/24/2012 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective porcelain finish at bathtub in the bathroom located at apt 4m, 4th story, 1st apartment from west at north | | | | | | | | | |
| 9337459 | 4362389 | 2/24/2012 | 2/22/2012 | 4M | B | 569 / vermin | 4/13/2012 | 2/24/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 4m, 4th story, 1st apartment from west at north | | | | | | | | | |
| 9308464 | 4348112 | 2/2/2012 | 1/31/2012 | 4J | B | 569 / vermin | 3/22/2012 | 2/2/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 4j, 4th story, 5th apartment from east at south | | | | | | | | | |
| 9264923 | 4326670 | 1/3/2012 | 12/28/2011 | 1K | B | 568 / vermin | 2/21/2012 | 1/3/2012 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of roaches in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9264882 | 4326670 | 1/3/2012 | 12/28/2011 | 1K | B | 579 / plumb | 2/21/2012 | 1/3/2012 | NOV SENT |
| 27-2026 adm code repair the leaky and/or defective faucets at sink in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9192211 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 508 / paint/plast | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the north wall, ceiling, west wall in the kitchen located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192212 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 569 / vermin | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192213 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 579 / plumb | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2026 adm code repair the leaky and/or defective faucets at the wash basin in the bathroom located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192216 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 508 / paint/plast | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling, north wall in the 1st room from north at west located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192217 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 510 / nuisance | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at the ceiling in the 1st room from north at west located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192218 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 508 / paint/plast | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling, east wall, west wall in the 1st room from north at east located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192219 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 510 / nuisance | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at the ceiling in the 1st room from north at east located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9192220 | 4291474 | 11/7/2011 | 11/3/2011 | 5D | B | 508 / paint/plast | 12/26/2011 | 11/7/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the foyer located at apt 5d, 5th story, 5th apartment from west at north | | | | | | | | | |
| 9185556 | 4290645 | 11/4/2011 | 10/30/2011 | 1E | B | 502 / repair | 12/23/2011 | 11/4/2011 | NOV SENT |
| 27-2005 adm code properly repair with similar material the broken or defective ceramic tiles at floor in the bathroom located at apt 1e, 1st story, 1st apartment from west at north , section at east | | | | | | | | | |
| 9185557 | 4290645 | 11/4/2011 | 10/30/2011 | 1E | B | 508 / paint/plast | 12/23/2011 | 11/4/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at ceiling, west wall in the bathroom located at apt 1e, 1st story, 1st apartment from west at north , section at east | | | | | | | | | |
| 9185561 | 4289800 | 11/3/2011 | 10/30/2011 | 1E | B | 1503 / CO | 12/22/2011 | 11/3/2011 | NOV SENT |
| 27-2046.1 hmc: repair or replace the carbon monoxide detecting device(s). inoperative located at apt 1e, 1st story, 1st apartment from west at north , section at east | | | | | | | | | |
| 9185562 | 4289800 | 11/3/2011 | 10/30/2011 | 1E | B | 509 / secure | 12/22/2011 | 11/3/2011 | NOV SENT |
| 27-2005 adm code properly secure the loose medicine cabinet door at west wall in the bathroom located at apt 1e, 1st story, 1st apartment from west at north , section at east | | | | | | | | | |
| 9185555 | 4288204 | 11/1/2011 | 10/30/2011 | 1E | B | 569 / vermin | 12/20/2011 | 11/1/2011 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 1e, 1st story, 1st apartment from west at north , section at east | | | | | | | | | |
| 9185517 | 4279442 | 10/20/2011 | 10/18/2011 | 1K | B | 569 / vermin | 12/8/2011 | 10/20/2011 | NOV SENT |
| 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 9185518 | 4279442 | 10/20/2011 | 10/18/2011 | 1K | B | 508 / paint/plast | 12/8/2011 | 10/20/2011 | NOV SENT |
| 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the north wall in the 1st room from north at east located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |



## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|-------|-------|-----------|----------------|-----|-------|-----------|-----------|-------------|--------|
| 65519 | 4279442 | 10/20/2011 | 10/18/2011 | 1K | B | 508 / paint/plast | 12/8/2011 | 10/20/2011 | NOV SENT |
| | | 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 1st room from north at east located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | |
| 9165520 | 4279442 | 10/20/2011 | 10/18/2011 | 1K | B | 596 / plumb | 12/8/2011 | 10/20/2011 | NOV SENT |
| | | 27-2026 adm code repair the broken or defective connection at sink drain in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | |
| 9165522 | 4279442 | 10/20/2011 | 10/18/2011 | 1K | B | 508 / paint/plast | 12/8/2011 | 10/20/2011 | NOV SENT |
| | | 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 1st room from north at west located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | |
| 9165524 | 4279442 | 10/20/2011 | 10/18/2011 | 1K | B | 508 / paint/plast | 12/8/2011 | 10/20/2011 | NOV SENT |
| | | 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | |
| 9128580 | 4266123 | 10/3/2011 | 9/26/2011 | 1K | B | 510 / nuisance | 11/21/2011 | 10/3/2011 | NOV SENT |
| | | 27-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak underneath wood floor in the 1st room from north at west located at apt 1k, 1st story, apartment at north | | | | | | | |
| 9128585 | 4262277 | 9/27/2011 | 9/26/2011 | 1K | B | 508 / paint/plast | 11/15/2011 | 9/27/2011 | NOV SENT |
| | | 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and west wall in the bathroom located at apt 1k, 1st story, 2nd apartment from west at north | | | | | | | |
| 9128586 | 4262279 | 9/27/2011 | 9/26/2011 | 4J | B | 508 / paint/plast | 11/15/2011 | 9/27/2011 | NOV SENT |
| | | 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color all walls and ceilings in the entire apartment located at apt 4j, 4th story, 1st apartment from east at south , section at west | | | | | | | |
| 9128589 | 4262277 | 9/27/2011 | 9/26/2011 | 4J | B | 550 / mold | 11/15/2011 | 9/27/2011 | NOV SENT |
| | | 27-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... ceiling in the bathroom located at apt 4j, 4th story, 1st apartment from east at south , section at west | | | | | | | |
| 9128618 | 4262279 | 9/27/2011 | 9/26/2011 | 4J | B | 568 / vermin | 11/15/2011 | 9/27/2011 | NOV SENT |
| | | 27-2018 admin. code: abate the nuisance consisting of roaches in the entire apartment located at apt 4j, 4th story, 1st apartment from east at south , section at west | | | | | | | |
| 9128632 | 4262279 | 9/27/2011 | 9/26/2011 | 4J | B | 569 / vermin | 11/15/2011 | 9/27/2011 | NOV SENT |
| | | 27-2018 admin. code: abate the nuisance consisting of mice in the entire apartment located at apt 4j, 4th story, 1st apartment from east at south , section at west | | | | | | | |
| 8938307 | 4171596 | 5/12/2011 | 5/10/2011 | 1K | B | 508 / paint/plast | 6/30/2011 | 5/12/2011 | NOV SENT |
| | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the kitchen located at apt 1k, 1st story, apartment at north | | | | | | | |
| 8938308 | 4171596 | 5/12/2011 | 5/10/2011 | 1K | B | 508 / paint/plast | 6/30/2011 | 5/12/2011 | NOV SENT |
| | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the bathroom located at apt 1k, 1st story, apartment at north | | | | | | | |
| 8932 | 4171596 | 5/12/2011 | 5/10/2011 | 1K | B | 508 / paint/plast | 6/30/2011 | 5/12/2011 | NOV SENT |
| | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the private hallway located at apt 1k, 1st story, apartment at north | | | | | | | |
| 8938334 | 4171596 | 5/12/2011 | 5/10/2011 | 1K | B | 510 / nuisance | 6/30/2011 | 5/12/2011 | NOV SENT |
| | | 7-2005 adm code & 309 m/d law abate the nuisance consisting of water emaninting at window in the 1st room from north at center located at apt 1k, 1st story, apartment at north | | | | | | | |
| 8938340 | 4171596 | 5/12/2011 | 5/10/2011 | 1K | B | 502 / repair | 6/30/2011 | 5/12/2011 | NOV SENT |
| | | 7-2005 adm code properly repair with similar material the broken or defective rotted wood floor in the 1st room from north at center located at apt 1k, 1st story, apartment at north | | | | | | | |
| 8606110 | 4017912 | 9/20/2010 | 9/16/2010 | 6D | B | 502 / repair | 11/8/2010 | 12/13/2010 | NOV LATE |
| | | 7-2005 adm code properly repair with similar material the broken or defective hard wood floor in the kitchen located at apt 6d, 6th story, 5th apartment from west at north | | | | | | | |
| 8606111 | 4017912 | 9/20/2010 | 9/16/2010 | 6D | B | 502 / repair | 11/8/2010 | 12/13/2010 | NOV LATE |
| | | 7-2005 adm code properly repair with similar material the broken or defective marble saddle in the bathroom located at apt 6d, 6th story, 5th apartment from west at north | | | | | | | |
| 8606854 | 4017912 | 9/20/2010 | 9/16/2010 | 6D | B | 550 / mold | 11/8/2010 | 12/13/2010 | NOV LATE |
| | | 7-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... the ceiling in the kitchen located at apt 6d, 6th story, 5th apartment from west at north | | | | | | | |
| 8606855 | 4017912 | 9/20/2010 | 9/16/2010 | 6D | B | 702 / smoke | 11/8/2010 | 12/13/2010 | NOV LATE |
| | | 7-2045 adm code repair or replace the smoke detector missing in the foyer located at apt 6d, 6th story, 5th apartment from west at north | | | | | | | |
| 8545843 | 3991376 | 8/10/2010 | 8/6/2010 | 1H | B | 508 / paint/plast | 9/28/2010 | 10/26/2010 | NOV LATE |
| | | 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at north wall in the bathroom located at apt 1h, 1st story, 4th apartment from east at south | | | | | | | |
| 8545844 | 3991376 | 8/10/2010 | 8/6/2010 | 1H | B | 501 / repair | 9/28/2010 | 10/26/2010 | NOV LATE |
| | | 7-2005 adm code properly repair the broken or defective ceiling light fixture in the bathroom located at apt 1h, 1st story, 4th apartment from east at south | | | | | | | |
| 8545845 | 3991376 | 8/10/2010 | 8/6/2010 | 1H | B | 502 / repair | 9/28/2010 | 10/26/2010 | NOV LATE |
| | | 7-2005 adm code properly repair with similar material the broken or defective hard wood floor in the 2nd room from north located at apt 1h, 1st story, 4th apartment from east at south | | | | | | | |
| 8536627 | 3986149 | 8/2/2010 | 7/31/2010 | 3K | B | 1502 / CO | 9/20/2010 | 10/18/2010 | NOV LATE |
| | | 7-2046 1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules. in the private hallway located at apt 3k, 3rd story, 2nd apartment from north at east | | | | | | | |
| 8526340 | 3981686 | 7/26/2010 | 7/24/2010 | 1K | B | 550 / mold | 9/13/2010 | 12/6/2010 | NOV LATE |
| | | 7-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... ceiling in the kitchen located at apt 1k, 1st story, 1st apartment from west at north | | | | | | | |

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt. | Class | Order/Type | Cert. Due | Status Date | Status |
|-------|-------|-----------|----------------|------|-------|-----------|-----------|-------------|--------|
| 26341 | 3981686 | 7/26/2010 | 7/24/2010 | 1K | B | 508 / paint/plast | 9/13/2010 | 12/6/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color north wall in the kitchen located at apt 1k, 1st story, 1st apartment from west at north ||||||||||
| 8526342 | 3981686 | 7/26/2010 | 7/24/2010 | 1K | B | 550 / mold | 9/13/2010 | 12/6/2010 | NOV LATE |
| 7-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... south wall in the bathroom located at apt 1k, 1st story, 1st apartment from west at north ||||||||||
| 8526343 | 3981686 | 7/26/2010 | 7/24/2010 | 1K | B | 506 / replace | 9/13/2010 | 12/6/2010 | NOV LATE |
| 7-2005 adm code replace with new the missing ceramic -tile at east wall in the bathroom located at apt 1k, 1st story, 1st apartment from west at north ||||||||||
| 8526344 | 3981686 | 7/26/2010 | 7/24/2010 | 1K | B | 508 / paint/plast | 9/13/2010 | 12/6/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color east wall in the 1st room from north at east located at apt 1k, 1st story, 1st apartment from west at north ||||||||||
| 8526345 | 3981686 | 7/26/2010 | 7/24/2010 | 1K | B | 522 / fire | 9/13/2010 | 12/6/2010 | NOV LATE |
| 7-2005, 2007 adm code fire egress defective. remove obstructing bars or unlawful gates from at least 1 window or provide approved type gate ... in the entire apartment located at apt 1k, 1st story, 1st apartment from west at north ||||||||||
| 8502290 | 3971740 | 7/12/2010 | 7/7/2010 | 6B | B | 508 / paint/plast | 8/30/2010 | 12/6/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color all ceilings and all walls in the entire apartment located at apt 6b, 6th story, 1st apartment from east at south ||||||||||
| 8338985 | 3895332 | 3/23/2010 | 3/22/2010 | 6B | B | 501 / repair | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code properly repair the broken or defective bell and return buzzer in the entire apartment located at apt 6b, east section , 6th story, 1st apartment from east at south ||||||||||
| 8338986 | 3895332 | 3/23/2010 | 3/22/2010 | 6B | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 2nd room from north at east located at apt 6b, east section , 6th story, 1st apartment from east at south ||||||||||
| 8338987 | 3895332 | 3/23/2010 | 3/22/2010 | 6B | B | 507 / roof | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the roof so that it will not leak above ceiling in the 2nd room from north at east located at apt 6b, east section , 6th story, 1st apartment from east at south ||||||||||
| 8338988 | 3895332 | 3/23/2010 | 3/22/2010 | 6B | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the north and south walls in the 4th room from north at east located at apt 6b, east section , 6th story, 1st apartment from east at south ||||||||||
| 8338989 | 3895332 | 3/23/2010 | 3/22/2010 | 6B | B | 507 / roof | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the roof so that it will not leak above ceiling in the 4th room from north at east located at apt 6b, east section , 6th story, 1st apartment from east at south ||||||||||
| 8338990 | 3895332 | 3/23/2010 | 3/22/2010 | 6B | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 4th room from north at east located at apt 6b, east section , 6th story, 1st apartment from east at south ||||||||||
| 8339000 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the north wall in the 3rd room from north at east located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339001 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 3rd room from north at east located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339002 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 569 / vermin | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2018 admin code: abate the nuisance consisting of mice in the entire apartment located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339003 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 501 / repair | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code properly repair the broken or defective the intercom system in the entire apartment located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339004 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 502 / repair | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code properly repair with similar material the broken or defective ceramic wall tile at east wall in the bathroom located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339005 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the east wall in the bathroom located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339006 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the bathroom located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8339007 | 3895333 | 3/23/2010 | 3/22/2010 | 5A | B | 508 / paint/plast | 5/11/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 1st room from north at east located at apt 5a, east section , 5th story, 4th apartment from west at north ||||||||||
| 8331645 | 3892841 | 3/19/2010 | 3/17/2010 | 1K | B | 510 / nuisance | 5/7/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code & 309 m/d law abate the nuisance consisting of moisture penetration at east wall in the 3rd room from north at east located at apt 1k, west section , 1st story. 2nd apartment from west at north ||||||||||
| 8331646 | 3892841 | 3/19/2010 | 3/17/2010 | 1K | B | 508 / paint/plast | 5/7/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and east wall in the 3rd room from north at east located at apt 1k, west section , 1st story, 2nd apartment from west at north ||||||||||

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|-------|-------|-----------|----------------|-----|-------|-----------|-----------|-------------|--------|
| 331647 | 3892641 | 3/19/2010 | 3/17/2010 | 1K | B | 508 / paint/plast | 5/7/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling and north wall in the kitchen located at apt 1k, west section . 1st story, 2nd apartment from west at north |
| 8327728 | 3890790 | 3/17/2010 | 3/15/2010 | 5A | B | 508 / paint/plast | 5/5/2010 | 10/26/2010 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 4th room from north located at apt 5a. 5th story. 4th apartment from west at north |
| 8327729 | 3890790 | 3/17/2010 | 3/15/2010 | 5A | B | 589 / vermin | 5/5/2010 | 10/26/2010 | NOV LATE |
| 7-2018 admin. code. abate the nuisance consisting of mice in the entire apartment located at apt 5a, 5th story, 4th apartment from west at north |
| 8010740 | 3724465 | 8/20/2009 | 8/12/2009 | 4H | B | 702 / smoke | 10/8/2009 | 11/5/2009 | NOV LATE |
| 7-2045 adm code repair or replace the smoke detector defective in the entire apartment located at apt 4h, 4th story, 4th apartment from east at south |
| 8010741 | 3724465 | 8/20/2009 | 8/12/2009 | 4H | B | 1502 / CO | 10/8/2009 | 11/5/2009 | NOV LATE |
| 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules, in the entire apartment located at apt 4h, 4th story, 4th apartment from east at south |
| 8010743 | 3724465 | 8/20/2009 | 8/12/2009 | 4H | B | 539 / fire | 10/8/2009 | 11/5/2009 | NOV LATE |
| 7-2005, 2007 adm code and dept. rules and regulations. remove the encumbrance obstructing egress from fire escapes air conditioner in the 4th room from north located at apt 4h, 4th story, 4th apartment from east at south |
| 8001932 | 3707176 | 8/7/2009 | 8/6/2009 | 1K | B | 522 / fire | 9/25/2009 | 8/7/2009 | NOV SENT |
| 7-2005, 2007 adm code fire egress defective. remove obstructing bars or unlawful gates from at least 1 window or provide approved type gate , in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north |
| 8001933 | 3707176 | 8/7/2009 | 8/6/2009 | 1K | B | 508 / paint/plast | 9/25/2009 | 8/7/2009 | NOV SENT |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 1st room from north at east located at apt 1k, 1st story, 2nd apartment from west at north |
| 8001934 | 3707176 | 8/7/2009 | 8/6/2009 | 1K | B | 508 / paint/plast | 9/25/2009 | 8/7/2009 | NOV SENT |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the foyer located at apt 1k, 1st story, 2nd apartment from west at north |
| 7836921 | 3623553 | 4/24/2009 | 4/22/2009 | 1K | B | 510 / nuisance | 6/12/2009 | 9/28/2009 | NOV LATE |
| 7-2005 adm code & 309 m/d law abate the nuisance consisting of concealed ceiling leak in the 1st room from east at north located at apt 1k, 1st story, 1st apartment from west at north |
| 7682874 | 3555524 | 1/23/2009 | 1/21/2009 | | B | 505 / replace | 3/13/2009 | 1/23/2009 | NOV SENT |
| 7-2005 adm code replace with new the broken or defective marble treads 1st and second up from bottom at public hall stairs, 6th story, south section |
| 7682875 | 3555524 | 1/23/2009 | 1/21/2009 | 6C | B | 566 / vermin | 3/13/2009 | 1/23/2009 | NOV SENT |
| 7-2018 adm code abate the nuisance consisting of vermin mice in the entire apartment located at apt 6c, south section , 6th story, 2nd apartment from south at west |
| 504111 | 3480680 | 10/9/2008 | 10/3/2008 | 6F | B | 505 / replace | | 12/26/2008 | NOV LATE |
| 7-2005 adm code replace with new the broken or defective base cabinet in the kitchen located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504110 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 579 / plumb | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2026 adm code repair the leaky and/or defective faucets at sink in the kitchen located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504113 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 501 / repair | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2005 adm code properly repair the broken or defective spring balance at lower sash window in the 4th room from north located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504115 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 510 / nuisance | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at ceiling in the 4th room from north located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504116 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 508 / paint/plast | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling, east wall in the 4th room from north located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504119 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 502 / repair | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2005 adm code properly repair with similar material the broken or defective re-glaze bathtub in the bathroom located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504120 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 530 / door | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2005, 2007 adm code arrange and make self-closing the doors ... in the entrance located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504121 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 507 / roof | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2005 adm code repair the roof so that it will not leak over ceiling in the entire apartment located at apt 6f, 6th story, 3rd apartment from east at south |
| 7504122 | 3479675 | 10/8/2008 | 10/3/2008 | 6F | B | 593 / plumb | 11/26/2008 | 12/26/2008 | NOV LATE |
| 7-2026 adm code repair the flushing apparatus and maintain same so as to flush effectively the water closet ... in the bathroom located at apt 6f, 6th story, 3rd apartment from east at south |
| 7211161 | 3238574 | 3/28/2008 | 3/25/2008 | 1K | B | 505 / replace | 5/16/2008 | 3/28/2008 | NOV SENT |
| 7-2005 adm code replace with new the broken or defective ceiling light fixture in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north |
| 6918303 | 3103089 | 9/11/2007 | 9/7/2007 | 1K | B | 508 / paint/plast | 10/30/2007 | 9/11/2007 | NOV SENT |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at ceiling in the 2nd room from north at west located at apt 1k, 2nd apartment from west at north |
| 6918355 | 3103089 | 9/11/2007 | 9/7/2007 | 1K | B | 505 / replace | 10/30/2007 | 9/11/2007 | NOV SENT |
| 7-2005 adm code replace with new the broken or defective electric lighting fixture at ceiling in the kitchen located at apt 1k, 1st story, 2nd apartment from west at north |



©Copyright 2012 EMPOWER NY

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 918359 | 3103089 | 9/11/2007 | 9/7/2007 | 1K | B | 508 / paint/plast | 10/30/2007 | 9/11/2007 | NOV SENT |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at ceiling in the 1st room from east at north located in apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 6918382 | 3103089 | 9/11/2007 | 9/7/2007 | 1K | B | 508 / paint/plast | 10/30/2007 | 9/11/2007 | NOV SENT |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color walls and ceiling in the 3rd room from east at north located in apt 1k, 1st story, 2nd apartment from west at north | | | | | | | | | |
| 6510651 | 2872555 | 12/19/2006 | 12/14/2006 | 1G | B | 501 / repair | 2/11/2007 | 12/19/2006 | NOV SENT |
| 7-2005 adm code properly repair the broken or defective door frame in the entrance located in apt 1g, 1st story, 3rd apartment from west at north | | | | | | | | | |
| 6295302 | 2769029 | 8/8/2006 | 8/2/2006 | 1G | B | 649 / plumb | | 8/8/2006 | NOV SENT |
| 7-2026 adm code remove all obstructions and repair all defects in at basin/sink in the kitchen located in apt 1g, 1st story, 3rd apartment from west at north | | | | | | | | | |
| 6099756 | 2657339 | 4/24/2006 | 4/10/2006 | 3B | B | 550 / mold | 6/17/2006 | 8/9/2006 | NOV LATE |
| 7-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... east wall in the bathroom located at apt 3b, 3rd story, 1st apartment from east at south | | | | | | | | | |
| 6099759 | 2657339 | 4/24/2006 | 4/10/2006 | 3B | B | 550 / mold | 6/17/2006 | 8/9/2006 | NOV LATE |
| 7-2005 hmc trace and repair the source and abate the nuisance consisting of mold ... west wall and riser in the bathroom located at apt 3b, 3rd story, 1st apartment from east at south | | | | | | | | | |
| 6117715 | 2657341 | 4/24/2006 | 4/20/2006 | 2H | B | 526 / lock | 6/17/2006 | 4/24/2006 | NOV SENT |
| 7-2005, 2007 adm code remove the illegal fastening sliding eyebolt arranged to be locked in the foyer located in apt 2h, 2nd story, 4th apartment from east at south | | | | | | | | | |
| 5311642 | 2331582 | 3/17/2006 | 1/21/2005 | 5C | B | 1502 / CO | 3/21/2005 | 4/18/2006 | 1 NO ACCESS |
| 7-2046.1, 2046.2 hmc: provide an approved and operational carbon monoxide detecting device, installed in accordance with applicable law and rules, in the private hallway located at apt 5c, 5th story, 2nd apartment from east at south | | | | | | | | | |
| 571919 | 197431 | 3/17/2006 | 11/21/1991 | 1F | B | 505 / replace | 10/1/1992 | 4/22/2006 | 1 NO ACCESS |
| 7-2005 adm code replace with new the broken or defective marble saddle entrance door 1st sty 3rd from east at south apt 1f | | | | | | | | | |
| 4803393 | 2085909 | 3/17/2006 | 12/22/2003 | 4M | B | 508 / paint/plast | 2/21/2004 | 4/5/2006 | NOT COMPLIED |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the 2nd room from north at west located at apt 4m, 4th story, apartment at south | | | | | | | | | |
| 4398243 | 1910593 | 3/17/2006 | 11/8/2002 | 4J | B | 566 / vermin | 1/7/2003 | 4/18/2006 | NOT COMPLIED |
| 7-2018 adm code abate the nuisance consisting of vermin mice in the entire apartment located at apt 4j, 4th story, 5th apartment from east at south | | | | | | | | | |
| 4398245 | 1910593 | 3/17/2006 | 11/8/2002 | 4J | B | 566 / vermin | 1/7/2003 | 4/18/2006 | NOT COMPLIED |
| 7-2018 adm code abate the nuisance consisting of vermin roaches in the entire apartment located at apt 4j, 4th story, 5th apartment from east at south | | | | | | | | | |
| 98299 | 1910593 | 3/17/2006 | 11/8/2002 | 4J | B | 702 / smoke | 1/7/2003 | 4/18/2006 | NOT COMPLIED |
| 7-2045 adm code repair or replace the smoke detector missing in the private hallway located at apt 4j, 4th story, 5th apartment from east at south | | | | | | | | | |
| 571937 | 197447 | 3/17/2006 | 9/15/1997 | 1A | B | 530 / door | 12/1/1997 | 4/10/2006 | NOT COMPLIED |
| 7-2005, 2007 adm code arrange and make self-closing the doors entrance 1st sty south apt 1a. | | | | | | | | | |
| 571876 | 197420 | 3/17/2006 | 1/29/1991 | 3B | B | 530 / door | 4/22/1991 | 4/22/2006 | NOT COMPLIED |
| 7-2005, 2007 adm code arrange and make self-closing the doors entrance door to 3rd sty southeast apt 3b. located at apt 3b | | | | | | | | | |
| 571885 | 197420 | 3/17/2006 | 1/29/1991 | 2H | B | 530 / door | 4/22/1991 | 4/22/2006 | NOT COMPLIED |
| 7-2005, 2007 adm code arrange and make self-closing the doors entrance door to 2nd sty center east apt 2h. located at apt 2h | | | | | | | | | |
| 571892 | 197420 | 3/17/2006 | 1/29/1991 | - | B | 539 / fire | 4/22/1991 | 4/10/2006 | NOT COMPLIED |
| 7-2005, 2007 adm code and dept. rules and regulations. remove the encumbrance obstructing egress from fire escapes consisting of flower pots & household items at rear east & front west stacks. | | | | | | | | | |
| 5114197 | 2243442 | 9/21/2004 | 9/16/2004 | 4G | B | 649 / plumb | 11/14/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2026 adm code remove all obstructions and repair all defects in bathtub drain pipe in the bathroom located at apt 4g, 4th story, 3rd apartment from west at north | | | | | | | | | |
| 4989279 | 2163933 | 6/15/2004 | 6/8/2004 | 5C | B | 510 / nuisance | 8/8/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at ceiling in the bathroom located at apt 5c, 5th story, 2nd apartment from east at south | | | | | | | | | |
| 4989281 | 2163933 | 6/15/2004 | 6/8/2004 | 5C | B | 508 / paint/plast | 8/8/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at ceiling in the bathroom located at apt 5c, 5th story, 2nd apartment from east at south | | | | | | | | | |
| 4989283 | 2163933 | 6/15/2004 | 6/8/2004 | 5C | B | 508 / paint/plast | 8/8/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color at ceiling in the private hallway located at apt 5c, 5th story, 2nd apartment from east at south | | | | | | | | | |
| 4833495 | 2097775 | 1/26/2004 | 1/22/2004 | 5C | B | 508 / paint/plast | 3/20/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the kitchen located at apt 5c, 5th story, 3rd apartment from west at north | | | | | | | | | |
| 4833513 | 2097775 | 1/26/2004 | 1/22/2004 | 5C | B | 510 / nuisance | 3/20/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code & 309 m/d law abate the nuisance consisting of water penetration evident at ceiling. in the 3rd room from north located at apt 5c, 5th story | | | | | | | | | |
| 4833516 | 2097775 | 1/26/2004 | 1/22/2004 | 5C | B | 510 / nuisance | 3/20/2004 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code & 309 m/d law abate the nuisance consisting of water penetration evident at ceiling. in the kitchen located at apt 5c, 5th story, 3rd apartment from west at north | | | | | | | | | |

## HPD Violation Details - Class B (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 133521 | 2097775 | 1/26/2004 | 1/22/2004 | 5C | B | 508 / paint/plast | 3/20/2004 | 4/18/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 4150823 | 1802747 | 4/1/2002 | 3/26/2002 | 3F | B | 509 / secure | 5/25/2002 | 4/22/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 4131413 | 1794589 | 3/12/2002 | 3/7/2002 | 2A | B | 508 / paint/plast | 5/5/2002 | 4/22/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 4131417 | 1794589 | 3/12/2002 | 3/7/2002 | 2A | B | 501 / nuisance | 5/5/2002 | 4/22/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 4104833 | 1782902 | 2/12/2002 | 2/8/2002 | 3F | B | 506 / replace | 4/7/2002 | 4/22/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 4104848 | 1782902 | 2/12/2002 | 2/8/2002 | 3F | B | 510 / nuisance | 4/7/2002 | 4/22/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 3965042 | 1725838 | 9/28/2001 | 9/26/2001 | 4J | B | 566 / vermin | 11/21/2001 | 4/18/2006 | NOT COMPLIED |
| | | | | | | | | | |
| 3965045 | 1725838 | 9/28/2001 | 9/26/2001 | 4J | B | 702 / smoke | 11/21/2001 | 4/18/2006 | NOT COMPLIED |
| | | | | | | | | | |
| 571941 | 197449 | 5/12/1998 | 4/17/1998 | 4J | B | 505 / replace | 7/6/1998 | 4/18/2006 | 1 NO ACCESS |
| | | | | | | | | | |
| 571946 | 197449 | 5/12/1998 | 4/17/1998 | 4J | B | 566 / vermin | 7/6/1998 | 4/18/2006 | NOT COMPLIED |
| | | | | | | | | | |
| 571947 | 197449 | 5/12/1998 | 4/17/1998 | 4J | B | 566 / vermin | 7/6/1998 | 4/18/2006 | NOT COMPLIED |
| | | | | | | | | | |
| 571829 | 197402 | 3/28/1989 | 1/31/1989 | | B | 510 / nuisance | 5/22/1989 | 7/1/2008 | NOV SENT |

7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the 3rd room from north located at apt 5c, 5th story, 3rd apartment from north at east

7-2005 adm code properly secure the loose wall cabinets in the kitchen located in apt 3f, 3rd story, 3rd apartment from east at south

7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling ; in the bathroom located at apt 2a, 2nd story, 3rd apartment from west at north

7-2005 adm code & 309 m/d law abate the nuisance consisting of concealed water leak at ceiling ; in the bathroom located at apt 2a, 2nd story, 3rd apartment from west at north

7-2005 adm code replace with new the missing cabinet at east wall ; in the kitchen located at apt 3f, 3rd story, 3rd apartment from east at south

7-2005 adm code & 309 m/d law abate the nuisance consisting of wall cabinet placed at walkway , thereby obstructing passage , in the kitchen located at apt 3f, 3rd story, 3rd apartment from east at south

7-2018 adm code abate the nuisance consisting of vermin evidence of mice in the entire apartment located at apt 4j, west section , 4th story, 1st apartment from east at south

7-2045 adm code repair or replace the smoke detector missing in the foyer located at apt 4j, west section , 4th story, 1st apartment from east at south

7-2005 adm code replace with new the broken or defective defective metal door 4th sty 2nd west north apt 4j entrance.

7-2018 adm code abate the nuisance consisting of vermin mice 4th sty 2nd west north apt 4j all rooms.

7-2018 adm code abate the nuisance consisting of vermin roaches 4th sty 2nd west north apt 4j all rooms.

7-2005 adm code & 309 m/d law abate the nuisance consisting of tv cable wires creating trip hazard at fire escape balconies roof northwest south & southeast.

## HPD Violation Details - Class C

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 9190851 | 4290646 | 11/4/2011 | 10/30/2011 | 1E | C | 617 / lead | 12/5/2011 | 4/10/2012 | 1 NO ACCESS |
| | | | | | | | | | |
| 9190853 | 4290646 | 11/4/2011 | 10/30/2011 | 1E | C | 617 / lead | 12/5/2011 | 4/10/2012 | 1 NO ACCESS |
| | | | | | | | | | |
| 9190854 | 4290646 | 11/4/2011 | 10/30/2011 | 1E | C | 617 / lead | 12/5/2011 | 4/10/2012 | 1 NO ACCESS |
| | | | | | | | | | |
| 9128579 | 4262278 | 9/27/2011 | 9/26/2011 | 1K | C | 567 / vermin | 10/8/2011 | 9/27/2011 | NOV SENT |
| | | | | | | | | | |
| 8672541 | 4046790 | 11/3/2010 | 10/27/2010 | 6G | C | 617 / lead | 12/4/2010 | 3/2/2011 | 1 NO ACCESS |
| | | | | | | | | | |
| 8057967 | 3754928 | 9/17/2009 | 9/11/2009 | 3L | C | 526 / lock | 9/28/2009 | 10/21/2009 | NOV LATE |
| | | | | | | | | | |
| 8019713 | 3724466 | 8/20/2009 | 8/12/2009 | 4H | C | 616 / lead | 9/20/2009 | 8/20/2009 | NOV SENT |
| | | | | | | | | | |
| 8019714 | 3724466 | 8/20/2009 | 8/12/2009 | 4H | C | 616 / lead | 9/20/2009 | 8/20/2009 | NOV SENT |
| | | | | | | | | | |
| 7091452 | 3558875 | 1/27/2009 | 1/27/2009 | 3B | C | 618 / records | 2/27/2009 | 1/27/2009 | NOV SENT |

27-2056.8 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny A§11-06(b)(2) 1st door frame from north at east wall in the foyer located at apt 1e, 1st story, 1st apartment from north at north , section at east

27-2056.8 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny A§11-06(b)(2) east wall in the bathroom located at apt 1e, 1st story, 1st apartment from north at north , section at east

27-2056.8 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny A§11-06(b)(2) north wall in the 1st room from east located at apt 1e, 1st story, 1st apartment from north at north , section at east

27-2018 adm code abate the nuisance consisting of rodents rats in the entire apartment located at apt 1k, 1st story, 2nd apartment from west at north

7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) west wall, north wall in the 4th room from east located at apt 6g, east section , 6th story, 1st apartment from west at north

7-2005, 2007 adm code remove the illegal festening pad lockable slide bolts at door leading to public hall in the foyer located at apt 3l, 3rd story, 6th apartment from east at south

7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) 1st door from west at north wall, 1st door frame from west at north wall in the foyer located at apt 4h, 4th story, 4th apartment from east at south

7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) 1st door frame from west at north wall in the 4th room from north located at apt 4h, 4th story, 4th apartment from east at south

7-2056.7 adm code -correct failure to provide to the department within 45 days of demand all records required to be maintained by owner



© Copyright 2012 EMPOWER NY

## HPD Violation Details - Class C (continued)

| Vio # | NOV # | Issue Date | Complaint Date | Apt | Class | Order/Type | Cert. Due | Status Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 7509577 | 3479676 | 10/8/2008 | 10/3/2008 | 6F | C | 617 / lead | 11/8/2008 | 10/8/2008 | NOV SENT |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) west wall, south wall, north wall in the 4th room from north located at apt 6f, 6th story, 3rd apartment from east at south ||||||||||
| 6366669 | 2812945 | 9/15/2006 | 8/28/2006 | 5L | C | 617 / lead | 10/16/2006 | 9/15/2006 | NOV SENT |
| 7-2056.6 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or on a deteriorated subsurface using work practices set forth in 28 rcny §11-06(b)(2) ceiling in the 1st kitchen from east located at apt 5l, 5th story, 6th apartment from north at east ||||||||||
| 6117933 | 2857342 | 4/24/2006 | 4/20/2006 | 2H | C | 617 / lead | 5/25/2006 | 4/24/2006 | NOV SENT |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) 1st door frame from north at east wall, north wall in the bathroom located at apt 2h, 2nd story, 4th apartment from east at south ||||||||||
| 5311646 | 2331583 | 3/17/2006 | 3/21/2006 | 5C | C | 526 / lock | 2/11/2006 | 4/18/2006 | 1 NO ACCESS |
| 7-2005, 2007 adm code remove the illegal fastening double key operated lock at door in the entrance located at apt 5c, 5th story, 2nd apartment from east at south ||||||||||
| 571909 | 197429 | 3/17/2006 | 10/28/1991 | 3H | C | 555 / lead | 12/4/1991 | 4/22/2006 | 1 NO ACCESS |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint center room clg 3rd sty 3rd from west at south apt 3h ms pellicier 324 9120 control no 3011-627 -628 er1 ||||||||||
| 571910 | 197429 | 3/17/2006 | 10/28/1991 | 3H | C | 555 / lead | 12/4/1991 | 4/22/2006 | 1 NO ACCESS |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint foyer west wall 3rd sty 3rd from west at south apt 3h. ||||||||||
| 571911 | 197429 | 3/17/2006 | 10/28/1991 | 3H | C | 555 / lead | 12/4/1991 | 4/22/2006 | 1 NO ACCESS |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint bathroom clg 3rd sty 3rd from west at south apt 3h control no 3011-627-628 . ||||||||||
| 571860 | 197418 | 3/17/2006 | 8/30/1990 | 3K | C | 555 / lead | 10/24/1990 | 1 NO ACCESS | |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint clg of west room private hall & foyer 3rd sty center north apt 3k west section ms aviles 994 6069 er1. located at apt 3k ||||||||||
| 571959 | 197454 | 3/17/2006 | 7/21/1998 | 4K | C | 555 / lead | 9/23/1998 | 4/18/2006 | DEFECT LETTER |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint north wall northeast room ms reyes 4th sty northwest apt 4k ph 324 6303 er1 7919. ||||||||||
| 571954 | 197454 | 3/17/2006 | 7/21/1998 | 4K | C | 555 / lead | 9/23/1998 | 4/18/2006 | DEFECT LETTER |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint ceiling northeast room 4th sty northwest apt 4k. ||||||||||
| 571956 | 197454 | 3/17/2006 | 7/21/1998 | 4K | C | 555 / lead | 9/23/1998 | 4/18/2006 | DEFECT LETTER |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint ceiling bathroom 4th sty northwest apt 4k. ||||||||||
| 571952 | 197452 | 3/17/2006 | 6/2/1998 | 4K | C | 555 / lead | 8/12/1998 | 4/18/2006 | DEFECT LETTER |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint north wall northeast room 4th sty 2nd from west north apt 4k ms reyes ph 718 324 6303 er1 5623 ||||||||||
| 571843 | 197413 | 3/17/2006 | 5/31/1990 | 4K | C | 555 / lead | 7/18/1990 | 4/18/2006 | DEFECT LETTER |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint clg 4th sty northwest apt 4k west room ms santiago 324 0156. ||||||||||
| 571844 | 197413 | 3/17/2006 | 5/31/1990 | 4K | C | 555 / lead | 7/18/1990 | 4/18/2006 | DEFECT LETTER |
| 7-2013 adm code remove or cover in a manner approved by the department the peeling lead paint clg 4th sty northwest apt 4k east room ms santiago 324 0156. ||||||||||
| 571841 | 197409 | 3/17/2006 | 4/5/1990 | 4G | C | 508 / paint/plast | 6/6/1990 | 4/18/2006 | DEFECT LETTER |
| 7-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color clg bathroom 4th sty front center apt 4g er1 ||||||||||
| 5793483 | 2520100 | 10/26/2005 | 10/21/2005 | 1D | C | 617 / lead | 11/26/2005 | 4/24/2006 | DEFECT LETTER |
| 7-2056.6 adm code - correct the lead-based paint hazard - paint that tested positive for lead content and that is peeling or on a deteriorated subsurface - using work practices set forth in 28 rcny §11-06(b)(2) north wall in the 1st room from north at west located at apt 1d, 1st story, 2nd apartment from west at north ||||||||||
| 4146214 | 1799806 | 3/25/2002 | 3/21/2002 | 1H | C | 610 / lead | 4/30/2002 | 4/22/2006 | 1 NO ACCESS |
| 7-2056.5 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or is on a deteriorated subsurface - using exclusive interim controls. ceiling in the bathroom located at apt 1h, 1st story ||||||||||
| 4146217 | 1799806 | 3/25/2002 | 3/21/2002 | 1H | C | 610 / lead | 4/30/2002 | 4/22/2006 | 1 NO ACCESS |
| 7-2056.5 adm code - correct the lead-based paint hazard - presumed lead paint that is peeling or is on a deteriorated subsurface - using exclusive interim controls. north wall in the 1st room from east at south located at apt 1h, 1st story ||||||||||
| 3892345 | 1647524 | 4/25/2001 | 4/24/2001 | 6M | C | 501 / repair | 5/11/2001 | 4/18/2006 | 1 NO ACCESS |
| 7-2005 adm code properly repair the broken or defective leaky steamriser ,valve in the bathroom located at apt 6m. west section , 6th story. 1st apartment from west at north ||||||||||

## HPD Emergency Repairs Details

| OMO # | Issue Date | Repair Type | Award Amt. | Category | Date Complete | Status | Reason |
|---|---|---|---|---|---|---|---|
| EA11082 | 9/25/2009 | AOR | $0 | DELEAD | 12/31/1969 | cancel | No Access |
| local law # 1 violation: as per attached scope of work thoroughly remove all lead violations as per new york city administrative code  27-2056.11 and | | | | | | | |
| E930576 | 3/12/2009 | OMO | $111 | GC | 5/7/2009 | history | OMO Complete |
| public area : at 5.5 floor staircase : re-install (1, stop, screw) window guard. total =1.remove all work related debris. mini rc omo #k903908. | | | | | | | |
| E930577 | 3/12/2009 | OMO | $62 | GC | 4/27/2009 | cancel | Srvc Restored |
| apt #2c) at bedroom#1, kitchen#1, and bathroom#1 : re-install (1 each rooms, stop and screw) and at living room#1 re-install (2, stops and screws) win | | | | | | | |
| E930580 | 3/12/2009 | OMO | $671 | GC | 5/7/2009 | cancel | OMO Complete |
| apt #il) at bedroom#1, bedroom#2, kitchen #1, and bathroom#1 : re-install (1 each rooms, stops and screws) window guard. total= 4.remove all work r | | | | | | | |
| E930582 | 3/12/2009 | OMO | $62 | GC | 5/7/2009 | cancel | No Access |
| apt #2h) at bedroom#1 and living room#1: install (1 each rooms) window guards. and at bathroom#1 re-install (1 , stop and screw) window guard, total = | | | | | | | |
| E927577 | 2/18/2009 | OMO | $86 | GC | 2/24/2009 | cancel | Refuse Access |
| public area : at entrance of building : repair the bottom concrete tread.remove all work related debris.  non s.w.p.note: contractor must c | | | | | | | |
| E923709 | 1/21/2009 | OMO | $86 | GC | 2/12/2009 | history | Work Done |
| apartment # 1k. trace and repair bedroom ceiling leak. scrape  plaster paint ceiling. | | | | | | | |
| E921266 | 12/31/2008 | AOR | $0 | DELEAD | 12/31/1969 | history | Work Done |
| doh abatement.rm # 1 apartment entrance hallway from public hallway1. door opening on wall # 1 including casing, jambs  stops  exteriorco | | | | | | | |
| E829748 | 4/18/2008 | OMO | $86 | GC | 5/13/2008 | cancel | Refuse Access |
| (apt. #1k) at room east north (1)  room east north (2): trace and repair the source of water leak and loose plaster. at room east north (1): ceili | | | | | | | |
| E816779 | 12/21/2007 | OMO | $321 | GC | 2/7/2008 | history | OMO Complete |
| apt #2k) at room north west-1: install (2) sets of window stops and oneway screws, at room north-1 and bathroom: install (2 each rooms) window guards | | | | | | | |
| E719757 | 1/24/2007 | AOR | $83 | GC | 12/31/1969 | cancel | OMO Complete |
| public area: at east stair. north window install windwo stops in 4 sty intermediate landing. "remove all work related debris" | | | | | | | |
| E718046 | 1/5/2007 | OMO | $28 | GC | 1/14/2007 | history | OMO Complete |
| as per rc # 2007001218401 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-30 | | | | | | | |
| 718154 | 1/5/2007 | OMO | $91 | GC | 1/18/2007 | cancel | Compl Refuse |
| (apt. #2k) trace, locate and repair the leak over the livingroom (possible radiator leak). repair ceiling approx. 20 sq ft. prime and paint 2 coats | | | | | | | |
| E717605 | 1/2/2007 | OMO | $28 | GC | 1/14/2007 | history | OMO Complete |
| as per rc # 2007001218401 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-30 | | | | | | | |
| E715727 | 12/8/2006 | OMO | $764 | GC | 12/18/2006 | history | OMO Complete |
| apt 3g) at apt 3g repair and paint the broken ceiling at the east room. approx. 20 sq ft. " remove all work related debris". s.w.p. children under | | | | | | | |
| E715496 | 12/6/2006 | AOR | $561 | DELEAD | 12/31/1969 | history | OMO Complete |
| local law #1 violation:  as per hpd's abatement requirement contracts and attached scope of work thoroughly remove all lead violations as per new yo | | | | | | | |
| E714499 | 11/27/2006 | AOR | $269 | GC | 12/31/1969 | cancel | No Access |
| apartment #2kinstall new window guards. two (2) in livingroom, one (1) in bathroom and two (2) in bedroom. | | | | | | | |
| E711372 | 10/20/2006 | AOR | $143 | GC | 12/31/1969 | history | OMO Complete |
| (public area) reinstall 2 window guards with stops and 1-way screws at 4-12 and 6-12 public hall intermediate landings. remove all work related de | | | | | | | |
| E711378 | 10/20/2006 | OMO | $91 | GC | 11/4/2006 | cancel | Other |
| (public area) repair and paint the walls and ceiling of the bulkhead and the 5th story ceiling. remove all work related debris. s.w.p. for public | | | | | | | |
| E700501 | 7/10/2006 | OMO | $30 | DELEAD | 7/20/2006 | history | OMO Complete |
| as per rc # 2006001274404 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-3 | | | | | | | |
| E636357 | 6/8/2006 | AOR | $0 | DELEAD | 12/31/1969 | history | LL Complied |
| local law #1 violation : as per hpd's abatement requirement contracts and attached scope of work thoroughly remove all lead violations as per new yor | | | | | | | |
| E632119 | 4/27/2006 | OMO | $91 | GC | 5/10/2006 | cancel | LL Complied |
| apartment #1cat bathroom, repair ceiling at bathroom to smooth finish, compound, prime and paint entire ceiling 30 sq. ft. remove all work related | | | | | | | |
| E621841 | 1/20/2006 | OMO | $91 | GC | 2/8/2006 | cancel | Refuse Access |
| apt.#5g locate and repair the source of leak affecting the bathroom  bedroom ceilings. no demo needed. prime and paint (2) coats to match the exis | | | | | | | |
| E617493 | 12/13/2005 | OMO | $91 | GC | 4/10/2007 | history | OMO Complete |
| as per rc #2005001274402 (enviro-probe. inc.), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-3 | | | | | | | |
| 614708 | 11/18/2005 | OMO | $865 | GC | 12/31/1969 | cancel | Other |
| apt.#5g locate and repair the source of leak affecting the bathroom  bedroom ceilings. no demo needed. prime and paint (2) coats to match the exis | | | | | | | |



## HPD Emergency Repairs Details (continued)

| OMO # | Issue Date | Repair Type | Award Amt. | Category | Date Complete | Status | Reason |
|---|---|---|---|---|---|---|---|
| E533277 | 5/31/2005 | OMO | $34 | DELEAD | 6/28/2005 | history | OMO Complete |
| as per rc #2005001338401 (enviro-probe inc), perform total lead analysis of 05 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E530151 | 4/29/2005 | OMO | $307 | GC | 5/9/2005 | history | Part Comp |
| at entrance door, replace broken safety wire glass with new wire glass.remove all work related debris.note: contractor must contact hpd (718) ||||||||
| E526959 | 4/1/2005 | OMO | $1,811 | GC | 4/19/2005 | history | OMO Complete |
| apt. 2b: demo complete ceiling in livingroom and private halls approx 450 sq ft, sheetrock , (5B), tape, compound, prime and paint with (2) coats of ||||||||
| E521188 | 2/8/2005 | OMO | $91 | GC | 4/15/2005 | cancel | Refuse Access |
| repair the livingroom ceiling (80sq ft.). replace the ceiling tiles in livingroom.note: contractor must contact hpd at 718-636-3026 with start da ||||||||
| E519535 | 1/26/2005 | OMO | $612 | GC | 2/8/2005 | history | OMO Complete |
| (apt. #4k) demolish loose plaster at bedroom ceiling and wall, approx. 30 sq. ft. cement plaster patch wall and ceiling, approx. 30 sq. ft. prime a ||||||||
| E516864 | 12/31/2004 | AOR | $0 | PLUMB | 12/31/1969 | cancel | Apt Vacant |
| apartment #6j.bathroom: install 1 tub spout ||||||||
| E505078 | 8/12/2004 | OMO | $30 | DELEAD | 5/25/2006 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E505808 | 8/10/2004 | OMO | $30 | DELEAD | 8/13/2004 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E505658 | 8/9/2004 | OMO | $30 | DELEAD | 9/19/2004 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E505566 | 8/6/2004 | OMO | $30 | DELEAD | 9/19/2004 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E505572 | 8/6/2004 | OMO | $30 | DELEAD | 4/10/2005 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E505485 | 8/5/2004 | OMO | $30 | DELEAD | 9/19/2004 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E505420 | 8/4/2004 | OMO | $30 | DELEAD | 8/7/2004 | history | OMO Complete |
| as per rc #2004000522203 (enviro-probe inc), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-305 ||||||||
| E504148 | 7/17/2004 | AOR | $4,055 | DELEAD | 12/31/1969 | history | OMO Complete |
| erp ll 38violation:as per attached scope of work. rc # thoroughly remove all lead violations as per new york city health code section 173.14 and as n ||||||||
| E426848 | 6/25/2004 | AOR | $132 | GC | 12/31/1969 | history | OMO Complete |
| (apt #6e)bathroom, bedroom install window guard complete (2). ||||||||
| E425278 | 6/4/2004 | OMO | $33 | DELEAD | 9/8/2003 | history | OMO Complete |
| as per rc #200300573101 (international asb test lab), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) ||||||||
| E423059 | 4/30/2004 | OMO | $906 | DELEAD | 5/15/2004 | history | OMO Complete |
| apt #11 kitchen,lr , br#1, br#2  wash down mold and mildew with water and bleach at window frames, molding and area around window  prime with sta ||||||||
| E421651 | 4/15/2004 | OMO | $605 | GC | 5/3/2004 | history | OMO Complete |
| (apt. #1l) at south bedroom clean south and west walls of mold and mildew at window areas, prime with stain killer and paint. remove all work relat ||||||||
| E419126 | 3/18/2004 | OMO | $91 | GC | 3/30/2004 | cancel | Refuse Access |
| demolish concrete step at front building. supply and install a new concrete step at front up building remove all rubbish.note: contractor must co ||||||||
| E411243 | 12/17/2003 | OMO | $890 | GC | 1/20/2004 | history | OMO Complete |
| (apt.#4k) locate and repair leak in foyer. repair ceiling of foyer (25 sq. ft.)note: contractor must contact hpd  (718) 636-3021, 636-3026, 63 ||||||||
| E409656 | 11/25/2003 | OMO | $15 | DELEAD | 12/31/1969 | history | OMO Complete |
| as per rc #k315230 (international asbestos testing lab), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (e ||||||||
| E403910 | 8/26/2003 | OMO | $0 | DELEAD | 12/31/1969 | cancel | User Error |
| as per rc #200300573101 (international asb test lab), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) ||||||||
| E400191 | 7/7/2003 | OMO | $1,216 | GC | 8/16/2003 | history | OMO Complete |
| (apt #4k) trace and repair leak from apartment above. demolish 40 sq. ft. of ceiling and plaster approx 18 sq. ft of wall, prime and paint entire ||||||||
| E400111 | 7/2/2003 | AOR | $0 | GC | 12/31/1969 | cancel | LL Complied |
| public hall: remove window cover with plastic reglaze re-install sash. ||||||||
| E324774 | 6/12/2003 | OMO | $91 | GC | 7/21/2003 | cancel | Compl Refuse |
| apt. #4k) at private hallway demo ceiling 4x4. repair concealed water leak from above. repair hall ceiling prime and paint to match.note: vendo ||||||||

## HPD Emergency Repairs Details (continued)

| OMO # | Issue Date | Repair Type | Award Amt. | Category | Date Complete | Status | Reason |
|-------|-----------|-------------|-----------|----------|---------------|--------|--------|
| E324169 | 6/5/2003 | AOR | $0 | GC | 12/31/1969 | cancel | Too Extensive |
| ( public area) remove sash and cover window with plastic and re-glaze window then re-install window. | | | | | | | |
| E220869 | 5/24/2002 | AOR | $0 | GC | 12/31/1969 | cancel | Compl Refuse |
| (apt.#2h) remove mold and mildew approx.(10 sq. ft.) east and south wall. | | | | | | | |
| E220288 | 5/16/2002 | OMO | $43 | DELEAD | 6/28/2002 | history | OMO Complete |
| as per rc #20010019679c (emsl), perform total lead analysis of 07 dust wipe sample(s) via environmental protection agency (epa) sw845-3050-7420 method | | | | | | | |
| E218386 | 4/15/2002 | OMO | $31 | DELEAD | 4/25/2002 | history | OMO Complete |
| as per rc #20010019679c (emsl), perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-3050-7420 method | | | | | | | |
| E217311 | 3/28/2002 | AOR | $324 | MISC | 12/31/1969 | history | OMO Complete |
| (apt #1h) remove and properly reinstall kitchen wood cabinet. | | | | | | | |
| E214557 | 2/11/2002 | AOR | $367 | DELEAD | 12/31/1969 | history | HPD Tested |
| Il 38 abate: abate as per rc # 1019788. thoroughly remove all lead violations as per new york city health code section 173.14 and as noted in the sc | | | | | | | |
| E211881 | 1/3/2002 | AOR | $67 | GC | 12/31/1969 | cancel | Refuse Access |
| (apt# 6a) capsheet and tar over apartment# 6a bedroom livingroom. (to abate leak). remove work debris | | | | | | | |
| E211884 | 1/3/2002 | AOR | $0 | GC | 12/31/1969 | cancel | Other |
| (apt# 6a) remove mold and mildew on ceiling and wall. | | | | | | | |
| E211885 | 1/3/2002 | AOR | $500 | GC | 12/31/1969 | history | OMO Complete |
| (apt# 6a) install wguard in kitchen. replace wguard and one-way screws thru-out apartment. | | | | | | | |
| E209651 | 11/30/2001 | AOR | $67 | GC | 12/31/1969 | cancel | Refuse Access |
| (apt#4k) kitchen cover floor with plastic demo loose ceiling 15 sq. ft., sheetrock ceiling 15 sq. ft. plaster tape and compound remove all debris | | | | | | | |
| E200357 | 7/6/2001 | AOR | $67 | GC | 12/31/1969 | cancel | Refuse Access |
| (apt #5l) at kitchen, lvngrm and bdrm #1, reinstall wgs with new stops and one way screws. In bdrm #2 and bthrm, install (1 ea.) wgs and stops. | | | | | | | |
| E106101 | 9/29/2000 | AOR | $211 | GC | 12/31/1969 | history | OMO Complete |
| (apt #.5k) remove mold at bthrm window frame approx.. (4 sq.ft.) by bleach water, stain killer and touch paint (4 sq.ft.) remove work debris. | | | | | | | |
| E100027 | 7/5/2000 | AOR | $216 | GC | 12/31/1969 | history | OMO Complete |
| apt. #5l ( bathroom )  cover floor with drop cloth . demo approx. 12 sq.ft. ceiling, sheetrock, plaster. tape and compound. bag. remove all rubb | | | | | | | |
| E021670 | 5/11/2000 | OMO | $31 | DELEAD | 7/18/2004 | history | OMO Complete |
| as per tertiary rc #20000018711 (emsl). perform total lead analysis of 04 dust wipe sample(s) via environmental protection agency (epa) sw845-3050-74 | | | | | | | |
| E020114 | 4/11/2000 | AOR | $370 | DELEAD | 12/31/1969 | history | OMO Complete |
| for all violations: abate as per rc # 9914486b. thoroughly remove all lead violations as per new york city health code section 173.14 and as noted in | | | | | | | |

## HPD Litigation History

| Date Opened | Type | Status | Outstanding Judgment? |
|---|---|---|---|
| 12/7/2010 | Tenant Action | CLOSED | NO |
| 5/14/2009 | Access Warrant - Non-Lead | CLOSED | NO |
| 7/28/2008 | Access Warrant - Non-Lead | CLOSED | NO |
| 1/24/2008 | Heat and Hot Water | CLOSED | NO |
| 11/13/2007 | Tenant Action | CLOSED | NO |
| 1/18/2007 | Tenant Action | CLOSED | NO |
| 1/30/2006 | Heat and Hot Water | CLOSED | NO |
| 3/24/2005 | Tenant Action | CLOSED | NO |
| 1/6/2005 | Heat and Hot Water | CLOSED | NO |
| 12/13/2004 | Tenant Action | CLOSED | NO |

# DOB Exposure Summary

## DOB Violation Totals

Violations Currently Active: **17**

Dismissed Violations: **8**

New Violations This Month: **0**

Open DOB Complaints: **0**

## DOB Violation Types



## DOB Violation History (12 Months)



# ECB Violation Details

## ECB Violation Totals

Not Complied: **0**

Total Penalty (12m): **$1,500**

Outstanding Balance: **$70,880**

## ECB Violation Severity



## ECB Violation Types



## ECB Violation Issue History (12 Months)



## DOB Complaint Activity History (12 Months)

## DOB Complaint # 2171171

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2171171 | ELEVATOR - DEFECTIVE / INOPERATIVE | 4/3/2012 | B | RESOLVED |

| Details: | ELEVATOR NOT WORKING AT ALL |
|---|---|

| Disposition: | 4/4/2012 - H1 - PLEASE SEE COMPLAINT NUMBER SEE REFERENCED COMPLAINT |
|---|---|

## DOB Complaint # 2169669

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2169669 | ELEVATOR - DEFECTIVE / INOPERATIVE | 2/18/2012 | B | RESOLVED |

| Details: | ONLY ELEVATOR IN BLDNG OUT SINCE LAST WEEK, PLS CHECK |
|---|---|

| Disposition: | 3/27/2012 - H1 - PLEASE SEE COMPLAINT NUMBER SEE REFD COMPLT |
|---|---|

## DOB Complaint # 2168582

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2168582 | ELEVATOR - DEFECTIVE / INOPERATIVE | 1/19/2012 | B | RESOLVED |

| Details: | CLR STS THAT THIS IS A SIX STORY BUILDING AND THE ELEVATOR HAS BEEN O/O/O FOR OVER A WEEK. 72 UNITS WITH ELDERLY, AND DISABLED INBUILDING POSSIBLE IN BASEMENT |
|---|---|

| Disposition: | 3/27/2012 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION ISSUED |
|---|---|

## DOB Complaint # 2163708

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2163708 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/31/2011 | B | RESOLVED |

| Details: | CLR STS 1 EELVATOR IN A 6 STORY RESIDENTIAL BLDG....OOS SINCE HURRUCANE IRENE....PLS INV |
|---|---|

| Disposition: | 1/10/2012 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION ISSUED |
|---|---|

## DOB Complaint # 2162895

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2162895 | ADJACENT BUILDINGS - NOT PROTECTED | 8/9/2011 | A | RESOLVED |

| Details: | WHATEVER THEY ARE DOING UPSTAIRS THEY ARE CAUSING DAMAGE TOTHE CEILING TO THE APARTMENT. LOCATED BELOW. CEILING IS CRACKED AND WATER LEAKS ARE PRESENT |
|---|---|

| Disposition: | 8/16/2011 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO CONSTRUCTION WORK IN APARTMENT 5J AND NO RESPONSE TO THEDOOR OF APARTMENT 4J |
|---|---|

## DOB Complaint # 2148016

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2148016 | ELEVATOR-DANGER CONDITION/SHAFT OPEN/UNGUARDED | 7/24/2010 | A | RESOLVED |

| Details: | THERE IS A PROBLEM WITH THIS ELEVATOR CALLER WAS STUCK ONTHE ELEVATOR FOR THE LAST 30 MIN AND THE FIRE DEPARTMENT HAD TO COMEAND GET HER OUT ELEVATOR NEEDS TO BE INSPECTED |
|---|---|

| Disposition: | 7/25/2010 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION ISSUED |
|---|---|

## DOB Complaint # 2147069

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2147069 | ELEVATOR - DEFECTIVE / INOPERATIVE | 6/29/2010 | B | RESOLVED |

| Details: | CLR STS THE ONLY ELEVATOR THAT SERVICES THIS 6-STORY RESIDENTIAL LOCATION IS OUT OF SERVICE. CLR STS CHRONIC PROBLEM FOR THE LOCATION |
|---|---|

| Disposition: | 7/25/2010 - H1 - PLEASE SEE COMPLAINT NUMBER REFER TO COMPLAINT # 2148016 |
|---|---|



## DOB Complaint # 2142514

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2142514 | ELEVATOR - DEFECTIVE / INOPERATIVE | 3/12/2010 | B | RESOLVED |

| Details: | THE 1 ELEVATOR IN THE BUILDING AT THE GIVEN ADD HAS NOT BEEN WORKING FOR 2 WEEKS AND IS AN ON GOING CHRONIC PROBLEM.WHEN THE ELEVATOR IS REPAIRED IT IS DEFECTIVE |
|---|---|

| Disposition: | 5/6/2010 - H1 - PLEASE SEE COMPLAINT NUMBER PI |
|---|---|

## DOB Complaint # 2142378

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2142378 | ELEVATOR - DEFECTIVE / INOPERATIVE | 3/9/2010 | B | RESOLVED |

| Details: | THE ELEVATOR IN BUILDING IS NOT WORKING. THIS OCCURS EVERYOTHER DAY. ITS ONLY ONE ELEVATOR TO BUILDING. AND IT STOPS IN BETWEEN FLOORS |
|---|---|

| Disposition: | 5/6/2010 - A1 - BUILDINGS VIOLATION(S) SERVED VF |
|---|---|

## DOB Complaint # 2127778

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2127778 | ELEVATOR - DEFECTIVE / INOPERATIVE | 3/18/2009 | B | RESOLVED |

| Details: | CALLER STATES THE ELEVATOR HAS NOT BEEN WORKING FOR 6 DAYSTHIS IS A ONGOING PROBLEM THE BUILDING HAS 6 FLOOR |
|---|---|

| Disposition: | 4/6/2009 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION |
|---|---|

## DOB Complaint # 2127701

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2127701 | ELEVATOR - DEFECTIVE / INOPERATIVE | 3/17/2009 | B | RESOLVED |

| Details: | CALLER STATES THAT THE ELEVATOR HAS NOT WORKED AT ALL FOR THE PAST 6 DAYS |
|---|---|

| Disposition: | 4/6/2009 - H1 - PLEASE SEE COMPLAINT NUMBER PI |
|---|---|

## DOB Complaint # 2125081

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2125081 | ELEVATOR - DEFECTIVE / INOPERATIVE | 1/16/2009 | B | RESOLVED |

| Details: | ELEVATOR OUT OF SERVICE |
|---|---|

| Disposition: | 1/16/2009 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION ISSUED |
|---|---|

## DOB Complaint # 2124093

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2124093 | DEBRIS/BUILDING -FALLING OR IN DANGER OF FALLING | 12/22/2008 | A | RESOLVED |

| Details: | CALLER STS THERE IS A NEW BLDG UNDER CONSTRUCTION WHERE THERE ARE 3 LARGE PLYWOODS HOLDING UP THE SCAFFOLDING AND 1 FELL HALF WAY DOWN AND ABOUT TO HIT THE ELECTRICAL POLE/LOCATED ACROSS FROM ADDRESS |
|---|---|

| Disposition: | 12/23/2008 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO SCAFFOLD NOR LOOSE PLYWOOD OBSERVED AT PREMISES AT TIMEOF INSPECTION |
|---|---|

## DOB Complaint # 2120956

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2120956 | ELEVATOR - DEFECTIVE / INOPERATIVE | 10/10/2008 | B | RESOLVED |

| Details: | CALLER STS NO ELEVATOR SERVICE AT ABOVE ADDRESS PLS INVESIGATE |
|---|---|

| Disposition: | 10/19/2008 - A1 - BUILDINGS VIOLATION(S) SERVED VIOL TO OWNER |
|---|---|



## DOB Complaint # 2119580

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2119580 | ELEVATOR - DEFECTIVE / INOPERATIVE | 9/8/2008 | B | RESOLVED |

| Details: | CALLER STATES ELEVATOR HAS BEEN INOPERATIVE FOR PAST MONTH CCALLER STATES SHE IS A SENIOR CITIZEN AND IS UNABLE TO GO UP AND DOWNSTAIRS |
|---|---|
| Disposition: | 9/30/2008 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION |

## DOB Complaint # 2119334

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2119334 | ELEVATOR - DEFECTIVE / INOPERATIVE | 9/1/2008 | B | RESOLVED |

| Details: | CLR STS ELEVATOR HAS BEEN ON/OFF FOR 1.5 MONTHS |
|---|---|
| Disposition: | 9/30/2008 - H1 - PLEASE SEE COMPLAINT NUMBER PI |

## DOB Complaint # 2119291

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2119291 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/30/2008 | B | RESOLVED |

| Details: | CALLER STS THAT THE ELEVATOR IN HER BUILDING IS OUT OF ORDER |
|---|---|
| Disposition: | 9/30/2008 - H1 - PLEASE SEE COMPLAINT NUMBER PI |

## DOB Complaint # 2118800

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118800 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/18/2008 | B | RESOLVED |

| Details: | CLR STS ONE ELEVATOR-DEFECTIVE |
|---|---|
| Disposition: | 9/30/2008 - H1 - PLEASE SEE COMPLAINT NUMBER PI |

## DOB Complaint # 2118787

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118787 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/18/2008 | B | RESOLVED |

| Details: | THE CALLER STATES, THE ELEVATOR HAS BEEN OUT SINCE LAST THURS. THIS IS AN ONGOING PROBLEM. IT WAS OUT PREVIOUSLY FOR 8 DAYS. THISIS A 6 STORY BUILDING WITH DISABLED TENANTS. PLEASE INVESTIGATE |
|---|---|
| Disposition: | 9/30/2008 - H1 - PLEASE SEE COMPLAINT NUMBER PI |

## DOB Complaint # 2118767

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118767 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/18/2008 | B | RESOLVED |

| Details: | THE CALLER STATES THE ELEVATOR IS O/O/O SINCE THURSDAY |
|---|---|
| Disposition: | 9/30/2008 - H1 - PLEASE SEE COMPLAINT NUMBER PI |

## DOB Complaint # 2118766

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118766 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/18/2008 | B | RESOLVED |

| Details: | CLR STS ONE ELEVATOR-DEFECTIVE |
|---|---|
| Disposition: | 9/10/2008 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION ISSUED |

| Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118752 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/17/2008 | B | RESOLVED |

| Details: | ONLY ELEVATOR IN BLDG .OUT OF SERVICE 2 WKS |
|---|---|
| Disposition: | 9/10/2008 - H1 - PLEASE SEE COMPLAINT NUMBER |



## DOB Complaint # 2118535

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118535 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/13/2008 | B | RESOLVED |

Details: CALLER STATES, THE ELEVATOR IS STILL BROKEN. CALLER STATES,HER MOM IS 80 YEARS OLD. SHE NEEDS THE ELEVATOR REPAIRED

Disposition: 8/15/2008 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION
NO VIOALTION

## DOB Complaint # 2118488

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118488 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/12/2008 | B | RESOLVED |

Details: CLR. STATES ONE ELEVATOR IN A 6 FLOOR BLDG IN WHICH IT HAS BEEN OUT OF SERVICE FOR THE PAST THREE WEEKS. ELDERLY PEOPLE IN BUILDING - MGMT NOT ANSWERING PHONE, SUPER AWARE OF PROBLEM. PLS INSPECTION

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION

## DOB Complaint # 2118415

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118415 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/11/2008 | B | RESOLVED |

Details: CALLER STATES THAT THE ELEVATOR HAS BEEN OUT FOR 5-6 DAYS

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION

## DOB Complaint # 2118388

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118388 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/11/2008 | B | RESOLVED |

Details: ELEVATOR STRAIGHT AHEAD UPON ENTERING LOBBY/THIS IS THE ONLY ELEVATOR SERVICING THIS BUILDING/INOPERABLE FOR 7 DAYS/THIS IS AN ONGOING PROBLEM WITH NO ELEVATOR SERVICE

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION

## DOB Complaint # 2118334

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118334 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/8/2008 | B | RESOLVED |

Details: CALLER STS ELEVATOR BEEN OUT OF ORDER SINCE TUESDAY

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION ISSUED

## DOB Complaint # 2118320

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118320 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/8/2008 | B | RESOLVED |

Details: CLR STS ONLY ELEVATOR HAS BEEN OUT SINCE LAST WEEK

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION ISSUED

## DOB Complaint # 2118307

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118307 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/7/2008 | B | RESOLVED |

Details: CALLER STATES THE ELEVATOR IS DEFECTIVE AND THE ELEVATOR ISNOT WORKING

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION

## DOB Complaint # 2118266

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2118266 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/7/2008 | B | RESOLVED |

Details: CALLER STATES THAT THE ELEVATOR IS NOT WORKING. IT WORKS ONAND OFF

Disposition: 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER
NO VIOLATION

## DOB Complaint # 2116819

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2116819 | ELEVATOR - DEFECTIVE / INOPERATIVE | 7/10/2008 | B | RESOLVED |

| Details: | CLR STS AT THE ABOVE ADDRESS THE ELEVATOR IN THE BUILDING DO NOT GO TO THE 6TH FLOOR.CALLER STATES SHE HAS TO GET OFF AT THE 5TH FLOOR AND WALK UP |
|---|---|
| Disposition: | 8/15/2008 - H1 - PLEASE SEE COMPLAINT NUMBER NO VIOLATION |

## DOB Complaint # 2105681

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2105681 | ELEVATOR - DEFECTIVE / INOPERATIVE | 10/15/2007 | B | RESOLVED |

| Details: | CALLER STS THE ELEVATOR IS NOT WORKING IN THIS BUILDING PLSINVESIGATE |
|---|---|
| Disposition: | 10/30/2007 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION.ISSUED |

## DOB Complaint # 2098853

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2098853 | ELEVATOR - DEFECTIVE / INOPERATIVE | 5/12/2007 | B | RESOLVED |

| Details: | CALLER STS THAT THE ELEVATOR IN THE WHOLE BUILDING IS NOT WORKING |
|---|---|
| Disposition: | 5/18/2007 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION |

## DOB Complaint # 2098852

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2098852 | ELEVATOR - DEFECTIVE / INOPERATIVE | 5/12/2007 | B | RESOLVED |

| Details: | CALLER STS THAT ELEVATOR IS NOT WORKING. THERE IS ONLY ONE ELEVATOR IN THE WHOLE BUILDING |
|---|---|
| Disposition: | 5/18/2007 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION |

## DOB Complaint # 2098737

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2098737 | ELEVATOR - DEFECTIVE / INOPERATIVE | 5/9/2007 | B | RESOLVED |

| Details: | THE ELEVATOR IS OUT OF ORDER, HAS BEEN SINCE OUT OF ORDER FOR 2 WEEKS |
|---|---|
| Disposition: | 5/18/2007 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION |

## DOB Complaint # 2096086

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2096086 | ELEVATOR - DEFECTIVE / INOPERATIVE | 3/12/2007 | B | RESOLVED |

| Details: | DEFECTIVE ELEVATOR/6 STORY FACILITY |
|---|---|
| Disposition: | 4/24/2007 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO VIOLATION |

## DOB Complaint # 2069655

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2069655 | ELEVATOR - DEFECTIVE / INOPERATIVE | 4/26/2005 | B | RESOLVED |

| Details: | DEFECTIVE ELEVATOR - HAS BEEN OUT OF ORDER FOR OVER A WEEK |
|---|---|
| Disposition: | 5/2/2005 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION ISSUED |

## DOB Complaint # 2069607

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2069607 | ELEVATOR - DEFECTIVE / INOPERATIVE | 4/25/2005 | B | RESOLVED |

| Details: | ELEVATOR WORKING BUT SKIPPING 2ND FLOOR. SEEMS AS THOUGH BUTTON HAS NO ELECTRICITY |
|---|---|
| Disposition: | 5/2/2005 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT |

## DOB Complaint # 2066983

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2066983 | ELEVATOR - DEFECTIVE / INOPERATIVE | 2/7/2005 | B | RESOLVED |

| Details: | 1 ELEVATOR OUT OF SERVICE 6 FLOOR IN DWELLING. SINCE 1/3/05 |
|---|---|

| Disposition: | 2/22/2005 - H1 - PLEASE SEE COMPLAINT NUMBER<br>SEE REFERENCE C#2066952 |
|---|---|

## DOB Complaint # 2066952

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2066952 | ELEVATOR - DEFECTIVE / INOPERATIVE | 2/7/2005 | B | RESOLVED |

| Details: | INOPERATIVE ELEVATOR IN 6FL BLDG /OWNER WORKING ON ELEV FORONE MONTH AND HAS NOT COMPLETED REPAIR AT THE ABOVE ADDRESS |
|---|---|

| Disposition: | 2/22/2005 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION<br>NO VIOLATION FOUND |
|---|---|

## DOB Complaint # 2066876

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2066876 | ELEVATOR - DEFECTIVE / INOPERATIVE | 2/4/2005 | B | RESOLVED |

| Details: | ONE ELEVATOR OUT OF SERVICE FOR A WHILE |
|---|---|

| Disposition: | 2/7/2005 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION<br>NO VIOLATION |
|---|---|

## DOB Complaint # 2066769

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2066769 | ELEVATOR - DEFECTIVE / INOPERATIVE | 2/1/2005 | B | RESOLVED |

| Details: | ELEVATOR IN BLDG INOPERATIVE |
|---|---|

| Disposition: | 3/14/2005 - H1 - PLEASE SEE COMPLAINT NUMBER<br>SEE COMPLAINT 2066070 |
|---|---|

## DOB Complaint # 2066070

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2066070 | ELEVATOR - DEFECTIVE / INOPERATIVE | 1/5/2005 | B | RESOLVED |

| Details: | ONE INOPERABLE ELEVATOR |
|---|---|

| Disposition: | 2/7/2005 - J2 - COMPLAINT RESOLVED BY PERIODIC INSPECTION<br>LAST INPSECTION 1/14/05 |
|---|---|

## DOB Complaint # 2065678

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065678 | ELEVATOR NOT INSPECTED/ILLEGAL/NO PERMIT | 12/17/2004 | D | RESOLVED |

| Details: | ELEVATOR NOT INSPECTED |
|---|---|

| Disposition: | 1/3/2005 - A1 - BUILDINGS VIOLATION(S) SERVED<br>ELEVATOR IN HAZARDOUS CONDITION. SERVED A CEASE USE VIOLATIO N |
|---|---|

## DOB Complaint # 2065602

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065602 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/15/2004 | B | RESOLVED |

| Details: | ELEVATOR TO THE BLDG OUT OF ORDER FOR THE PAST 3 WEEKS |
|---|---|

| Disposition: | 12/16/2004 - J2 - COMPLAINT RESOLVED BY PERIODIC INSPECTION<br>SUBSEQUENT PERIODIC INSPECTION PERFORMED |
|---|---|

## DOB Complaint # 2065599

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065599 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/15/2004 | B | RESOLVED |

| Details: | CLR STATES THAT THE ELEVATOR HAS NOT BEEN WORKING FOR OVERA WEEK |
|---|---|

| Disposition: | 12/16/2004 - J2 - COMPLAINT RESOLVED BY PERIODIC INSPECTION<br>SUBSEQUENT PERIODIC INSPECTION PERFORMED |
|---|---|

## DOB Complaint # 2065588

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065588 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/14/2004 | B | RESOLVED |

| Details: | CALLER STATE THAT THE ONLY ELEVATOR IN HER SIX STORYBUILDING HAS BEEN INOPERATIVE FOR ABOUT 3 WEEKS. NO NOTICES POSTED BYMANAGEMENT ABOUT DEFECTIVE ELEVATOR . CALLER HAS COMPLAINED BEFORE |
|---|---|

| Disposition: | 12/16/2004 - J2 - COMPLAINT RESOLVED BY PERIODIC INSPECTION SUBSEQUENT PERIODIC INSPECTION PERFORMED |
|---|---|

## DOB Complaint # 2065476

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065476 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/11/2004 | B | RESOLVED |

| Details: | THE ELEVATOR OUT OF SERVICE WHEELCHAIR ELDERLY AND HANDICAPED TENANTS AFFECTED |
|---|---|

| Disposition: | 12/16/2004 - J2 - COMPLAINT RESOLVED BY PERIODIC INSPECTION SUBSEQUENT PERIODIC INSPECTION PERFORMED |
|---|---|

## DOB Complaint # 2065415

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065415 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/9/2004 | B | RESOLVED |

| Details: | THERE SEVERAL COMPLAINTS REGARDING THIS ONE ELEVATOR AND TENANT STATES ELEVATOR CONSTANTLY OUT OF ORDER AND STICKING ON FLOOR OR SOMETIMES SKIPPING FLOORS LAST INSP 12/01 |
|---|---|

| Disposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|

## DOB Complaint # 2065350

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065350 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/6/2004 | B | RESOLVED |

| Details: | ELEV OUT OF SERVICE 1 ELEV 6FLS |
|---|---|

| sposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|

## DOB Complaint # 2065349

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065349 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/6/2004 | B | RESOLVED |

| Details: | ELEVATOR NOT WORKING PLEASE GO TO CALLER APARTMENT BEFORE INSPECTION..THIS IS CRONIC AND OCCURS EVERYTIME |
|---|---|

| Disposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|

## DOB Complaint # 2065283

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065283 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/3/2004 | B | RESOLVED |

| Details: | ELEVATOR OUT OF SERVICE 1 ELEV 6 FL |
|---|---|

| Disposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|

## DOB Complaint # 2065098

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065098 | ELEVATOR - DEFECTIVE / INOPERATIVE | 11/27/2004 | B | RESOLVED |

| Details: | ONE INOPERABLE ELEVATOR |
|---|---|

| Disposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|



## DOB Complaint # 2065014

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2065014 | ELEVATOR - DEFECTIVE / INOPERATIVE | 11/22/2004 | B | RESOLVED |

| Details: | ELEVATOR TO THE BLDG INOPERATIVE |
|---|---|

| Disposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|

## DOB Complaint # 2064119

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2064119 | ELEVATOR - DEFECTIVE / INOPERATIVE | 10/21/2004 | B | RESOLVED |

| Details: | ELEVATOR DOES GO DOWN ON SEVERAL FLOORS, WHEN YOU GET INTO THE ELEVATOR THE INSIDE DOOR DOES NOT CLOSED, IT HAPPENS ON THE 5 FL |
|---|---|

| Disposition: | 12/16/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE COMPLAINT #2063866 |
|---|---|

## DOB Complaint # 2064047

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2064047 | ELEVATOR - DEFECTIVE / INOPERATIVE | 10/19/2004 | B | RESOLVED |

| Details: | INOPERABLE ELEVATOR EVERY DAY CALLER LIVES ON 5TH FLOOR |
|---|---|

| Disposition: | 12/8/2004 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION ELEVATOR WORKING NO VIOLATION |
|---|---|

## DOB Complaint # 2063866

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2063866 | ELEVATOR - DEFECTIVE / INOPERATIVE | 10/12/2004 | B | RESOLVED |

| Details: | DEFECTIVE ELEVATOR - MAKING A BANGING SOUND, ELEVATOR DOORSARE BKN ON SEVERAL FLOOR |
|---|---|

| Disposition: | 12/1/2004 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION ELEVATOR WORKING NO VIOLATION FOUND |
|---|---|

## DOB Complaint # 2063313

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2063313 | ELEVATOR - DEFECTIVE / INOPERATIVE | 9/21/2004 | B | RESOLVED |

| Details: | ELEVATOR AT THE ABOVE LOCATION OUT OF SERVICE |
|---|---|

| Disposition: | 11/4/2004 - A1 - BUILDINGS VIOLATION(S) SERVED ELEVATOR FOUND OUT OF SERVICE VIOLATION SERVED |
|---|---|

## DOB Complaint # 2063095

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2063095 | ELEVATOR - DEFECTIVE / INOPERATIVE | 9/13/2004 | B | RESOLVED |

| Details: | THE ELEVATORS HAS BEENDEFECTIVE SINCE MID AUGUST. IT MAKESA LOUD BANGING NOISE WHEN IT CLOSES AND ALSO OFTEN GETS STUCK ON THE4 AND 6 FLOORS. TENANTS ARE FORCE TO WALK TO THE FLOOR PULL THE DOOR |
|---|---|

| Disposition: | 12/3/2004 - A1 - BUILDINGS VIOLATION(S) SERVED ELEVATOR IN HAZARDOUS CONDITION SERVED A CEASE USE VIOLATION |
|---|---|

## DOB Complaint # 2062621

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2062621 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/27/2004 | B | RESOLVED |

| Details: | THE ELEVATOR INOPERATIVE |
|---|---|

| Disposition: | 11/4/2004 - H1 - PLEASE SEE COMPLAINT NUMBER SEE REFERENCE C#2063313 |
|---|---|

| 3 Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2062295 | ELEVATOR - DEFECTIVE / INOPERATIVE | 8/13/2004 | B | RESOLVED |

| Details: | ELEVATOR DOOR DEFECTIVE ON THE 1 FL - HARD TO CLOSE, WHEN GET INTO THE ELEVATOR IT IS NOT LEVEL |
|---|---|

| Disposition: | 10/19/2004 - A1 - BUILDINGS VIOLATION(S) SERVED |
|---|---|



## DOB Complaint # 2057156

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2057156 | ELEVATOR - DEFECTIVE / INOPERATIVE | 1/24/2004 | B | RESOLVED |

| Details: | ELEVATOR INOPERATIVE |
|---|---|

| Disposition: | 3/13/2004 - H1 - PLEASE SEE COMPLAINT NUMBER<br>SEE 2056091 |
|---|---|

## DOB Complaint # 2056115

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2056115 | ELEVATOR - DEFECTIVE / INOPERATIVE | 11/30/2003 | B | RESOLVED |

| Details: | DEFECTIVE ELEVATOR , |
|---|---|

| Disposition: | 3/17/2004 - H1 - PLEASE SEE COMPLAINT NUMBER<br>SEE REFERENCE #2056091 |
|---|---|

## DOB Complaint # 2056091

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2056091 | ELEVATOR - DEFECTIVE / INOPERATIVE | 11/28/2003 | B | RESOLVED |

| Details: | ELEVATOR INOPERATIVE/ DEFECTIVE |
|---|---|

| Disposition: | 3/13/2004 - A1 - BUILDINGS VIOLATION(S) SERVED<br>ELEVATOR INSPECTION PERFORMED AND VIOLATION SERVED |
|---|---|

## DOB Complaint # 2050407

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2050407 | ELEVATOR - DEFECTIVE / INOPERATIVE | 2/22/2003 | B | RESOLVED |

| Details: | ELEVATOR INOPERATIVE |
|---|---|

| Disposition: | 3/12/2003 - A1 - BUILDINGS VIOLATION(S) SERVED<br>ELEVATOR INSPECTED AND A VIOLATION WAS SERVED TO CORRECT EXISTING CONDITIONS |
|---|---|

## DOB Complaint # 2047554

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2047554 | ECB VIOLATION NOT COMPLIED WITH | 8/19/2002 | | RESOLVED |

| Details: | ECB VIOLATION NOT COMPLIED WITH |
|---|---|

| Disposition: | 9/11/2002 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION<br>ALL REPAIRS HAVE BEEN MADE UNDER ALT#200721406 |
|---|---|

## DOB Complaint # 2045775

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2045775 | ECB VIOLATION NOT COMPLIED WITH | 5/15/2002 | | RESOLVED |

| Details: | ECB VIOLATION NOT COMPLIED WITH |
|---|---|

| Disposition: | 6/3/2002 - A9 - ECB &amp; BUILDINGS VIOLATIONS SERVED<br>NO REPAIRS MADE |
|---|---|

## DOB Complaint # 2044875

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2044875 | ECB VIOLATION NOT COMPLIED WITH | 3/27/2002 | | RESOLVED |

| Details: | ECB VIOLATION NOT COMPLIED WITH |
|---|---|

| Disposition: | 3/28/2002 - A9 - ECB &amp; BUILDINGS VIOLATIONS SERVED<br>EXTERIOR WALL DEFECTIVE/STOP WORK ORDER ISSUED FOR SIDEWALK SHED |
|---|---|

## DOB Complaint # 2044571

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2044571 | ELEVATOR - DEFECTIVE / INOPERATIVE | 3/12/2002 | B | RESOLVED |

## DOB Complaint # 2062295

| Details: | |
|---|---|

| Disposition: | 4/15/2002 - A1 - BUILDINGS VIOLATION(S) SERVED<br>FOUND ELEVATOR RUNNING. INSPECTED AND SERVED VIOLATION TO CORRECT EXISTING CONDITIONS |
|---|---|



## DOB Complaint # 2043521

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2043521 | ELEVATOR - DEFECTIVE / INOPERATIVE | 1/29/2002 | B | RESOLVED |

| Details: | ELEVATOR INOPERATIVE/ DEFECTIVE |
|---|---|

| Disposition: | 2/20/2002 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION INSPECTED ELEVATOR AND FOUND NO VIOLATIONS |
|---|---|

## DOB Complaint # 2043451

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2043451 | ECB VIOLATION NOT COMPLIED WITH | 1/23/2002 | | RESOLVED |

| Details: | ECB VIOLATION NOT COMPLIED WITH |
|---|---|

| Disposition: | 1/30/2002 - A9 - ECB &amp; BUILDINGS VIOLATIONS SERVED CONDITIONS REMAIN THE SAME |
|---|---|

## DOB Complaint # 2042736

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2042736 | ECB VIOLATION NOT COMPLIED WITH | 12/7/2001 | | RESOLVED |

| Details: | ECB VIOLATION NOT COMPLIED WITH |
|---|---|

| Disposition: | 12/10/2001 - A9 - ECB &amp; BUILDINGS VIOLATIONS SERVED FRONT ENTRANCE FACADE IS DEFECTIVE |
|---|---|

## DOB Complaint # 2042247

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2042247 | FAILURE TO MAINTAIN | 11/27/2001 | C | RESOLVED |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL: HAZARDOUSCONDITION - BRICK LOOOSE |
|---|---|

| Disposition: | 11/27/2001 - I1 - COMPLAINT UNSUBSTANTIATED BASED ON DEPARTMENT RECORDS PREVIOUSLY INSPECTED AS A VIOLATION REINSPECTION DOB VIO #061301C12FG05 &amp; ECB VIO #34288947J |
|---|---|

## DOB Complaint # 2041818

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2041818 | ELEVATOR - DEFECTIVE / INOPERATIVE | 10/29/2001 | B | RESOLVED |

| Details: | ELEVATOR IS OUT OF ORDER |
|---|---|

| Disposition: | 11/21/2001 - A1 - BUILDINGS VIOLATION(S) SERVED INSPECTED ELEVATOR AND SERVED VIOLATION TO CORRECT EXISTING CONDITIONS |
|---|---|

## DOB Complaint # 2041539

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2041539 | FAILURE TO MAINTAIN | 10/19/2001 | C | RESOLVED |

| Details: | FAILURE TO MAINTAIN |
|---|---|

| Disposition: | 10/22/2001 - A1 - BUILDINGS VIOLATION(S) SERVED VIOLATION ISSUED FAILURE TO MAITAIN EXTERIOR WALL |
|---|---|

## DOB Complaint # 2037090

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2037090 | FAILURE TO MAINTAIN | 12/18/2000 | C | CLOSED |

| Details: | CEILING IN APARTMENT 4J IS LEAKING AND FALLING DOWN |
|---|---|

| Disposition: | 1/4/2001 - C2 - INSPECTOR UNABLE TO GAIN ACCESS - 2ND ATTEMPT NO ANSWER AT DOOR |
|---|---|

## DOB Complaint # 2023842

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2023842 | STRUCTURAL STABILITY AFFECTED | 11/17/1997 | | RESOLVED |

| Details: | F.D. NOTIFICATION OF ONE 1045 CODE 2 |
|---|---|

| Disposition: | 11/17/1997 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO STRUCTURAL STABILITY AFFECTED TO APT 4B; REFERRED TO HPD |
|---|---|



## DOB Complaint # 2007629

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2007629 | ELEVATOR - DEFECTIVE / INOPERATIVE | 12/3/1991 | B | RESOLVED |

| Details: | ELEVATOR LANDS UP TOO HIGH OR TOO LOW |
|---|---|

| Disposition: | 11/20/1995 - J2 - COMPLAINT RESOLVED BY PERIODIC INSPECTION SUBSEQUENT PERIODIC INSPECTION PERFORMED |
|---|---|

## DOB Complaint # 2005623

| DOB Complaint # | Category | Received Date | Priority | Status |
|---|---|---|---|---|
| 2005623 | BUILDING - VACANT, OPEN AND UNGUARDED | 4/4/1991 | C | RESOLVED |

| Details: | VACANT AND OPEN TO VANDALS |
|---|---|

| Disposition: | 4/8/1991 - I2 - NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION NO EVIDENCE OF BEING VACANT NOR OPEN TO VANDALISM |
|---|---|

## DOB Violations Details

| Violation # | Issue Date | Vio Type | Category | Disp. Date | Status |
|---|---|---|---|---|---|
| 027/450560 | 9/25/2012 | E - elevator | V - violation | | Active |
| 01457 | 1/1/2012 | BENCH - benchmark | V - violation | | Active |
| 9027/319399 | 12/9/2009 | E - elevator | V - violation | | Active |
| 01941 | 2/27/2009 | LL1081 - elevator | V - violation | | Active |
| 06992 | 1/1/2009 | LL6291 - boiler | V - violation | | Active |
| 9444/279889 | 9/29/2008 | E - elevator | V - violation | | Active |
| 9444/232380 | 1/4/2008 | E - elevator | V - violation | | Active |
| 06845 | 1/3/2008 | LL6291 - boiler | V - violation | | Active |
| 94442189594 | 2/13/2007 | E - elevator | V - violation | | Active |
| 07222 | 1/19/2007 | LL6291 - boiler | V - violation | | Active |
| 94442160012 | 4/5/2006 | E - elevator | V - violation | | Active |
| 06840 | 1/6/2006 | LL6291 - boiler | V - violation | | Active |
| 94442132838 | 6/28/2005 | E - elevator | V - violation | | Active |
| 01952 | 11/19/2004 | LL1081 - elevator | V - violation | | Active |
| 9444/295696 | 3/17/2004 | E - elevator | V - violation | | Active |
| 9011/258860 | 8/16/2002 | E - elevator | V - violation | 11/19/2002 | Dismissed |
| 02492 | 4/17/1995 | LL1081 - elevator | V - violation | | Active |
| 01875 | 5/17/1993 | LL6291 - boiler | V - violation | | Active |
| 1366C08 | 2/14/1990 | E - elevator | V - violation | 1/14/1991 | Dismissed |
| 03825 | 10/12/1989 | LL1081 - elevator | V - violation | 6/26/1991 | Active |
| 14451/7 | 7/20/1988 | E - elevator | V - violation | 1/3/1991 | Dismissed |
| V* 092487E12410101 | 9/24/1987 | - | V - violation | | Removed |
| V* 020685E144511 | 2/6/1985 | - | V - violation | | Removed |
| V* 041078E1470012 | 4/10/1978 | - | V - violation | | Removed |
| V* 999999NO FORM121583E1416 | | | V - violation | | Removed |

## ECB Violation # 38221732L

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38221732L / 043012E2274B01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Cert Accepted |

| Details: | 08V01,32H11,56Y13,67M07: 32H11;REPLACE WORN CAR GUIDE SHOE. 67M07;PROVIDE COMMUNICATION IN CAR TELEPHONE. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $250 | $250 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/30/2012 | 4/30/2012 | 6/15/2012  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |

## ECB Violation # 38220622X

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38220622X / 032712E1514B01 | ELEVATOR - elevator | CLASS - 1 | CLASS - 1 | Cert Accepted |

| Details: | 97X10,40 7: 97;FAILURE TO MAINTAIN BUILDING IN CODE COMPLIANT MANNER;SERVICE EQUIPMENT ELEVATOR PER BC 3001.2;27-987. DOB RECORDS SHOWS THEONLY ELEVATOR DEVICE IN BUILDING AS ACTIVE. UPON INSPECTION THE DEVICE |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $1,000 | $1,000 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 3/27/2012 | 3/27/2012 | 9/21/2012  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 151 | 28-301.1 | |

## ECB Violation # 38219382H

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38219382H / 011012E1514B01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Cert Accepted |

| Details: | 16B1,15M7,58H10,59E1,43I10,60B3,72M7,20I11,23I10,42L10: 16;LOBBY DOOR.23;6TH FLOOR. 42;ELEVATOR STOPS BETWEEN FLOORS. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $250 | $250 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 1/10/2012 | 1/10/2012 | 3/2/2012  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |

## ECB Violation # 38211368P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38211368P / 072510E1514B01 | ELEVATOR - elevator | CLASS - 1 | CLASS - 1 | Not Complied |

| Details: | 97X10,40P7,35Q3. 97-ONLY ELEVATOR IN BLDG IS OUT OF SERVICE THEREBY CREATING CONDITION DANGEROUS TO HUMAN LIFE AS PER 1 RCNY 11-02. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $1,000 | $1,000 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 7/25/2010 | 7/25/2010 | 10/22/2010  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 151 | 28-301.1 | |


**EMPOWER**
NEW YORK

©Copyright 2012 EMPOWER NY

## ECB Violation # 38209549L

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38209549L / 050610E1514B01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Cured |

| Details: | 52K11,68M07,69M07,56Y13,61T15,28H11, 5H11,70O02 | | | |
|---|---|---|---|---|

| Exposure: | Penalty | | Amount Paid | | Balance | |
|---|---|---|---|---|---|---|
| | $0 | | $0 | | $0 | |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 5/6/2010 | 5/6/2010 | 7/2/2010  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |

## ECB Violation # 38201421X

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38201421X / 040609E1514B01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Dismissed |

| Details: | 52K11.68M7.69M7.8V1 | | | |
|---|---|---|---|---|

| Exposure: | Penalty | | Amount Paid | | Balance | |
|---|---|---|---|---|---|---|
| | $0 | | $0 | | $0 | |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/6/2009 | 4/6/2009 | 4/16/2010  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |

## ECB Violation # 38199812N

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38199812N / 122308E2274B01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Not Complied |

| Details: | 16X10,35Q03,60Q03,70O02,77Q03.16X10-REPAIR 6FL HOISTWAY DOOR TO ALLOWCAR TO GO TO FLOOR.35Q03-INSTALL COVERS FOR COVERS FOR ELECTRICAL BOXES IN SHAFTWAY.77Q03-INSTALL GUARD FOR LIGHT UNDER CAR. | | | |
|---|---|---|---|---|

| Exposure: | Penalty | | Amount Paid | | Balance | |
|---|---|---|---|---|---|---|
| | $2,500 | | $0 | | $2,500 | |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/23/2008 | 12/23/2008 | 9/25/2009  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |

## ECB Violation # 38191525Y

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38191525Y / 101508E1514E01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Not Complied |

| Details: | 52K11.35Q3.70O02. | | | |
|---|---|---|---|---|

| Exposure: | Penalty | | Amount Paid | | Balance | |
|---|---|---|---|---|---|---|
| | $2,500 | | $0 | | $2,500 | |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 10/15/2008 | 10/15/2008 | 9/25/2009  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |



## ECB Violation # 38190260N

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38190260N / 091008E1514B01 | ELEVATOR - elevator | CLASS - 2 | CLASS - 2 | Not Complied |

| Details: | 43I10.52K11.100D6.42G11.61T15.68M7.8V1.60X11.12Q3.70O2.100 SURE BSMT DDOOR SADDLE 60 OVERHEAD |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 9/10/2008 | 9/10/2008 | 9/25/2009  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | 251 | 28-301.1 | |

## ECB Violation # 38152612K

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38152612K / 050305E380B01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 85U05/11X10/23X10/01R10/66O02/36D06/05L10/39P16/16P16/66P16 85-DATE OF TAG 4198 11-23-X 10 ELEVATOR NOT RESPONDING TO 6TH HALL CALL 01R10-EMEMERGENCY STOP SWITCH IS CONSTANT PRESSURE TYPE 36D06-DOOR 16P16-BASEM |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $350 | $0 | $350 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 5/3/2005 | 5/3/2005 | 6/17/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38152481J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 8152481J / 05205E1915B01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 20I11/40T7/85BB5/84P7/66O2 20-I-11 REPLACE 4TH FLOOR CRACKED VISION PANEL 40-T-7 PROVIDE SIGN FOR DOOR TO OVERHEAD MACHINE 85-BB-05 FILE & PERFORM FOR 5 YEAR SAFTEY TEST 66-O-2 CLEAN PIT 84-P-7 PROVIDE ACCESS T |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $180 | $0 | $180 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 5/2/2005 | 5/2/2005 | 6/17/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38152284K

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38152284K / 041305E1999B1 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 16M7/85BB5/ 16- PROVIDE DOOR CHECK FOR 6 FLOOR, DOOR, ALSO RESTORE 6 FLOOR BACK IN SERIVE. 85- PERFORM AND FILE A 5 YEAR TEST |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $350 | $350 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/13/2005 | 4/13/2005 | 5/27/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38150624Z

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38150624Z / 020805E1999B5 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 31H01/83BB05/52B14/51M7/38L11/34M7. 83 PERFORM & FILE A 5 YEAR TEST.51-PROVIDE SPIN OUTS CAR & COUNTERWEIGHT.38-REPLACE TOP OF CAR LIGHT.34-PROVIDE MISSING COVER FOR ELECTRICAL BOT IN SHAFTWAY 1 FLOOR. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 2/8/2005 | 2/8/2005 | 3/3/2006  9:00 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38156649M

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38156649M / 010305E1999B1 | ELEVATOR - elevator | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | 21D6/8V2/CEASE USE. 21-RESECURE LOSE INTERLOCKS ON 2,4,5,6 FLRS.INTERLOCKS HOLDING BY ONLY ONE BOLT & DAMAGE CAUSING THE ELEVATOR TO STOP WORKING. HAZARDOUS, LOCKS ONE ABOUT TO BREAK LOSE FROM BULK. 8-ADJUST FL |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $500 | $500 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 1/3/2005 | 1/3/2005 | 5/27/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP8 | 27-987 | Failure to maintain elevator-hazardous |

## ECB Violation # 38156641H

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38156641H / 121604E1999R1 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 85BB5 85- FILE AND PERFORM 5 YEAR TEST. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/16/2004 | 12/16/2004 | 8/26/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38150419J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38150419J / 120104E1999B5 | ELEVATOR - elevator | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | 28I01/16I01/20I11/21D06/31H11/08V01/41G11/72B14/55Y13.CEASE USE.28-I-1 |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $10,000 | $0 | $10,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/1/2004 | | 3/3/2006  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP8 | 27-987 | Failure to maintain elevator-hazardous |



## ECB Violation # 38149961L

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38149961L / 111004E1514C01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 85BB5/28B1/21D6/31H11/20I11/10H11/51K11/41G11/42L11/16B1/52H14/32B3/26T15/32O2/33O2/38O2/39O2/66O2/67O2/68O2/69O2 /71O2-28-CAR DOOR SLAM'S OPEN & CLOSE 21 2,5,4 FL 21, 4 FL 16 BASEMENT DOOR 32 INSTALL |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 11/10/2004 | 11/10/2004 | 3/3/2006  9:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38149623Z

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38149623Z / 110404E380C01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 83X07/85U05/59B07 REPAIR AND RESTORE TO SERVICE SO A FULL INSPECTION COULD BE DONE BY THIS DEPARTMENT. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $350 | $0 | $350 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 11/4/2004 | 11/4/2004 | 5/27/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38149904P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38149904P / 101904E1999B1 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 28I1 16E1 20I11 21D6 3D6 31H11 8V1 41G11 51K11 72B14 55Y13 66O2 28-CAB DOOR SLAMS ON OPEN & CLOSE, ADJUST 16-B FLOOR DOOR RUBBING ADJUST 21-RESECURE INTERLOCKS ON, 5,4 FLOORS & VISION GLASS ON 4 FL 3-RETURN PO |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 10/19/2004 | 10/19/2004 | 8/26/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38146146L

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38146146L / 031304E1514C05 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 85BB5/16D6/21D6/8V1/41G11/55Y13/42L10/52H13/38O2/66O2.85-7/98 16 6TH FL SADDLE & BASEMENT DOOR NOT SELF CLOSSING.21 4TH FL 8 2ND &3RD FL |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $2,500 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 3/13/2004 | 3/13/2004 | 8/26/2005  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38136329P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38136329P / 031203E380C01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Cured |

| Details: | 62O02/ 52Q03/ 54Q03/ 18I12/ 52Q03 - PROVIDE COVER FOR MOTOR LEADS WIRING 54 - PROVIDE COVER FOR EXPOSED WIRES TOP OF BRAKE 18 - BASEMENTH / DOOR |
|---|---|

| Exposure: | Penalty $0 | Amount Paid $0 | Balance $0 |
|---|---|---|---|

| Dates: | Issue Date 3/12/2003 | Date Served 3/12/2003 | Hearing Date / Time 4/25/2003  10:30 AM |
|---|---|---|---|

| Infraction: | Infraction Code BP7 | Section Number 27-987 | Description Failure to maintain elevator |
|---|---|---|---|

## ECB Violation # 34327095H

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34327095H / 060502C12H02 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL 1)BRICKWORK SPALLING MISSING AND DEFECTIVE NORTH CENTER COURT YARD OVER ENTRANCE TO BUILDING 2)LINTELS ROTTED MORTAR MISSING THROUGHOUT FACADE OF BUILDINGS REMEDY OBTA |
|---|---|

| Exposure: | Penalty $10,000 | Amount Paid $0 | Balance $0 |
|---|---|---|---|

| Dates: | Issue Date 6/5/2002 | Date Served 6/5/2002 | Hearing Date / Time |
|---|---|---|---|

| Infraction: | Infraction Code B6A | Section Number 27-127 | Description Failure to maintain exterior building wall-hazardous |
|---|---|---|---|

## ECB Violation # 38122979J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38122979J / 041502E380B01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 35P17-57P17-57O02. |
|---|---|

| Exposure: | Penalty $10,000 | Amount Paid $0 | Balance $10,000 |
|---|---|---|---|

| Dates: | Issue Date 4/15/2002 | Date Served 4/15/2002 | Hearing Date / Time |
|---|---|---|---|

| Infraction: | Infraction Code BP7 | Section Number 27-987 | Description Failure to maintain elevator |
|---|---|---|---|

## ECB Violation # 34317017N

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34317017N / 032802C12H04 | CONSTRUCTION - construc | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | WORK WITHOUT A PERMIT. WORK NOTED: HEAVY DUTY SIDEWALK SHED BEING INSTALLED WITHOUT A PERMT. REMEDY: STOP ALL WORK. FILE PLANS OBTAINS PERMIT FOR SIDEWALK SHED. |
|---|---|

| Exposure: | Penalty $500 | Amount Paid $500 | Balance $0 |
|---|---|---|---|

| Dates: | Issue Date 3/28/2002 | Date Served 3/28/2002 | Hearing Date / Time 5/17/2002  10:30 AM |
|---|---|---|---|

| Infraction: | Infraction Code B04 | Section Number 27-147 | Description Work without a permit |
|---|---|---|---|

## ECB Violation # 34317018P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34317018P / 032802C12H05 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL 1) BRICKWORK SPALLING MISSING AND DEFECTIVE NORTH CENTER COURTYARD ENTRANCE TO BUILDING 5TH STORY. 2) LINTELS ROTTED MORTAR MISSING THROUGHOUT EXTERIOR OF BUILDINGS WI |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $10,000 | $0 | $10,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 3/28/2002 | 3/28/2002 | |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |

## ECB Violation # 34316362J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34316362J / 013002C12H03 | ADMINISTRATIVE - admin | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | CIVIL PENALTY FOR FAILURE TO CERTIFY THE CORRECTION OF A VIOLATION VIOLATION #12001C12H0L*34306319P REMEDY CERTIFY THE CORRECTION OF THIS VIOLATION |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $10,000 | $0 | $10,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 1/30/2002 | 1/30/2002 | |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B9A | 26-126.3 | |
| | B9A | 26-126.3 | Failure to comply with the commissioner's order to file a certificate of correction with the Department of Buildings for Violation |

## ECB Violation # 34306319P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34306319P / 121001C12H04 | PUBLIC ASSEMBLY - assembly | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL. DEFECT NOTED: BRICKS LOOSE; SPALLING AT PARAPER CRACKES BRICKS LOOSE ENTRANCE COURTYARD FACADE MAKE SAFE IMMEDIATELY. REMEDY: OBTAIN PERMIT TO ERECT SIDEWALK SHED. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $10,000 | $0 | $10,000 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/10/2001 | 12/10/2001 | |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B64 | 27-528 | Approved Place of Assembly plans not available for inspection. |

## ECB Violation # 38119876J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38119876J / 112101E380B01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

| Details: | 57O02-35P17-33P17-08V01-05L11-09H12-11Q03-40U1-03O02. 05-BANG HARD ONOPEN 40-NO TAG FOR 5 YEAR TOP OF CAR. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 11/21/2001 | 11/21/2001 | |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |



## ECB Violation # 34305936X

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34305936X / 102201C12DJ02 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Not Complied |

**Details:** FAILURE TO MAINTAIN EXTERIOR BUILDING WALL NOTED BRICKS LOOSE AND SHALLING AT PARAPET WALLS FRONT OF BUILDING AND ENTRANCE WAY COURT YARD. REMEDY: OBTAIN PERMIT ERECT SIDEWALK SHED MAKE SAFE TO PUBLIC MAINTAIN

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 10/22/2001 | 10/22/2001 | |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |

## ECB Violation # 34288947J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34288947J / 061301C12FG05 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Not Complied |

**Details:** FAILURE TO MAINTAIN EXTERIOR BLDG WALL. HAZARDOUS CONDITIONS- BRICK LOOSE & SHALLING AT PARAPET WALLS THROUGH FRONT OF BLDG AND ENTRANCE WAY-COURT YARD. REMEDY: OBTAIN PERMITS-SIDEWALK SHED-MAKE SAFE MAINTAIN

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $3,113 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 6/13/2001 | 6/13/2001 | 7/27/2001 10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |

## ECB Violation # 38097255M

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38097255M / 042600E1182C01 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Not Complied |

**Details:** 01R12,08V1,11Q3,22L6,23U16,37G12,47B15,57O2, 01R12

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $2,500 | $3,394 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/26/2000 | 4/26/2000 | 6/9/2000 10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 34188119X

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34188119X / 060199C12W13 | CONSTRUCTION - construc | NON-HAZARDOUS | NON-HAZARDOUS | Dismissed |

**Details:** FAILURE TO MAINTAIN THE CONDITION OF THE FRONT EXTERIOR BUILDING WALLMISSING AND CRACKED ERAMENTAL STONE AT THE FOURTH AND SIXTH FLS POOR WORKING MENSHIP MORTOAR JOINTS THROUGHOUT CORRODED SAFFING WINDOW LINTE

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $0 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 6/1/1999 | 6/1/1999 | 7/23/1999 10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B06 | 27-127 | Failure to maintain exterior building wall |



## ECB Violation # 38087010P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38087010P / 051099E1182C03 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Dismissed |

| Details: | 1R,8V,11Q,22L,23U,29M,28L,30O,,35P,33P,57O,8P. NEEDS CONSTANT PRESURE,COTTER PIN PACKING, BASEMENT LEVEL. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $0 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 5/10/1999 | 5/10/1999 | 7/30/1999  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 34165330J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 34165330J / 041598CNELA03 | CONSTRUCTION - construc | HAZARDOUS | HAZARDOUS | Not Complied |

| Details: | FAILURE TO MAINTAIN EXTERIOR BUILDING WALL. DEFECT IS: NORTH WALL OF THE N.E WING. ORNIMENTAL STONE WORK AT VARIOUS LOCATION IS FLAKING OFF. REMEDY: PROVIDE SIDEWALK SHED. MAKE ALL NECESSARY REPAIRS. SUBMIT A L |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $800 | $1,189 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 4/15/1998 | 4/15/1998 | 10/23/1998  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B6A | 27-127 | Failure to maintain exterior building wall-hazardous |

## ECB Violation # 38067244J

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38067244J / 120697E5Y1275C06 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Cured |

| Details: | 08V,28B,75U,57O. 08-ADJUST STOPS 28-ADJUST GUIDE SHOES 75-PERFORM ANDFILE TEST 57-CLEAN PIT. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $0 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 12/6/1997 | 12/6/1997 | 1/23/1998  10:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | BP7 | 27-987 | Failure to maintain elevator |

## ECB Violation # 38030487P

| ECB/DOB Violation # | ECB Type | Issuing Unit | Severity | Status |
|---|---|---|---|---|
| 38030487P / 011193E1445C05 | ELEVATOR - elevator | NON-HAZARDOUS | NON-HAZARDOUS | Cured |

| Details: | 28B,35P,57O. 28 REMOVE NOISE FROM GUIDE SHOES. 35.PROVIDE ACCESS TOMOTOR ROOM. |
|---|---|

| Exposure: | Penalty | Amount Paid | Balance |
|---|---|---|---|
| | $0 | $0 | $0 |

| Dates: | Issue Date | Date Served | Hearing Date / Time |
|---|---|---|---|
| | 1/11/1993 | 2/2/1993 | 3/19/1993  8:30 AM |

| Infraction: | Infraction Code | Section Number | Description |
|---|---|---|---|
| | B8G | 27-127 | FAILURE TO MAINTAIN ELEVATOR |



# Building Code Compliance Summary

## DOB Boiler Compliance

| Device # | Annual Inspection | | Latest City Inspection |
|---|---|---|---|
| 14869-01 |  | Nov 14th, 2011<br>NO DEFECTS | Aug 27th, 2003<br>FUEL STORAGE 200752514 |

## DEP Boiler Registration

| Application # | Issue Date | Expire Date | Current Status |
|---|---|---|---|
| CA282583X | Dec 9th, 1999 | Dec 9th, 2001 |  |

## DOB Facade Compliance

*There are no facade records for this building.*

## DOB Elevator Compliance

| Device # | Category 1 (1yr) | | Category 5 (5yr) | | Latest City Inspection | |
|---|---|---|---|---|---|---|
| 2P935 | ! | Mar 19th, 12<br>Rejected | OK | Jul 20th, 10<br>Satisfactory | ! | SURVEY<br>Sep 28th, 12<br>Violation |

# Building Code Compliance Detail
### Pg 195 of 206

## DOB Elevator Inspections

| Device # | Inspect Date | Inspect Type | Result | Inspected By |
|---|---|---|---|---|
| 2P935 | 9/28/2012 | SURVEY | VIOLATION FILED | Badge #2274 |
| 2P935 | 9/25/2012 | ROUTINE | DEFECT FOUND | Badge #9027 |
| 2P935 | 6/1/2012 | SURVEY | NO VIOLATION | Badge #2274 |
| 2P935 | 4/30/2012 | SURVEY | VIOLATION FILED | Badge #2274 |
| 2P935 | 3/27/2012 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 3/19/2012 | CATEGORY 1 (1YR) | REJECTED- DISAPPROVE | ELEVATOR TESTING CO INC |
| 2P935 | 3/9/2012 | VIOLATION REINSPECTION | NO VIOLATION | Badge #380 |
| 2P935 | 1/10/2012 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 11/16/2011 | ROUTINE | NO ACCESS TO DEVICE | Badge #9027 |
| 2P935 | 9/6/2011 | CATEGORY 1 (1YR) | ACCEPTED- CORRECTION | ROTAVELE ELEVATOR INC |
| 2P935 | 7/21/2011 | CATEGORY 1 (1YR) | ACCEPTED- UNSATISFACTORY | ELEVATOR TESTING CO INC |
| 2P935 | 11/15/2010 | ROUTINE | NO VIOLATION | Badge #9028 |
| 2P935 | 8/12/2010 | ROUTINE | NO ACCESS TO DEVICE | Badge #9027 |
| 2P935 | 7/25/2010 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 7/20/2010 | CATEGORY 1 (1YR) | UNSATISFACTORY | TECHNICAL ELEV TEST INC |
| 2P935 | 7/20/2010 | CATEGORY 5 (5YR) | SATISFACTORY | TECHNICAL ELEV TEST INC |
| 2P935 | 5/6/2010 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 12/9/2009 | ROUTINE | DEFECT FOUND | Badge #9027 |
| 2P935 | 10/13/2009 | CATEGORY 1 (1YR) | ACCEPTED- CORRECTION | ROTAVELE ELEVATOR INC |
| 2P935 | 7/21/2009 | CATEGORY 1 (1YR) | UNSATISFACTORY | ELEVATOR TESTING CO INC |
| 2P935 | 4/6/2009 | ROUTINE | VIOLATION FILED | Badge #1514 |
| 2P935 | 4/3/2009 | COMPLAINT | INCOMPLETE INSPECTION | Badge #1514 |
| 2P935 | 1/16/2009 | COMPLAINT | NO VIOLATION | Badge #2223 |
| 2P935 | 12/23/2008 | SURVEY | VIOLATION FILED | Badge #2274 |
| 2P935 | 11/19/2008 | COMPLAINT | NO VIOLATION | Badge #1514 |
| 2P935 | 10/15/2008 | SURVEY | VIOLATION FILED | Badge #1514 |
| 2P935 | 9/30/2008 | COMPLAINT | NO VIOLATION | Badge #1514 |
| 2P935 | 9/29/2008 | ROUTINE | DEFECT FOUND | Badge #9444 |
| 2P935 | 9/29/2008 | COMPLAINT | INCOMPLETE INSPECTION | Badge #1514 |
| 2P935 | 9/15/2008 | CATEGORY 1 (1YR) | UNSATISFACTORY | ROTAVELE ELEVATOR INC |
| 2P935 | 9/10/2008 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 8/15/2008 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 1/4/2008 | ROUTINE | DEFECT FOUND | Badge #9444 |
| 2P935 | 10/30/2007 | COMPLAINT | NO VIOLATION | Badge #1514 |
| 2P935 | 8/24/2007 | 2 YEAR | SATISFACTORY | PRECISION ELEVATOR CORP |
| 2P935 | 6/14/2007 | CATEGORY 1 (1YR) | SATISFACTORY | PRECISION ELEVATOR CORP |
| 2P935 | 5/18/2007 | COMPLAINT | NO VIOLATION | Badge #1514 |
| 2P935 | 4/24/2007 | COMPLAINT | NO VIOLATION | Badge #1473 |
| 2P935 | 2/13/2007 | ROUTINE | DEFECT FOUND | Badge #9444 |
| 2P935 | 12/1/2006 | ROUTINE | NO ACCESS TO DEVICE | Badge #9444 |
| 2P935 | 10/14/2006 | SURVEY | NO VIOLATION | Badge #247 |
| 2P935 | 6/3/2006 | CATEGORY 1 (1YR) | SATISFACTORY | IMPERIAL ELEVATOR CORP |
| 2P935 | 4/5/2006 | ROUTINE | DEFECT FOUND | Badge #9444 |
| 2P935 | 6/28/2005 | ROUTINE | DEFECT FOUND | Badge #9444 |
| 2P935 | 6/5/2005 | CATEGORY 1 (1YR) | UNSATISFACTORY | IMPERIAL ELEVATOR CORP |
| 2P935 | 6/1/2005 | CATEGORY 5 (5YR) | SATISFACTORY | IMPERIAL ELEVATOR CORP |
| 2P935 | 6/1/2005 | 2 YEAR | SATISFACTORY | IMPERIAL ELEVATOR CORP |
| 2P935 | 5/25/2005 | ROUTINE | NO ACCESS TO DEVICE | Badge #9444 |
| 2P935 | 5/9/2005 | CATEGORY 1 (1YR) | SATISFACTORY | IMPERIAL ELEVATOR CORP |
| 2P935 | 5/3/2005 | COMPLAINT | VIOLATION FILED | Badge #380 |
| 2P935 | 5/2/2005 | COMPLAINT | VIOLATION FILED | Badge #1915 |
| 2P935 | 4/13/2005 | COMPLAINT | VIOLATION FILED | Badge #1999 |
| 2P935 | 2/22/2005 | COMPLAINT | NO VIOLATION | Badge #1514 |
| 2P935 | 2/8/2005 | SURVEY | VIOLATION FILED | Badge #1999 |
| 2P935 | 2/7/2005 | COMPLAINT | NO VIOLATION | Badge #1999 |
| :P935 | 1/3/2005 | COMPLAINT | VIOLATION FILED | Badge #1999 |
| 2P935 | 12/17/2004 | SURVEY | VIOLATION FILED | Badge #1999 |



## DOB Elevator Inspections (continued)

| Device # | Inspect Date | Inspect Type | Result | Inspected By |
|---|---|---|---|---|
| 2P935 | 12/16/2004 | SURVEY | NO VIOLATION | Badge #1999 |
| 2P935 | 12/16/2004 | COMPLAINT | VIOLATION FILED | Badge #1999 |
| 2P935 | 12/8/2004 | COMPLAINT | NO VIOLATION | Badge #1473 |
| 2P935 | 12/1/2004 | COMPLAINT | VIOLATION FILED | Badge #1999 |
| 2P935 | 11/10/2004 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 11/4/2004 | COMPLAINT | VIOLATION FILED | Badge #380 |
| 2P935 | 10/19/2004 | COMPLAINT | VIOLATION FILED | Badge #1999 |
| 2P935 | 3/17/2004 | ROUTINE | DEFECT FOUND | Badge #9444 |
| 2P935 | 3/13/2004 | COMPLAINT | VIOLATION FILED | Badge #1514 |
| 2P935 | 7/30/2003 | CATEGORY 1 (1YR) | UNSATISFACTORY | DYNAMIC ELEVATOR CORP. |
| 2P935 | 5/9/2003 | ROUTINE | NO ACCESS TO DEVICE | Badge #9444 |
| 2P935 | 3/12/2003 | ROUTINE | VIOLATION FILED | Badge #380 |
| 2P935 | 11/19/2002 | VIOLATION REINSPECTION | VIOLATION FILED | Badge #380 |
| 2P935 | 9/4/2002 | CATEGORY 1 (1YR) | SATISFACTORY | DYNAMIC ELEVATOR CORP. |
| 2P935 | 8/16/2002 | ROUTINE | DEFECT FOUND | Badge #9011 |
| 2P935 | 4/15/2002 | COMPLAINT | VIOLATION FILED | Badge #380 |
| 2P935 | 2/20/2002 | COMPLAINT | NO VIOLATION | Badge #1719 |
| 2P935 | 11/28/2001 | ROUTINE | NO ACCESS TO DEVICE | Badge #9011 |
| 2P935 | 11/21/2001 | ROUTINE | VIOLATION FILED | Badge #380 |
| 2P935 | 8/13/2001 | CATEGORY 1 (1YR) | UNSATISFACTORY | DYNAMIC ELEVATOR CORP. |
| 2P935 | 6/27/2001 | ROUTINE | NO ACCESS TO DEVICE | Badge #9444 |
| 2P935 | 8/30/2000 | ROUTINE | NO VIOLATION | Badge #1152 |
| 2P935 | 8/1/2000 | CATEGORY 1 (1YR) | SATISFACTORY | DYNAMIC ELEVATOR CORP. |
| 2P935 | 4/26/2000 | ROUTINE | VIOLATION FILED | Badge #1182 |
| 2P935 | 9/14/1999 | CATEGORY 1 (1YR) | UNSATISFACTORY | DYNAMIC ELEVATOR CORP. |
| 2P935 | 5/10/1999 | ROUTINE | VIOLATION FILED | Badge #1182 |
| 2P935 | 5/4/1999 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 8/5/1998 | ROUTINE | DEFECT FOUND | Badge #9013 |
| 2P935 | 4/6/1998 | CATEGORY 5 (5YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 4/6/1998 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 12/6/1997 | ROUTINE | VIOLATION FILED | Badge #1275 |
| 2P935 | 6/25/1997 | CATEGORY 1 (1YR) | SATISFACTORY | ORION ELEVATOR INC |
| 2P935 | 4/29/1997 | 2 YEAR | SATISFACTORY | ORION ELEVATOR INC |
| 2P935 | 7/23/1996 | CATEGORY 1 (1YR) | SATISFACTORY | ORION ELEVATOR INC |
| 2P935 | 11/20/1995 | ROUTINE | NO VIOLATION | Badge #1119 |
| 2P935 | 6/21/1995 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 7/19/1994 | ROUTINE | NO VIOLATION | Badge #1430 |
| 2P935 | 9/15/1993 | ROUTINE | NO VIOLATION | Badge #1450 |
| 2P935 | 6/16/1993 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 1/11/1993 | ROUTINE | VIOLATION FILED | Badge #1445 |
| 2P935 | 9/7/1992 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 4/2/1992 | ROUTINE | NO VIOLATION | Badge #1430 |
| 2P935 | 3/8/1991 | ROUTINE | VIOLATION PENDING | Badge #1450 |
| 2P935 | 1/3/1991 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 1/3/1991 | CATEGORY 5 (5YR) | SATISFACTORY | Badge # |
| 2P935 | 5/9/1990 | CATEGORY 1 (1YR) | SATISFACTORY | GUARDIAN ELEVATOR SYS INC |
| 2P935 | 2/14/1990 | ROUTINE | VIOLATION FILED | Badge #1366 |
| 2P935 | 9/1/1989 | CATEGORY 1 (1YR) | SATISFACTORY | FLYNN HILL ELEVATOR CORP |
| 2P935 | 5/26/1989 | CATEGORY 5 (5YR) | SATISFACTORY | Badge # |
| 2P935 | 7/20/1988 | ROUTINE | VIOLATION FILED | Badge #1445 |
| 2P935 | 1/1/1988 | CATEGORY 1 (1YR) | PENALTY PAID | DOB LL10/81 SUPERVISOR |

## DEP Boiler Records

| DEP Number | Issue Date | Expire Date | Certificate Type | Make / Model | # Units | Fuel | Secondary |
|---|---|---|---|---|---|---|---|
| A282583X | 12/9/1999 | 12/9/2001 | CERT. TO OPERATE | FEDERAL FSF125 | 1 | NO. 4 OIL | |
| 14869-01 | | 11/14/2011 | | BENDJOUYA MICHAEL | | | NO DEFECTS |
| 14869-01 | | 9/23/2010 | | COPPOLA MICHAEL | | | NO DEFECTS |
| 14869-01 | | 11/12/2009 | | COPPOLA MICHAEL | | | NO DEFECTS |
| 14869-01 | | 12/15/2004 | | ROSE ROBERT | | | OTHER |
| 14869-01 | | 6/3/2004 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14869-01 | | 10/6/2003 | | COMER KEVIN | | | NO DEFECTS |
| 14869-01 | | 8/27/2003 | | BERLINGER 1936 (CB) | | | OTHER |
| 14869-01 | | 6/3/2002 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14869-01 | | 8/27/2001 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14869-01 | | 6/23/2000 | | CHUBB GROUP OF INSURANCE CO | | | NO DEFECTS |
| 14869-01 | | 10/26/1999 | | MASINI BRUNO | | | NO DEFECTS |
| 14869-01 | | 12/22/1998 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14869-01 | | 12/11/1997 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14869-01 | | 12/23/1996 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14869-01 | | 12/5/1995 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14869-01 | | 12/26/1994 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14869-01 | | 12/22/1993 | | MULLIGAN JOHN | | | NO DEFECTS |
| 14869-01 | | 12/29/1992 | | MULLIGAN JOHN | | | NO DEFECTS |

# Department of Finance Summary

| Current Balance: | **$242,541** | | Current Water Balance: | **$126,082** |
|---|---|---|---|---|

## DOF Current Open Charges by Type



## DOF Payment Totals By Type - Past Year



*There are no DOF payments available for the past 12 months.*

## DOF Payments - Past 12 Months



## Recent Payments



## Water Payments - Past 12 Months



## Property Value



EMPOWER
NEW YORK

© Copyright 2012 EMPOWER NY

## Department of Finance Detail

### DOF Open Charges

| Account | Period Date | Due Date | Amount | Interest | Discount | Total |
|---|---|---|---|---|---|---|
| DOF - Property Tax | 1/1/2013 | 1/1/2013 | $72,659.08 | $0.00 | $0.00 | $72,659.08 |
| DOB - Elevator | 9/25/2012 | 1/1/2013 | $100.00 | $0.00 | $0.00 | $100.00 |
| DOF - Property Tax | 7/1/2012 | 7/1/2012 | $72,659.08 | $4,847.67 | $0.00 | $77,506.75 |
| DOB - Elevator | 3/9/2012 | 7/1/2012 | $100.00 | $6.67 | $0.00 | $106.67 |
| DOF - Property Tax | 7/1/2011 | 7/1/2011 | $70,063.18 | $19,454.18 | $0.00 | $89,517.36 |
| DOB - Elevator | 11/15/2010 | 4/1/2011 | $100.00 | $33.63 | $0.00 | $133.63 |
| DOH - Inspection | 6/4/2010 | 7/1/2010 | $93.09 | $45.28 | $0.00 | $138.37 |
| DOB - Elevator | 12/9/2009 | 4/1/2010 | $65.00 | $38.98 | $0.00 | $103.98 |
| HPD - Emergency Repair | 5/20/2009 | 1/1/2010 | $671.16 | $138.51 | $0.00 | $809.67 |
| HPD - Emergency Repair | 5/19/2009 | 1/1/2010 | $111.04 | $22.92 | $0.00 | $133.96 |
| HPD - Emergency Repair | 5/6/2009 | 1/1/2010 | $58.39 | $12.07 | $0.00 | $70.46 |
| DOB - Elevator | 4/6/2009 | 7/1/2009 | $65.00 | $54.02 | $0.00 | $119.02 |
| DHCR - Rent Stabilization | 4/1/2009 | 1/1/2011 | $700.00 | $277.85 | $0.00 | $977.85 |
| DOH - Inspection | 3/6/2009 | 7/1/2009 | $92.66 | $71.06 | $0.00 | $163.72 |

### Open Water Charges

| Account | Charge Type | Charge Amount |
|---|---|---|
| 5000222845001 | Late Payment Fee | $7,036.01 |
| 5000222845001 | Utility | $119,045.69 |

EXHIBIT I

143rd Street Bronx R&R, LLC.
Pro Forma Profit or Loss Statement
November 8, 2012

|  | Total | Assumptions |
|---|---|---|
| **Revenue** | | |
| Rent Stabilized Tenant Income | 558,252.24 | Tenant Rent Stable |
| We Care Housing Income | 1,528,800.00 | New We Care rate 2 $1,950 |
| Total Revenue | 2,087,052.24 | |
| **OPERATING COSTS** | | |
| Insurance | 41,052.00 | Group insurance amount |
| Payroll | 50,400.00 | New Staffing guide |
| Payroll taxes | 5,544.00 | 11% of Payroll |
| Heating Fuel | 225,613.15 | Receiver amounts |
| Utilities | 100,395.89 | Receiver amounts |
| Payroll Fees | 912.00 | ADP Group Price |
| Employer W/H | - | N/A |
| Employee W/H | - | N/A |
| Broker Fee | - | All new apartment rented by We Care |
| Miscellaneous | 1,535.04 | Receiver amounts |
| Elevator Contract | - | Group agreement no contract required |
| Exterminating | 2,580.00 | Group agreement amount |
| Plumbing Repairs | 3,500.00 | |
| Repairs | 125,223.13 | 6% FFE |
| Receiver Expenses | - | N/A |
| Reimbursed Expense | - | N/A |
| Supplies | 49,499.44 | |
| Elevator Service | 4,800.00 | Group agreement monthly amount |
| Management Fee | - | |
| License & Permits | 1,406.00 | |
| Bank Charges | 48.00 | |
| Misc. Admin | 561.05 | |
| Lease Renewals Fee | - | All new apartment rented by We Care |
| Legal Fees | 28,640.15 | |
| Violations | 700.00 | |
| Sanitation | 6,260.00 | |
| **Total Operating Expense** | 648,669.85 | |
| **Net Operating Income** | 1,438,382.39 | |
| **Total Debt Service** | 738,018.96 | |
| **Cash Flow Items** | | |
| Escrow Real Estate Tax | 237,011.00 | |
| Escrow Water | 118,270.12 | |
| **Total Cash Flow Items:** | 355,281.12 | |
| **Net Cash Flow** | 345,082.31 | |

New Plan:

| | | |
|---|---|---|
| Standard Tenant | $ 46,521.02 | |
| We Care Housing  65 Apts. @ $1,960 | 127,400.00 | |
| New Rent Roll: | **173,921.02** | |
| Vacants | 0 | |

| | | |
|---|---|---|
| Current Rent Roll | $ 104,821.02 | |
| We Care Housing Current 55 Apts. | 58,300.00 | |
| Standard Tenant | $ 46,521.02 | |
| Vacants | 10 | |

**243rd Street Bronx R&R, LLC.**
Profit & Loss Statement
Trailing 12 Month P&L

| | September 2011 | October 2011 | November 2011 | December 2011 | January 2012 | February 2012 | March 2012 | April 2012 | May 2012 | June 2012 | July 2012 | August 2012 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | |
| Tenant Income | 102,675.75 | 100,316.97 | 96,743.74 | 104,821.02 | 105,162.06 | 98,937.07 | 113,750.79 | 115,761.07 | 45,263.20 | 95,770.06 | 113,186.29 | 174,422.49 | 1,266,810.51 |
| Other Income | 1,966.64 | 1,270.64 | 983.32 | 395.00 | | | | | | | | | 4,615.60 |
| **Total Revenue** | 104,642.39 | 101,587.61 | 97,727.06 | 105,216.02 | 105,162.06 | 98,937.07 | 113,750.79 | 115,761.07 | 45,263.20 | 95,770.06 | 113,186.29 | 174,422.49 | 1,271,426.11 |
| **OPERATING COSTS** | | | | | | | | | | | | | |
| Insurance | 7,779.53 | 15,559.06 | 7,987.13 | | 7,779.53 | 7,779.53 | | 1,809.00 | 79,411.72 | 13,981.00 | | 212.40 | 142,298.90 |
| Payroll | 4,521.99 | 4,234.58 | 4,369.09 | 4,353.55 | 3,508.45 | 3,508.45 | 4,466.03 | 3,572.82 | 4,466.03 | 4,097.82 | 3,572.82 | 4,729.74 | 49,379.92 |
| Payroll Taxes | | 4,210.08 | | 3,487.00 | 3,487.00 | | | | | | | 2,228 | 404.49 |
| Heating Fuel | 4,769.26 | 4,681.81 | 10,010.37 | 23,871.05 | 52,679.17 | 39,748.11 | 21,130.73 | 13,210.33 | 13,669.00 | | | | 225,613.15 |
| Utilities | 332.50 | 5,078.55 | 14,734.50 | 8,852.54 | 8,230.89 | 8,531.37 | 7,137.11 | 7,158.30 | 7,548.21 | 5,815.88 | 3,192.41 | 11,935.58 | 100,395.89 |
| Payroll Fees | 86.07 | 283.50 | 47.50 | 308.00 | 309.10 | 302.50 | 242.00 | 205.70 | 7,324.15 | | | 2,873.40 | 2,873.40 |
| Employee W/H | 1,540.06 | 557.00 | 566.05 | 558.40 | 562.20 | 714.12 | 449.10 | 432.20 | 345.76 | 169.40 | 219.45 | 469.25 | 6,522.42 |
| Employee W/H | | 1,108.82 | 1,124.31 | 1,140.45 | 976.60 | 916.75 | 1,177.97 | 942.38 | 1,177.97 | 942.38 | 345.76 | 1,212.76 | 13,202.83 |
| Broker Fee | | | | | | | | 1,650.00 | | | | | 13,202.83 |
| Miscellaneous | | | | | | | | | | | 942.38 | | 5,150.00 |
| Elevator Contract | 680.47 | 1,262.95 | 609.70 | 936.32 | 5,160.68 | 9,512.95 | 1,279.28 | 1,100.00 | 1,192.18 | 2,400.00 | 883.00 | 1,533.04 | 15,115.00 |
| Exterminating | | 3,500.00 | | | 10,547.28 | 936.32 | 1,279.28 | 1,100.00 | 2,660.45 | | 652.04 | 3,157.38 | 33,517.20 |
| Plumbing Repairs | | 12,977.71 | | | 609.70 | 609.70 | 609.70 | 609.70 | 609.70 | 609.70 | 1,399.04 | | 9,483.00 |
| Repairs | 10,737.66 | 18,210.08 | | 5,749.21 | | | 26.00 | | | | | 609.70 | 3,500.00 |
| Receiver Expenses | | | | | 17,373.22 | 6,079.94 | 17,016.69 | 14,878.74 | 10,303.69 | 15,197.12 | | | 168,582.22 |
| Reimbursed Expense | 441.97 | 815.42 | 330.00 | 297.00 | 1,580.97 | 2,376.84 | 885.00 | | | 6,275.97 | | 297.00 | 297.00 |
| Supplies | 1,969.27 | 3,711.93 | 3,677.49 | 3,421.54 | 4,192.73 | 4,470.77 | 3,084.04 | 422.89 | 5,815.88 | 6,500.00 | 3,192.41 | | 6,430.00 |
| Elevator Service | 767.57 | 248.40 | | 255.86 | 3,348.31 | 8,356.43 | | | | | 4,258.64 | | 49,499.44 |
| Management Fee | | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 14,029.95 | 6,500.00 | | 6,500.00 | 7,591.14 | | 80,121.09 | 80,121.09 |
| License & Permits | 430.00 | 6,500.00 | 6,500.00 | 270.00 | | 200.00 | 200.00 | 6,500.00 | 6,500.00 | 180.00 | 6,500.00 | | 6,122.21 |
| Bank Charges | 12.00 | | | | | 26.00 | 24.00 | | | 12.00 | 300.00 | 1,406.00 | 1,406.00 |
| Misc Admin | | | | | | | | | 138.16 | | | 48.00 |
| Legal Fees | 1,425.00 | 2,505.00 | 1,695.99 | 1,925.00 | 5,103.75 | | | 422.89 | | | | 561.05 |
| Lease Renewals Fee | 755.00 | | 4,145.00 | 3,249.40 | | 6,077.00 | | 555.00 | | | 7,550.99 |
| Violations | | | | | 250.00 | 2,135.00 | | 885.00 | 555.00 | 1,945.00 | 3,790.00 | 28,640.15 |
| Sanitation | | 2,580.00 | | | 1,830.00 | | 600.00 | | 250.00 | 250.00 | 200.00 | 700.00 |
| **Total Operating Expense** | 43,524.35 | 71,740.61 | 68,765.79 | 63,126.30 | 109,909.57 | 83,069.68 | 97,228.12 | 90,804.72 | 124,686.76 | 72,528.32 | 73,861.71 | 84,672.37 | 950,094.59 |
| **Net Operating Income** | 61,118.04 | 29,847.00 | 28,961.27 | 42,282.96 | (4,747.51) | 15,867.39 | 16,522.67 | 24,956.35 | (79,423.56) | 22,528.32 | 39,324.58 | 89,750.12 | 321,331.52 |
| **Total Debt Service** | | | | | | | | | | | | | |
| **Net Operating Income** | 61,118.04 | 29,847.00 | 28,961.27 | 42,089.72 | (4,747.51) | 15,867.39 | 16,522.67 | 24,956.35 | (79,423.56) | 22,528.32 | 39,324.58 | 89,750.12 | 321,331.52 |
| **Cash Flow Items:** | | | | | | | | | | | | | |
| SEC Payable | | | | (193.24) | | | | | | | | | (193.24) |
| **Total Cash Flow Items:** | | | | (193.24) | | | | | | | | | (193.24) |
| **Net Cash Flow** | 61,118.04 | 29,847.00 | 28,961.27 | 42,089.72 | (4,747.51) | 15,867.39 | 16,522.67 | 24,956.35 | (79,423.56) | 22,528.32 | 39,324.58 | 89,750.12 | 321,524.76 |
| **Rent Roll 122 Apartments** | 126,950.09 | 101,158.65 | 100,769.62 | 104,821.02 | 114,498.11 | 112,279.35 | 110,926.15 | 107,919.67 | 107,034.23 | 108,065.24 | 113,774.21 | 113,214.42 | 6,260.00 |
| Vacant | | 10 | 10 | 10 | 12 | 13 | 15 | 13 | 13 | 8 | 11 | | |
| Average Apartment Rent | 1,103.91 | 879.64 | 899.73 | 1,022.30 | 1,017.67 | 954.22 | | 981.97 | 991.42 | 998.02 | 1,019.95 | | |
| Standard Tenant (W/O We Care) | 1,144.17 | 714.31 | 745.08 | 816.16 | 985.93 | 974.56 | 954.22 | 902.49 | 921.58 | 940.24 | 980.61 | | |

EXHIBIT J

### 243rd Street Bronx R&R, LLC.

# Mortgage Amortization Schedule With Lender Liability Claim

#### November 7, 2012

| | Date | Contract Interest Rate | Payment | Contract Interest Amount | Principal Amount | Principal Balance |
|---|---|---|---|---|---|---|
| | | | | | | 7,700,000.00 |
| 48 | 7/1/2011 | 6.520% | 61,501.58 | 41,836.67 | 19,664.91 | 7,680,335.09 |
| 49 | 8/1/2011 | 6.520% | 61,501.58 | 41,729.82 | 19,771.76 | 7,660,563.33 |
| 50 | 9/1/2011 | 6.520% | 61,501.58 | 41,622.39 | 19,879.19 | 7,640,684.14 |
| 51 | 10/1/2011 | 6.520% | 61,501.58 | 41,514.38 | 19,987.20 | 7,620,696.95 |
| 52 | 11/1/2011 | 6.520% | 61,501.58 | 41,405.79 | 20,095.79 | 7,600,601.15 |
| 53 | 12/1/2011 | 6.520% | 61,501.58 | 41,296.60 | 20,204.98 | 7,580,396.17 |
| 54 | 1/1/2012 | 6.520% | 61,501.58 | 41,186.82 | 20,314.76 | 7,560,081.41 |
| 55 | 2/1/2012 | 6.520% | 61,501.58 | 41,076.44 | 20,425.14 | 7,539,656.27 |
| 56 | 3/1/2012 | 6.520% | 61,501.58 | 40,965.47 | 20,536.11 | 7,519,120.16 |
| 57 | 4/1/2012 | 6.520% | 61,501.58 | 40,853.89 | 20,647.69 | 7,498,472.47 |
| 58 | 5/1/2012 | 6.520% | 61,501.58 | 40,741.70 | 20,759.88 | 7,477,712.59 |
| 59 | 6/1/2012 | 6.520% | 61,501.58 | 40,628.91 | 20,872.67 | 7,456,839.91 |
| 60 | 7/1/2012 | 6.520% | 61,501.58 | 40,515.50 | 20,986.08 | 7,435,853.83 |
| 61 | 8/1/2012 | 6.520% | 61,501.58 | 40,401.47 | 21,100.11 | 7,414,753.72 |
| 62 | 9/1/2012 | 6.520% | 61,501.58 | 40,286.83 | 21,214.75 | 7,393,538.97 |
| 63 | 10/1/2012 | 6.520% | 61,501.58 | 40,171.56 | 21,330.02 | 7,372,208.95 |
| 64 | 11/1/2012 | 6.520% | 61,501.58 | 40,055.67 | 21,445.91 | 7,350,763.04 |
| 65 | 12/1/2012 | 6.520% | 61,501.58 | 39,939.15 | 21,562.43 | 7,329,200.60 |
| 66 | 1/1/2013 | 6.520% | 61,501.58 | 39,821.99 | 21,679.59 | 7,307,521.01 |
| 67 | 2/1/2013 | 6.520% | 61,501.58 | 39,704.20 | 21,797.38 | 7,285,723.63 |
| 68 | 3/1/2013 | 6.520% | 61,501.58 | 39,585.77 | 21,915.81 | 7,263,807.82 |
| 69 | 4/1/2013 | 6.520% | 61,501.58 | 39,466.69 | 22,034.89 | 7,241,772.93 |
| 70 | 5/1/2013 | 6.520% | 61,501.58 | 39,346.97 | 22,154.61 | 7,219,618.31 |
| 71 | 6/1/2013 | 6.520% | 61,501.58 | 39,226.59 | 22,274.99 | 7,197,343.33 |
| 72 | 7/1/2013 | 6.520% | 61,501.58 | 39,105.57 | 22,396.01 | 7,174,947.31 |
| 73 | 8/1/2013 | 6.520% | 61,501.58 | 38,983.88 | 22,517.70 | 7,152,429.61 |
| 74 | 9/1/2013 | 6.520% | 61,501.58 | 38,861.53 | 22,640.05 | 7,129,789.57 |
| 75 | 10/1/2013 | 6.520% | 61,501.58 | 38,738.52 | 22,763.06 | 7,107,026.51 |
| 76 | 11/1/2013 | 6.520% | 61,501.58 | 38,614.84 | 22,886.74 | 7,084,139.77 |
| 77 | 12/1/2013 | 6.520% | 61,501.58 | 38,490.49 | 23,011.09 | 7,061,128.69 |
| 78 | 1/1/2014 | 6.520% | 61,501.58 | 38,365.47 | 23,136.11 | 7,037,992.57 |
| 79 | 2/1/2014 | 6.520% | 61,501.58 | 38,239.76 | 23,261.82 | 7,014,730.75 |
| 80 | 3/1/2014 | 6.520% | 61,501.58 | 38,113.37 | 23,388.21 | 6,991,342.54 |
| 81 | 4/1/2014 | 6.520% | 61,501.58 | 37,986.29 | 23,515.29 | 6,967,827.26 |
| 82 | 5/1/2014 | 6.520% | 61,501.58 | 37,858.53 | 23,643.05 | 6,944,184.20 |
| 83 | 6/1/2014 | 6.520% | 61,501.58 | 37,730.07 | 23,771.51 | 6,920,412.69 |
| 84 | 7/1/2014 | 6.520% | 6,920,412.69 | | | - |

### 243rd Street Bronx R&R, LLC.
## Mortgage Amortization Schedule Without Lender Liability Claim
#### November 7, 2012

| | Date | Contract Interest Rate | Payment | Contract Interest Amount | Principal Amount | Principal Balance |
|---|---|---|---|---|---|---|
| | | | | | | 9,760,000.00 |
| 1 | 8/1/2007 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 2 | 9/1/2007 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 3 | 10/1/2007 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 4 | 11/1/2007 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 5 | 12/1/2007 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 6 | 1/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 7 | 2/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 8 | 3/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 9 | 4/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 10 | 5/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 11 | 6/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 12 | 7/1/2008 | 6.520% | 53,029.33 | 53,029.33 | - | 9,760,000.00 |
| 13 | 8/1/2008 | | | | - | 9,760,000.00 |
| 14 | 9/1/2008 | | | | - | 9,760,000.00 |
| 15 | 10/1/2008 | | | | - | 9,760,000.00 |
| 16 | 11/1/2008 | | | | - | 9,760,000.00 |
| 17 | 12/1/2008 | | | | - | 9,760,000.00 |
| 18 | 1/1/2009 | | | | | 9,760,000.00 |
| 19 | 2/1/2009 | | | | | 9,760,000.00 |
| 20 | 3/1/2009 | | | | | 9,760,000.00 |
| 21 | 4/1/2009 | | | | | 9,760,000.00 |
| 22 | 5/1/2009 | | | | | 9,760,000.00 |
| 23 | 6/1/2009 | | | | | 9,760,000.00 |
| 24 | 7/1/2009 | | | | | 9,710,000.00 |
| 25 | 8/1/2009 | | | | 1 | 9,701,256.09 |
| 26 | 9/1/2009 | | | | 2 | 9,692,464.66 |
| 27 | 10/1/2009 | | | | 9 | 9,683,625.48 |
| 28 | 11/1/2009 | | | 52,614.37 | 8,887.21 | 9,674,738.26 |
| 29 | 12/1/2009 | 6.520% | 61,501.58 | 52,566.08 | 8,935.50 | 9,665,802.76 |
| 30 | 1/1/2010 | 6.520% | 61,501.58 | 52,517.53 | 8,984.05 | 9,656,818.71 |
| 31 | 2/1/2010 | 6.520% | 61,501.58 | 52,468.71 | 9,032.87 | 9,647,785.84 |
| 32 | 3/1/2010 | 6.520% | 61,501.58 | 52,419.64 | 9,081.94 | 9,638,703.90 |
| 33 | 4/1/2010 | 6.520% | 61,501.58 | 52,370.29 | 9,131.29 | 9,629,572.61 |
| 34 | 5/1/2010 | 6.520% | 61,501.58 | 52,320.68 | 9,180.90 | 9,620,391.71 |
| 35 | 6/1/2010 | 6.520% | 61,501.58 | 52,270.79 | 9,230.79 | 9,611,160.92 |
| 36 | 7/1/2010 | 6.520% | 61,501.58 | 52,220.64 | 9,280.94 | 9,601,879.98 |
| 37 | 8/1/2010 | 6.520% | 61,501.58 | 52,170.21 | 9,331.37 | 9,592,548.62 |
| 38 | 9/1/2010 | 6.520% | 61,501.58 | 52,119.51 | 9,382.07 | 9,583,166.55 |
| 39 | 10/1/2010 | 6.520% | 61,501.58 | 52,068.54 | 9,433.04 | 9,573,733.51 |
| 40 | 11/1/2010 | 6.520% | 61,501.58 | 52,017.29 | 9,484.29 | 9,564,249.22 |
| 41 | 12/1/2010 | 6.520% | 61,501.58 | 51,965.75 | 9,535.83 | 9,554,713.39 |

w/o Debtor's Claim Amortization Schedule

10

| | | | | | | |
|----|----------|--------|--------------|-----------|-----------|--------------|
| 42 | 1/1/2011 | 6.520% | 61,501.58 | 51,913.94 | 9,587.64 | 9,545,125.75 |
| 43 | 2/1/2011 | 6.520% | 61,501.58 | 51,861.85 | 9,639.73 | 9,535,486.02 |
| 44 | 3/1/2011 | 6.520% | 61,501.58 | 51,809.47 | 9,692.11 | 9,525,793.92 |
| 45 | 4/1/2011 | 6.520% | 61,501.58 | 51,756.81 | 9,744.77 | 9,516,049.15 |
| 46 | 5/1/2011 | 6.520% | 61,501.58 | 51,703.87 | 9,797.71 | 9,506,251.44 |
| 47 | 6/1/2011 | 6.520% | 61,501.58 | 51,650.63 | 9,850.95 | 9,496,400.49 |
| 48 | 7/1/2011 | 6.520% | 61,501.58 | 51,597.11 | 9,904.47 | 9,486,496.02 |
| 49 | 8/1/2011 | 6.520% | 61,501.58 | 51,543.30 | 9,958.28 | 9,476,537.73 |
| 50 | 9/1/2011 | 6.520% | 61,501.58 | 51,489.19 | 10,012.39 | 9,466,525.34 |
| 51 | 10/1/2011 | 6.520% | 61,501.58 | 51,434.79 | 10,066.79 | 9,456,458.55 |
| 52 | 11/1/2011 | 6.520% | 61,501.58 | 51,380.09 | 10,121.49 | 9,446,337.06 |
| 53 | 12/1/2011 | 6.520% | 61,501.58 | 51,325.10 | 10,176.48 | 9,436,160.58 |
| 54 | 1/1/2012 | 6.520% | 61,501.58 | 51,269.81 | 10,231.77 | 9,425,928.81 |
| 55 | 2/1/2012 | 6.520% | 61,501.58 | 51,214.21 | 10,287.37 | 9,415,641.44 |
| 56 | 3/1/2012 | 6.520% | 61,501.58 | 51,158.32 | 10,343.26 | 9,405,298.18 |
| 57 | 4/1/2012 | 6.520% | 61,501.58 | 51,102.12 | 10,399.46 | 9,394,898.72 |
| 58 | 5/1/2012 | 6.520% | 61,501.58 | 51,045.62 | 10,455.96 | 9,384,442.75 |
| 59 | 6/1/2012 | 6.520% | 61,501.58 | 50,988.81 | 10,512.77 | 9,373,929.98 |
| 60 | 7/1/2012 | 6.520% | 61,501.58 | 50,931.69 | 10,569.89 | 9,363,360.09 |
| 61 | 8/1/2012 | 6.520% | 61,501.58 | 50,874.26 | 10,627.32 | 9,352,732.76 |
| 62 | 9/1/2012 | 6.520% | 61,501.58 | 50,816.51 | 10,685.07 | 9,342,047.70 |
| 63 | 10/1/2012 | 6.520% | 61,501.58 | 50,758.46 | 10,743.12 | 9,331,304.58 |
| 64 | 11/1/2012 | 6.520% | 61,501.58 | 50,700.09 | 10,801.49 | 9,320,503.08 |
| 65 | 12/1/2012 | 6.520% | 61,501.58 | 50,641.40 | 10,860.18 | 9,309,642.90 |
| 66 | 1/1/2013 | 6.520% | 61,501.58 | 50,582.39 | 10,919.19 | 9,298,723.72 |
| 67 | 2/1/2013 | 6.520% | 61,501.58 | 50,523.07 | 10,978.51 | 9,287,745.20 |
| 68 | 3/1/2013 | 6.520% | 61,501.58 | 50,463.42 | 11,038.16 | 9,276,707.04 |
| 69 | 4/1/2013 | 6.520% | 61,501.58 | 50,403.44 | 11,098.14 | 9,265,608.90 |
| 70 | 5/1/2013 | 6.520% | 61,501.58 | 50,343.14 | 11,158.44 | 9,254,450.46 |
| 71 | 6/1/2013 | 6.520% | 61,501.58 | 50,282.51 | 11,219.07 | 9,243,231.40 |
| 72 | 7/1/2013 | 6.520% | 61,501.58 | 50,221.56 | 11,280.02 | 9,231,951.37 |
| 73 | 8/1/2013 | 6.520% | 61,501.58 | 50,160.27 | 11,341.31 | 9,220,610.06 |
| 74 | 9/1/2013 | 6.520% | 61,501.58 | 50,098.65 | 11,402.93 | 9,209,207.13 |
| 75 | 10/1/2013 | 6.520% | 61,501.58 | 50,036.69 | 11,464.89 | 9,197,742.24 |
| 76 | 11/1/2013 | 6.520% | 61,501.58 | 49,974.40 | 11,527.18 | 9,186,215.06 |
| 77 | 12/1/2013 | 6.520% | 61,501.58 | 49,911.77 | 11,589.81 | 9,174,625.25 |
| 78 | 1/1/2014 | 6.520% | 61,501.58 | 49,848.80 | 11,652.78 | 9,162,972.47 |
| 79 | 2/1/2014 | 6.520% | 61,501.58 | 49,785.48 | 11,716.10 | 9,151,256.37 |
| 80 | 3/1/2014 | 6.520% | 61,501.58 | 49,721.83 | 11,779.75 | 9,139,476.62 |
| 81 | 4/1/2014 | 6.520% | 61,501.58 | 49,657.82 | 11,843.76 | 9,127,632.86 |
| 82 | 5/1/2014 | 6.520% | 61,501.58 | 49,593.47 | 11,908.11 | 9,115,724.75 |
| 83 | 6/1/2014 | 6.520% | 61,501.58 | 49,528.77 | 11,972.81 | 9,103,751.94 |
| 84 | 7/1/2014 | 6.520% | 9,103,751.94 | | | - |

BANK: CITI